UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

MARTÍN JONATHAN BATALLA VIDAL, )
)
*Plaintiff*, )
) **COMPLAINT**
v. )
) CIVIL ACTION NO. _____
KATHY A. BARAN, Director, California )
Service Center, KELVIN MEDLOCK, )
Associate Director, California Service )
Center, SUSAN M. CURDA, District )
Director, and DONALD W. NEUFELD, )
Associate Director, Service Center )
Operations, U.S. Citizenship and )
Immigration Services, )
)
*Defendants*. )
)

---

Plaintiff Batalla Vidal, by and through his counsel, alleges the following on information and belief:

## INTRODUCTION

This action challenges the Department of Homeland Security's revocation of employment authorization of a young New York City resident, which was done solely on the basis of a preliminary injunction entered by a U.S. District Court in Brownsville, Texas. *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015), *aff'd*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) (per curiam). Plaintiff Martín Jonathan Batalla Vidal is not and has never been a party to the *Texas v. United States* suit. He did not have a full and fair opportunity to defend his interests in that action, and no other party there adequately represented them. In addition, Texas and the other plaintiffs lack standing to obtain, and the District Court in *Texas v. United States* lacked jurisdiction or authority to enter, an injunction reaching to New York. Defendants' reliance on the unlawfully broad *Texas v. United States*

1

injunction to revoke Mr. Batalla Vidal's employment authorization violated the Administrative Procedure Act.

Mr. Batalla Vidal came to the United States from Mexico at the age of seven and has lived in New York for nearly twenty years. He is now a student preparing to become a medical assistant and works to help support his family while he pursues his education. In November 2014, Mr. Batalla Vidal submitted an application for Deferred Action for Childhood Arrivals (DACA), a program of temporary immigration relief established in 2012 by the U.S. Department of Homeland Security (DHS). Later that same month, DHS announced certain revisions to DACA, including an expansion of the period of deferred action and employment authorization from two years to three years. In February 2015, the government granted Mr. Batalla Vidal a three-year period of deferred action and employment authorization. On May 14, 2015, however, Defendants revoked Mr. Batalla Vidal's three-year employment authorization, stating as the sole grounds for their action the issuance of a preliminary injunction in *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015). Subsequently, DHS issued Mr. Batalla Vidal a two-year employment authorization.

The government's reliance on the unlawfully broad *Texas v. United States* injunction was legally erroneous. Mr. Batalla Vidal asks this Court to (1) declare that the February 2015 preliminary injunction entered in *Texas v. United States* does not apply to New York residents such as Mr. Batalla Vidal; (2) declare unlawful Defendants' revocation of his employment authorization; (3) vacate and set aside the unlawful revocation and order the reinstatement of Mr. Batalla Vidal's three-year employment authorization; and (4) enjoin Defendants from revoking his employment authorization on the basis of the injunction in *Texas v. United States*.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case arises under the United States Constitution and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. This Court has remedial authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

2. Venue properly lies in the Eastern District of New York because Plaintiff resides in the district. 28 U.S.C. § 1391(e)(1). Venue also properly lies in the Eastern District of New York because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff Martín Jonathan Batalla Vidal ("Martín Batalla Vidal" or "Mr. Batalla Vidal") is a recipient of Deferred Action for Childhood Arrivals (DACA). He currently resides in Queens, New York.

4. Defendant Kathy Baran is the Director of the California Service Center of the United States Citizenship and Immigration Services (USCIS). She is sued in her official capacity.

5. Defendant Donald W. Neufeld is the Associate Director for Service Center Operations of USCIS. He is sued in his official capacity.

6. Defendant Kelvin Medlock is the Associate Director of the California Service Center of USCIS. He is sued in his official capacity.

7. Defendant Susan M. Curda is a District Director of USCIS. She is sued in her official capacity.

## STATEMENT OF FACTS

**USCIS Issuance of Employment Authorization to DACA Recipients**

8. By statute, USCIS may grant employment authorization to certain classes of noncitizens. 8 U.S.C. § 1324a(h)(3)(B). One such class is individuals "who ha[ve] been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment." 8 C.F.R. § 274a.12(c)(14).

