# The Jerome N. Frank Legal Services Organization
YALE LAW SCHOOL

September 5, 2017

Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>Batalla Vidal et al. v. Baran et al.</u>,
No. 1:16-cv-04756 (NGG) (JO)

Dear Judge Garaufis:

We represent Plaintiffs in the above-captioned action and write to request a pre-motion conference at the Court's earliest convenience. In light of today's announcement by Attorney General Sessions and termination by the Department of Homeland Security (DHS) of the 2012 guidance establishing Deferred Action for Childhood Arrivals (DACA),[1] Plaintiffs seek leave to amend their complaint to add related claims and class allegations and to join additional parties, and, if necessary, to seek emergency or expedited relief. *See* Fed. R. Civ. P. 15(a)(2), 19–20, 23, 65.

The Government's reversal on DACA violates the Administrative Procedure Act (APA) and the Fifth Amendment of the U.S. Constitution. Millions of people have benefited from, and relied on, the DACA program over the past five years—not only the nearly 800,000 DACA recipients themselves, who have disclosed sensitive information and structured their lives around the policy, but also their employers, families, classmates, and communities. Particularly given this reliance, the Government has failed to provide a reasoned explanation for its reversal, in violation of the APA. In addition, the Administration's reversal is unconstitutionally motivated by anti-Mexican and anti-Latino animus, in violation of equal protection component of the Due Process Clause of the Fifth Amendment. President Trump's consistent anti-Mexican statements, from the start of his campaign through his rally last month in Phoenix, demonstrate his intent to discriminate against Mexican and Latino individuals, who will bear the overwhelming burden of the DACA termination.

First, the Government's inadequately reasoned change in policy violates the APA's prohibition against arbitrary and capricious agency action. 5 U.S.C. § 706(2)(A). When an agency reverses a previously established policy it must "show that there are good reasons for the new policy." *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see also id.* at 537 (Kennedy, J., concurring in judgment) ("An agency cannot simply disregard contrary or inconvenient factual determinations that it made in the past . . . ."). This principle is especially strong where the agency's "longstanding polic[y] . . . 'engendered serious reliance interests that must be taken into account,'" and a "more

---

[1] Memorandum from Elaine C. Duke, Acting Sec'y of Homeland Security, to James W. McCament, Acting Director, U.S. Citizenship and Immigration Servs., *Memorandum on Rescission Of Deferred Action For Childhood Arrivals (DACA)*, Sept. 5, 2017 (copy attached as Ex. A), at 2.

detailed justification" must be provided. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (quoting *Fox*, 556 U.S. at 515–16).[2]

Here, the 2012 DACA Memo rested on specific findings that, *inter alia*, "[a]s a general matter, [DACA-eligible youth] lacked the intent to violate the law" and that "many of these young people have already contributed to our country in significant ways."[3] The Secretary of Homeland Security further found then that the nation's immigration laws are "not designed . . . to remove productive young people to countries where they may not have lived or even speak the language."[4] In 2016, a DHS Memo reaffirmed that "[w]e continue to benefit as a country from the contributions of those young people who have come forward and want nothing more than to contribute to our country and our shared future."[5]

In today's abrupt policy shift, the Government has failed to provide a reasoned explanation for disregarding the findings and conclusions that underlay the 2012 DACA Memo, in violation of the APA. Instead, the Government has merely made the erroneous assertion that the executive branch lacks the authority to maintain such a program, even though no court has decided the legality of the 2012 DACA program. DHS reliance on the Attorney General's conclusion that "potentially imminent litigation" would "likely" result in a judicial order invalidating DACA constitutes legal error, arbitrary and capricious action, and a violation of the APA. DACA is lawful and its hypothetical challenge by other parties is no grounds to abandon the program.

The Government's inadequate reasoning is especially insufficient because DACA engendered serious reliance interests. In the five years since DHS established DACA, the agency has granted deferred action to almost 800,000 young people—including Plaintiff

---

[2] The rescission of DACA is subject to arbitrary and capricious review because it constitutes final agency action. *See Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1289–90 (D.C. Cir. 2016) (holding agency reversal of policy reviewable under the APA and noting that "the finality inquiry is a pragmatic and flexible one" (internal quotation omitted)).

