# The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL

September 11, 2017

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>Batalla Vidal et al. v. Baran et al.</u>,
No. 1:16-cv-04756 (NGG) (JO)

Dear Judge Garaufis:

We represent Plaintiffs in the above-captioned action and, as set forth below, provide the information directed by the Court in its September 7, 2017 Order. ECF No. 51. Plaintiffs will be prepared to address these matters at the September 14, 2017 hearing, as well as an overall case-management plan. In addition, Plaintiffs advise the Court that they have asked the Defendants to agree to extend their October 5, 2017 deadline for all DACA renewal applications, in light of the hurricanes that have severely impacted residents of Texas, Florida, and surrounding areas, where many DACA recipients reside; the lack of notice; and the financial and other difficulties many DACA recipients face in meeting the sudden imposition of this deadline. If the parties are not able to reach an agreement, Plaintiffs may have no choice but to seek a temporary restraining order against implementation of this deadline against themselves and all others similarly situated.

1.   **Claims Plaintiffs intend to assert and for which they will seek class treatment**

Plaintiffs intend to assert the following five claims in their second amended complaint, and to seek class treatment for all claims except those arising under the Regulatory Flexibility Act.

A.   *Agency Action That Is Arbitrary and Capricious, An Abuse of Discretion, and Otherwise Not In Accordance with Law, in Violation of 5 U.S.C. § 706(2)(A)*

The Department of Homeland Security ("DHS") memorandum terminating the Deferred Action for Childhood Arrivals ("DACA") program[1] ("DACA Termination") is an "agency action" that is "arbitrary, capricious" and "not in accordance with law" in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), because it reverses long-standing policy without reasoned explanation and because it is based on legal error.

When an agency reverses a previously established policy it must "show that there are good reasons for the new policy." *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Otherwise, the agency action will be "arbitrary and capricious." *Id.* at 515. This principle is especially strong where the agency's new policy

---

[1] Memorandum from Elaine C. Duke, Acting Sec'y of Homeland Sec., to James W. McCament, Acting Dir., U.S. Citizenship and Immigration Servs., *Memorandum on Rescission of Deferred Action For Childhood Arrivals (DACA)*, Sept. 5, 2017 (Ex. A. to Sept. 5, 2017 Letter, ECF No. 46-1).

"rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account." *Id.* In such circumstances, "a reasoned explanation is needed for disregarding facts and circumstances that underlay . . . the prior policy," *id.*, and a "more detailed justification" is required. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (quoting *Fox*, 556 U.S. at 515–16).[2] Agency action is separately arbitrary and capricious when it fails to consider and provide an analysis of "all relevant issues and factors." *Long Island Head Start Child Dev. Servs. v. N.L.R.B.*, 460 F.3d 254, 258, 260 (2d Cir. 2006).

The DACA Termination summarily reversed a long-standing program that has engendered significant reliance interests for nearly 800,000 DACA recipients, their families, and their communities. It will put individuals at risk of deportation, prevent them from receiving work authorization, and jeopardize the privacy of their sensitive information and that of their relatives, on the basis of erroneous factual findings that contradict those underlying the original DACA program, and without consideration or analysis of all relevant issues and factors. For example, the DACA Termination failed to address the demonstrated successes of the DACA policy and the many ways in which it furthers the goals of the Immigration and Nationality Act. Likewise, it ignored the legal opinion from the Office of Legal Counsel ("OLC") that DACA is lawful.[3] Instead, DHS based the DACA Termination on the erroneous assertion that it lacks the authority to maintain DACA and improper speculation that potential litigation could invalidate the program.[4] *See Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 969 (9th Cir. 2015) (en banc) (noting that the threat of ongoing litigation as a reason for changing course does not "withstand[] even the forgiving general requirement that the proffered reason for agency action not be 'implausible'" (quoting *State Farm*, 463 U.S. at 43)). Moreover, the Attorney General's public announcement of the decision relies on numerous unfounded factual assertions, and the President's tweets imply that DHS's stated basis is pretextual. Thus, the DACA Termination is both "arbitrary and capricious" and "not in accordance with law." 5 U.S.C. § 706(2)(A); *see Massachusetts v. EPA*, 549 U.S. 497, 532, 534 (2007) (holding agency action to be arbitrary, capricious, and otherwise not in accordance with law because it was based on an incorrect legal conclusion).

