# The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL

October 3, 2017

VIA ECF
Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** *Batalla Vidal, et al., v. Duke, et al.*, No. 16-cv-4756 (NGG) (JO)

Dear Judge Garaufis:

Pursuant to this Court's September 30, 2017 order, Plaintiffs write in opposition to Defendants' motion to vacate in part Magistrate Judge Orenstein's Case Management and Scheduling Order, ECF No. 67 ("the Order"). Defendants' motion presents legally and factually unsupported objections to a reasonable and proper order. Rather than conferring meaningfully with Plaintiffs or presenting their concerns to Magistrate Judge Orenstein for consideration in the first instance, Defendants have rushed to seek vacatur of the Order with respect to production of the administrative record and a privilege log, and have done so on the basis of a misinterpretation of the Order and conclusory claims of undue burden. Properly construed, the scope of the Order is entirely reasonable. Moreover, any legitimate burden concerns can be ameliorated by a modest extension of time to produce the privilege log. For these reasons, this Court should deny Defendants' motion and, at most, remand the issue to Magistrate Judge Orenstein for clarification of the Order or modification of the deadline.

First, Defendants exaggerate the scope of documents required by Section II(c) of the Order. Properly read, Section II(c) of the Order applies to those agency decisionmakers of the Deferred Action for Childhood Arrivals ("DACA") termination—the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ"). The Order does not extend to documents not considered by the Defendant agencies, as Defendants erroneously contend. Defs.' Sept. 29, 2017 Ltr. Re: Motion to Vacate, ECF No. 69, at 1 ("Defs.' Ltr."). Second, Defendants argue without basis that privileged records are excluded from the official administrative record. However, case law and administrative guidelines define an administrative record to include all documents that were considered as part of an agency's decisionmaking process, even if some may be protected from disclosure by a proper, and supported, assertion of privilege. Third, the Order does not raise separation of powers concerns. Instead, Defendants improperly attempt to broaden the scope of executive privilege, which does not protect Defendants from producing a privilege log from agencies like DHS and DOJ. Finally, a stay of discovery is unwarranted because Defendants have failed to demonstrate that Plaintiffs' claims lack merit and because Plaintiffs will be subject to a high risk of unfair prejudice if discovery were stayed.

Production of the official administrative record as ordered by the Magistrate Judge by October 6, 2017 is appropriate. If Defendants maintain an objection to providing a privilege log by that date, Plaintiffs are amenable to a brief extension. Plaintiffs are further willing to meet and

confer with Defendants about their specific concerns and to address them on a telephonic conference with the Court or Magistrate Judge Orenstein, or at the regularly scheduled status conference with Magistrate Judge Orenstein, however the Court deems appropriate. But at this point there is no legal basis, and no factual record, on which to order the full relief Defendants request.

### I. Defendants exaggerate the scope of Section II(c) and the burden it imposes

Read in light of the complaint and the September 26 status conference, Section II(c) of the Order is properly understood as requiring Defendants to produce documents considered by decisionmakers in the decision to terminate DACA. Defendants' vagueness concerns are thus exaggerated, and in any event, can be resolved through clarification of the Order.

Attorney General Jeff Sessions and Acting Secretary of Homeland Security Elaine Duke are the relevant decisionmakers whose decisionmaking processes should be the subject of the administrative record and accompanying privilege log.[1] This is consistent with Plaintiffs' proposed discovery schedule. In their September 22, 2017 letter to the Court regarding discovery, Plaintiffs stated that "Defendants must produce certified administrative records of the materials considered by the Department of Justice and Department of Homeland Security, respectively, when each made the decision in question. If the administrative record includes materials that Defendants believe are privileged, they must produce a log describing the withheld materials and the asserted privilege." Pls.' Sept. 22, 2017 Ltr. re: Discovery, ECF No. 66, at 4. *See also* Tr. of Sept. 26, 2017 Status Conf. at 16:21-23, 22:23-25, 23:1-2, 23:13-17.

