# The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL

October 13, 2017

VIA ECF

Honorable James Orenstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Batalla Vidal et al. v. Duke et al.*, No. 16-cv-4756 (NGG) (JO)
   *State of New York et al. v. Trump et al.*, No. 17-cv-5228 (NGG) (JO)

Dear Magistrate Judge Orenstein:

Plaintiffs respectfully submit this letter asking the Court to compel Defendants to complete production of the administrative record. The administrative record produced to date is clearly deficient. On October 6, 2017, Defendants provided Plaintiffs with an administrative record consisting of all public materials, most of which were judicial opinions regarding a different program than that at issue here. Defendants have made three key errors in compiling the administrative record that warrant an order from the Court requiring complete production. First, Defendants applied an erroneously narrow standard when compiling the administrative record. Second, Defendants failed to produce whole categories of relevant and necessary documents. Finally, in attempting to deflect challenges to the administrative record they filed, Defendants conflated the standard for obtaining completion of the administrative record with the standard to obtain supplementation of the administrative record with extra-record evidence.

The Court ordered a comprehensive administrative record on September 27, 2017. *See* Case Management and Scheduling Order, at 1, ECF No. 67.[1] As is the norm in cases with claims arising under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, Defendants have an obligation to produce a complete record upon which the Court can properly base its decision on the merits. Because Defendants have failed to do so, Plaintiffs respectfully move for the Court to order Defendants to complete the administrative record by October 20, 2017.

Plaintiffs met and conferred with Defendants on October 13, 2017. Unfortunately, Defendants continued to maintain that the October 6 administrative record was complete and accurate, and refused to provide an explanation for the many omissions from the record. Defendants confirmed that the October 6 administrative record was limited to what Acting Secretary Duke had directly considered when deciding to terminate the DACA policy, and that no documents considered or relied on by subordinates or other decision makers were included. As Defendants were unwilling to resolve this issue with Plaintiffs' counsel out of court, Plaintiffs

---

[1] Unless otherwise noted, all ECF citations are to filings in the *Batalla Vidal v. Duke* action, 16-cv-4756.

have no choice but to seek the Court's assistance with obtaining a complete administrative record.

I. **Defendants Applied an Incorrect Standard for What Documents an Agency is Required to Include in the Administrative Record**

Defendants compiled a skeletal administrative record based on an erroneously narrow standard of what the record must include. It is clearly established that an agency must compile a complete administrative record on which the reviewing court can base its decision. The Supreme Court has held that a complete record must "be based on the *full* administrative record that was before the Secretary at the time he made his decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (emphasis added), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Courts subsequently have defined the "administrative record already in existence" for informal agency action as "what [the decision maker] had before him when he acted." *Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984); *see also James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) ("The administrative record includes all materials 'compiled' by the agency, that were 'before the agency at the time the decision was made.'" (quoting *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981))).

An agency must provide more than simply the documents that were *personally* considered by the final decision maker. "[I]f the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). In other words, courts have required that agencies provide all documents that were *directly or indirectly* considered by the final decision makers in making their decision. *See Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012) (defining "relevant materials 'before the agency'" as "those that the agency decision-makers directly or indirectly considered" (citing *State of Delaware Dep't of Natural Res. and Envtl. Control v. U.S. Army Corp. of Eng'rs*, 722 F. Supp. 2d 535, 541 (D. Del. 2010))); *Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) ("This Court has interpreted the 'whole record' to include 'all documents and materials that the agency directly or indirectly considered . . . . [and nothing] more nor less.'" (quoting *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (alteration and omission in original))); *Merritt Parkway Conservancy v. Mineta*, 424 F. Supp. 2d 396, 403 (D. Conn. 2006) (stating that "a document need not literally pass before the eyes of the final agency decisionmaker to be considered part of the administrative record" (internal quotation omitted)).

