

**U.S. Department of Justice**
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530

October 16, 2017

**By ECF**
The Honorable James Orenstein
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Batalla Vidal, et al., v. Baran, et al.*, 16-CV-4756 (NGG) (JO)
        *State of New York, et al., v. Donald Trump, et al.*, 17-CV-5228 (NGG) (JO)

Dear Magistrate Judge Orenstein:

        Pursuant to the Court's October 11, 2017 order, *Vidal* ECF No. 82, and in response to Plaintiffs' October 13, 2017 letter motion to complete the administrative record ("Pls.' Ltr. Mot."), *Vidal* ECF No. 84, Defendants respectfully submit the following letter in opposition. Defendants applied the correct legal standard in certifying and compiling the administrative record in this case, which includes all documents actually considered by the Acting Secretary of Homeland Security, Elaine C. Duke, as part of her decision to institute an orderly wind-down of the Department of Homeland Security's ("DHS") DACA policy. Plaintiffs' proposed standard does not meaningfully differ from the standard applied by Defendants, and to the extent that it does, is drawn from out-of-circuit case law in significantly different administrative contexts. Finally, as for the specific documents that Plaintiffs argue are missing from the administrative record, any such omissions, perhaps, would at most provide a basis for Plaintiffs to argue, on the merits, that the agency's decision was inadequate and should therefore be set aside (assuming that decision is reviewable), but they provide no basis to challenge the agency's compilation of the record, which is legally presumed to be adequate. Accordingly, Defendants respectfully request that the Court deny Plaintiffs' motion.

I.      **Defendants Compiled The Administrative Record Using An Appropriate Legal Standard.**

        Defendants certified and produced an administrative record consisting of all documents actually considered by the Acting Secretary as part of her decision to wind-down the DACA policy—a construction of the record that fully complies with the applicable standard for the sort of informal agency action challenged here. *See, e.g., Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (judicial review of agency action must "be based on the full administrative record that was before the Secretary at the time he made his decision"), *abrogated in part on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The record includes DHS documents, Department of Justice ("DOJ") documents, and congressional correspondence with the White House; it includes formal memoranda and informal letter correspondence; it includes published legal analysis of the DACA and DAPA policies; and it includes some documents suggesting that DACA be rescinded, and other documents suggesting that the policy should continue. No more is required, and this Court should reject Plaintiffs' attempt to force the inclusion of documents that were never considered by the actual agency

decision maker or that are internal to other components of the Executive Branch that did not actually take the action Plaintiffs challenge here.

**a.** Plaintiffs say, correctly, that judicial review of an administrative decision must "be based on the *full* administrative record that was before the Secretary at the time he made his decision," *Overton Park*, 401 U.S. at 420 (emphasis by Plaintiffs) (quoted in Pls.' Ltr. Mot. at 2). But the *Overton Park* standard is functionally identical to the standard applied by Defendants in this case. Defendants have produced the "full administrative record that was before the Secretary at the time [s]he made h[er] decision." *Id.*; *see also* Pls.' Ltr. Mot. at 2 ("Courts subsequently have defined the 'administrative record already in existence' for informal agency action as 'what [the decision maker] had before him when he acted.'") (quoting *Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984)).

Ultimately, after citing a series of cases that are generally consistent with Defendants' understanding of the scope of an administrative record, Plaintiffs present their position as follows: "[C]ourts have required that agencies provide all documents that were *directly or indirectly* considered by the final decision makers in making their decision." Pls.' Ltr. Mot. at 2.

At least as a matter of linguistics, this standard is substantively indistinguishable from the standard applied by Defendants. If Plaintiffs replaced the words "directly or indirectly" with the word "actually," that sentence might have been an exact quote from undersigned counsel or Defendants' filings in this case. But those word-choice subtleties should ultimately make no difference here. Defendants used the modifier "actually" for purposes of transparency and fair notice, to make clear to Plaintiffs and the Court that the administrative record produced by Defendants was limited to documents considered by the "final decision maker" herself, Acting Secretary Duke—rather than including all documents related to the rescission of DACA from, say, rank-and-file personnel within DHS that were not considered by the Acting Secretary. *See infra*, Section I(b) (explaining why that decision was legally justified).[1]

