UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | Hon. William Alsup<br><br>Case No. 17-cv-05211-WHA |

**DECLARATION OF DAVID J. PALMER**

I, David J. Palmer, do hereby declare and state:

1. I am the Chief of Staff for the Office of the General Counsel in the United States Department of Homeland Security. In this capacity, I supervise attorneys and other professional staff who are coordinating efforts at DHS Headquarters to respond to court orders and discovery requests in this case and other related actions. I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2. I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record.

3. I have reviewed the Plaintiff's Motion to Complete the Administrative Record (*Regents of University of Cal. v. U.S. Dep't of Homeland Security*), Case No. 17-cv-5211, Dkt.

No. 65) ("Motion") and their interpretation of the "administrative record," on pages 9 and 10 of Plaintiffs' motion.

4. If DHS Headquarters were required to search, review, and compile documents based on Plaintiffs' interpretation of the contents of the proposed administrative record as defined in their Motion, DHS Headquarters would not have been able to search, collect, review, or provide the documents by October 6, 2017, nor would it be able to do so by October 12, 2017, due to the level of effort necessary and the complexity of the undertaking.

5. In response to the discovery requests served in the various DACA cases pending here and in the Eastern District of New York, DHS Headquarters is in the process of searching, collecting, reviewing and analyzing documents from more than 30 custodians which includes a collection of at least 30,118 documents from DHS Headquarters custodians alone, and likely far more given potential DHS Headquarters equities in documents that may be in the possession, custody or control of its component agencies. Similar burdens would likely be incurred to locate the materials Plaintiffs assert should be part of the administrative record.

6. We have dedicated a significant number of staff and hours to the efforts. For example, to date we have already expended more than 150 hours on compiling documents for potential discovery in the various DACA cases. We would experience impacts to agency functions and mission, as resources and personnel would have to be reassigned and diverted to address compiling the administrative record pursuant to Plaintiff's interpretation. For example, we have already diverted staff from normal operational duties such as preventative maintenance of information technology systems and resolving customer issues. Litigation attorneys recruited to review and analyze documents in this action and other related actions also have full dockets of other litigation matters with pending briefing and discovery deadlines. All full time employees

2

on the DHS Headquarters litigation team have been assigned to review documents in the various DACA cases and there is no prospect of reassigning or rebalancing their work in other cases. In order to accomplish the review and analysis of documents, DHS Headquarters has also diverted attorney resources from five other legal practice areas.

7. Even with these diverted resources, given the careful review that must be conducted, the volume of the records, and prevalence of privilege issues, the agency would require substantial time and a significant expenditure of resources to identify and assess properly documents within the Plaintiffs' definition of administrative record.

8. The agency, however, is taking extraordinary steps to devote the resources necessary to accelerate the total time needed to respond to pending discovery. Given the number and complexity of documents at issue, the multiple layers of review required, and the difficulty of the issues presented, the agency's best, good faith analysis is that the agency would not have been able to search, collect, review, or provide the documents by October 6, 2017 nor by October 12, 2017 that would fit Plaintiffs' definition of an administrative record.

I declare that to the best of my current knowledge the foregoing is true and correct. Executed on this 12 day of October 2017.

_____
DAVID J. PALMER

3

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | Hon. William Alsup<br><br>Case No. 17-cv-05211-WHA |

## DECLARATION OF JAMES W. McCAMENT

I, James W. McCament, do hereby declare and state:

1. I am the Deputy Director of U.S. Citizenship and Immigration Services. I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2. I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record.

3. I have reviewed the Plaintiff's Motion to Complete the Administrative Record (*Regents of University of Cal. v. U.S. Dep't of Homeland Security*, Case No. 17-cv-5211, Dkt. No. 65) ("Motion") and their interpretation of the "administrative record," on pages 9 and 10 of Plaintiffs' motion.

4. If we were required to search, review, and compile documents in our agency based on Plaintiffs' interpretation of the contents of the administrative record as defined in their Motion, our agency would not have been able to search, collect, review, or provide the documents by October 6, 2017 nor by October 13, 2017 due to the level of effort and complexity of the undertaking.

