UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

MARTIN JONATHAN BATALLA VIDAL et al.,

                Plaintiffs,

-against-                                      **MEMORANDUM & ORDER**

                                                          **16-CV-4756 (NGG) (JO)**

ELAINE C. DUKE, Acting Secretary, Department of
Homeland Security, et al.,

                Defendants.
----------------------------------------------------------------------X

STATE OF NEW YORK et al.,

                Plaintiffs,

-against-                                      **MEMORANDUM & ORDER**

                                                          **17-CV-5228 (NGG) (JO)**

DONALD TRUMP, President of the United States, et al.,

                Defendants.
----------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court is Defendants' renewed motion to stay discovery and the requirement that it compile a privilege log with respect to documents omitted from the administrative record in the above-captioned actions, which challenge various aspects of the Government's decision to end the Deferred Action for Childhood Arrivals ("DACA") program. (Defs. Oct. 18, 2017, Motion to Stay ("Defs. Oct. 18 Stay Mot.") (Dkt. 87) at 1.[1]) For the reasons described below, the court GRANTS in part and DENIES it in part Defendants' October 18 Stay Motion.

---

[1] Except as noted, all docket citations refer to the docket in Batalla Vidal v. Duke, No. 16-CV-4756 (E.D.N.Y.). For convenience, the court refers to the Plaintiffs in Batalla Vidal v. Duke as the "Batalla Vidal Plaintiffs," the

1

## I. BACKGROUND

Following the Government's well-publicized September 5, 2017, decision to end the DACA program, Plaintiffs filed these suits, which challenge that decision and certain other decisions made by Defendants in connection therewith.[2] The court anticipates providing a fuller description of that program, along with the actions taken by Defendants to end it, in a later order. For now, the court provides only a brief summary of the procedural history of the case, to the extent it is relevant to Defendants' October 18 Stay Motion.

On September 22, 2017, Magistrate Judge James Orenstein entered a case management and scheduling order, which authorized discovery to proceed over Defendants' objections and set a schedule for discovery. (Sept. 22, 2017, Case Management and Scheduling Order (the "Case Management Order") (Dkt. 67).) As part of that schedule, the Case Management Order required Defendants, by October 6, 2017, to produce both an administrative record and a privilege log identifying and asserting privilege with respect to documents "considered within any component of the executive branch as part of the process of determining the policy and actions at issue in these actions that are not being produced and as to which the defendants would assert a claim of privilege, regardless of whether the defendants deem such . . . record to be part of the official administrative record." (Case Management Order ¶ II(c) (the "Privilege-Log Requirement").)

Defendants promptly objected to the Case Management Order. (Defs. Sept. 29, 2017, Mot. to Vacate ("Defs. Sept. 29 Mot.") (Dkt. 69).) In doing so, Defendants reprised their

---

Plaintiffs in New York v. Trump, No. 17-CV-5228 (E.D.N.Y.) as the "State Plaintiffs," the U.S. Department of Homeland Security as "DHS," and the U.S. Department of Justice as "DOJ."

[2] Technically, the State Plaintiffs filed suit after the Government initiated the rescission of the DACA program (Compl. (New York v. Trump Dkt. 1), while the Batalla Vidal Plaintiffs amended their existing complaint, which had previously challenged the nationwide injunction issued by Judge Andrew Hanen of the U.S. District Court for the Southern District of Texas, see Texas v. United States, 86 F. Supp. 3d 591 (S.D. Tex. 2015), to instead challenge the decision to end the DACA program and the means by which Defendants communicated that decision to DACA recipients (Compl. (Dkt. 1); Am. Compl. (Dkt. 29); Second Am. Compl. (Dkt. 60)).

2

previous objections to discovery in these cases (Defs. Sept. 22, 2017, Ltr. Regarding Discovery ("Defs. Sept. 22 Ltr.") (Dkt. 65); Defs. Sept. 29 Mot. at 1) and specifically objected to the Privilege-Log Requirement, which they argued (1) raised "substantial separation-of-powers concerns," to the extent it applied to White House communications; (2) was vague and overbroad, and required the logging of documents outside the scope of the administrative record; (3) and could not possibly be compiled before the deadline set by the Case Management Order. (Defs. Sept. 29 Mot. at 1-5.) Defendants also argued that these cases should be dismissed because their actions are not subject to judicial review. (Id. at 5-6.)

