# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, ANTONIO ALARCON, ELIANA FERNANDEZ, CARLOS VARGAS, MARIANO MONDRAGON, and CAROLINA FUNG FENG, on behalf of themselves and all other similarly situated individuals, and MAKE THE ROAD NEW YORK, on behalf of itself, its members, its clients, and all similarly situated individuals.<br><br>*Plaintiffs*,<br><br>*v.*<br><br>ELAINE C. DUKE, Acting Secretary, Department of Homeland Security, JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States, and DONALD J. TRUMP, President of the United States,<br><br>*Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Case No. 1:16-cv-04756 (NGG) (JO)

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT ................................................................................................................... 4

    I.      Defendants' Decision to Terminate DACA is Not Immune from APA Review ............ 4

       A.    Defendants' Termination of DACA Is Not Immune from APA Review as a Decision "Committed to Agency Discretion by Law" Because the Court Has Meaningful Standards to Apply ........................................................................................ 5

       B.    That Defendants' Termination of a Programmatic Federal Policy Is Immigration-Related Does Not Change the Above Analysis ...................................... 10

       C.    Section 701(a)(2) Does Not Limit Plaintiffs' Constitutional Claims ........................ 11

    II.     Section 1252(g) Does Not Preclude Jurisdiction of this Case ....................................... 12

    III.    Make the Road New York Has a Cause of Action Under the APA ............................... 16

CONCLUSION ................................................................................................................ 18

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Abourezk v. Reagan,*
785 F.2d 1043 (D.C. Cir. 1986) ........................ 17

*Arpaio v. Obama,*
797 F.3d 11 (D.C. Cir. 2015) ........................ 6

*Botezatu v. I.N.S.,*
195 F.3d 311 (7th Cir. 1999) ........................ 15

*Calcano-Martinez v. I.N.S.,*
232 F.3d 328 (2d Cir. 2000) ........................ 13

*Califano v. Sanders,*
430 U.S. 99 (1977) ........................ 5

*Caplin & Drysdale, Chartered v. United States,*
491 U.S. 617 (1989) ........................ 17

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971) ........................ 5, 12

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.Á.R.L.,*
790 F.3d 411 (2d Cir. 2015) ........................ 3

*Coyotl v. Kelly,*
No. 1:17-cv-1670-MHC, 2017 WL 2889681 (N.D. Ga. June 12, 2017) ........................ 15

*Crowley Caribbean Transp., Inc. v. Peña,*
37 F.3d 671 (D.C. Cir. 1994) ........................ 6, 7

*Demore v. Kim,*
538 U.S. 510 (2003) ........................ 14

*Dunlop v. Bachowski,*
421 U.S. 560 (1975) ........................ 4

*Fornalik v. Perryman,*
223 F.3d 523 (7th Cir. 2000) ........................ 14

*Franklin v. Massachusetts,*
505 U.S. 788 (1992) ........................ 11

ii

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg. Eyeglasses*,
 545 U.S. 308 (2005) .................................................................................. 12

*Hawaii v. Trump*,
 859 F.3d 741 (9th Cir. 2017) ..................................................................... 18

*Heckler v. Chaney*,
 470 U.S. 821 (1985) ........................................................................... *passim*

*Hunt v. Wash. State Apple Advert. Comm'n*,
 432 U.S. 333 (1977) .................................................................................... 17

*I.C.C. v. Bhd. of Locomotive Eng'rs*,
 482 U.S. 270 (1987) .................................................................................... 10

*I.N.S. v. Yueh-Shaio Yang*,
 519 U.S. 26 (1996) ................................................................................... 5, 6

*Int'l Refugee Assistance Project v. Trump*,
 No. TDC-17-0361, No. TDC-17-2921, No. TDC-17-2969, 2017 WL 4674314
 (D. Md. Oct. 17, 2017) ........................................................................... 6, 18

*Kenney v. Glickman*,
 96 F.3d 1118 (8th Cir. 1996) ....................................................................... 6

*Kwai Fun Wong v. United States*,
 373 F.3d 952 (9th Cir. 2004) ..................................................................... 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 134 S. Ct. 1377 (2014) ............................................................................... 16

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ..................................................................................... 4

*Lunney v. United States*,
 319 F.3d 550 (2d Cir. 2003) ....................................................................... 11

*Mach Mining, L.L.C. v. EEOC*,
 135 S. Ct. 1645 (2015) ................................................................................. 4

*Mada-Luna v. Fitzpatrick*,
 813 F.2d 1006 (9th Cir. 1987) ..................................................................... 6

*New York City Emps. Ret. Sys. v. S.E.C.*,
 45 F.3d 7 (2d Cir. 1995) .............................................................................. 6

*Perales v. Casillas*,
　903 F.2d 1043 (5th Cir. 1990) ......................................................................... 6, 11

*Powers v. Ohio*,
　499 U.S. 400 (1991) ............................................................................................. 17

*Ragin v. Harry Macklowe Real Estate Co.*,
　6 F.3d 898 (2d Cir. 1993) .................................................................................... 17