9. USCIS has granted employment authorization to DACA recipients under this category. When USCIS grants employment authorization, it issues to the applicant an Employment Authorization Document (EAD).

10. Employment authorization is crucial to young people trying to build their lives in the United States. It allows them to raise the funds necessary for post-secondary education, participate in the workforce, support themselves and their families, and save for the future.

11. Under USCIS regulations, the agency has discretion to establish the initial period of employment authorization.

12. Once the agency has exercised its discretion to grant an initial period of work authorization, however, USCIS may revoke employment authorization only under limited circumstances enumerated in the regulations. *See* 8 C.F.R. § 274a.14(a). Otherwise, revocation is permissible when a condition upon which employment authorization was granted has not been met or ceases to exist, or based on "good cause shown." *Id.* § 274a.14(b)(1). None of these circumstances or enumerated grounds for revocation applied to Mr. Batalla Vidal.

13. USCIS regulations also require the agency to provide written notice of intent to revoke employment authorization. *Id.* § 274a.14(b)(2). The notice must state the reasons

indicating that revocation is warranted. Once notice is served, the affected party is entitled to a period of fifteen days to submit countervailing evidence. *Id.*

14. The regulations provide that an affected party may not appeal the agency's decision to revoke employment authorization. *Id.*

15. These regulations bind USCIS and constrain its power to revoke employment authorization for the period of time granted. Accordingly, these regulations create a legal right to a proper process for revocation of employment authorization and a legitimate claim of entitlement to the EAD once granted. *Id.* § 274a.14(b).

16. The original 2012 DACA guidance announced that USCIS would grant deferred action and employment authorization for a period of two years, subject to renewal for additional two-year periods. Memorandum from Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas, Director, U.S. Citizenship and Immigration Servs., *Exercising Prosecutorial Discretion With Respect to Individuals Who Came to the United States as Children*, June 15, 2012 ("2012 DACA Memorandum") (attached hereto as Exhibit A). This memorandum stated that people who came to the United States as children, lack a serious criminal history, attend school, and meet other criteria may request that the Secretary grant deferred action, a temporary form of relief from removal, for a period of two years. Those granted deferred action in this manner would also be eligible for employment authorization and a social security card. *See* Exhibit A, 2012 DACA Memorandum.

17. On November 20, 2014, President Obama and Secretary of Homeland Security Jeh Johnson announced a series of further executive actions for immigration relief, including the creation of Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA). Memorandum from Jeh Charles Johnson, Sec'y of Homeland Security, to Leon Rodriguez,

Director, U.S. Citizenship and Immigration Servs., *Exercising Prosecutorial Discretion With Respect to Individuals Who Came to the United States as Children and With Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents* 3, Nov. 20, 2014 ("2014 DACA/DAPA Memorandum") (attached hereto as Exhibit B).

18. At the same time, the President and Secretary announced an expansion of DACA, liberalizing the eligibility criteria and authorizing the grant or renewal of deferred action and employment authorization for a period of three years ("expanded DACA"). *Id.*

**The *Texas v. United States* Litigation**

19. On December 3, 2014, Texas and thirteen other plaintiff states, along with the governors of four other states, filed a civil action in the U.S. District Court for the Southern District of Texas against Secretary of Homeland Security Jeh Johnson and other federal immigration officials, seeking an injunction to halt the implementation of DAPA and expanded DACA. Eight more states and one state attorney general later joined the suit as plaintiffs. Neither the State of New York nor any New York official joined the lawsuit as a plaintiff. Three Texas residents who were potential beneficiaries of DAPA moved to intervene, but the district court denied that motion, which was subsequently overturned on appeal.

20. Judge Andrew S. Hanen entered a preliminary injunction in favor of plaintiffs on February 16, 2015, enjoining the Secretary's implementation of DAPA and expanded DACA, including, of relevance here, the new DACA provision permitting a grant or renewal of deferred action and employment authorization for a period of three years. By its terms, Judge Hanen's order applied nationwide. *Texas v. United States*, 86 F. Supp. 3d 591, 677-78 (S.D. Tex. 2015).