Some of the undersigned counsel have taken the position in other litigation that the 2012 DACA Memo did not establish a legislative rule. *See, e.g.*, Brief in Opposition to Certiorari at 30–36, *Brewer v. Arizona Dream Act Coal.*, No. 16-1180 (May 22, 2017). If this Court nevertheless independently concludes that DACA is a legislative rule, *see Texas v. United States*, 809 F.3d 134, 171–78 (5th Cir. 2015) (affirming issuance of preliminary injunction and finding substantial likelihood that Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA) was binding legislative rule), then DACA's rescission is also invalid absent APA notice and comment pursuant to 5 U.S.C. § 553. *See Consumer Energy Council of Am. v. FERC*, 673 F.2d 425, 447 n.79 (D.C. Cir. 1982) ("The Commission's argument that notice and comment requirements do not apply to 'defectively promulgated regulations' is untenable because it would permit an agency to circumvent the requirements of § 553 merely by confessing that the regulations were defective in some respect . . . ."), *aff'd sub nom. Process Gas Consumers Grp. v. Consumer Energy Council of Am.*, 463 U.S. 1216 (1983).

[3] Memorandum from Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas, Director, U.S. Citizenship and Immigration Servs., *Exercising Prosecutorial Discretion With Respect to Individuals Who Came to the United States as Children*, June 15, 2012 (copy attached as Ex. B), at 2.

[4] *Id.*

[5] Letter from Jeh Johnson, Sec'y of Homeland Security, to Representative Judy Chu, December 30, 2016 (copy attached as Ex. C), at 2.

P.O. BOX 209090, NEW HAVEN, CT 06520-9090 • TELEPHONE 203 432-4800 • FACSIMILE 203 432-1426
COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CT 06511

2

Batalla Vidal; members, clients, and staff of Plaintiff Make the Road – New York (MRNY); and over 41,000 other persons in New York State alone.[6] These grants of deferred action and work authorization have boosted labor-force participation,[7] raised DACA recipients' purchasing power, and increased state revenues.[8] Further, because DACA recipients by definition came to the United States under the age of 16, many have established permanent ties to this country; they often support family members, many of whom are U.S. citizens, with their growing incomes.[9] All DACA applicants have also disclosed to DHS personal identifying information about themselves and, in many cases, their family members. As the Government acknowledges, these applicants "most assuredly relied" on the Government's representations that this information "[would] not later be used for immigration enforcement purposes."[10] The policy has thus generated substantial reliance interests among the nearly 800,000 DACA recipients themselves, as well as among family members, employers (including Plaintiff MRNY), and other institutions, including universities. Each of these reliance interests has deepened since President Trump took office, as he continued the program for nearly eight months, accepting both first-time applications and renewals, while assuring DACA-eligible individuals that he would "take care of" them.[11]

Plaintiffs Batalla Vidal and MRNY will be adversely affected by the Government's unlawful actions.[12] Members of MRNY, eleven staff members with DACA, and additional non-member clients of MRNY will no longer be able to file new applications or renewals when the program is withdrawn. Each new application or renewal request contains personal identifying information, disclosed in reliance on the Administration's assertions that the

---

[6] U.S. Citizenship & Immigration Servs., Deferred Action for Childhood Arrivals Process (Through Fiscal Year 2017, 2nd Qtr) (June 8, 2017) (copy attached as Ex. D) (hereinafter "DACA Through March 2017").

[7] *See, e.g.*, Nolan G. Pope, *The Effects of DACAmentation: The Impact of Deferred Action for Childhood Arrivals on Unauthorized Immigrants*, 143 J. Pub. Econ. 98, 99 (2016).

[8] Tom K. Wong et al., DACA Recipients' Economic and Educational Gains Continue to Grow (Aug. 28, 2017) (copy attached as Ex. E).

[9] Tom K. Wong et al., Results from a Nationwide Survey of DACA Recipients Illustrate the Program's Impact (July 9, 2015) (copy attached as Ex. F).

[10] Letter from Jeh Johnson, *supra* note 5, at 1.

[11] *See, e.g.*, MSNBC News Exclusive, Remarks of Donald J. Trump (Feb. 21, 2017), https://www.youtube.com/watch?v=yp_85N3lZTA&feature=youtu.be; *see also* Joel Rose, *6 Things To Know About Trump's Reversal On 'Dreamers'*, Nat. Public Radio (June 16, 2017), http://www.npr.org/2017/06/16/533255575/trump-allows-dreamers-to-stay-removes-protections-for-parents (noting that "President Trump told ABC that DACA recipients 'shouldn't be very worried'").