B. *Agency Action Without Observance of Procedure Required by Law, in Violation of 5 U.S.C. § 706(2)(D)*

DHS announced the DACA Termination without notice-and-comment rulemaking, as required by 5 U.S.C. § 553 and in violation of the APA. *Id.* § 706(2)(D). Agency action that is substantive in nature must comply with the APA's notice-and-comment provisions.

---

[2] *See also Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 79 (2d Cir. 2006) ("[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance.") (quoting *Motor Vehicle Mfr's Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41–42 (1983)).

[3] Dep't of Homeland Sec.'s Auth. to Prioritize Removal of Certain Aliens Unlawfully Present in the United States & to Defer Removal of Others, 2014 WL 10788677 (O.L.C. Nov. 19, 2014).

[4] Memorandum from Elaine C. Duke, *supra* note 1, at 4.

*See New York State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*, 267 F.3d 128, 131 (2d Cir. 2001).

Unlike the 2012 memorandum creating the DACA Program, the DACA Termination constitutes a substantive rule because it binds DHS to categorically deny deferred action to individuals who fit the original DACA eligibility criteria, preventing individuals from receiving work authorization, driver's licenses, and other benefits.[5] The language in the DACA Termination strips DHS from having any discretion, claiming, for example, that *all* new applications for deferred action based on the factors outlined in the 2012 DACA memorandum will be rejected.[6] *See Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 947 (D.C. Cir. 1987) ("[M]andatory, definitive language is a powerful, even potentially dispositive, factor suggesting that action levels are substantive rules.").

### C.  *Violation of the Regulatory Flexibility Act, 5 U.S.C. § 601*

When issuing its rule rescinding DACA, DHS failed to conduct any regulatory flexibility analysis as to how the rule will affect small entities, including small non-profit organizations such as Plaintiff Make the Road New York ("MRNY"), as required by the Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601 *et seq.* As noted above, the DACA Termination constitutes a substantive rule requiring notice-and-comment rulemaking. As such, it was also required to comply with the RFA. MRNY is a "small organization" as that term is defined by the RFA, *id.* § 601(4), is directly affected by the DACA Termination, and "is adversely affected or aggrieved by final agency action," *id.* § 611(a)(1). DHS has "utterly failed to follow the RFA," which requires staying implementation of termination and remanding to the agency to conduct the analysis required by law. *U.S. Telecom Ass'n v. F.C.C.*, 400 F.3d 29, 42 (D.C. Cir. 2005) (staying enforcement of the rule and remanding to the agency to conduct a regulatory flexibility analysis).

### D.  *Violation of Equal Protection*

The DACA Termination was promulgated based upon animus toward Latinos and, specifically, Mexicans in violation of the equal protection guarantee of the Due Process Clause of the Fifth Amendment. A "facially neutral [law] violates equal protection if it was motivated by discriminatory animus and its application results in a discriminatory effect." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999).

The DACA Termination was issued after President Trump repeatedly expressed frank and vulgar animus toward Latino immigrants in general and individuals of Mexican

---

[5] This Court need not determine whether the 2012 DACA memorandum was a "policy statement," as previously argued by the U.S. Department of Justice, or a "legislative rule." Even if the Court determines that the 2012 memorandum was a substantive rule, the DACA Termination is still invalid absent APA notice-and-comment procedures. *See Consumer Energy Council of Am. v. F.E.R.C.*, 673 F.2d 425, 447 n.79 (D.C. Cir. 1982) ("The Commission's argument that notice and comment requirements do not apply to 'defectively promulgated regulations' is untenable because it would permit an agency to circumvent the requirements of § 553 merely by confessing that the regulations were defective in some respect . . . ."), *aff'd sub nom. Process Gas Consumers Grp. v. Consumer Energy Council of Am.*, 463 U.S. 1216 (1983).