Section II(c) should be interpreted in the same way.[2] First, the Court ordered the production of privilege logs in response to Plaintiffs' request. Tr. of Sept. 26, 2017 Status Conf. at 20:10-13, 29:3-24. Second, the Court has not expanded the scope of the privilege log beyond that requested

---

[1] The Government has also represented that the termination of DACA was a joint decision by DHS and DOJ. *See* Tr. of Sept. 14, 2017 Status Conf. at 13:17-14:1 ("The Attorney General and DHS both decided that this is an unlawful program and what they decided was -- it was a decision based on litigation risk. . . . So in their judgment what they decided to do is we're going to have a responsible way to wind this program down . . . ."); *id.* at 26:1-6 ("[T]he Attorney General and DHS decided that in the exercise of their discretion, they're going to wind down this program that had substantial litigation risk, that they believe as a policy matter really Congress should make this decision."); *id.* at 24:21-24 (explaining that DACA is being wound down rather than being immediately ended "[b]ecause the Attorney General decided that it would be harsh" to do the latter); *see also* Press Release, Rescission of Deferred Action for Childhood Arrivals (DACA) (Sept. 5, 2017) (stating that Secretary Duke's termination of DACA was "[b]ased on guidance from Attorney General Sessions"), *available at* http://bit.ly/2xZgDSL; Mem. from Elaine C. Duke, Acting Sec'y of Homeland Sec., to James W. McCament, Acting Dir., U.S. Citizenship and Immigration Servs., Mem. on Rescission of Deferred Action For Childhood Arrivals (DACA), Sept. 5, 2017 (Ex. A. to Sept. 5, 2017 Letter, ECF No. 46-1) (same, and stating that DOJ "has reviewed the terms" of the DACA termination).

[2] Although Plaintiffs believe that the Order is proper in its current form, should the Court find it appropriate to clarify, the following modification to Section II(c) would suffice:

> The privilege log to be produced by October 6, 2017, shall include a description of every document considered within <u>the Department of Homeland Security and the Department of Justice</u> as part of the process of determining the policy and actions at issue in these actions that are not being produced and as to which the defendants would assert a claim of privilege, regardless of whether the defendants deem such that record to be part of the official administrative record. *[Changes underlined]*.

2

by Plaintiffs. The language of Section II(c) merely clarifies that the administrative record and the accompanying privilege log will not be "confined to records from the Department of Homeland Security," *id*. at 17:3-4, even if Defendants want to "label" the administrative record as having come from DHS, *id.* at 23:3-10.

Additionally, Defendants present no facts or evidence to support their conclusory assertion that Section II(c) imposes overly burdensome obligations. Nor have Defendants sought to resolve the issue either with Plaintiffs or through the resolution process set forth in the very Order about which they complain. Defendants have been on notice of Plaintiffs' intention to seek a privilege log since as early as September 20, and of the Court's intention to order a privilege log since September 26.[3] Plaintiffs have no objection to a short extension of time for production of the privilege log, yet, to date, Defendants have not conferred with undersigned to request such an extension. Moreover, Section II(c) itself relieves Defendants of their privilege log obligations on "a showing of good cause." If, as Defendants assert, it is "impossible" for Defendants to comply with the October 6 deadline, then they should comply to the extent possible and submit the necessary evidence to satisfy the Court's good-cause standard.

> II. **Defendants erroneously argue that the administrative record necessarily excludes privileged documents**

Defendants' contention that Section II(c) requires production of material outside the scope of the administrative record is unfounded. This Court has ordered production only of a log of privileged records withheld from the administrative record, not disclosure of the actual privileged records themselves.[4] Ordering a log of privileged documents concurrent with an administrative record, as opposed to the disclosure of their contents, is entirely within the Court's discretion. *See, e.g.*, *Citizens Against Casino Gambling in Erie County v. Stevens*, 2012 WL 2405195, at *2 (W.D.N.Y. June 23, 2012) (reflecting court order to Department of Interior to produce a privilege log concurrent with an administrative record); *New York v. Salazar*, No. 6:08-CV-644 LEK/DEP, 2011 WL 1938232, at *2 (N.D.N.Y. Mar. 8, 2011) (same).