Contrary to this clear guidance from the courts, Defendants have produced only a subset of the administrative record. They characterize the record as consisting of "all non-privileged documents actually considered by the Acting Secretary of Homeland Security in making her decision to rescind the DACA policy." Defs.' Letter in Supp. of Mot. to Vacate Disc. Order, at 5, ECF No. 80. But the sparse record produced confirms that they have failed to produce all

2

documents directly or indirectly considered by the agency, and instead produced only those non-privileged documents personally considered by Acting Secretary Duke.[2]

Moreover, the Department of Homeland Security ("DHS") has failed to follow guidance published by the Department of Justice ("DOJ") regarding how agencies should compile an administrative record. That guidance, issued by the Executive Office for United States Attorneys, provides that materials "directly or indirectly considered" should include: (1) documents and materials whether or not they support the final agency decision; (2) documents and materials which were available to the decision-making office at the time the decision was made; (3) documents and materials considered by, or relied upon, by the agency; (4) documents and materials that were before the agency at the time of the challenged decision, even if the final agency decision-maker did not specifically consider them; and (5) privileged and non-privileged documents and materials. Joan Goldfrank, *Guidance to Client Agencies on Compiling the Administrative Record*, U.S. Atty. Bull. 7, 8 (Feb. 2000), http://www.justice.gov/usao/eousa/foia_reading_room/usab4801.pdf.[3] The administrative record as it stands fails to capture these categories of documents under the "directly or indirectly considered" standard articulated by the government's own publication.

## II. The Administrative Record Provided By Defendants is Glaringly Incomplete, Warranting an Order for Defendants to Complete It

The plainly incomplete record produced by Defendants rebuts the presumption of regularity ordinarily afforded the administrative record and warrants an order that the record be completed. In the Second Circuit, parties challenging agency decisions can overcome that presumption by providing a "strong suggestion" that the administrative record was incomplete. *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982). This is especially true where, as here, no formal agency proceedings have concretely determined the scope of the administrative record. *See id.* ("Determining what constitutes an agency's informational base . . . may present a disputed issue of fact when there has been no formal administrative proceeding."); *see also Pleasant E. Associates v. Martinez*, No. 02 CIV.4144 (LMM), 2002 WL 31458224, at *1 (S.D.N.Y. Nov. 4, 2002) (explaining that when no formal administrative proceedings occurred and when the scope of the administrative record is in dispute, it is improper for a court to grant summary judgment to the defendants without allowing some discovery).

---

[2] Plaintiffs maintain, in light of the sparse administrative record that Defendants have provided, that Defendants still be required to produce a privilege log by the October 20 deadline. *See* Order on Defs.' Mot. to Vacate, 3-4, ECF No. 72.

[3] DOJ has subsequently tried to limit the use of this guidance in order to obtain greater flexibility in litigation positions, but these tactical shifts in position do not undermine the persuasive value of the Goldfrank guidance. *See* Memorandum from Ronald J. Tenpas, Assistant Attorney Gen., U.S. Dep't of Justice, to Selected Agency Counsel, (Dec. 23, 2008), *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05211 (N.D. Cal. Oct. 12, 2017), ECF No. 71-1. Notably, the 2008 memorandum seeking to limit the effect of the Goldfrank guidance focuses solely on whether privileged materials are included in the record, not the inclusion of all non-privileged documents before the agency. *See also* Privilege Log, *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 3:17-cv-05211 (N.D. Cal. Oct. 12, 2017), ECF No. 71-2 (attached hereto as Exhibit A).

### A. The Agency's Administrative Record is Grossly Inadequate

Applying the correct legal definition of the administrative record reveals that the record produced by Defendants is incomplete in five main respects, although a deficiency in just one of these categories would be sufficient to require that Defendants complete the current record.

First, and most blatantly, Defendants failed to provide any support in the administrative record for factual allegations made in support of terminating the DACA policy. For example, the record contains no documents related to Acting Secretary Duke's assertion in her memorandum terminating DACA that "USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion." Memorandum from Elaine C. Duke, Acting Sec'y of Homeland Sec., to James W. McCament, Acting Dir., U.S. Citizenship and Immigration Servs., Memorandum on Rescission of Deferred Action For Childhood Arrivals (DACA), at n.1, Sept. 5, 2017 ("DACA Termination Memo"), Notice of Filing Admin. R., Ex. 1, at 253 n.1, ECF No. 77-1. For Defendants to assert the record is complete despite missing this information would suggest that Acting Secretary Duke had no evidence to support her conclusion, and highlights why courts require agencies to provide all documents both directly *and* indirectly considered. *Cf. United States v. Nova Scotia Food Prod. Corp.*, 568 F.2d 240, 251 (2d Cir. 1977) ("It is not consonant with the purpose of a rulemaking proceeding to promulgate rules on the basis of inadequate data, or on data that [in] critical degree, is known only to the agency." (alteration in original) (quoting another source)).