In Defendants' view, if a document was "directly or indirectly considered" by the Acting Secretary, then it was "actually considered" (or just "considered") by her too. Put another way, if the United States Supreme Court issued an opinion that stated, with no further explanation, that an administrative record must include "all documents that were directly or indirectly considered by the final decision makers in making their decision," Pls.' Ltr. Mot. at 2 (emphasis added), Defendants would produce the same administrative record that they already produced on October 6. For that reason alone Plaintiffs' motion can be denied.[2]

---

[1] As confirmation that Defendants do not intend to shy away from the "directly or indirectly considered" language, but instead use the phrase "actually considered" because it is more precise and clear, Defendants refer the Court (and Plaintiffs) to language in a recent filing by Defendants in another DACA-rescission case in the Northern District of California, in which Defendants also defended the "actually considered" language. *See* Defs.' Opp'n to Pls.' Mot. to Compel at 12 n.3, *Regents of Univ. of Cal. v. DHS*, No. 17-5211-WHA (N.D. Cal. Oct. 12, 2017), ECF No. 71 (referencing "the uncontroversial principle that an administrative record generally includes material considered directly and indirectly by the decisionmaker") (citation omitted).

[2] Plaintiffs' letter says that, on a recent meet-and-confer call, "Defendants confirmed that the October 6 administrative record was limited to what Acting Secretary Duke had *directly considered* when deciding to terminate the DACA policy." Pls.' Ltr. Mot. at 1 (emphasis added). In fact, undersigned counsel said no such thing. Instead, undersigned counsel used the same language ("actually considered") used in this filing, previous filings, the administrative record certification filed on both coasts, and at the most recent status conference in this matter. *See*

**b.** Notwithstanding the fact that the standard offered by Plaintiffs appears, at least to Defendants, to be effectively indistinguishable from the standard applied by Defendants, Plaintiffs' filing does suggest that there is disagreement between the parties on one particular issue: whether the administrative record must include documents that were never considered by the Acting Secretary herself, but instead were considered *only* by her subordinates or other rank-and-file staffers at DHS. *See* Pls.' Ltr. Mot. at 2.

The Court should begin with the Supreme Court's decision in *Overton Park*, which holds that judicial review must "be based on the full administrative record that was before *the Secretary* at the time *he* made his decision"—making no mention of a broader record based on all documents that were before the entire agency, or before the Secretary's subordinates. 401 U.S. at 420 (emphasis added); *see also, e.g., Data Processing*, 745 F.2d at 684 (the record includes "what [the decision maker] had before *him* when *he* acted") (emphases added). Plaintiffs' position finds no support in these decisions.

For a relatively recent holding from within the Second Circuit that directly addresses this precise issue with additional specificity, Defendants respectfully refer the Court to Judge Engelmayer's cogent and well-reasoned opinion in *Comprehensive Community Development Corporation v. Sebelius*, which ultimately concludes that "the administrative record does not consist[] of materials before any employee in the agency, but rather, the agency decision-makers." 890 F. Supp. 2d 305, 314 (S.D.N.Y. 2012); *see also, e.g., Pac. Shores Subdivision, Calif. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6-7 (D.D.C. 2006) ("[I]t is not enough for Pacific Shores to state that the documents were before the entire Corps, but rather it must instead prove that the documents were before the Corps' decisionmaker(s)." (citing *Overton Park*, 401 U.S. at 420)). *Comprehensive Community Development Corporation* also quoted the "directly or indirectly considered" language on which Plaintiffs place such heavy weight—but Judge Engelmayer nonetheless rejected efforts to require documents considered only by the actual decision maker's subordinates to be included in the record:

> To rebut the presumption of administrative regularity, such a party must show that the materials sought to be added were before the agency decision-maker. It is not enough to show that these materials were somewhere within the agency, because interpreting the word "before" so broadly as to encompass any potentially relevant document existing within the agency would render judicial review meaningless.

*Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309 (internal citations and alterations omitted). This is strong support for Defendants' position: that Plaintiffs' "directly or indirectly considered" language can and should be interpreted consistently with Defendants' "actually considered" formulation—

---

Oct. 11, 2017 Tr. at 17:22-24 ("Mr. Pezzi: I believe the applicable standard are the documents that were actually considered by the relevant agency decision maker."). Counsel for Defendants promptly raised the inaccuracy and respectfully requested that Plaintiffs correct it. Counsel for Plaintiffs did not dispute undersigned counsel's recollection of the call, but nevertheless refused to correct the inaccuracy. Ultimately, Defendants do not believe this statement should have an effect on the Court's analysis of the issues at stake here, so, for that reason, and to avoid creating a mini-trial on a collateral issue, counsel has not submitted a declaration swearing to his recollection under penalty of perjury. Undersigned counsel is willing to do so, however, should the Court be inclined to place any significance on this inaccurate presentation of the parties' meet-and-confer call. *See generally* Ex. 1, Email Chain re: "EDNY DACA Rescission Litigation - Meet-and-Confer Obligations and Administrative Record."

especially where, as here, the agency action at issue is an informal, policy-based decision of the type that an agency head may properly make without needing to rely on an extensive factual or evidentiary record compiled by her subordinates or the agency at large.

In this case, the only agency decision maker was Acting Secretary Duke, which is why Defendants limited the administrative record to documents that *she* actually considered—rather than documents considered only by her subordinates or rank-and-file DHS staffers.  Holding to the contrary would have the effect of imposing discovery-like burdens on administrative agencies, as a matter of course, even when defending routine and informal agency actions—notwithstanding the well-settled presumption against discovery in Administrative Procedure Act ("APA") litigation.

As for the out-of-circuit authority that does appear to attribute some significance to the requirement to include documents "indirectly" considered by the relevant agency decision maker (rather than just quoting that phrase in passing with no further explanation), those cases typically arise in the context of some *formal* agency action, or full-on notice-and-comment rulemaking, in which "the work and recommendations of subordinates" are far more likely to play an important role in the decision making process.  *See, e.g., Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior,* 143 F. Supp. 2d 7, 12 (D.D.C. 2001).  In other words, Plaintiffs rely on language sometimes invoked in the context of formal rulemakings, formal adjudications, or other agency actions quite unlike the informal, policy-based decision at issue here; in such cases a range of internal, predecisional materials necessarily exists, often as well as extensive factual, scientific, or evidentiary material—or even thousands of comments from the general public.  Administrative records in those sorts of cases, to be sure, are often much larger than the record produced in this case.

But that should come as no surprise—none of those cases speak to the sort of informal, policy-based decision at issue here, which centered on a judgment about litigation risk and the uncertain legal footing of a purely discretionary agency policy (rather than a complicated weighing of evidentiary, factual, or scientific material).  Plaintiffs cite no cases in which a court ordered "completion" of an administrative record to include materials "indirectly considered" in a challenge to an informal policy decision of the type at issue here—even assuming that that standard has any independent significance or differs in any way from the standard Defendants have already applied. And, as the Second Circuit has explained, "[w]hat will constitute an adequate record for meaningful review may vary with the nature of the administrative action to be reviewed," and "when the judgment is one of policy . . . findings of fact such as would be required in an adjudicatory proceeding or in a formal 'on the record' hearing for rulemaking need not be made."  *United States v. Nova Scotia Food Products Corp.,* 568 F. 2d 240, 249 (2d Cir. 1977) (internal quotation omitted).

**c.**  Plaintiffs rely on a February 2000 article, written by an attorney who formerly worked for DOJ's Environment and Natural Resources Division ("ENRD"), which adopts a broader view of what should be included in an administrative record.  *See* Pls.' Ltr. Mot. at 3 (citing Joan Goldfrank, *Guidance to Client Agencies on Compiling the Administrative Record* (Feb. 2000).[3]  But that article never represented any binding statement of the position of the United States with respect to the compilation of an administrative record, and subsequent authoritative DOJ guidance has made explicit that any such guidance has been superseded.  *See* Mem. of Ronald J. Tenpas, Assistant Attorney General, U.S. Dep't of Justice, to Selected Agency Counsel (Dec. 23, 2008), Ex. 2 (rejecting nearly identical guidance originally issued by ENRD).  In any event, the litigating position of the United States is reflected in

---

[3] *Available at* http://www.justice.gov/usao/eousa/foia_reading_room/usab4801.pdf.