5. In response to the discovery requests served in the various DACA cases pending here and in the Eastern District of New York, USCIS is in the process of searching, collecting, reviewing and analyzing documents from more than approximately 70 custodians, including more than 260,000 emails in addition to documents from approximately 30 shared drives or hard drives. We have dedicated significant staff and hours to the efforts and thus have diverted staff from meeting critical agency goals. For example, to date, I understand that we have already expended more than an estimated 290 hours on identifying and coordinating with custodians, and searching and compiling documents for potential discovery in this and related matters. Similar burdens would likely be incurred to locate the materials Plaintiffs assert should be part of the administrative record.

6. We would experience impacts to agency function and mission as resources and personnel would have to be reassigned and diverted to address compiling Plaintiff's interpretation of the administrative record. For example, as part of the ongoing efforts to respond to discovery requests in the various pending DACA cases, the Office of Information Technology (OIT) team has made responding to discovery requests in the various pending DACA cases its exclusive focus to meet the Court deadline. As a result, OIT postponed several other jobs, including three projects and two investigations that have been put on hold to support this and related case matters. The U.S. Citizenship and Immigration Services Office of the Chief

2

Counsel had to shift personnel to respond to discovery requests and the majority of assigned Counsels time is dedicated to discovery, whereas in their normal course of business, they would have been providing legal guidance on a wide array of issues. Finally, various reporting requirements and requests have had to be delayed so that resources could be reallocated to the discovery in this case and related case matters.

7. Even with these diverted resources, given the careful review that must be conducted and the volume of the records at issue, the agency would require substantial time and a significant expenditure of resources to find documents within the Plaintiffs' definition of administrative record.

9. The agency, however, is taking extraordinary steps to devote the resources necessary to accelerate the total time needed to respond to pending discovery. Given the number and complexity of documents at issue, the multiple layers of review required, and the difficulty of the issues thereby presented, the agency's best, good faith analysis is that the agency would not have been able to search, collect, review, or provide the documents by October 6, 2017 nor by October 13, 2017 that would fit Plaintiffs' definition of administrative record.

I declare that to the best of my current knowledge the foregoing is true and correct. Executed on this 12 day of October 2017.

_____
James W. McCament

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, <br><br> Defendants. | Hon. William Alsup <br><br> Case No. 17-cv-05211-WHA |

**DECLARATION OF RAYMOND MILANI**

I, Raymond Milani, do hereby declare and state:

1. I am an Associate Legal Advisor with the Office of the Principal Legal Advisor (OPLA), U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS). OPLA is charged by statute with representing the agency in civil immigration proceedings before the nation's immigration courts and with providing specialized legal advice to agency personnel. 6 U.S.C. § 252(c). I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2. In my position, I assist OPLA's legal divisions during the entire eDiscovery lifecycle, to include the distribution and monitoring of preservation notices, coordinating with ICE's Office of the Chief Information Officer (OCIO) to collect electronically stored data in a defensible manner, process, analyze, and search electronically stored information, set up

documents for review and redaction, and produce reviewed documents in a format and manner agreed to by opposing counsel/parties and in compliance with the Federal Rules of Civil Procedure. I am also involved in all aspects of the acquisition process for eDiscovery software and supporting systems (market research, statement of work, proposal evaluations, contract awards); responsible for the administration and configuration of eDiscovery software; am a liaison to OCIO on all issues related to eDiscovery and the support and maintenance of the application; and a point of contact assisting other DHS components with their eDiscovery implementation and acquisition. I have performed these functions since February 2008.

3. I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record.

4. I have reviewed Plaintiffs' Motion to Complete the Administrative Record (*Regents of University of Cal. v. U.S. Dep't of Homeland Security*), Case No. 17-cv-5211, Dkt. No. 65) ("Motion") and their interpretation of the "administrative record," on pages 9 and 10 of Plaintiffs' motion.

5. In the course of responding to discovery requests in this and related litigation initiated against the federal government related to Deferred Action for Childhood Arrivals (DACA), ICE is in the process of searching, collecting, reviewing, and analyzing documents from 26 custodians, including more than 872,000 documents.