In response to these concerns, the court issued two orders modifying the Case Management Order. The first order, recognizing that the propriety of the Privilege-Log Requirement might depend in part on the adequacy of the administrative record, extended the deadline for complying with that requirement by two weeks, to October 20, 2017, to permit the court to review the administrative record prior to ruling on Defendants' objections to discovery and the Privilege-Log Requirement. (Oct. 3, 2017, Order (Dkt. 72).) The second order, in light of Defendants' well-founded separation-of-powers arguments and Plaintiffs' corresponding concessions, limited the Privilege-Log Requirement to DHS and DOJ materials. (Oct. 17, 2017, Mem. & Order ("Oct. 17 M&O") (Dkt. 86) at 7-9.) The court denied, however, Defendants' motion to stay discovery relating to Plaintiffs' challenges to actions collateral to the decision to end the DACA program (namely, Defendants' alleged changes to the policy regarding the use of information obtained from DACA applications for immigration-enforcement purposes (the "information-policy claims") and Defendants' alleged failure to provide individualized notice of the change in renewal eligibility and deadlines to DACA recipients (the "individualized-notice claims")). (Id. at 3-4.) The court concluded that Defendants had offered no reason why the

3

court's review of these collateral claims should be confined to an administrative record documenting the decision to end the DACA program. (Id. at 3-4.) The court reserved ruling on Defendants' objections to discovery regarding Plaintiffs' direct challenges to the decision to end the DACA program and to the Privilege-Log Requirement pending Judge Orenstein's resolution of Plaintiffs' challenges to the adequacy of the administrative record. (Id. at 4-6.) Lastly, the court declined to narrow the scope of the Privilege-Log Requirement to exclude DOJ documents, in light of Defendants' unexplained reversal of their previously stated position that Attorney General Sessions and Acting Secretary Duke jointly decided to end the DACA program. (Oct. 17 M&O at 9-10.)

Defendants again move the court to stay all discovery and the Privilege-Log Requirement until the court rules on whether the administrative record is complete, or, alternatively, pending the filing and disposition of a mandamus petition or stay motion in the Second Circuit. (Defs. Oct. 18 Stay Mot. at 1.) Defendants argue that the court's orders have left them in limbo, exposed to discovery but lacking the certainty of a final order. (Id. at 1, 3.) Defendants also contend that compliance with the Privilege-Log Requirement remains impossible in the time period specified, notwithstanding the court's previously ordered extension of time and the narrowing of that requirement to DHS and DOJ materials. (Id. at 3-5.)

## II. THE COURT WILL NOT STAY DISCOVERY OR THE PRIVILEGE-LOG REQUIREMENT

The court first considers whether Defendants are entitled to a temporary or permanent stay of discovery and the Privilege-Log Requirement. Defendants argue variously that discovery should be stayed pending resolution of the parties' dispute over the adequacy of the administrative record (Defs. Oct. 18 Stay Mot. at 1), that discovery should be stayed pending resolution of Defendants' anticipated dispositive motions (id. at 2; Defs. Sept. 22 Ltr. at 2-3), and

4

that discovery is generally inappropriate in these cases because the court's review is confined to the administrative record prepared by DHS (Defs. Sept. 22 Ltr. at 1; Defs. Sept. 29 Mot. at 1-2). Defendants raise similar arguments with respect to the Privilege-Log Requirement, which they contend they should not be required to compile absent some showing that they acted in bad faith in compiling the administrative record. (Defs. Oct. 10, 2017, Reply in Supp. of Sept. 29 Mot. (Dkt. 80) at 2.)