*Reno v. American-Arab Anti-Discrimination Committee*,
　525 U.S. 471 (1999) ............................................................................ 6, 12, 13, 15

*Robbins v. Reagan*,
　780 F.2d 37 (D.C. Cir. 1985) ...................................................................... *passim*

*Salazar v. King*,
　822 F.3d 61 (2d Cir. 2016) ....................................................................... 4, 5, 6, 16

*Sharkey v. Quarantillo*,
　541 F.3d 75 (2d Cir. 2008) .................................................................................... 4

*Smith v. Kansas City Title & Tr. Co.*,
　255 U.S. 180 (1921) ............................................................................................. 12

*Texas v. United States*,
　809 F.3d 134 (5th Cir. 2015) ............................................................................... 14

*Torres v. U.S. Dep't of Homeland Sec.*,
　No. 17-cv-1840, 2017 WL 4340385 (S.D. Cal. Sept. 29, 2017) ........................... 15

*Trump v. Int'l Refugee Assistance Project*,
　137 S. Ct. 2080 (2017) ......................................................................................... 18

*Trump v. Int'l Refugee Assistance Project*,
　No. 16-1540, 2017 WL 4782860 (U.S. Oct. 24, 2017) .......................................... 18

*U.S. Dep't. of Labor v. Triplett*,
　494 U.S. 715 (1990) ............................................................................................. 17

*United States v. Armstrong*,
　517 U.S. 456 (1996) ............................................................................................... 6

*Vasquez v. Aviles*,
　639 F. App'x 898 (3d Cir. 2016) ......................................................................... 15

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche L.L.P.*,
   549 F.3d 100 (2d Cir. 2008)........................................................................ 4

*Warth v. Seldin*,
   422 U.S. 490 (1975)................................................................................. 17

*Webster v. Doe*,
   486 U.S. 592 (1988)................................................................................. 11

*Westchester v. U.S. Dep't of Hous. & Urban Dev.*,
   778 F.3d 412 (2d Cir. 2015)...................................................................... 5

*Zadvydas v. Davis*,
   533 U.S. 678 (2001)................................................................................. 15

## STATUTES, RULES, & REGULATIONS

5 U.S.C. § 701(a)(2) ......................................................................... 5, 10, 11

5 U.S.C. §§ 701 *et. seq.*................................................................................ 6, 12

8 C.F.R. § 109.1(b)(7) ............................................................................... 9

8 C.F.R. § 274a.12(c)(14) .......................................................................... 9

8 U.S.C. § 1103(a)(3) ................................................................................. 9

8 U.S.C. § 1252(g) ........................................................................... *passim*

28 U.S.C. § 1331 ...................................................................................... 12

Fed. R. Civ. P. 12(b)(1)..................................................................... 1, 3, 16

Fed. R. Civ. P. 12(b)(6) ............................................................................. 16

Pub. L. No. 113-76, Div. F, tit. II, 128 Stat. 5, 251 (Jan. 17, 2014) .......... 9

Pub. L. No. 110-329, 122 Stat. 3574, 3659 (Sept. 30, 2008)...................... 9

## OTHER AUTHORITIES

Memorandum Opinion for the Secretary of Homeland Security and the Counsel to the President,
   The Department of Homeland Security's Authority to Prioritize Removal of Certain Aliens
   Unlawfully Present in the United States and to Defer Removal of Others,
   *Opinions of the Office of Legal Counsel of the Department of Justice* (Op. O.L.C. Vol. 38)

(Nov. 19, 2014), https://www.justice.gov/file/179206/download ............................................... 9

Remarks on DACA, Attorney General Jeffrey Beauregard Sessions
(Sept. 5, 2017), https://www.justice.gov/opa/speech/attorney-general-sessions-delivers-
remarks-daca. ................................................................................................................................ 3

## INTRODUCTION

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano announced the creation of the Deferred Action for Childhood Arrivals ("DACA") program. As Defendants themselves have explained, DACA is a program that provided guidance for the Department of Homeland Security's ("DHS") exercise of prosecutorial discretion in the form of a grant of deferred action, based on a case-by-case determination by DHS officials. *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (ECF No. 95-1) at 4-6.

Under the DACA program, millions of people benefitted, including but not limited to DACA recipients (like the individual Plaintiffs in this case), and their families, communities, and employers (including Plaintiff Make the Road New York). Plaintiffs, on behalf of themselves and others similarly situated, have challenged the abrupt and unlawful manner in which DACA was terminated.

For purposes of Defendants' Rule 12(b)(1) motion, all of Plaintiffs' allegations must be taken as true. Defendants nonetheless maintain that their decision to terminate DACA is entirely immune from judicial review even if, as Plaintiffs allege: Defendants' stated reasons for terminating DACA are legally erroneous and based in substantial part on a desire to discriminate against Latinos and Mexicans. Defendants contend this Court lacks power to review even if the termination of DACA injures millions of people by failing to comply with procedural due process and the procedural protections of the Administrative Procedures Act ("APA") and the Regulatory Flexibility Act ("RFA").[1]

---

[1] Plaintiffs also allege that the DACA termination included changes to the confidentiality policy, under which DACA applicants were promised that the information they provided the government (including about their parents) would not be used for immigration enforcement purposes except in narrow, delineated circumstances; Plaintiffs challenge the changes to that policy under the APA. *See* Second Am. Compl. ("SAC") (ECF No. 60) ¶¶ 137, 143, 151, 153-54.