21. Judge Hanen's order relied on a finding that Texas had sufficiently satisfied the necessary standing requirements for the granting of the preliminary injunction. *Id.* at 620. The

6

court observed, "If the majority of the DHS Directive beneficiaries residing in [Texas] apply for driver's licenses, Texas will bear directly a $174.73 per applicant expense, costing the state millions of dollars." *Id*. Judge Hanen's order was also based on a determination that adoption of DAPA and expanded DACA violated the APA's procedural requirements, and that, consequently, Texas and other plaintiff states had a substantial likelihood of success on the merits. *Id.* at 671-72.

22. The plaintiffs did not include class allegations in their complaint, and did not move for or obtain class certification on a nationwide or other basis.

23. The government appealed to the U.S. Court of Appeals for the Fifth Circuit. On appeal, fifteen states and the District of Columbia filed an amicus curiae brief in support of the government. The brief included the State of New York. These states and the District of Columbia denied that implementation of DAPA or expanded DACA created an imminent risk of harm to their state, pointing out that the types of costs alleged by Texas are a matter of state choice, not federal coercion, and contending that the district court had little information to determine the cost of licensing under DAPA and expanded DACA outside of Texas. They also argued that, since the only evidence of harm cited was confined to Texas, the injunction was overbroad, and the court should at the very least limit the injunction to encompass solely plaintiff states.

24. The Fifth Circuit affirmed entry of the preliminary injunction, *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), and reversed the denial of the motion to intervene by three Texas residents, *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015).

25. On June 23, 2016, the Supreme Court affirmed the Fifth Circuit decision by an equally divided court, leaving the Fifth Circuit opinion in place but setting no precedent. *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam); *see Neil v. Biggers*, 409 U.S. 188 (1972)

7

(finding that "[t]he legal effect" of an equally divided opinion "would be the same if the appeal, or writ of error, were dismissed").

26. On May 19, 2016, Judge Hanen issued an expansive sanctions order, directing the government to file under seal a list of the names, addresses, contact information, and alien registration numbers of all individuals in the Plaintiff States granted benefits under the 2014 DACA/DAPA Memorandum between November 20, 2014 and March 3, 2015, for possible future release by Judge Hanen. Memorandum Opinion and Order, *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015) (No. B-14-254), ECF No. 347 ("Sanctions Order") (attached hereto as Exhibit C). He further ordered that "any attorney employed at the Justice Department in Washington, D.C. who appears, or seeks to appear, in a court (state or federal) in any of the 26 Plaintiff States annually attend a legal ethics course" for five years. *Id.* at 25-26.

**Plaintiff Martín Batalla Vidal**

27. Martín Batalla Vidal was born in Mexico and raised in New York from the age of seven. Mr. Batalla Vidal has a younger brother who has also received DACA, and two younger brothers who were born in the United States. Mr. Batalla Vidal considers New York his home, as it is the only place he has lived as an adult.

28. Mr. Batalla Vidal attended Bushwick Leaders High School for Academic Excellence in Brooklyn, New York, from September 2004 until his graduation in June 2008.

29. After graduating from high school, Mr. Batalla Vidal was interested in attending a nursing program at a school such as the City University of New York (CUNY), but could not seriously consider these programs because these universities did not offer financial aid to undocumented students. His guidance counselor and other advisors also repeatedly stressed the

8

difficulty of finding work in the medical field without employment authorization, in light of which Mr. Batalla Vidal chose not to pursue a degree he might not be able to use in the future.

30. On November 14, 2014, Mr. Batalla Vidal applied for DACA with the assistance of Make the Road New York (MRNY). MRNY is a nonprofit, membership-based community organization that integrates adult and youth education, legal and survival services, and community/civic engagement, in a holistic approach to help low-income New Yorkers improve their lives and neighborhoods. To prepare his DACA application, Mr. Batalla Vidal attended a workshop at MRNY's office in Brooklyn, New York, where he made multiple follow-up visits. He spent several days gathering the necessary paperwork and obtaining documents from his high school, hospital, and bank.