[12] The Trump Administration's announcement to rescind DACA is ripe for judicial review. Ripeness depends on "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). The announcement ending DACA has produced "direct and immediate" harm by upending the lives of DACA recipients, their families, employers, and communities. *Id*. at 152. Many of the nearly 800,000 DACA youth, including MRNY members, staff, and clients, will avoid public spaces, withdraw from school, and quit jobs out of fear of arrest and deportation and because their work authorization will soon terminate.

information would remain secure and that the DACA program would remain in effect.[13] Moreover, because of the Government's policy reversal, MRNY's resources must be diverted toward conducting additional screenings of members and non-member clients to determine whether they are eligible for other immigration relief.[14] MRNY will also sustain economic injury from the loss of work authorization for its employees with DACA. Given these reliance interests, the Government's justifications for its abrupt reversal in policy are insufficient, and the termination of the 2012 DACA memo violates the APA. *See Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. at 515.

The Government's action is separately arbitrary and capricious for its failure to consider "all relevant issues and factors." *Long Island Head Start Child Dev. Servs. v. N.L.R.B.*, 460 F.3d 254, 258 (2d Cir. 2006). An agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto Insurance Co.*, 463 U.S. 29, 43 (1983) (internal quotation omitted). This heightened standard exceeds the "rational basis" standard. *Id.* at 43 n.9. Here, DHS has failed to consider relevant issues and factors, including the demonstrated successes of the DACA policy and the many ways in which it furthers the goals of the Immigration and Nationality Act. Indeed, the Administration's only explanations for terminating the DACA program are "federal court rulings in ongoing litigation" and a letter from the Attorney General dated September 4.[15] Hypothetical lawsuits by others and the Attorney General's speculation regarding the possible ultimate outcome of any unfiled actions are insufficient to abandon the program and do not constitute a consideration of "all relevant issues and factors." *Long Island Head Start Child Dev. Servs.*, 460 F.3d at 258. In so doing, the Government's reversal is arbitrary and capricious and should be set aside.

Second, Plaintiffs seek leave to amend their complaint to add a claim under the equal-protection component of the Due Process Clause of the Fifth Amendment, on the ground that withdrawal of the 2012 DACA memo constitutes impermissible discrimination on the basis of race, ethnicity, and national origin. A "facially neutral [law] violates equal protection if it was motivated by discriminatory animus and its application results in a discriminatory effect." *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). The termination of DACA violates equal protection because it was substantially motivated by the animus of the President and his administration toward Latinos and Mexicans, the two groups who will overwhelmingly bear the brunt of President Trump's decision to re-impose

---

[13] *Frequently Asked Questions: Rescission of Memorandum Providing for Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA)*, U.S. Dep't Homeland Security (June 15, 2017), https://www.dhs.gov/news/2017/06/15/frequently-asked-questions-rescission-memorandum-providing-deferred-action-parents.

[14] *See, e.g.*, White House, "Talking Points – DACA Rescission" ("The Department of Homeland Security urges DACA recipients to use the time remaining on their work authorizations to prepare for and arrange their departure from the United States—including proactively seeking travel documentation—or to apply for other immigration benefits for which they may be eligible.").

[15] *Frequently Asked Questions: Rescission of Deferred Action for Childhood Arrivals (DACA)*, U.S. Dep't Homeland Security (Sept. 5, 2017), https://www.dhs.gov/news/2017/09/05/frequently-asked-questions-rescission-deferred-action-childhood-arrivals-daca.

P.O. BOX 209090, NEW HAVEN, CT 06520-9090 • TELEPHONE 203 432-4800 • FACSIMILE 203 432-1426
COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CT 06511

4

the threat of deportation on hundreds of thousands of young people who present no threat to national security or public safety.

Since the beginning of his campaign and through the present, President Trump has repeatedly expressed frank and often vulgar animus toward Latino immigrants in general and individuals of Mexican heritage in particular. He has falsely described them categorically as violent criminals, stating that "[w]hen Mexico sends its people, they're not sending their best . . . . They're bringing drugs. They're bringing crime. They're rapists."[16] President Trump also criticized a federal judge hearing claims of students defrauded by Trump University calling the judge a "'hater' who was being unfair to [President Trump] because the judge is 'Hispanic,' because he is 'Mexican' and because Trump is building a wall."[17] This animus surpasses campaign tweets. Last month, at a rally in Phoenix, the President described unauthorized immigrants as "animals" who bring "the drugs, the gangs, the cartels, the crisis of smuggling and trafficking."[18] Trump's Administration has now ordered DHS to take actions that will deeply injure almost 800,000 individuals—93 percent of whom are Latino, and 79 percent of whom are from Mexico[19]—based solely on a mistaken understanding of executive authority, and at great cost to these individuals, their families, their employers, and their communities. These facts, along with other evidence,[20] demonstrate that race and national origin were a substantial motivating factor in the termination of DACA, in violation of the Constitution. *Mhany Mgmt., Inc. v. Cty. Of Nassau*, 819 F.3d 581, 605–13 (2d Cir. 2016).