[6] Memorandum from Elaine C. Duke, *supra* note 1, at 4.

heritage in particular.[7] Moreover, the DACA Termination will deeply injure almost 800,000 individuals—93 percent of whom are Latino, and 79 percent of whom are from Mexico.[8] Race and national origin were a substantial motivating factor in the termination of DACA, in violation of the Constitution. *See Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 605–13 (2d Cir. 2016).

E. *Violation of Procedural Due Process*

The DACA Termination has denied individuals the opportunity to apply for or renew their deferred-action status without adequate process and therefore violates the Due Process Clause of the Fifth Amendment. Many of the estimated 154,000 DACA recipients whose DACA and work authorization will expire before March 5, 2018,[9] including some members of MRNY, have received individualized written notice from Defendants advising them to submit a renewal application "as soon as possible" but without a specific deadline.[10] On information and belief, Defendants have not corrected, and do not intend to correct, their prior individualized written notices to advise these 154,000 recipients that there is a *new* and absolute deadline of October 5, 2017, after which all opportunity to renew DACA will be extinguished. Defendants' failure to provide corrected individualized notice to those recipients whose DACA will expire before March 5, 2018 violates the basic requirement of fair notice guaranteed by the Fifth Amendment. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *see also Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (requiring constitutionally adequate procedures upon deprivation of property interest).

---

[7] *See, e.g.*, *President Trump Speaks Live in Phoenix, Arizona with Campaign-Style Rally*, CNN (Aug. 22, 2017), http://www.cnn.com/TRANSCRIPTS/1708/22/cnnt.01.html (describing unauthorized immigrants as "animals" who bring "the drugs, the gangs, the cartels, the crisis of smuggling and trafficking."); Nina Totenberg, *Who Is Judge Gonzalo Curiel, The Man Trump Attacked For His Mexican Ancestry?*, NPR (June 7, 2016), http://www.npr.org/2016/06/07/481140881/who-is-judge-gonzalo-curiel-the-man-trump-attacked-for-his-mexican-ancestry (calling a federal judge a "'hater' who was being unfair to [President Trump] because the judge is 'Hispanic,' because he is 'Mexican' and because Trump is building a wall."); *Full Text: Donald Trump Announces a Presidential Bid*, Wash. Post (June 16, 2015), https://www.washingtonpost.com/news/ post-politics/wp/2015/06/16/full-text-donald-trump-announces-a-presidential-bid/ ("When Mexico sends its people, they're not sending their best . . . . They're bringing drugs. They're bringing crime. They're rapists.").

[8] U.S. Citizenship & Immigration Servs., Deferred Action for Childhood Arrivals Process (Through Fiscal Year 2017, 2nd Qtr) (June 8, 2017) (Ex. D to Sept. 5, 2017 Letter, ECF No. 46-1), at 2 (reporting that of the 787,580 individuals approved for DACA, 618,342 are from Mexico and 735,251 are from Latin American countries).

[9] *See* Maria Sacchetti, *The Clock Is Ticking on DACA. Here's How Young Immigrants and their Advocates Are Fighting Back.*, Wash. Post (Sept. 9, 2017), https://www.washingtonpost.com/local/immigration/the-clock-is-ticking-on-daca-heres-how-young-immigrants-and-their-advocates-are-fighting-back/2017/09/09/da5fa9ac-93cf-11e7-89fa-bb822a46da5b_story.html.

[10] The standard renewal notice also advises DACA recipients who wish to avoid a lapse in DACA and work authorization to submit renewal applications 120-150 days before expiration.

### 2.  Interests of additional parties Plaintiffs intend to add

Plaintiffs intend to join additional parties with the following interests because they assert rights arising from the DACA Termination and because they raise common questions of law and fact.