Indeed, contrary to Defendants' suggestion that a "properly constructed administrative record does not include privileged materials," Defs.' Ltr., ECF No. 69, at 4, internal agency guidelines detailing how to compile administrative records frequently instruct administrators to list documents removed on privilege grounds in a log for the court. *See, e.g.*, Mem. from Lois J. Schiffer, General Counsel, National Oceanic and Atmospheric Admin., to Administrators and

---

[3] As early as the September 14 status conference, Defendants represented to this Court that they would rely on an administrative record, Tr. of Sept. 14, 2017 Status Conf. at 31:6-9, and as early as September 20, during a meet and confer teleconference, Plaintiffs asked Defendants who would be producing the administrative record and whether a privilege log would accompany it—questions that Defendants declined to answer or address in their September 22 letter to the Court.

[4] Defendants improperly rely on cases in which courts refused to compel the disclosure of privileged records associated with an administrative record, not of a privilege log. Defs.' Ltr. at 4; *see also San Luis Obispo Mothers for Peace v. NRC*, 789 F.2d 26, 44-45 (D.C. Cir. 1986) (*en banc*) (refusing to compel disclosure of transcripts of agency proceedings protected by privilege); *Town of Norfolk v. Army Corps of Eng'rs*, 968 F.2d 1438, 1455- 58 (1st Cir. 1992) (same); *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312-13 (S.D.N.Y. 2012) (same).

Directors, National Oceanic and Atmospheric Administration, at 8 (Dec. 21, 2012);[5] Joan Goldfrank, *Guidance to Client Agencies on Compiling the Admin. Record*, 48 U.S. Atty. Bull. 1, 8 (Feb. 2000);[6] Leland E. Beck, *Agency Practices and Judicial Review of Administrative Records in Informal Rulemaking*, Administrative Conference of the United States, 34 (May 14, 2013) ("[I]f documents are part of the administrative record, then they are part of the administrative record, regardless of whether they are privileged").[7]

The production of a privilege log properly pertains not only to the "official administrative record," but to every document considered as part of an agency's decisionmaking process. Order Section II(c). As courts have noted, the "whole" administrative record is not limited to "those documents that the agency has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Rather, the scope of the administrative record is determined "on the basis of what [the administrator] had before him when he acted." *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir 1984); *see also Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 243 (D.C. Cir. 2008) ("[The court] should have before it neither more nor less information than did the agency when it made its decision.") (internal quotation omitted); *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 338 (D.C. Cir. 1989) ("[An administrative record] permits the reviewing court to trace the path of the agency's decisionmaking process."); Tr. of Proceedings at 17:19-18:02, *Regents of the University of California v. U.S. Dep't of Homeland Sec.*, No. 17-05211, ECF No. 52 (N.D. Cal. filed Sept. 8, 2017) (court warning government to avoid "always put[ting] in [the administrative record] what helps them and [] leav[ing] out what hurts them" and ordering the inclusion of all materials including "e-mails and everything" that might be adverse to the government's case).

Hence, the Magistrate Judge properly determined that the materials the Order compels Defendants to identify on a privilege log fall within the scope of the administrative record. Defendants are required to produce a privilege log only insofar as "the [agency] decision making process included the consideration of some records as to which [the Defendants] will assert privilege." Tr. of Sept. 26, 2017 Status Conf. at 21:4-6.

Regardless, today Plaintiffs will be propounding a request for a production of documents to DOJ and DHS that mirrors the language contained in Section II(c), to ensure that they obtain the records they need separate and apart from Defendants' obligation to produce the administrative record.

### III. The Order does not violate separation of powers

The production of a privilege log as required by Section II(c) does not violate separation of powers. Defendants present an overly broad understanding of executive privilege,[8] relying primarily on *Cheney v. U.S. District Court of D.C.*, 542 U.S. 367 (2004). However, executive

---

[5] *Available at* http://www.gc.noaa.gov/documents/2012/AR_Guidelines_122112-Final.pdf.

[6] *Available at* http://www.justice.gov/usao/eousa/foia_reading_room/usab4801.pdf.

[7] *Available at* https://www.acus.gov/recommendation/administrative-record-informal-rulemaking.