Second, the record is devoid of any documents that purport to explain Defendants' decision to slowly wind down a program they assert is unlawful. Defendant Sessions' one-page legal analysis alerting Acting Secretary Duke that he considers DACA "an unconstitutional exercise of authority by the Executive Branch" provides only the vague reference to "costs and burdens that will be imposed on DHS associated with rescinding this policy" that counsel "an orderly and efficient wind-down process." Notice of Filing Admin. R., Ex. 1, at 251, ECF No. 77-1. The DACA Termination Memo, in a similarly conclusory manner, states that a wind down is needed "[r]ecognizing the complexities associated with winding down the program." *Id.* at 255. Nothing in the administrative record supports that bare claim of "complexities."

Similarly, the record contains no information about how the agency chose crucial dates in the termination process, including the September 5, 2017 date after which no new DACA applications would be considered, the October 5, 2017 deadline after which no renewal applications would be considered, and the March 5, 2018 final termination of the program. In their appearances before this Court, Defendants have previously represented that setting the renewal deadline for October 5 "was appropriate," Tr. 12:18–19. Sept. 14, 2017, and that "[i]n DHS's judgment, 30 days [notice] was a sufficient amount of time to complete the paperwork to file for renewals," *id.* 12:14–16. However, there is no information whatsoever within the administrative record about how this deadline was selected or how DHS concluded it was appropriate.

Third, the administrative record does not adequately reflect the role of DOJ or the White House in the decision-making process. The record contains a single, one-page document from DOJ that concludes, without analysis, that DACA is unlawful and instructs that DHS should terminate DACA. Notice of Filing Admin. R., Ex. 1, at 251, ECF No. 77-1. In their appearances before this Court, the Defendants have previously represented that DHS and DOJ were both

4

involved in the decision to terminate the DACA program. *See* Tr. 13:17–18, Sept. 14, 2017 ("The Attorney General and DHS both decided that this is an unlawful program . . . ."). Moreover, Attorney General Sessions personally announced the termination of the program. *See* Attorney General Sessions Delivers Remarks on DACA, *State of New York v. Trump*, No. 1:17-cv-05228 (E.D.N.Y. Oct. 4, 2017), ECF No. 55-75. During that announcement, Attorney General Sessions stated that "[o]ur collective wisdom is that the policy is vulnerable to the same legal and constitutional challenges that the courts recognized with respect to the DAPA program." *See id.* at 1. Despite the clear role of DOJ as a decision-making agency, the administrative record contains only a one-page document originating from DOJ. Moreover, Attorney General Sessions' letter contains no legal analysis to support his bare conclusion.

It is also clear that President Trump and the White House actively advised DHS and DOJ to terminate DACA. For example, on September 5, 2017, the White House announced that the President had "Restore[ed] Responsibility and the Rule of Law to Immigration" by terminating DACA.[4] The announcement underscores the active role of the White House in the decision: "If *President Trump* had refused to act, many States were prepared to pursue litigation to end DACA by court order." *Id.* (emphasis added). Despite this and many other assertions by the White House of its role in making decisions about the termination, the administrative record contains no documents sent from the White House to either DHS or DOJ.

Fourth, the administrative record excludes communications relevant to the DACA-termination decision. For example, nowhere in the record appears the August 14, 2017 letter from more than one hundred law professors to the White House, Chief of Staff John Kelly, and Acting Secretary Duke, urging them not to rescind the DACA program and arguing that the DACA program is legal. *See* Letter from Shoba Sivaprasad Wadhia, Samuel Weiss Faculty Scholar & Clinical Professor of Law, Penn State Law, to Donald Trump, President of the United States (Aug. 14, 2017) (attached hereto as Exhibit B). In President Trump's statement on the DACA termination, he noted that "[t]he Attorney General of the United States, the Attorneys General of many states, and virtually all other top legal experts have advised that the program is unlawful and unconstitutional and cannot be successfully defended in court." Statement, Donald J. Trump (Sept. 5, 2017), https://www.whitehouse.gov/the-press-office/2017/09/05/statement-president-donald-j-trump. Given the relevance of these communications to the DACA-policy termination and the reasons put forth by DHS and DOJ, their omission from the record raises the significant possibility that other communications were similarly omitted.