Defendants' filings in these matters—not in articles or superseded internal memoranda from specific DOJ attorneys or components.

## II.     Plaintiffs' Arguments About Allegedly Omitted Documents Do Not Rebut The Presumption Of Regularity, And Are Primarily Merits Arguments.

Plaintiffs also offer a host of specific documents (and categories of documents) that they claim should have been included in the administrative record. These arguments all suffer from three critical flaws: (1) they largely ignore the presumption of regularity that attaches, as a matter of law, to the administrative record compiled by the agency; (2) they generally overstate the significance of the documents in question; and (3) they are, in any event, merits arguments that (at most) go to the basis (or lack thereof) for the Acting Secretary's decision, rather than the completeness of the administrative record.

**a.**  As Judge Garaufis put it, "[t]he agency's designation of the administrative record 'is generally afforded a presumption of regularity.'" *See* Oct. 3, 2017 Order at 3, *Vidal* ECF No. 72 (quoting *Comprehensive Cmty. Dev. Corp.*, 890 F. Supp. 2d at 309); *see also Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary."). This rule recognizes that, in APA cases, "the agency and not the court is the principal decision maker," and it discourages courts from "supplement[ing] the record . . . in the belief that they were better informed than the administrators empowered by Congress." *San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1325 (D.C. Cir. 1984), *vacated in part on other grounds*, 760 F.2d 1320 (D.C. Cir. 1985). In other words, the agency officials familiar with the decision under review are presumed to have properly designated the administrative record, absent a showing by Plaintiffs that extra-record materials are necessary to reveal the agency's rationale for the decision. *See Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2009). Here, Plaintiffs have not made such a showing—nor could they, given the existence of the September 5, 2017 rescission memo, which summarized and presented Acting Secretary Duke's reasoning. Plaintiffs may disagree with that reasoning, or find the explanation deficient, *see infra*, Section II(c), but there is no mystery as to the reasons offered by the Acting Secretary to justify this decision. Accordingly, the presumption of regularity holds, and these arguments can be rejected on that basis alone.

**b.**  As for the specific documents (or categories of documents) that Plaintiffs claim are missing from the administrative record, Plaintiffs fault the agency for allegedly failing to include documents "that purport to explain Defendants' decision to slowly wind down a program they assert is unlawful" or detailing "how the agency chose crucial dates in the termination process." Pls.' Ltr. Mot. at 4. But in any event, both the Attorney General's letter to Acting Secretary Duke, AR 251, and the rescission memo itself, AR 252-56, address this topic, albeit briefly. But otherwise, documents on this subject are classic pre-decisional and deliberative communications that are protected by (at least) the deliberative-process privilege and were properly omitted from the record on that basis. *See, e.g., Mothers for Peace*, 789 F.2d at 44-45 (explaining that, absent a showing of bad faith, transcripts of deliberative agency proceedings must not be considered on judicial review); *Nat'l Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 333 (2d Cir. 1977) (affirming district court's refusal to order production of deliberative intra-agency memoranda in a record-review case).

Plaintiffs' suggestion that internal DOJ (and perhaps even White House) documents should be included in the administrative record, even if never shared with DHS or the Acting Secretary, is similarly mistaken. It is the Acting Secretary, not the Attorney General, who is vested with the

statutory authority to enforce our nation's immigration laws, *see* 8 U.S.C. § 1103(a)(1). And, in fact, the administrative record already includes DOJ documents, to the extent they are non-privileged and were considered by the Acting Secretary as part of her decision to rescind the DACA policy. *See* Administrative Record, AR 4-36 (Office of Legal Counsel Memorandum), AR 238-40 (letter to the Attorney General), AR 251 (letter from the Attorney General).