6. For context, in less than five days, ICE has already expended more than 220 hours on compiling documents for potential discovery in this and related DACA litigation. Similar burdens would likely be incurred to locate the materials Plaintiffs assert should be part of the administrative record.

2

7. Consequently, an effort to satisfy Plaintiffs' "administrative record" interpretation would impose severe impacts upon agency function and mission, with resources and personnel reassigned and diverted to address compiling Plaintiff's interpretation of the administrative record. For example, ICE has delayed and put at risk other case deadlines in an effort to respond to discovery requests in the various pending DACA matters. Work on those non-DACA matters had to be halted to address discovery in this and related matters. ICE has pulled agency counsel and personnel from immigration court appearance responsibilities and other regular duties, essentially, having to devote 1 out of every 14 attorneys in ICE's legal offices across the country to handle the discovery in this and related DACA lawsuits filed against the federal government. And, even with such diverted resources, which are currently focused on general discovery obligations arising incident to such litigation, the careful review required to comb through the volume of records at issue and identify those that specifically satisfy Plaintiffs' "administrative record" interpretation would likely require substantial additional time.

8. Based on my experience, the efforts ICE has undertaken to respond to this and related DACA litigation is completely unprecedented, in terms of devotion of resources necessary to accelerate discovery production efforts. In responding to DACA-related discovery, ICE began its collection late Wednesday, October 4, and all potentially responsive records were assembled for processing by Friday morning, October 6. ICE's OCIO assigned 2 Active Directory Exchange (ADEX) personnel to work on the collection of documents from 26 custodians. ICE personnel spent a combined total of 220 hours on the project from early Wednesday evening, October 4, until late Monday afternoon, October 9. These efforts included substantial overnight and (holiday) weekend work. This size of this data pull was approximately 872,000 documents and 196 GB of data.

3

9. The agency has also devoted 82 individuals, the vast majority of whom are attorneys, to review the data collected to date. The discovery responses alone have impacted ICE's mission. One example is the delay in document review in another important district court class action suit. ICE placed that entire discovery project on hold for more than three business days to accommodate the DACA litigation discovery effort.

I declare that to the best of my current knowledge the foregoing is true and correct. Executed on this 12th day of October 2017.

_____
Raymond Milani

4

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REGENTS OF UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | Hon. William Alsup<br><br>Case No. 17-cv-05211-WHA |

**DECLARATION OF VIJAI CHELLAPPA**

I, Vijai Chellappa, do hereby declare and state:

1. I am an E-Discovery Digital Forensic Analyst with U.S. Customs and Border Protection (CBP), E-Discovery Team, Security Operations, Cyber Security Directorate, Office of Information Technology (OIT). I have 15 years of experience in the Information Technology field, and I have worked for CBP, OIT since 2009. I have been an E-Discovery Digital Forensic Analyst since 2011.

2. I am aware of the Court Order dated October 10, 2017, Dkt. No. 67, Order Shortening Time for Briefing Motion to Complete the Administrative Record. I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

3. In CBP's efforts to respond to discovery requests in this and related cases, I have assisted in the ongoing process of searching, collecting, reviewing, and analyzing documents

based on searches of more than 70 GB of data (90,219 electronic files) acquired from searches of 12 network drives and approximately 29 workstations.

4. Additionally, I developed and executed the search of CBP's e-mail mailbox journal servers which consisting of approximately 200 TB of data from CBP e-mail mailboxes to locate potentially responsive e-mail messages.

5. CBP, OIT has dedicated significant hours and all of the E-Discovery computer search resources to accelerate the total time needed to respond to pending discovery. To date, I have already expended approximately 48 hours in this effort, to include the searches, data transfers, and refining process for potential discovery material in this and related matters. Additionally, the Agency has experienced impacts to agency function and mission, as all E-Discovery computer server resources were reassigned and diverted to address the search for documents responsive to current discovery requests in the various pending DACA cases. Specifically, all of our work for other cases and court deadlines was put on hold to perform discovery tasks in this and related matters in order to expend the entire resource of E-Discovery's computer server in response to production of this discovery request. As a result, the agency is already more than a week behind in other litigation obligations and has also fallen behind on an ongoing critical surveillance operation.