Discovery will proceed with respect to Plaintiffs' information-policy and individualized-notice claims. Defendants suggest that the court has left them on uncertain footing by reserving decision on whether discovery should proceed pending resolution of the parties' dispute over the adequacy of the administrative record. (Defs. Oct. 18 Stay Mot. at 1.) To the contrary, the court expressly denied Defendants' motion for a temporary or permanent stay with respect to discovery regarding Plaintiffs' information-policy and individualized-notice claims. (Oct. 17 M&O at 3-4.) Defendants still have yet to offer any reason why the court's review of these claims should be confined to an administrative record that only purports to document Acting Secretary Duke's decision to rescind the DACA program. The administrative record, the court notes, also sheds no light on whether or why Defendants allegedly (1) removed protections on the use of DACA beneficiaries' information for immigration-enforcement purposes; and (2) failed to provide DACA beneficiaries with written notice that they had only a narrow window within which to reapply for deferred action or work authorization, or that they were no longer entitled to do so. (Id.)

The court also denies Defendants' motion for a stay of discovery and the Privilege-Log Requirement with respect to Plaintiffs' direct challenges to the decision to end the DACA program. As for Defendants' argument that discovery should be stayed pending resolution of

5

their anticipated dispositive motion, the court observes that courts in this district do not automatically stay discovery pending resolution of a motion to dismiss. Doe v. New York City Dep't of Educ., No. 16-CV-1684 (NGG) (RLM), 2016 WL 7165953, at *1 (E.D.N.Y. Dec. 7, 2016). Courts will, however, stay discovery, when the party seeking the stay shows "good cause." Fed. R. Civ. P. 26(c)(1). In considering whether such party has shown good cause, the court considers "1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, 2) the breadth of discovery and the burden of responding to it, and 3) the risk of unfair prejudice to the party opposing the stay." Negrete v. Citibank, N.A., No. 15-CV-7250 (RWS), 2015 WL 8207466, at *1 (S.D.N.Y. Dec. 7, 2015). Based on its consideration of these factors, the court concludes that Defendants have not carried their burden of showing that discovery should be stayed.

First, Defendants have not shown that Plaintiffs' claims are unmeritorious. In their September 22 Letter and their September 29 Motion, Defendants argued, in a combined total of eight sentences, that the decision to end the DACA program was a presumptively unreviewable exercise of prosecutorial discretion and that it was reasonable in light of the litigation risk posed by maintenance of the DACA program.[3] (Defs. Sept. 22 Ltr. at 2-3; Mot. at 5-6.) The court does not fault Defendants for this cursory briefing at this point in the proceedings—Defendants' dispositive motion is not due for several months. (Oct. 2, 2017, Min. Entry.) But it cannot be said that, at this point in the proceedings, Defendants have made a "strong showing" that Plaintiffs' claims lack merit. To the extent that Defendants can argue that certain of Plaintiffs' claims are unmeritorious, and thus that discovery with respect to those claims is unwarranted, Defendants are free to raise those arguments with Judge Orenstein in the first instance.

---

[3] By the court's count, these arguments amount to three sentences in the September 22 Letter and five sentences in the September 29 Motion.

6

Nor have Defendants established that discovery should be stayed because the court's review is limited to the administrative record produced on October 6, 2017. First, Defendants have still not explained why the court's review of Plaintiffs' information-policy and individualized-notice claims should be restricted to an administrative record that documents the decision to rescind DACA without addressing those collateral decisions. Second, although Plaintiffs' motion to compel is not properly presented here, the court notes that it is not at all clear that Defendants applied the correct standard when compiling the administrative record, which properly includes all documents "directly or indirectly" considered by the relevant agency decisionmaker(s) when deciding to end the DACA program. See Comprehensive Cmty. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012). (Oct. 17 M&O at 3-5.)

Second, Defendants have not shown that Plaintiffs' requested discovery is especially broad or burdensome, particularly in light of the stakes of this case. Although Defendants have indicated they will oppose deposition discovery targeting cabinet-level officials and any discovery requests directed at the White House (Defs. Sept. 22 Ltr. at 3), Plaintiffs have indicated that they intend to seek only limited deposition discovery, which does not target cabinet-level officials (Batalla Vidal Pls. Sept. 22 Ltr. Regarding Discovery (Dkt. 66) at 3; State Pls. Oct. 3, 2017, Resp. in Opp'n to Defs. Mot. to Vacate (New York v. Trump Dkt. 49) at 7 n.6; Oct. 6, 2017, Joint Status Report (Dkt. 78); Oct. 18, 2017, Joint Status Report (Dkt. 88)). The court is sensitive to Defendants' concerns about subjecting senior government officials to discovery and the prospect that Plaintiffs may burden the government with open-ended requests for production. (See Defs. Oct. 18 Stay Mot. at 2-3.) At this point in the proceedings, however, Defendants have not shown that the discovery sought by Plaintiffs warrants a stay (particularly in