As explained below, all of Defendants' jurisdictional and justiciability arguments fail because they are rooted in the flawed characterization of Plaintiffs' claims as challenging denials of deferred action to specific individuals. This simply is not the case. Plaintiffs challenge the wholesale termination of the DACA program, an agency action that is appropriate for judicial review.

Defendants' theory of jurisdiction-stripping is dangerously broad. This Court is not being asked to interfere with or block an individual removal proceeding or deportation, nor to set deferred action priorities for federal immigration officials. Yet Defendants attempt to dramatically expand narrow restrictions on judicial review of decisions of that nature to cut off *any* judicial review of *all* actions related to deferred action. Their contentions for doing so are unsupported by precedent, logic, or our constitutional separation of powers, none of which give the Executive the kind of blank check that the Trump Administration currently claims.

Finally, this Court should be wary of Defendants' attempted invocation of absolute discretion and non-justiciability for the additional reason that Defendants have repeatedly stated that DACA was terminated because courts, including the Supreme Court of the United States, would enjoin the purportedly unreviewable exercise of prosecutorial discretion. Defendants cannot have it both ways; they cannot both characterize the termination of DACA as motivated by prospective judicial review, yet bar the Court from reviewing it.

For all these reasons, Defendants' motion should be denied.

## BACKGROUND

On September 5, 2017, Defendants announced the termination of DACA, categorically ending the availability of deferred action for nearly 800,000 young immigrants who have relied on DACA to study, work, and live securely in their communities. The termination, which was

announced by the Department of Justice ("DOJ") at a press conference, fundamentally changed the rules that apply to those who had received deferred action through DACA. Defendants ended discretionary review of any newly filed individual requests and set a new and unprecedented timeline for a final renewal for a subset of affected individuals. By memorandum from Acting Secretary Duke (released at the aforementioned press conference), DHS officials were ordered to reject all new DACA applications as of September 5, 2017 and to reject all renewal applications received after October 5, 2017.[2]

Defendants' decision to end the DACA program admittedly did not take into account any of the benefits of DACA or the reliance interests it has engendered. Instead, Defendants state that their decision was based on perceived "litigation risk," and the erroneous legal conclusion that DACA was unlawful. Defs.' Mem. at 1. As Defendants explain it, the decision to terminate DACA was based on a series of contingent future events: that Texas and other states would sue to enjoin DACA; that DACA would be held unlawful; that DACA would be enjoined; and then that said injunction would be extremely disruptive. *See id.* As Defendants tell it, the only alternative they perceived to this series of contingencies was to immediately terminate DACA. *Id.*

## LEGAL STANDARD

A district court may only dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.Á.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (citations omitted). In reviewing a motion to dismiss, the Court must "accept as true all material allegations of the complaint[ ] and . . . construe the complaint in favor of the complaining party."

---

[2] *See* Remarks on DACA, Attorney General Jeffrey Beauregard Sessions (Sept. 5, 2017), https://www.justice.gov/opa/speech/attorney-general-sessions-delivers-remarks-daca.

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche L.L.P.*, 549 F.3d 100, 106 (2d Cir. 2008) (internal quotation marks omitted). "At the pleading stage," courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (alteration in original) (internal quotations and citation omitted).

## ARGUMENT

The Court should deny Defendants' motion to dismiss because: (1) Defendants' decision to terminate DACA is not committed to agency discretion, and the Court has meaningful standards to apply; (2) 8 U.S.C. § 1252(g) is only applicable in narrow circumstances that are not at issue in this litigation; and (3) Plaintiff Make the Road New York has a cause of action under the APA.

**I.    Defendants' Decision to Terminate DACA is Not Immune from APA Review**

There is a strong presumption in favor of judicial review of agency actions, subject only to narrow exceptions. *See, e.g.*, *Mach Mining, L.L.C. v. EEOC*, 135 S. Ct. 1645, 1651 (2015). This strong presumption of reviewability can only be overcome by "clear and convincing evidence" that Congress intended for the agency action to be unreviewable. *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008); *see also Salazar v. King*, 822 F.3d 61, 75 (2d Cir. 2016) (noting that "[i]n the absence of an express statutory prohibition," the agency has a "heavy burden" to show that its decision is unreviewable (citing *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975)). Defendants argue that the decision to terminate DACA is an "enforcement" action, immune from APA review because prosecutorial discretion is "committed to agency discretion by law," such that the Court has no meaningful standard by which to evaluate whether the termination of DACA was lawful. *See* Defs.' Mem. at 12-16. In addition, Defendants attempt to distance themselves from applicable

4

case law by claiming that the context of immigration law makes this case somehow unique from those precedents. *See id.* at 16-17. Defendants are wrong on both fronts.