**Approval of DACA Application and Issuance of Three-Year EAD**

31. On November 20, 2014, President Obama and the Secretary of Homeland Security announced the expansion of DACA and the creation of DAPA. *See* Exhibit B.

32. On February 17, 2015—one day after the court entered a preliminary injunction in *Texas v. United States*—DHS approved Mr. Batalla Vidal's application for DACA and, pursuant to the government's November 20, 2014 memorandum, granted Mr. Batalla Vidal a three-year employment authorization, valid from February 17, 2015 to February 16, 2018. Dep't Homeland Sec., I-797C Notice of Action, Feb. 17, 2015 (attached hereto as Exhibit D).

33. Receiving DACA reinvigorated Mr. Batalla Vidal's dreams of working in the medical profession, and in fall 2015 he enrolled at ASA College in a medical assistant's degree. With DACA, Mr. Batalla Vidal was able to raise money for school and to support his mother and younger siblings, by working initially both full-time at Bocca Catering and part-time at New York Sports Club. He currently works full-time at New York Sports Club. Mr. Batalla Vidal also

received a scholarship for DACA recipients from ASA College that is awarded in $3,120 increments over four semesters. However, Mr. Batalla Vidal's ability to start his career remains uncertain—and additionally so due to Defendants' unlawful actions that are challenged here.

**Revocation of Plaintiff's Three-Year Period of Employment Authorization**

34. On May 7, 2015, Secretary Johnson informed Judge Hanen that despite the court's February 16, 2015 preliminary injunction in *Texas v. United States*, USCIS had, after the injunction was entered, granted three-year terms of deferred action and employment authorization to approximately 2,000 individuals. Defendants' May 7 Advisory, *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015) (No. B-14-254), ECF No. 247 ("May 7 Advisory") (attached hereto as Exhibit E).

35. On May 14, 2015, Defendants caused a letter to be sent to Mr. Batalla Vidal, instructing Mr. Batalla Vidal to "immediately return to USCIS the EAD that has a 3-year validity period listed." The letter also stated that Mr. Batalla Vidal's failure to return his EAD might result in adverse action in his case.

36. Defendants' letter gave only one explanation for the revocation of Mr. Batalla Vidal's three-year employment authorization: "The reason for this action is that, after a court order in *Texas v. United States*, No. B-14-254 (S.D. Tex.), USCIS erroneously issued you a 3-year instead of 2-year approval notice or notices and a 3-year instead of 2-year EAD."

37. Mr. Batalla Vidal has not appealed USCIS's revocation of his three-year employment authorization because there are no administrative avenues by which to seek relief. 8 C.F.R. § 274a.14(b)(2).

38. In or around May 2015, Mr. Batalla Vidal received by mail a second approval notice from USCIS (Form I-797C), renewing his DACA status for a two-year period, from

10

February 17, 2015 to February 16, 2017. On May 26, 2015, Mr. Batalla Vidal separately received by mail a notice that included an EAD card, valid for the period indicated in the approval notice.

39. Due to Defendants' revocation of his three-year employment authorization, Mr. Batalla Vidal will have to apply for renewal of his employment authorization in less than two years. The renewal process requires locating, acquiring, and submitting documents, getting fingerprinted, paying a total of $465 in fees, and potentially notifying Mr. Batalla Vidal's employer. Further, Mr. Batalla Vidal would potentially need to resign from his future job due to the prolonged and uncertain duration of the renewal process.

40. In revoking Mr. Batalla Vidal's three-year employment authorization and issuing a two-year employment authorization in its place, USCIS did not refund Mr. Batalla Vidal this $465 in fees or any part thereof.

41. Although Mr. Batalla Vidal did not participate in the *Texas v. United States* litigation, Defendants revoked and deprived him of his employment authorization on the sole ground of the *Texas* preliminary injunction. Mr. Batalla Vidal had no opportunity to contest the revocation of his three-year employment authorization or to vindicate his rights.