Plaintiffs also seek leave to join additional parties and add class allegations. The action as amended would satisfy the prerequisites for maintaining a class action. *See* Fed. R. Civ. P. 23(a). Adjudication of the statutory and constitutional claims described above will involve common questions of law and fact that do not require individualized determinations of the circumstances of any plaintiff. These claims as asserted by Plaintiff

---

[16] *Full Text: Donald Trump Announces a Presidential Bid*, Wash. Post (June 16, 2015), https://www.washingtonpost.com/news/ post-politics/wp/2015/06/16/full-text-donald-trump-announces-a-presidential-bid/.

[17] Nina Totenberg, *Who Is Judge Gonzalo Curiel, The Man Trump Attacked For His Mexican Ancestry?*, NPR (June 7, 2016), http://www.npr.org/2016/06/07/481140881/who-is-judge-gonzalo-curiel-the-man-trump-attacked-for-his-mexican-ancestry.

[18] *President Trump Speaks Live in Phoenix, Arizona with Campaign-Style Rally*, CNN (Aug. 22, 2017), http://www.cnn.com/TRANSCRIPTS/1708/22/cnnt.01.html.

[19] DACA Through March 2017, *supra* note 6, at 2 (reporting that of the 787,580 individuals approved for DACA, 618,342 are from Mexico and 735,251 are from Latin American countries).

[20] "Because discriminatory intent is rarely susceptible to direct proof, a district court facing a question of discriminatory intent must make 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Mhany Mgmt., Inc.*, 819 F.3d at 606 (quoting *Arlington Heights*, 429 U.S. at 266). *Arlington Heights* and its progeny identify factors relevant to intent, including whether "the impact of the official action . . . bears more heavily on one race than another," "[t]he historical background of the decision," substantive and procedural departures, and "[t]he legislative or administrative history . . . especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Id.* (citations and quotation marks omitted, all but first alteration in original).

Batalla Vidal, a young immigrant who satisfies all criteria for DACA, and MRNY, on behalf of itself, its members, and its staff with DACA, are typical of the putative class. Plaintiffs and their attorneys will fairly and adequately represent the interests of the putative class, which align with Plaintiffs' interests in not being subjected to arbitrary and capricious, or unconstitutional, agency action. Finally, pursuant to Rule 23(b)(2), injunctive or declaratory relief respecting the class as a whole is appropriate because the Government's unlawful actions apply generally to all putative class members. Given the scope of the harm generated by the Government's unlawful actions and the common questions underlying putative class members' claims, justice requires a grant of leave to include these claims in an amended complaint.

Because the Government's unlawful and inadequately explained policy change has adversely affected existing Plaintiffs and putative class members, in violation of the Administrative Procedure Act and the Fifth Amendment, justice requires an amendment in this case. Plaintiffs respectfully request that the Court schedule a pre-motion conference at its earliest convenience.

Very truly yours,

/s/ Michael J. Wishnie

David Chen, Law Student Intern[†]
Susanna D. Evarts, Law Student Intern
Amit Jain, Law Student Intern
Hannah Schoen, Law Student Intern[†]
Emily Villano, Law Student Intern[†]
Muneer I. Ahmad, Esq. (*pro hac vice*)
Marisol Orihuela, Esq. (*pro hac vice*)
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SVCS. ORG.
michael.wishnie@yale.edu
Phone: (203) 432-4800

Amy S. Taylor, Esq. (AT 2056)
Deborah Axt, Esq. (DA 4885)
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: (718) 418-7690

Jessica R. Hanson, Esq.[*]
Mayra B. Joachin, Esq.[*]
Melissa Keaney, Esq. (*pro hac vice*)
Karen Tumlin, Esq. (*pro hac vice*)
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 70067
Los Angeles, CA 90070
Phone: (213) 639-3900

Justin Cox, Esq. (*pro hac vice*)
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317
Phone: (678) 279-5441

*Attorneys for Plaintiffs*

cc: United States Attorney's Office, Eastern District of New York (*via ECF*)
Daniel J. Halainen, U.S. Department of Justice (*via ECF*)

---

[*] *Pro hac vice* motion pending.
[†] Motion for law student appearance forthcoming.