### A.  *One or more individuals whose DACA status expires on or before March 5, 2018*

The DACA and work authorization of Plaintiff Martín Batalla Vidal is scheduled to expire on February 15, 2019, and thus, he is ineligible to apply for a renewal by October 5, 2017. Plaintiffs seek to join one or more individual plaintiffs whose DACA is scheduled to expire on or before March 5, 2018 and who therefore must, by the terms of Defendants' DACA Termination, submit a renewal application by October 5, 2017. As noted above, many of the estimated 154,000 recipients whose DACA will expire by March 5, 2018 have received individualized written notice from Defendants advising the recipient to apply for a renewal "as soon as possible" but without mention of the newly-declared October 5, 2017 deadline. Their interest in continuing the DACA program arises from the same government action that current Plaintiffs challenge.

### B.  *Individuals whose DACA status expires after March 5, 2018 and who are therefore prevented from applying for renewal*

Plaintiffs seek to join one or more additional individual plaintiffs who, like Plaintiff Batalla Vidal, are DACA recipients who are prevented from applying to renew their deferred-action status because the DACA Termination states that DHS will categorically deny renewals from those whose DACA status expires after March 5, 2018. Their interest in continuing the DACA program arises from the same government action that current Plaintiffs challenge.

### 3.  Additional defendants Plaintiffs intend to name

Plaintiffs intend to name the following parties as additional defendants because they are necessary to accord complete relief among existing parties:

### A.  *Donald J. Trump, President of the United States*

Plaintiffs intend to allege that President Donald J. Trump's statements and actions toward Latino and Mexican people demonstrate that the DACA Termination was substantially motivated by animus in violation of the equal protection guarantee of the Fifth Amendment. *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554 (4th Cir.), *cert. granted*, 137 S. Ct. 2080 (2017).

### B.  *Elaine C. Duke, Acting Secretary of Homeland Security, in her official capacity*

Plaintiffs intend to allege that the DACA Termination, issued by Acting Secretary of Homeland Security Elaine C. Duke, was in violation of the APA and the Constitution. 5 U.S.C. § 703. Complete relief for Plaintiffs requires this Court to set aside the Secretary's memorandum and to enjoin the Secretary from directing DHS in accordance with the

memorandum.

C. *Jeffrey Beauregard Sessions III, Attorney General of the United States, in his official capacity*

The DACA Termination was issued based on the legal determination by the Attorney General that the DACA program was an "unconstitutional exercise of authority by the Executive Branch,"[11] improper speculation that litigation would invalidate the program, and erroneous factual findings that contradict those which underlay the original DACA program. Complete relief for Plaintiffs requires the Secretary to comply with this Court's order, which she may not be able to do if compliance would be unlawful within the judgement of the government.

Very truly yours,

/s/ Michael J. Wishnie

David Chen, Law Student Intern[†]
Susanna D. Evarts, Law Student Intern
Hannah Schoen, Law Student Intern[†]
Emily Villano, Law Student Intern[†]
Muneer I. Ahmad, Esq. (*pro hac vice*)
Marisol Orihuela, Esq. (*pro hac vice*)
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SVCS. ORG.
michael.wishnie@yale.edu
Phone: (203) 432-4800

Amy S. Taylor, Esq. (AT 2056)
Deborah Axt, Esq. (DA 4885)
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: (718) 418-7690

Jessica R. Hanson, Esq. (*pro hac vice*)
Mayra B. Joachin, Esq. (*pro hac vice*)
Melissa Keaney, Esq. (*pro hac vice*)
Karen Tumlin, Esq. (*pro hac vice*)
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 70067
Los Angeles, CA 90070
Phone: (213) 639-3900

Justin Cox, Esq. (*pro hac vice*)
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317
Phone: (678) 279-5441

*Attorneys for Plaintiffs*

cc:     Counsel for Defendants (*via ECF*)

---

[11] *See* Memorandum from Elaine C. Duke, *supra* note 1.

[†] Motion for law-student appearance forthcoming.