[8] Defendants seemingly use the term "executive privilege" for both the presidential communications privilege and the deliberative process privilege. Defs.' Ltr. at 2-3.

privilege provides protection only in a limited number of circumstances. The presidential communications privilege, on which *Cheney* was based, is rooted in the President's unique role. As such, it applies only to those who have had a close advisor relationship with the President. *Judicial Watch v. U.S. Dep't of Justice*, 365 F.3d 1108, 1117 (D.C. Cir. 2004); *Ctr. for Effective Gov't v. U.S. Dep't of State*, 7 F. Supp. 3d 16, 25 (D.D.C. 2013). It does not extend to cabinet officials, executive agency heads, or executive agency staff. *Judicial Watch*, 365 F.3d at 1121-22. Thus, contrary to the assertions of Defendants, the presidential communications privilege would not protect the administrative record of DHS and DOJ, which is at issue here. The deliberative process privilege is similarly narrow. It is inapplicable to the case at hand because the decisionmaking process itself is at issue. *Children First Found., Inc. v. Martinez*, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007).

Furthermore, even where executive privilege is applicable, it is a qualified privilege that "can be overcome by an adequate showing of need." *In re Sealed Case*, 121 F.3d 729, 744-45 (D.C. Cir. 1997); *see also Nixon v. United States,* 418 U.S. 683, 713 (1974) (overcoming the presidential communication privileges because of Fifth and Sixth Amendment concerns). Deliberative process privilege has an even lower threshold to be overcome. *In re Sealed Case*, 121 F.3d at 745-46.

In addition, executive privilege can be waived. *See, e.g.*, *New York Times Co. v. U.S. Dept. of Justice,* 756 F.3d 100, 116 (2d Cir. 2014); *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005). One way that executive privilege can be waived is when an agency adopts or incorporates by reference an otherwise privileged document. For example, in *La Raza*, the Second Circuit held that DHS had publicly relied on the analysis in an OLC memo when reversing its policy, so executive privilege was waived. *Id.* at 358.

### IV. The Court correctly denied Defendants' motion to stay discovery

In their letter, Defendants renew their arguments that a stay of discovery should be granted pending the disposition of Defendants' prospective motion to dismiss, which is not due until December 15, 2017. The Magistrate Judge correctly denied this motion, because Defendants failed to make the necessary showing and because the Defendants' own actions created the urgency to resolve this matter expeditiously. *See, e.g.*, Tr. of Sept. 26, 2017 Status Conf. at 7:16 (Court observing that "literally millions" of individuals will be severely harmed by the arbitrary termination of DACA on March 5, 2018 and the deadline for renewals on October 5, 2017).

In determining whether to grant a stay of discovery, the Court must weigh "1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; 2) the breadth of discovery and the burden of responding to it; and 3) the risk of unfair prejudice to the party opposing the stay." *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006); *see also Doe v. New York City Dep't of Educ.*, No. 16-CV-1684 (NGG), 2016 WL 7165953, at *2 (E.D.N.Y. Dec. 7, 2016) (same).

As Plaintiffs argued in their letter regarding discovery (incorporated here by reference, *see generally* Pls.' Sept. 22, 2017 Ltr. re: Discovery, ECF No. 66), Defendants fail to satisfy this standard. First, Defendants have failed to make a strong showing that the Plaintiffs' claims are unmeritorious. Indeed, as the Plaintiffs' Pre-Motion Conference letters set forth (incorporated

5

here by reference, *see generally* Pls.' Sept. 11, 2017 Ltr. re: Pre-Motion Conference, ECF No. 52, and Pls.' Sept. 5, 2017 Ltr. re: Pre-Motion Conference, ECF No. 46), Plaintiffs have meritorious claims under the Administrative Procedure Act, 5 U.S.C. § 706(2), the Regulatory Flexibility Act, 5 U.S.C. § 601, and the equal protection and due process guarantees of the Fifth Amendment.