Finally, although much of the record consists of the various opinions in the *Texas v. United States* case, which concerned an entirely different policy, the record fails to reference cases, which were dismissed, that actually were brought to challenge the DACA program. *See Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015); *Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015). The presence of one case (about a separate program) that Defendants believe supports their argument and exclusion of cases that actually concern the DACA program suggests the record is incomplete. *See Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982) (allowing discovery on the completeness of the record, and noting "[t]he fact that defendants presented documents that seemed to support the rationality of their actions does not mean that the same conclusion

---

[4] *See* Press Release, The White House Office of the Press Secretary, President Donald J. Trump Restores Responsibility and the Rule of Law to Immigration (Sept. 5, 2017), https://www.whitehouse.gov/the-press-office/2017/09/05/president-donald-j-trump-restores-responsibility-and-rule-law.

5

would have been reached if the Court had been aware of other information that was before the agency").

### III. Defendants Failed to Distinguish Between Requests to Complete the Record and Requests to Supplement the Record for APA Claims

In arguing that Plaintiffs are not entitled to discovery to challenge the completeness of the administrative record, Defendants have incorrectly conflated the need to complete the record with the need to supplement the record. When an agency fails to include in the administrative record documents it considered when making its decision, courts require the agency to provide additional documentation—either on its own accord or through discovery—to ensure the court has the full record before it when making its decision. *See, e.g.*, *Dopico*, 687 F.2d 644 (requiring discovery on the completeness of the administrative record before the lower court could grant summary judgment to the agency). In contrast, if litigants wish to include additional, extra-record documents, they would need to demonstrate that the record should be supplemented. Parties seeking to supplement the administrative record must clear a higher bar, such as "when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997); *see also Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (noting a variety of circumstances in which courts have found supplementing the record necessary).

At this time, Plaintiffs are not moving to supplement the record. Instead, Plaintiffs merely ask this Court to order that Defendants provide an adequate record on which this Court may base its decision. While, if necessary, Plaintiffs will attempt to utilize the current discovery period to obtain a complete administrative record, Plaintiffs hope this will be unnecessary and that the Court will order Defendants to complete the administrative record in good faith, to include all documents that were directly and indirectly considered by Acting Secretary Duke when she decided to terminate the DACA policy.

Respectfully submitted,

/s/ Muneer I. Ahmad[†]

David Chen, Law Student Intern
Susanna D. Evarts, Law Student Intern
Healy Ko, Law Student Intern
Victoria Roeck, Law Student Intern
Hannah Schoen, Law Student Intern
Emily Villano, Law Student Intern
Muneer I. Ahmad, Esq.[†]
Marisol Orihuela, Esq.[†]
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SVCS. ORG.
michael.wishnie@yale.edu
Phone: (203) 432-4800

Jessica R. Hanson, Esq.[†]
Mayra B. Joachin, Esq.[†]
Karen Tumlin, Esq.[†]
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 70067
Los Angeles, CA 90070
Phone: (213) 639-3900

Justin Cox, Esq.[†]
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317

Amy S. Taylor, Esq. (AT 2056)
Deborah Axt, Esq. (DA 4885)
Scott Foletta, Esq.[*]
Alexia Schapira, Esq.[*]
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: (718) 418-7690

Phone: (678) 279-5441

Joshua A. Rosenthal, Esq.[†]
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street NW, Suite 200
Washington, DC 20005
Phone: (202) 216-0261

*Attorneys for Batalla Vidal et al. Plaintiffs*

/s/ Lourdes M. Rosado

Lourdes M. Rosado
Sania Khan
Diane Lucas
Ajay Saini
Civil Rights Bureau
Office of the New York Attorney General
120 Broadway, 23rd Floor
New York, NY 10271
Phone: (212) 416-6348

Colleen M. Melody[†]
Marsha Chien[†]
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Phone: (206) 464-7744

Jonathan B. Miller
Genevieve C. Nadeau[†]
Abigail B. Taylor[†]
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
Phone: (617) 727-2200

*Attorneys for New York et al. plaintiffs*

CC: All Counsel (via ECF)

[†] Appearing *pro hac vice*
[*] Application for admission to E.D.N.Y. forthcoming