Plaintiffs contend that "Attorney General Sessions'[s] letter contains no legal analysis to support his bare conclusion." Pls.' Ltr. Mot. at 5. Even if that were true, the validity of the underlying legal judgments embedded within the Attorney General's letter to the Acting Secretary are not at stake in this litigation—assuming it is reviewable at all, this case requires the Court to determine, at most, whether the Acting Secretary's decision is rational, for the reasons she stated and on the record that she relied upon. Defendants will ultimately argue that the Acting Secretary's decision was sound—whether or not the Attorney General's underlying legal conclusion and predictions about future litigation would have proven to be accurate if the *Texas v. United States* litigation had continued.

Similarly, Plaintiffs contend that the record is incomplete because it contained judicial decisions from the *Texas* litigation, but did not include other opinions in other cases "that actually concern the DACA program." Pls.' Ltr. Mot. at 5. First of all, contrary to Plaintiffs' suggestion, the *Texas* litigation resulted in a nationwide injunction of not just DAPA, but also an expanded version of the DACA policy.[4] And the *Texas* plaintiffs recently threatened to amend their complaint to directly challenge what remained of DACA after the *Texas* injunction, on the same legal theory that had been accepted by the Fifth Circuit and affirmed by the Supreme Court. *See* AR 238-40. In any case, this is an improper attempt by Plaintiffs to tell the agency decision maker what she *should* have considered in making her decision—it says nothing about what she actually considered, and that is the relevant question at this stage of the litigation. Plaintiffs do not assert that these other opinions were considered by the Acting Secretary as part of her decision, and there is no obligation to include every single potentially relevant legal authority as part of an administrative record for a decision of this sort—otherwise DHS would have had to, for example, include the entirety of the Immigration and Nationality Act and the United States Constitution in the administrative record.

Plaintiffs also argue that the record is incomplete because it does not contain an August 14, 2017 letter from law professors offering their views to the President (copying Acting Secretary Duke) on the legality of DACA. This example is particularly unpersuasive because it is not, as Plaintiffs argue, "the relevance of [] communications to the DACA-policy termination," Pls.' Ltr. Mot. at 5, that determines whether a document should be included in the administrative record—even accepting that an unsolicited letter from law professors is "relevant" to a decision like this one. An agency decision maker is not required to consider every communication from any member of the public in making a decision. Plaintiffs may wish that the Acting Secretary had considered that letter in making her decision, but her focus on other documents is the *reason* it was not included—it does not call into question the completeness of the record.

Plaintiffs also make much of a footnote in the Acting Secretary's September 5, 2017 memorandum, which reports that, although deferred action policies are generally "meant to be applied only on an individualized case-by-case basis," in fact, "USCIS has not been able to identify specific

---

[4] *See, e.g.*, *Texas v. United States*, 86 F. Supp. 3d 591, 678 n.111 (S.D. Tex. 2015) ("While this Court's opinion concentrates on the DAPA program, the same reasoning applies, and the facts and the law compel the same result, to the expansions of DACA contained in the DAPA Directive").

denial cases where an applicant appeared to satisfy the programmatic categorical criteria . . . but still had his or her application denied based solely on discretion." Sept. 5, 2017 Memo at 2 & n.1, AR 253. But this factual statement is about the *lack* of certain data, not its existence, and the absence of additional documentation considered by the Acting Secretary therefore raises no questions about the completeness of the administrative record—the relevant conclusion is presented in the decision memo itself. And as discussed further below, *see infra*, Section II(c), to the extent Plaintiffs believe that the Acting Secretary's decision is not supported by the record, that is ultimately a merits argument.

Finally, Plaintiffs' suggestion that the presumption of completeness ordinarily afforded an administrative record may be more easily overcome "where, as here, no formal agency proceedings have concretely determined the scope of the administrative record" is unsupported. Pls.' Ltr. Mot. at 3. Plaintiffs rely on *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982), but that case involved "a strong suggestion that the record before the Court was not complete: conspicuously absent were the . . . fundamental documents—the very basis for federal decision-making about [the challenged grants]." *Id.* No such showing of conspicuously absent, fundamental documents has been made here.