6. Similar burdens would likely be incurred to immediately locate any additional materials that I understand Plaintiffs assert should be part of the administrative record.

I declare that to the best of my current knowledge the foregoing is true and correct. Executed on this 12th day of October 2017.

*[signature]*
Vijai Chellappa

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ELAINE C. DUKE, Acting Secretary, Department of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 16-cv-4756 (NGG) (JO)<br><br>(Garaufis, J.)<br>(Orenstein, M.J.) |
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, President of the United States, *et al.*,<br><br>Defendants. | Case No. 17-cv-5228 (NGG) (JO)<br><br>(Garaufis, J.)<br>(Orenstein, M.J.) |

## DECLARATION OF ALLISON C. STANTON

I, Allison C. Stanton, do hereby declare and state:

1. I am the Director of E-Discovery, FOIA, and Records in the Office of the Assistant Attorney General, Civil Division, Department of Justice ("Department"). I joined the Department in October 2010. In this capacity, I am assisting in coordinating efforts at the Department to respond to court orders and discovery requests in this case and other related actions. Throughout my fifteen-year career I have supervised response efforts for numerous high-profile and complicated discovery matters. I have broad experience assessing discovery resources needs and plans for both private organizations and governmental agencies. I make the

following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2. I am aware of the Order entered in this case on October 17, 2017 ("Order"), in which the Court ordered the Department to produce by October 20 a privilege log identifying all "relevant documents considered within DHS or DOJ as part of the process of determining the policy and actions at issue in these cases." Oct. 17 Order at 9. I explain herein the volume and complexity of the documents collected within the Department to date in response to discovery requests served in this and related matters at issue as I currently understand them. Given the task at hand, meeting the October 20, 2017 deadline presents a practical impossibility.

3. The steps necessary to collect the materials the Court has ordered to be located, reviewed, and logged by October 20 are similar to those we have undertaken to respond to the discovery requests in this and related cases. To date, we have had to search, collect, review, and analyze documents from more than 70 custodians at the Department. These efforts are ongoing. More than 90,000 documents need to be analyzed for potential responsiveness to discovery and privilege in this and related litigation. We are already devoting significant staff and hours to the efforts. For example, to date we have already expended more than 500 hours on compiling documents for potential discovery in this and related matters. The review, analysis, and privilege logging efforts cannot be completed by October 20, despite the Department's best efforts, because of the complexity of the review and privilege assertion process as well as the volume of documents to be reviewed.

4. The Department has already pulled counsel and personnel from other duties to handle the discovery due to its breadth and extremely expedited response timeline. Across the

Department, attorneys, information technology, litigation support, and other professional staff were reassigned to work on discovery in this case and the related matters.

5. Even with these diverted resources, careful review must be conducted given the information and the volume of the records at issue. The Department would require substantial time and a significant expenditure of resources to analyze and log the documents specified in the Court's October 17th Order.

6. Given the identities of the potential custodians and the breadth of discovery, analyzing more than 90,000 documents for not only potential responsiveness but attorney client privilege, attorney work product protection, deliberative process privilege, law enforcement privilege, and other governmental privileges will require considered analysis. For example, each reviewer assigned to this task must learn the context and background of the documents in order to accurately determine the documents' deliberative nature and the deliberative process or processes to which individual documents potentially relate. The Department's review may also require consultation, as appropriate, with other Executive Branch entities that have equities, knowledge, or expertise in the underlying information to assist in determining privilege.

7. The Department, however, is taking many steps to devote the resources necessary to accelerate the total time needed to review the documents at issue and comply with the Court's Order to the best of its ability. In light of the Department's understanding that this Court has asked for the review and privilege log to be completed in an expedited fashion, we are moving the complicated and detailed process ordered by the Court faster than normally possible. However, due to the number and complexity of documents at issue, the multiple layers of review required, and the difficulty of the issues thereby presented, the Department would not be able to complete production by the Court's October 20, 2017 deadline.

I declare that to the best of my current knowledge the foregoing is true and correct.

Executed on this 18 day of October 2017.

_____
Allison C. Stanton

4