7

light of the prejudice that Plaintiffs would experience as a result of a stay, discussed in the following section).[4]

Defendants' arguments are particularly unavailing when considering the third and most important factor, the prejudice that Plaintiffs would suffer as a result of a stay. Defendants ask the court to stay all discovery (as well as the Privilege-Log Requirement) pending the resolution of their forthcoming dispositive motion. (Pls. Sept. 29 Mot. to Vacate at 5.) The court will not, however, receive Defendants' fully briefed dispositive motion until January 13, 2018. Even if the court were to resolve that motion immediately, less than two months would remain before the March 5, 2018, deadline, on which existing DACA benefits not subject to renewal would begin to expire. If Defendants' arguments for dismissal were unmeritorious, and Plaintiffs' suits were to proceed, insufficient time would remain for Plaintiffs to conduct any necessary discovery and to seek relief from this court, and for this court to rule on such a motion for relief, prior to the March 5 deadline. While the court is mindful of the burden that the expedited discovery schedule may place on the Government, this urgency is the unavoidable result of Defendants' own decision to terminate, on relatively short notice, a program directly benefiting hundreds of thousands of individuals. Discovery must proceed in advance of the resolution of Defendants' anticipated dispositive motions for the court to effectively adjudicate these cases in an appropriately expedition manner, if Defendants' motions are unavailing.

The court is also mindful that allowing discovery to proceed pending resolution of the parties' dispute about the adequacy of the administrative record may cause Defendants some discomfort. Defendants may be required, as a result of this discovery schedule, to disclose

---

[4] As discussed below, the court will, however, narrow the scope of the Privilege-Log Requirement in order to address Defendants' objection that the requirement applies to documents outside the scope of the administrative records and cannot be complied with in any reasonable amount of time.

8

information that may not be relevant to the adjudication of certain of Plaintiffs' claims, if the administrative record that they have already produced is ultimately determined to be complete. Defendants' complaints that allowing discovery to proceed in the interim places them "in an untenable position" and "forecloses any realistic chance of success on these arguments in district court," are, however, overstated. (Defs. Oct. 18 Stay Mot. at 3.) If the court concludes that the administrative record is complete, and thus that discovery outside the record is unwarranted, it can confine its review to that record. Likewise, if the court concludes that no privilege log is required with respect to documents withheld from the administrative record, the court can simply disregard that log. The court is, however, mindful that overbroad discovery could inappropriately interfere with agencies' day-to-day workings, and thus will narrow the Privilege-Log Requirement as stated in the following section.

### III. THE COURT WILL NARROW THE SCOPE OF THE PRIVILEGE-LOG REQUIREMENT

In addition to arguing generally that they should not be required to compile a privilege log, Defendants also argue that the Privilege-Log Requirement remains overbroad, and imposes an impossible-to-meet deadline. (Defs. Oct. 18 Stay Mot. at 3-4.) They contend that the Privilege-Log Requirement improperly covers documents that would not have been included within the administrative record (id. at 4) and—offering some substantiation to their heretofore-conclusory claims that the requirement imposes an impossible burden on the Government—assert that approximately 1.2 million DHS documents and another 90,000 DOJ documents may fall within the scope of the Privilege-Log Requirement. (Id. at 4.) In light of these concerns, which Defendants have also presented in affidavits submitted to the U.S. District Court for the Northern District of California in connection with related challenges pending there before Judge William Alsup, the court agrees that the Privilege-Log Requirement should be narrowed further.