 **A. Defendants' Termination of DACA Is Not Immune from APA Review as a Decision "Committed to Agency Discretion by Law" Because the Court Has Meaningful Standards to Apply**

 A narrow exception to APA review is for action that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). As the Supreme Court has emphasized, this is a "very narrow exception" only "applicable in . . . rare instances." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). This narrow exception only applies if the applicable statutes, regulations, formal or informal agency guidance, or settled course of adjudication provide absolutely nothing against which the court may review the action at hand. *See I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996); *Westchester v. U.S. Dep't of Hous. & Urban Dev.*, 778 F.3d 412, 419 (2d Cir. 2015); *Salazar*, 822 F.3d at 76.

 Defendants' argument that this exception applies here mischaracterizes the termination of DACA as a decision about whether to enforce immigration law as to particular individual noncitizens. *See* Defs.' Mem. at 13-14. But Plaintiffs do not challenge the application of federal immigration law (or the decision to forebear from doing so) to any particular individual; instead, they challenge the decision by Defendants to terminate a federal program through which nearly 800,000 people have directly benefitted, and the manner in which that termination was carried out. Defendants cite no cases even suggesting that such a sweeping change to a programmatic federal

policy is immune from judicial review. On the contrary, courts have consistently found that challenges to broad agency policies dealing with enforcement are reviewable.[3]

Instead, to support their expansive interpretation of § 701(a)(2), Defendants rely only on cases challenging a specific agency decision to take or not take discretionary enforcement action. *See* Defs.' Mem. at 13-15. *Heckler v. Chaney* involved an agency's decision not to take particular requested enforcement actions. 470 U.S. 821 (1985). *Reno v. American-Arab Anti-Discrimination Committee* ("*ADC*") was a challenge to an agency decision to target specific individuals for deportation. 525 U.S. 471 (1999). *United States v. Armstrong* considered the circumstances under which criminal defendants could challenge the prosecutor's decision to enforce criminal laws against them specifically. 517 U.S. 456 (1996). And *Mada-Luna v. Fitzpatrick*—which concerned a particular noncitizen's request for deferred action—actually undermines Defendants' own contention; while it noted (in dicta) that denial of that individual's request was not reviewable, *Mada-Luna* considered his APA challenge to the deferred action operating instructions on the merits. 813 F.2d 1006 (9th Cir. 1987). Plaintiffs do not challenge any specific enforcement decision, and so none of these cases support the weight Defendants attempt to put on them.[4]

---

[3] *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, No. TDC-17-0361, No. TDC-17-2921, No. TDC-17-2969, 2017 WL 4674314, at *13 (D. Md. Oct. 17, 2017); *Kenney v. Glickman*, 96 F.3d 1118, 1123-24 (8th Cir. 1996); *New York City Emps. Ret. Sys. v. S.E.C.*, 45 F.3d 7, 10-11 (2d Cir. 1995); *Crowley Caribbean Transp., Inc. v. Peña*, 37 F.3d 671, 677 (D.C. Cir. 1994); *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985).

[4] The other cases Defendants cite are even further afield. *Perales v. Casillas* relied on a dated, out-of-circuit rule that only "statutory or regulatory provisions" could offer a standard for the court to apply on review. 903 F.2d 1043, 1047 (5th Cir. 1990). *But see I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (establishing that an established course of agency practice is sufficient to offer a basis for judicial review); *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016) (same). *Arpaio v. Obama* affirmed dismissal of a county sheriff's challenge to the DAPA deferred action program for lack of standing. 797 F.3d 11 (D.C. Cir. 2015).

The "complicated balancing of a number of factors" required in determining whether to take a particular enforcement action, *Chaney*, 470 U.S. at 831, is wholly absent from the categorical decision to end the DACA program. The mechanics of the program's termination illustrate that point: the deadlines are not based on individualized factors or enforcement priorities; nor is the final March 5, 2018 cut-off based on the complicated balancing of factors at play when deciding whether to take a particular enforcement action. To the contrary, DHS has given its staff categorical instructions to reject *all* initial requests for DACA received after September 5, 2017, and *all* requests for DACA renewals received after October 5, 2017. Wholesale termination of a program through which individuals could be considered for prosecutorial discretion simply does not fall under the *Chaney* presumption against reviewability. *See, e.g.*, *Crowley Caribbean Transp., Inc. v. Peña*, 37 F.3d 671, 676-77 (D.C. Cir. 1994) (distinguishing general enforcement policy decisions from "the sort of mingled assessments of fact, policy, and law that drive an individual enforcement decision").

The D.C. Circuit case *Robbins v. Reagan* is instructive as to why Defendants' reliance on *Chaney* is misplaced. 780 F.2d 37 (D.C. Cir. 1985). *Robbins* set out at least three reasons why *Chaney* and its presumption against reviewability did not apply in a case involving an agency's decision to rescind a commitment to fund the building of a shelter. *Id.* at 46-47. First, while *Chaney* reasoned that decisions declining to take enforcement action do not implicate the exercise of "coercive power over individuals' liberty or property rights, and thus do not infringe upon areas that courts often are called upon to protect," 470 U.S. at 832 (emphasis omitted), the rescission of a commitment is a different matter. As *Robbins* explained:

> By contrast, rescissions of commitments, whether or not they technically implicate liberty and property interests as defined under the fifth and fourteenth amendments, exert much more direct influence on the individuals or entities to whom the repudiated commitments were made.

*Robbins*, 780 F.2d at 47. Second, *Robbins* held that reviewing an agency's rescission of its own prior policy did not implicate any concerns that the court would be taking on the discretionary balancing role of the agency. "Rather, the court is simply ensuring a limited degree of fidelity to the agency's own decision [on] how to use its resources." *Id.* Third, whereas an agency's decision *not* to take action may "necessitate a focusless evaluation of agency policy and priorities—a role for which courts are not suited," "[r]ecissions of prior obligations clearly fall into the 'focused action' category," giving courts a "specific affirmative action to be reviewed." *Id.* For these reasons, the D.C. Circuit in *Robbins* held that the agency's decision to rescind a prior commitment did not fall within the "committed to agency discretion by law" exemption. In so holding, the D.C. Circuit cautioned, "[t]his court has long held that an agency's change in direction from a previously announced intention is a danger signal that triggers scrutiny to ensure that the agency's change of course is not based on impermissible or irrelevant factors." *Id.* at 48.

The wholesale termination of the DACA program is procedurally analogous to—and of much larger scope and import than—the situation in *Robbins*. Here, DHS rescinded its own policy and commitment to hundreds of thousands of individuals who have reordered their lives in reliance on that commitment. The same three reasons the *Robbins* Court gave for why *Chaney*'s presumption against reviewability did not apply are equally germane here: (1) the DACA termination was an affirmative reversal of agency policy effecting a "coercive power over individuals' liberty or property rights" that *Chaney*'s non-action avoided and that partially justified its immunity from review, 470 U.S. at 832; (2) reviewing DHS and DOJ's rescission of their own policy does not implicate a concern that the Court would interfere with the discretionary balancing role of the agencies; and (3) the termination of the agencies' own prior policy gives the Court a "specific affirmative action to be reviewed." *Robbins*, 780 F.2d at 47.

In addition, the Court has meaningful standards and past agency guidance and practice with which to review the termination of the DACA program, including but not limited to federal congressional appropriations acts mandating DHS focus their enforcement efforts on those with serious criminal histories or who present national security threats;[5] statutory mandates regarding enforcement priorities;[6] formal DOJ and DHS regulations authorizing deferred action since the 1980s;[7] over fifty years of group-based deferred action programs, *see* Defs.' Mem. at 3, 6, none of which were ever terminated in this way; the 2012 DACA Memorandum itself, *see Robbins*, 780 F.2d at 47 (rescission of agency's own prior policy provides a "specific affirmative action to be reviewed"); and the Office of Legal Counsel's in-depth, published legal analysis of the proposal to expand the DACA program.[8] The Court has ample material with which to review the termination of the DACA program.

Defendants' explanation for the termination of DACA also undermines their attempt to analogize to *Chaney*. Defendants identified "litigation risk" as a primary basis for terminating DACA—revealing that there are available standards for a court to apply in reviewing the existence and structure of the DACA program. Notably, they did not rely on the kind of justifications that characterize decisions committed to agency discretion under *Chaney*—such as a concern about effective use of agency resources or case-specific factors. *See* 470 U.S. at 831-32. Defendants

---

[5] *See* Consolidated Appropriations Act, Pub. L. No. 113-76, Div. F, tit. II, 128 Stat. 5, 251 (Jan. 17, 2014); Consolidated Security, Disaster Assistance, and Continuing Appropriations Act, Pub. L. No. 110-329, 122 Stat. 3574, 3659 (Sept. 30, 2008).

[6] 8 U.S.C. § 1103(a)(3) (2012).

[7] *See* 8 C.F.R. § 109.1(b)(7) (1982); 8 C.F.R. § 274a.12(c)(14) (2017).

[8] Memorandum Opinion for the Secretary of Homeland Security and the Counsel to the President, The Department of Homeland Security's Authority to Prioritize Removal of Certain Aliens Unlawfully Present in the United States and to Defer Removal of Others, *Opinions of the Office of Legal Counsel of the Department of Justice* (Op. O.L.C. Vol. 38) (Nov. 19, 2014), https://www.justice.gov/file/179206/download.

provide this Court with no precedent that insulates a large-scale rescission of an entire program as immune from judicial review.

Defendants cannot take refuge under § 701(a)(2) when both the practical effect and stated reason for their actions are contrary to the narrow exception to APA review. Defendants' citation to *I.C.C. v. Bhd. of Locomotive Eng'rs ("BLE")*, 482 U.S. 270 (1987), does not change the analysis. *BLE* applies when the Court is satisfied that an agency decision is unambiguously discretionary and unreviewable. *Id.* at 283. That threshold step is what Defendants fail to demonstrate here. Defendants' stated reasons for terminating DACA—because DACA was unlawful and subject to immediate injunction by the Texas Attorney General—refute the basis for applying § 701(a)(2) in the first place. *BLE* does not bless agency doublespeak or mandate that court ignore practical reality. Where § 701(a)(2) *applies*, *BLE* confirms that an agency's volunteered rationale for taking "otherwise unreviewable action" is insufficient to overcome § 701(a)(2), 482 U.S. at 283. *BLE* does not require this Court to disregard Defendants' own legal and non-discretionary explanation for terminating DACA in deciding whether § 701(a)(2) applies at all to oust the Court of jurisdiction. Defendants fail to establish why jurisdiction should be assessed on a fundamentally different theory than how they publicly explained and defended the termination of the DACA program.

**B.   That Defendants' Termination of a Programmatic Federal Policy Is Immigration-Related Does Not Change the Above Analysis**

Misapplying *Chaney*, Defendants suggest that "[t]his presumption of nonreviewability applies with particular force when it comes to immigration." Defs.' Mem. at 14. That Defendants' challenged action occurred in the general context of immigration, however, does not change the analysis above. Contrary to Defendants' characterization of Plaintiffs' claims, the Court is *not* being called upon to review the intricate policy outcomes the DACA termination effected (or the

policy outcomes of the creation of DACA). Instead, Plaintiffs are contesting the abrupt and radical departure from prior policies and the procedural means by which Defendants chose to make that change. This is not a case where Plaintiffs' claims would require the Court to determine how Defendants should grant DACA relief, so as to threaten the agency's ability to balance discretionary factors, *see Perales v. Casillas*, 903 F.2d 1043, 1051 (5th Cir. 1990); or to review an agency action that is so desultory that there is no relevant law or guidance to apply, *see Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003) (holding unreviewable the U.S. Navy's statement that it did not have possession of a medal because there was no law to apply to review the Navy's discretion for possessing a physical object).

## C.    Section 701(a)(2) Does Not Limit Plaintiffs' Constitutional Claims

Even if 5 U.S.C. § 701(a)(2) precluded APA review (which, as explained above, it does not), Defendants cannot use it to block Plaintiffs' constitutional claims. The Supreme Court has recognized that judicial review of constitutional claims is still available even if an agency action is "committed to agency discretion" pursuant to § 701(a)(2). *Webster v. Doe*, 486 U.S. 592, 603 (1988). In *Webster*, for example, the Court held that a gay CIA agent's equal-protection and due-process claims must be allowed to go forward, notwithstanding the fact that the employment decision was "committed to agency discretion." *Id.* As the Court explained, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear," and Congress did not make such an intent clear in enacting the APA. *Id.*; *see also Franklin v. Massachusetts*, 505 U.S. 788, 801-03 (1992) (likewise holding constitutional claims justiciable, notwithstanding that the claims were unreviewable under the APA).

In sum, Defendants' arguments with respect to 5 U.S.C. § 701(a)(2) are simply inapplicable to this case. The wholesale and categorical termination of a program that provided case-by-case

deferred action eligibility for hundreds of thousands is an action that the Court may review using ample statutory and regulatory authority, together with the agencies' own policies, protocols, and longstanding practices, from which the termination of DACA is a radical departure. The "very narrow exception" to APA review for actions committed to agency discretion by law, *Overton Park*, 401 U.S. at 410, simply does not apply here, and therefore the APA provides for judicial review of the termination of the DACA program.

## II.      Section 1252(g) Does Not Preclude Jurisdiction of this Case

This Court has subject matter jurisdiction to consider Plaintiffs' claims under 5 U.S.C. §§ 701 *et seq.* (the Administrative Procedure Act), and 28 U.S.C. § 1331 (federal question jurisdiction).[9] Defendants argue, however, that 8 U.S.C. § 1252(g) strips this Court of jurisdiction. Defendants' reading of § 1252(g) comports neither with a plain reading of the statute nor controlling precedent.

The plain text of the Immigration and Nationality Act ("INA") refutes Defendants' jurisdiction argument. Section 1252(g) strips district courts of jurisdiction from reviewing only a limited set of discrete actions that the Secretary of Homeland Security may take: a "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *ADC*, 525 U.S. at 482 (emphases in original) (quoting § 1252(g)).[10] This lawsuit involves none of these discrete

_____

[9] The District Courts' authority to review federal questions is broad. *See, e.g., Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg. Eyeglasses*, 545 U.S. 308, 310 (2005) (holding that there can be federal question jurisdiction in the absence of a federal law creating a cause of action if there is an important national interest to be served in providing a "federal forum" for review); *Smith v. Kansas City Title & Tr. Co.*, 255 U.S. 180, 199 (1921) ("[W]here it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision.").

[10] Section 1252(g) reads, in full:

    (g) Exclusive jurisdiction

decisions. Plaintiffs do not challenge Defendants' decision to commence proceedings against any individual, to adjudicate a case against any individual, or execute a removal order against any individual. Plaintiffs challenge a substantially different agency action: the decision to categorically terminate a program that established criteria for granting deferred action to individuals.

In *ADC*, the Supreme Court confirmed that § 1252(g) is a narrow provision, strictly limited to the three specific actions outlined in its text. *Id. ADC* was explicit, in fact, that § 1252(g)'s sweep does *not* include all decisions or actions along the road to deportation. Writing for the majority, Justice Scalia explained:

> [Section 1252(g)] applies only to three discrete actions that the Attorney General may take[] . . . . There are of course many other decisions or actions that may be part of the deportation process-such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.
>
> It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

*Id.*

Contrary to Defendants' argument here, courts have repeatedly recognized that § 1252(g) is not "a general jurisdictional limitation" to claims that arise from or relate to actual or potential removal proceedings. *Id. See, e.g., Calcano-Martinez v. I.N.S.*, 232 F.3d 328, 339 n.5 (2d Cir. 2000) ("The Supreme Court thus held that [§ 1252(g)] applies in a very narrow class of cases.").

---

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

13

For example, in the State of Texas' challenge to the DAPA program, the district court and Fifth Circuit held that 1252(g) presented no bar. *Texas v. United States*, 809 F.3d 134, 164 (5th Cir. 2015), *rev'd,* (Nov. 25, 2015) (holding that 8 U.S.C. § 1252(g) did not apply and explaining, "Congress has expressly limited or precluded judicial review of many immigration decisions, including some that are made in the Secretary's 'sole and unreviewable discretion,' but DAPA is not one of them") (internal footnotes omitted). *See also Fornalik v. Perryman*, 223 F.3d 523, 532 (7th Cir. 2000) (holding that § 1252(g) presented no bar to reviewing procedurally conflicting deferred action determinations and defendants' failure to exercise discretion to resolve the conflict); *Kwai Fun Wong v. United States*, 373 F.3d 952, 964 (9th Cir. 2004) ("Following []*ADC*, we have narrowly construed § 1252(g).") (collecting cases).

The plain reading of the statute also draws support from other canons of statutory interpretation. There is a strong presumption in favor of allowing judicial review of administrative actions, and statutes should not be construed to preclude judicial review of unconstitutional actions. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." (citation omitted)).

Defendants' efforts to expand the scope of § 1252(g) have no merit. Defendants erroneously attempt to sweep Plaintiffs' claims into § 1252(g) by arguing that the rescission of DACA is a "necessary step" in commencing enforcement proceedings and that Plaintiffs cannot "circumvent" § 1252(g) by "singling out that single step [to deny DACA] for preemptive challenge." Defs.' Mem. at 18. However, the rescission of an individual's DACA status is not itself a necessary step to commence an enforcement proceeding against a DACA recipient, but rather (at most) a step that makes the former DACA recipient available for the commencement of removal proceedings against him. Even under Defendants' erroneous characterization, § 1252(g) does not

14

strip courts of jurisdiction over "necessary steps," and an expansive reading of the narrow text to cover all preliminary steps to removal is precisely what *ADC* rejected. *See* 525 U.S. at 482 (rejecting the contention that "that § 1252(g) covers the universe of deportation claims—that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases'"). Whether § 1252(g) applies is not based on the timing of the decision but rather the *nature* of the decision.

Second, Defendants' jurisdiction argument (again) mischaracterizes Plaintiffs' claims, attempting to blur the distinction between case-by-case denials of deferred action and the categorical termination of the program. The plain text of § 1252(g) only covers case-by-case decisions, and each of the cases Defendants cite in support of their expansive reading of § 1252(g) deals with *individual* determinations, a situation wholly different than what Plaintiffs challenge here.[11] *See ADC*, 525 U.S. at 471 (challenge to government's decision to institute removal proceedings against *individual* immigrants); *Botezatu v. I.N.S.*, 195 F.3d 311 (7th Cir. 1999) (noncitizen challenging Government's refusal to grant his *individual* request to forebear from executing his removal order); *Vasquez v. Aviles*, 639 F. App'x 898 (3d Cir. 2016) (same).

Finally, Defendants' broad invocation of the Executive's authority over foreign policy, *see* Defs.' Mem. at 14, does not insulate their action from judicial review, particularly considering that Defendants' decision to terminate DACA articulated *no* foreign policy considerations. Invoking the shibboleth of "foreign policy" does not insulate the actions of an executive agency from scrutiny; a reviewing court must "listen with care" to determine whether the agency's judgment actually "rest[s] on foreign policy expertise." *Zadvydas v. Davis*, 533 U.S. 678, 696 (2001) (despite

---

[11] Even with regard to individual decisions related to DACA, district courts have held that § 1252(g) is inapplicable. *Torres v. U.S. Dep't of Homeland Sec.*, No. 17-cv-1840, 2017 WL 4340385, at *4 (S.D. Cal. Sept. 29, 2017); *Coyotl v. Kelly*, No. 1:17-cv-1670-MHC, 2017 WL 2889681, at *9 (N.D. Ga. June 12, 2017) (§ 1252(g) did not bar judicial review of whether defendants complied with their own procedures in revoking plaintiff's DACA permit).

government's invocation of a foreign policy rationale—that judicial review of the viability of a detained noncitizen's removal would "interfere with 'sensitive' repatriation negotiations"—the government failed to explain how such review "could make a significant difference in th[at] respect"). The Secretary's memorandum terminating the DACA program is devoid of any foreign policy rationale for the decision, much less one founded on foreign policy expertise.

## III.   Make the Road New York Has a Cause of Action Under the APA

Defendants do not contest that any of the Plaintiffs have standing,[12] but nonetheless contend that Make the Road New York lacks a cause of action under the APA, arguing that the INA does not protect "advocacy organizations" from the "incidental effects" of "a denial of deferred action." Defs.' Mem. at 20-21. Once more, Defendants' arguments mischaracterize the relevant legal test and the claims Plaintiffs assert.

"[I]n the APA context," the zone of interests test is "not especially demanding." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1389 (2014) (citation and internal quotation marks omitted). A plaintiff's interest need only "arguably" fall within the zone of interests to have a cause of action, and the test "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Id.* (citation and quotation marks omitted); *see also* Salazar, 822 F.3d at 73.

Make the Road New York is a nonprofit organization dedicated to empowering immigrant, Latino, and working-class communities in New York; it provides direct services to thousands of

---

[12] Defendants additionally argue that Plaintiffs lack "standing" to assert their procedural due process claim, Defs.' Mem. at 35, but their argument is based on the sufficiency of the pleadings and arises under Rule 12(b)(6), not Rule 12(b)(1). In accordance with Judge Garaufis's order dated October 27, 2017 (ECF No. 98), Plaintiffs do not address that argument here.

clients applying for DACA, helping with the necessary paperwork and documentation, and offering large-group clinics to assist their members and clients with DACA. *See generally* SAC ¶¶ 43-61. Make the Road New York has more than 20,000 dues-paying members, including scores of current DACA recipients and other members who were or would have become eligible to apply for DACA had it not been terminated. *See id.* ¶¶ 46-50. Approximately a dozen of its current employees have DACA. *Id.* ¶ 47. Make the Road New York asserts standing on behalf of itself,[13] associational standing on behalf of its members,[14] and third-party standing on behalf of its clients.[15]

The various interests that Make the Road New York represents plainly fall within those protected by the INA, and it therefore has a cause of action under the APA. Make the Road New York's members and clients with DACA, for example, have precisely the same interests as the individual Plaintiffs (who Defendants have not argued lack a cause of action), including the interest in being able to lawfully work in the only country most of them have ever called home. And far from feeling only "incidental effects" from "a denial of deferred action," Defs.' Mem. at 21, the wholesale termination of DACA threatens to deprive Make the Road New York of a number of highly-valued employees (whom the INA will prohibit the organization from employing after their current periods of DACA expire), to say nothing of the multitude of other injuries the termination inflicts on the organization. In comparable circumstances, courts have had no trouble holding that organizational plaintiffs are within the zone of interests of the INA and therefore have a cause of

---

[13] *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (recognizing that an organization may have standing to seek "relief from injury to itself"); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993).

[14] *See generally Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

[15] *See generally Powers v. Ohio*, 499 U.S. 400, 410-11 (1991); *U.S. Dep't. of Labor v. Triplett*, 494 U.S. 715, 718-22 (1990); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989).

action under the APA. *See, e.g.*, *Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C. Cir. 1986) (organization that invites foreign nationals to speak at rallies); *Int'l Refugee Assistance Project v. Trump*, No. TDC-17-0361, No. TDC-17-2921, No. TDC-17-2969, 2017 WL 4674314, at *13 (D. Md. Oct. 17, 2017) (organizations that employ or collaborate with foreign nationals affected by President Trump's most recent travel ban of mostly majority-Muslim countries); *cf. Hawaii v. Trump*, 859 F.3d 741, 766 (9th Cir. 2017) (state that hires employees and enrolls students from countries affected by second version of the travel ban), *cert. granted sub nom. Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017) *and cert. granted, judgment vacated as moot*, No. 16-1540, 2017 WL 4782860 (U.S. Oct. 24, 2017).

## CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court deny Defendants' motion to dismiss.

Respectfully submitted,                                        Dated: November 1, 2017

/s/ Jessica R. Hanson

David Chen, Law Student Intern[†]
Susanna D. Evarts, Law Student Intern[†]
Victoria Roeck, Law Student Intern[†]
Healy Ko, Law Student Intern[†]
Hannah Schoen, Law Student Intern[†]
Emily Villano, Law Student Intern[†]
Muneer I. Ahmad, Esq.[†]
Marisol Orihuela, Esq.[†]
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SVCS. ORG.
michael.wishnie@yale.edu
Phone: (203) 432-4800


Amy S. Taylor, Esq. (AT 2056)
Deborah Axt, Esq. (DA 4885)
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: (718) 418-7690

† *Appearing* pro hac vice

Jessica R. Hanson, Esq. [†]
Mayra B. Joachin, Esq. [†]
Karen Tumlin, Esq.[†]
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd., #108-62
Los Angeles, CA 90070
Phone: (213) 639-3900


Justin Cox, Esq.[†]
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317
Phone: (678) 279-5441


Joshua A. Rosenthal, Esq.[†]
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street NW, Suite 200
Washington, DC 20005
Phone: (202) 216-0261

*Attorneys for Plaintiffs*

18