42. At no point following the *Texas* defendants' May 7 Advisory did any of the parties to *Texas v. United States* attempt to join to that litigation either Mr. Batalla Vidal or others whose three-year employment authorization was revoked, or otherwise allow him his day in court.

43. The plaintiffs in *Texas v. United States* lacked standing to seek or obtain a nation-wide injunction requiring Defendants to revoke Mr. Batalla Vidal's three-year employment authorization and his duly issued three-year EAD. Further, the plaintiffs in that case lacked

11

standing to assert injury arising from New York residents receiving three-year terms of employment authorization. Because "[t]he remedy must of course be limited to the inadequacy that produced the injury in fact," *see Lewis v. Casey*, 518 U.S. 343, 357 (1996), the injury in fact found by the *Texas* court in issuing a nationwide injunction—the cost to Texas and potentially to Indiana and Wisconsin of issuing driver's licenses—was "a patently inadequate basis for . . . imposition of system-wide relief," *see id.* at 359.

44. The court in *Texas* lacked jurisdiction and remedial authority to enter a nationwide preliminary injunction that was broader than necessary to remedy the specific harm to the plaintiffs, *see Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), because it had neither made a final determination as to the lawfulness of any agency rule nor found evidence of irreparable harm to persons or states other than the named plaintiffs, *see Lewis*, 518 U.S. at 349-50, 349 n.1 (finding that a district court's overly broad injunction, in light of the scope of plaintiffs' standing, raised a "jurisdictional" issue).

45. Mr. Batalla Vidal does not possess a Texas driver's license, has never resided in Texas, and disclaims all intention of applying for a Texas driver's license during the term of the three-year employment authorization that he received from USCIS. The state where Mr. Batalla Vidal resides, New York, has denied that the implementation of the November 20, 2014 memorandum would cause the harm necessary to issue an injunction applicable in that state.

46. Even if Mr. Batalla Vidal moved to Texas while possessing a three-year EAD, he would be required by law to notify USCIS of a change of address within ten days. 8 C.F.R. § 265.1. At that time, and if still subject to the *Texas v. United States* injunction, USCIS could revoke Mr. Batalla Vidal's three-year employment authorization and provide him with a two-year period of employment authorization instead.

47. Furthermore, even if Mr. Batalla Vidal had moved to Texas with a three-year EAD in hand and applied for a Texas driver's license without informing USCIS of his change of address, Mr. Batalla Vidal would have been flagged by USCIS's Systematic Alien Verification for Entitlements (SAVE) program, which the Texas Department of Public Safety uses to confirm the eligibility of each applicant for a driver's license. At that point, USCIS could have revoked Mr. Batalla Vidal's three-year employment authorization and provided him with a two-year period of employment authorization instead.

48. This Court has the jurisdiction and authority to determine whether Defendants' revocation of Mr. Batalla Vidal's three-year employment authorization was not in accordance with law. *See Martin v. Wilks*, 490 U.S. 755, 758-59 (1989) (litigants deprived of legal rights by a prior action to which they were not parties could bring a collateral attack against the consent decree resulting from that action).

49. Mr. Batalla Vidal is entitled to relief in this court because the *Texas* injunction jeopardizes his legally protected interest in his three-year employment authorization. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991) (holding that where employment authorization was granted upon noncitizen's filing of nonfrivolous agricultural worker application, "the impact of a denial on the opportunity to obtain gainful employment [was] plainly sufficient to mandate constitutionally fair procedures").

50. Defendants' revocation of Mr. Batalla Vidal's three-year employment authorization is not in accordance with the law: USCIS erred in revoking Mr. Batalla Vidal's employment authorization based on an overly broad injunction entered by a court in Texas that lacked jurisdiction to reach New York residents.

51. Defendants' revocation of Mr. Batalla Vidal's three-year employment authorization violates binding USCIS regulations, which permit revocation only when a condition upon which employment authorization was granted has not been met or ceases to exist, or based on "good cause shown." 8 C.F.R. § 274a.14(b).

52. Plaintiff is aggrieved by Defendants' final agency action in revoking his three-year employment authorization by letter dated May 14, 2015.

53. Plaintiff has exhausted his administrative remedies. *See* 8 C.F.R. § 274a.14(b)(2) ("The decision by the district director shall be final and no appeal shall lie from the decision to revoke the authorization.").

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### ADMINISTRATIVE PROCEDURE ACT

54. Plaintiff Batalla Vidal repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55. Defendants' revocation of Mr. Batalla Vidal's employment authorization was not in accordance with law, in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), in that it was based on a legal error—namely, Judge Hanen's unlawfully broad preliminary injunction in *Texas v. United States*, which was entered without jurisdiction.

56. Plaintiff is entitled to request that this Court declare his legal right not to have his employment authorization revoked based on a legal error. 28 U.S.C. § 2201.

### SECOND CLAIM FOR RELIEF
### ADMINISTRATIVE PROCEDURE ACT

57. Plaintiff Batalla Vidal repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

14

58. Defendants' revocation was not done "for good cause shown" or for any other reason permitted by 8 C.F.R. § 274a.14, and was thus done "without observance of procedure required by law," in violation of the APA, 5 U.S.C. § 706(2)(D).

59. Plaintiff is entitled to request that this Court declare his legal right not to have his employment authorization revoked without observance of procedure required by law. 28 U.S.C. § 2201.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

(a) Issue a declaratory judgment stating that the February 2015 preliminary injunction entered in *Texas v. United States* does not apply to New York residents such as Mr. Batalla Vidal;

(b) Issue a declaratory judgment stating that Defendants' revocation of Mr. Batalla Vidal's three-year employment authorization based on the injunction issued in *Texas v. United States* was an "agency action" that was "not in accordance with law," in violation of the APA, 5 U.S.C. § 706(2)(A);

(c) Issue a declaratory judgment stating that Defendants' revocation of Mr. Batalla Vidal's three-year employment authorization was an "agency action" that was "without observance of procedure required by law," in violation of the APA, 5 U.S.C. § 706(2)(D), as it was not premised on any circumstance listed in 8 C.F.R. § 274a.14(b)(1)(i);

(d) Hold unlawful and set aside Defendants' revocation of Mr. Batalla Vidal's three-year employment authorization and order Defendants to restore it;

(e) Enjoin Defendants from revoking Mr. Batalla Vidal's three-year employment authorization on the basis of the injunction in *Texas v. United States*;

(f) Award Mr. Batalla Vidal reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

(g) Grant any and all further relief this Court deems just and proper.

Dated: August 25, 2016

Respectfully submitted,

  /s/ Amy Taylor

Willem Bloom, Law Student Intern\*
Jordan Laris Cohen, Law Student Intern\*
Amit Jain, Law Student Intern\*
Aaron Korthuis, Law Student Intern\*
Zachary Manfredi, Law Student Intern\*
Muneer I. Ahmad[†]
Ruben Loyo[†]
Marisol Orihuela[†]
Michael J. Wishnie (MW 1952)
JEROME N. FRANK
LEGAL SERVICES ORGANIZATION
Yale Law School
P.O. Box 209090
New Haven, Connecticut 06520
Phone: (203) 432-4800

Amy S. Taylor (AT 2056)
Deborah Axt (DA 4885)
Clement Lee[†]
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: (718) 418-7690

Melissa Keaney[†]
Karen Tumlin[†]
NATIONAL IMMIGRATION
LAW CENTER
P.O. Box 70067
Los Angeles, CA 90070
Phone: (213) 639-3900

Justin Cox[†]
NATIONAL IMMIGRATION
LAW CENTER
1989 College Ave. NE
Atlanta, GA 30317
Phone: (678) 404-9119

*Attorneys for Plaintiff*

---

\* Motion for law student appearance forthcoming.
[†] *Pro hac vice* motion forthcoming.