Defendants' arguments to the contrary are without merit. First, Defendants argue that the elimination of DACA was an exercise of "prosecutorial discretion" that is a "special province of the Executive." Defs.' Ltr. at 5. But as Plaintiffs have noted, the termination of the entire DACA program in this fashion was an agency action constituting a substantive rule, which was required to comply with the Administrative Procedure Act and the Regulatory Flexibility Act, not a mere exercise of prosecutorial discretion. *See* Pls.' Sept. 11, 2017 Ltr., ECF No. 52, at 2-3; Pls.' Sept. 5, 2017 Ltr., ECF No. 46, at 2. Second, Defendants argue that Plaintiffs' claims are barred by 8 U.S.C. § 1252(g). But where, as here, the claim does not stem from the Secretary of Homeland Security's decision to place an individual in removal proceedings, but instead stems from the Secretary's decision about the status of a class, § 1252(g) is no bar to judicial review. *See, e.g.*, *Texas v. United States*, 809 F.3d 134, 164-65 (5th Cir. 2015) (holding that 1252(g) did not prevent judicial review of the decision to create the DAPA program). In sum, Defendants have failed to demonstrate that Plaintiffs lack meritorious claims.

As Plaintiffs' discovery letter argued, discovery in this case should not be particularly burdensome relative to "the importance of the issues at stake in the action" and Defendants' far superior "access to relevant information." Fed. R. Civ. P. 26(b)(1); *see* Pls.' Sept. 22, 2017 Ltr. re: Discovery, ECF No. 66. The risk of unfair prejudice to Plaintiffs, moreover, is extremely high. Given that this Court will not be deciding Defendants' motion to dismiss until January, and that Defendants seek to terminate the DACA program on March 5, 2018, a stay of discovery would deny Plaintiffs the ability to meaningfully challenge the termination of the DACA program. Stays of discovery have been denied on much weaker showings of hardship. *See* Pls.' Sept. 22, 2017 Ltr. re: Discovery, ECF No. 66. As such, discovery should not be stayed pending the disposition of Defendants' Motion to Dismiss.

For the reasons set forth above, Plaintiffs respectfully submit that the Court deny Defendants' motion to vacate and, should the Court find it appropriate, remand the issue to Magistrate Judge Orenstein for consideration of a request to modify the deadline or clarify the Order.

Respectfully submitted,

/s/ Muneer I. Ahmad[†]

| | |
|---|---|
| David Chen, Law Student Intern | Jessica R. Hanson, Esq.† |
| Susanna D. Evarts, Law Student Intern | Mayra B. Joachin, Esq.† |
| Healy Ko, Law Student Intern * | Karen Tumlin, Esq.† |
| Victoria Roeck, Law Student Intern * | NATIONAL IMMIGRATION LAW CENTER |
| Hannah Schoen, Law Student Intern | P.O. Box 70067 |
| Emily Villano, Law Student Intern | Los Angeles, CA 90070 |
| Muneer I. Ahmad, Esq.† | Phone: (213) 639-3900 |
| Marisol Orihuela, Esq.† | |
| Michael J. Wishnie, Esq. (MW 1952) | Justin Cox, Esq.† |
| JEROME N. FRANK LEGAL SVCS. ORG. | NATIONAL IMMIGRATION LAW CENTER |
| michael.wishnie@yale.edu | PO Box 170208 |
| Phone: (203) 432-4800 | Atlanta, GA 30317 |
| | Phone: (678) 279-5441 |
| Amy S. Taylor, Esq. (AT 2056) | |
| Deborah Axt, Esq. (DA 4885) | Joshua A. Rosenthal, Esq.† |
| Scott Foletta, Esq.** | NATIONAL IMMIGRATION LAW CENTER |
| Alexia Schapira, Esq.** | 1121 14th Street NW, Suite 200 |
| MAKE THE ROAD NEW YORK | Washington, DC 20005 |
| 301 Grove Street | Phone: (202) 216-0261 |
| Brooklyn, NY 11237 | |
| Phone: (718) 418-7690 | *Attorneys for Plaintiffs* |

CC: All Counsel (via ECF)


† Appearing *pro hac vice*
\* Motion for law-student appearance forthcoming
\** Application for admission to EDNY forthcoming

7