**c.** Setting aside their merit on a document-by-document basis, Plaintiffs' arguments about what they would have expected to find in the administrative record are all, ultimately, *merits* arguments—not a justification for a broader administrative record. It is a well-settled principle of administrative law that where, as here, there is a "contemporaneous explanation" for an agency's decision, its validity "must . . . stand or fall on the propriety of that finding." *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam). "The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (citations omitted). "If that finding is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded to [the agency] for further consideration." *Camp*, 411 U.S. at 143 (citation omitted). Here, Defendants have produced a 256-page administrative record that includes all of the non-privileged documents that were actually considered by the agency decision maker. If Plaintiffs believe that that record is insufficient to support the agency's decision, then their remedy is not to compel the production of a broader administrative record—it is for Plaintiffs to file a merits brief asking that the decision be set aside, to which Defendants will respond on the merits. *See id.*

### III.   Plaintiffs' Have Already Obtained Extra-Record Documents.

Plaintiffs claim that "[i]n arguing that Plaintiffs are not entitled to discovery to challenge the completeness of the administrative record, Defendants have incorrectly conflated the need to complete the record with the need to supplement the record." Pls.' Ltr. Mot. at 6. To the extent Plaintiffs are referring to Defendants' *prior* filings opposing *discovery*, Defendants have not "incorrectly conflated" anything, but instead have made straightforward arguments about the general inappropriateness of judicial review of the Executive Branch's exercise of prosecutorial discretion in the immigration context, and the importance of limiting any judicial review that does take place to the administrative record compiled by the agency—a record that is legally presumed to be regular. That is true even where, as here, Plaintiffs bring constitutional claims, because constitutional claims challenging allegedly unlawful agency action are still APA claims, because both the waiver of sovereign immunity and the source of Plaintiffs' private right of action on their constitutional claims derive from the APA. *See* 5 U.S.C. § 706(2)(B) (the reviewing court may "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity").

Similarly, Plaintiffs claim that "[a]t this time, Plaintiffs are not moving to supplement the record." Pls.' Ltr. Mot. at 6. Again, Defendants do not fully understand this statement, but to the extent it is a belated concession that judicial review in this case may be, as is typical, limited to the administrative record (either with or without the documents Plaintiffs claim should be included), Defendants welcome it. Defendants are currently expending hundreds of hours per week processing and reviewing massive numbers of extra-record documents, and responding to interrogatories and requests for admission, as a result of Plaintiffs' discovery requests that go well beyond the administrative record. Extra-record documents have already been produced to Plaintiffs at their request, so Plaintiffs' sudden disclaimer of interest in those documents is hard to understand.

## IV.    Defendants' Pending Objection Letter Raises Potentially Overlapping Issues.

Finally, Defendants respectfully note that Defendants' objection letter regarding this Court's September 27, 2017 case-management and scheduling order, *Vidal* ECF No. 67, remains pending before Judge Garaufis. Although that letter focused primarily on Section II(c) of this Court's September 27, 2017 Order (which required the production of a privilege log along with the administrative record), the letter also raised broader arguments about the proper scope of judicial review in this case, including the breadth of the administrative record and any associated privilege log, and the propriety of any discovery beyond the administrative record. Judge Garaufis has stated his intent to rule on those broader objections no later than October 20, 2017, *see* Oct. 3, 2017 Order at 4, and that ruling is likely to inform this Court's analysis on at least some of the issues raised in Plaintiffs' motion to complete the administrative record. Of course, this Court has the authority to dispose of Plaintiffs' motion at any time. But in the interest of judicial efficiency, this Court may wish to await that forthcoming ruling from Judge Garaufis before addressing Plaintiffs' motion to complete the administrative record.

\*      \*      \*

Defendants thank the Court for its consideration of this matter, and respectfully request that Plaintiffs' motion be denied.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRIDGET M. ROHDE
Acting United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Branch Director

BRAD P. ROSENBERG
Senior Trial Counsel

*/s/ Stephen M. Pezzi*
STEPHEN M. PEZZI (D.C. Bar #995500)
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 305-8576
Fax:  (202) 616-8470
Email:  stephen.pezzi@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY  11201
Tel:  (718) 254-6288
Fax:  (718) 254-7489
Email:  joseph.marutollo@usdoj.gov

*Counsel for Defendants*