9

Defendants are required to identify and assert privilege with respect to documents withheld from the administrative record on privilege grounds. The "full" or "whole" administrative record includes all materials "directly or indirectly" considered by an agency decisionmaker at the time he or she made the challenged decision. See Comprehensive Cmty. Dev., 890 F. Supp. 2d at 308. Thus, the administrative record considers not only materials directly considered by the agency decisionmaker, but also "all materials that 'might have influenced the agency's decision,'" including any "work and recommendations of subordinates" on which the agency decisionmaker based his or her decision. Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (quoting Bethlehem Steel v. EPA, 638 F.2d 994, 1000 (7th Cir. 1980)); see also Order re Motion to Complete Administrative Record (Dkt. 12) at 3-8, 11-12, Regents of the University of California v. U.S. Dep't of Homeland Sec., No. C-17-05211 (Oct. 17, 2017). While Defendants appear to argue that the administrative record includes only materials immediately before the top-level administrative decisionmaker, this reading fails to account for cases holding that the administrative record also includes materials that the agency decisionmaker "indirectly" or "constructively" considered. See Wildearth Guardians v. U.S. Forest Serv., 713 F. Supp. 2d 1243, 1256 (D. Colo. 2010) (administrative record includes materials "so heavily relied on in . . . recommendations that the decision maker constructively considered" them).

To clarify that the Privilege-Log Requirement aligns with the proper scope of the administrative record, the court narrows that requirement as follows: Defendants are required to produce a privilege log that identifies and asserts privilege with respect to materials withheld from the administrative record on privilege grounds that (1) Attorney General Sessions or Acting Secretary Duke actually considered, as part of their decision to terminate the DACA program;

10

and (2) their first-tier subordinates—i.e., anyone who advised them on the decision to terminate the DACA program—considered in connection with formulating those recommendations. If Defendants correctly designated the administrative record, Defendants presumably already identified and analyzed claims of privilege with respect to those documents prior to the October 6, 2017, deadline for submitting the administrative record, minimizing the burden associated with the production of this privilege log. By Monday, October 23, 2017, the parties are directed to file supplemental letter briefs, not to exceed five pages each, discussing whether Defendants should be required to identify and assert privilege with respect to any materials considered by second-tier subordinates (i.e., anyone who advised any first-tier subordinates to Attorney General Sessions or Acting Secretary Duke) in this matter.

The court reiterates that DOJ documents fall within the scope of the Privilege-Log Requirement. Defendants have not explained their conflicting representations to the court as to whether Attorney General Sessions was partly responsible for the decision to end the DACA program. Until they do so, forthrightly and with citations to legal authority, the court will continue to treat DHS and DOJ as joint decisionmakers for these purposes.

## IV. THE COURT DENIES DEFENDANTS' MOTION FOR A STAY PENDING MANDAMUS

Lastly, the court denies Defendants' motion for a stay pending mandamus. In considering a motion for a stay pending mandamus, the court considers the same factors as it considers on a motion for a stay pending appeal. Hoop v. Andrews, No. 1:06-CV-603, 2009 WL 2431285 (S.D. Ohio Aug. 6, 2009). In this circuit, those are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

11

other parties interested in the proceeding; and (4) where the public interest lies." In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (footnote omitted).

Balancing those factors, the court finds that a stay pending mandamus is not warranted. With respect to the first factor, Defendants offer no separate grounds for that stay, nor do they cite any controlling or persuasive case law in support of a stay. It is thus difficult to say that they have made any showing of likelihood of success on the merits. Nor does the court find that they are likely to succeed on the merits of their argument that they should not be subject to discovery or required to produce a privilege-log, for the reasons stated in this order, the court's prior orders, and Judge Alsup's well-reasoned order granting plaintiffs' motion to compel completion of the administrative record in Regents of the University of California v. U.S. Department of Homeland Security, No. C-17-05211 (N.D. Cal. Oct. 17, 2017). With respect to the third factor, in light of the expedited discovery schedule for this case, the court finds that any delay of discovery would prejudice plaintiffs, for the reasons discussed above. The court concludes that these factors, taken together, outweigh the relatively minor harm to Defendants of permitting discovery to continue and considerations of public interest, some version of which both sides in this case have claims to advance.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion for a stay of discovery and the Privilege-Log Requirement is GRANTED in part and DENIED in part, and Defendants' motion for a stay pending mandamus is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
       October 19, 2017

/s Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge