# EXHIBIT A

**The New York Times** | https://nyti.ms/2hpeGf5

N.Y. / REGION

# Post Office Fails to Deliver on Time, and DACA Applications Get Rejected

Dozens of young immigrants mailed renewal forms weeks before they were due. But their paperwork was delayed in the mail and then denied for being late.

## Leer en español

By LIZ ROBBINS    NOV. 10, 2017

The paperwork was mailed from New York in plenty of time. On Sept. 14, Allison Baker, a lawyer for the Legal Aid Society, sent a client's application to renew a permit that would let him stay and work in the United States legally as part of the Deferred Action for Childhood Arrivals program — long before the Oct. 5 deadline. It was sent certified mail to be safe.

Tracking data from the United States Postal Service shows the envelope arriving in Chicago on Sept. 16 on its way to the regional processing warehouse of the United States Citizenship and Immigration Services, the agency that administers the program known as DACA.

Then the packet started circling Chicago in a mysterious holding pattern. From Sept. 17 to Sept. 19, it was "in transit to destination." Then its tracking whereabouts disappeared until Oct. 4. Once again, it was "on its way."

On Oct. 6, a day too late, it was delivered. And the application, for a 24-year-old man who asked to be identified only as José because his legal status was uncertain, was rejected.

José was not alone. According to lawyers from across the New York region, in at least 33 other cases, unusually long Postal Service delays resulted in rejections of DACA applications, throwing the lives of their clients into frantic limbo. Lawyers in Boston and Philadelphia, which also send their applications to the Chicago processing center, say they have not seen evidence of an issue with the mail.

But in Chicago, in the backyard of the U.S. Citizenship and Immigration Services agency, there were at least 41 DACA recipients whose renewals, sent well before the deadline, arrived late, advocates said. According to Representative Luis V. Gutiérrez, Democrat of Illinois, an applicant sent a renewal on Sept. 13 and it arrived on Oct. 6. Another sent the paperwork on Sept. 21, and it was received on Oct. 9. "Because somebody else did not do their job correctly we are taking innocent young immigrants and making them deportable," said Mr. Gutiérrez in a statement. "That is unacceptable."

On Thursday, in a rare admission from a federal agency, the U.S. Postal Service took the blame. David A. Partenheimer, a spokesman for the post office, said there had been an "unintentional temporary mail processing delay in the Chicago area."

But the U.S. Citizenship and Immigration Services agency said nothing more could be done; the decisions were final.

"According to U.S.C.I.S. regulations, a request is considered received by U.S.C.I.S. as of the actual date of receipt at the location for filing such request," Steve Blando, a spokesman for the agency, wrote in a statement. He added: "U.S.C.I.S. is not responsible for the mail service an individual chooses, or for delays on the part of mail service providers."

He later added, though, that "U.S.C.I.S. is committed to working with the U.S.P.S. to understand and address the U.S.P.S. error that occurred that delayed the mail."

Because DACA is an executive order, signed by President Barack Obama in 2012, and not a statute, applicants cannot appeal the decision. Still, immigrants and their advocates viewed the agency's unwillingness to revisit their applications as harsh and unfair.

"You can't put the burden on the applicant to ensure the government agencies did their job," said Camille Mackler, the director of legal initiatives for the New York Immigration Coalition. "Can you imagine if the I.R.S. didn't pick up their mail for two weeks and you get a penalty because of it?"

The DACA program had offered temporary protection and work permits for about 800,000 young adults who had been brought to the United States illegally as children.

On Sept. 5, Attorney General Jeff Sessions announced after months of speculation that the Trump administration was canceling the program. Recipients were allowed to keep their permits until they expired at the end of the current two-year term. The administration also offered a brief renewal window for recipients whose permits were expiring before March 5, which set off a scramble across the country from legal service providers to assist applicants.

There are three U.S. Citizenship and Immigration Services intake locations, known as lockboxes, in the United States: in Phoenix, Chicago and Lewisville, Tex., a suburb of Dallas.

According to the immigration agency, its employees do not pick up the mail from the lockbox. The United States Department of the Treasury manages the process but uses a courier service that picks up the mail from post offices each morning. Express Mail items, the agency said, are picked up in the afternoon. Also, items are delivered to the lockbox by the courier services FedEx, DHL and the United Parcel Service.

In a memo after DACA was rescinded, the Department of Homeland Security said renewals had to be "accepted" by Oct. 5. Immigration lawyers contrasted that with a permanent residency opportunity the government offered in 2001, when applications only had to be postmarked by the deadline of April 30. Acknowledging the high volume of applications, the government offered a grace period for paperwork to be received by May 3.

Immigration lawyers questioned why that was not an option in this case.

Hasan Shafiqullah, director of the immigration unit of the Legal Aid Society in New York, was disturbed by the lack of compassion from the agency.

"From the clients' perspective, they did the right thing," Mr. Shafiqullah said. "Filing three weeks before should be sufficient, and U.S.C.I.S. needs to recognize that and needs to exercise discretion."

According to an Oct. 18 deposition of an immigration official conducted as part of a federal lawsuit in Brooklyn, 4,000 DACA applications arrived late. One hundred and fifty-four thousand people were eligible to apply for renewal and 132,000 applications were received on time.

Tata Camara, 32, who came to the United States at age 15 from Guinea, sent her application on Sept. 29; she said it was the earliest she could afford to apply, since that day she got a donation for the $495 application fee from the New Economy Project, a New York nonprofit. BronxWorks, a legal services agency, helped her prepare her application.

She had installed two apps on her phone to track her application in the mail, but she became anguished when they showed her envelope had arrived in Chicago on Oct. 1 but seemed to stall there. She called every supervisor she could in the Chicago post office.

"It doesn't make any sense, I mail stuff all the time," Ms. Camara said. "I can understand one day of delay. Two days at most. But you can't even tell me where it is?"

According to the tracking record, her application arrived "at the unit" on Oct. 5, but was not actually delivered until Oct. 6.

She said she made an appointment to discuss the application with an immigration official next week. Five lawyers in New York said they had already received denials from the U.S. Citizenship and Immigration Services agency when pleading their case — via email, an 800-number and in person.

Linda Bennett-Rodriguez, a lawyer at the Empire Justice Center in White Plains, said one of her clients sent his application in on Sept. 12. She sent the renewal form for his younger brother on Sept. 21, and it was accepted on Sept. 25.

The older brother's application was in transit for three weeks; it did not arrive at the regional facility in Chicago until Oct. 3. At that point, Ms. Bennett-Rodriguez raced to find a solution.

When it still had not arrived, hours before the deadline, she said that her client offered to fly from La Guardia Airport to Chicago to hand-deliver his application. But she learned there was no physical address listed for where he would go.

The post office tracking information showed his application arrived on Oct. 6.

"It was probably my worst day as an attorney," Ms. Bennett-Rodriguez said. "I knew the importance and I knew we filed with enough time."

Mr. Partenheimer, the post office spokesman, said the processing "issue has been resolved and we are investigating how it occurred." He added that the mail service would "work diligently" with the U.S. Citizenship and Immigration Services agency "concerning any potential issues this may cause for the affected individuals."

*Correction: November 10, 2017*
An earlier version of this article referred incorrectly to a deposition in a federal lawsuit. It was not conducted by the immigration advocacy group Make the Road and did not include the number of applications received on time.

A version of this article appears in print on November 11, 2017, on Page A17 of the New York edition with the headline: Mail Is Late, and DACA Renewals Are Denied.

© 2017 The New York Times Company

# EXHIBIT B



November 7, 2017

Stephen Pezzi
Trial Attorney
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530

                                          Re:     *Batalla Vidal et al. v. Duke et al.*,
                                                          No. 1:16-cv-04756 (NGG) (JO) (EDNY)

Dear Mr. Pezzi,

The *Batalla Vidal* Plaintiffs recently learned that thirteen DACA renewal applications prepared by Make the Road New York (MRNY) and its sister organization, Make the Road New Jersey (MRNJ), were improperly rejected by USCIS as untimely despite USCIS receiving the majority of these applications by the October 5, 2017 deadline. *See* Appendix A (providing details on each application). We write to request that Defendants reconsider their improper rejection of these applications. The rejections violate the due process rights of Plaintiffs and these putative class members on the grounds that: (1) none of these individuals received proper notice of the October 5th deadline, and (2) the deadline itself was arbitrary and capricious. If the parties cannot resolve this issue, Plaintiffs will have no choice but to seek assistance of the Court. We write first to confer regarding the disposition of these thirteen applications and to determine whether the parties can reach agreement regarding the appropriate processing of these applications without need for court intervention.

The imposition of the October 5th deadline was arbitrary and capricious and as such, burdensome to both DACA recipients and immigration legal service providers across the country. Because of the unfairly short timeline for renewal announced on September 5, 2017, many DACA recipients filed renewal applications before the October 5th deadline but, through no fault of their own, had their applications rejected by USCIS. These rejections have already caused significant harm to the individuals and their families, employers, and communities at large. *See* Appendix A.

**BROOKLYN**
301 GROVE STREET
BROOKLYN, NY 11237
TEL 718 418 7690
FAX 718 418 9635

**QUEENS**
92-10 ROOSEVELT AVENUE
JACKSON HEIGHTS, NY 11372
TEL 718 565 8500
FAX 718 565 0646

**STATEN ISLAND**
161 PORT RICHMOND AVENUE
STATEN ISLAND, NY 10302
TEL 718 727 1222
FAX 718 981 8077

**LONG ISLAND**
1090 SUFFOLK AVENUE
BRENTWOOD, NY 11717
TEL 631 231 2220
FAX 631 231 2229

WWW.MAKETHEROADNY.ORG

The October 5th deadline was unreasonably burdensome to plaintiff Make the Road New York, whose core legal services include counseling and application assistance for thousands of DACA recipients. Though the USCIS Chicago Lockbox, a P.O. box, received most of the twelve DACA renewal applications by October 5, 2017, they were still wrongfully rejected as untimely. *See* Exhibits A (USPS tracking information for a package containing seven DACA renewal applications) and B (USPS tracking information for a package containing one DACA renewal application).

Moreover, the DACA Termination Memo itself stated only that the deadline was October 5th, without a specific time designated. However, USCIS apparently rejected applications received after 6pm on that date, without sharing prior notice of a cutoff time on October 5 with the public, including DACA recipients and organizations like MRNY, in any way. *See* Appendix A (including 9 applications received after 6pm on October 5th, which were rejected as untimely).

As you are aware, Judge Garaufis expressed concern regarding the arbitrariness of the October 5th deadline on September 14, 2017:

> I'm more concerned about the October 5th deadline in terms of how it might prejudice the rights of certain persons who are already covered by the DACA certificates and permits, work permits and so on that have already been issued. . . If you are living in Oregon or Michigan or Vermont, you don't have a problem with the hurricane, you've got a problem with the fact that based on this deadline you may be preempted from making an application to extend the benefit that you received under DACA. (Sept. 14, 2017 Tr. at 11:9-19.)

Plaintiffs have previously raised concerns regarding the lack of notice for individuals impacted by the October 5th deadline to the Court. *See* Sept. 14, 2017 Tr. at 14-15 (8-25, 1-3). None of the individuals named below received notices informing them of the October 5th deadline prior to October 5, 2017. In fact, many of these individuals received only a standard renewal notice sent by USCIS directing them to submit a renewal application "as soon as possible," by submitting the renewal application 120 to 150 days before expiration. Acting Secretary Duke's Memorandum on Rescission of Deferred Action for Childhood Arrivals (DACA) ("DACA Termination Memo") issued on September 5, 2017 was never sent to any of these individuals, nor was any other notice sent correcting the prior, standard notice or informing DACA recipients of the new date or time established as a deadline. Thus, Defendants did not provide these individuals adequate notice of the abrupt change in policy regarding the required timing of the submission of their DACA renewal applications.

Before seeking relief from the court, we seek to confer with Defendants in an effort to resolve this issue. We respectfully request that USCIS reconsider the applications below. If we do not hear back from you by close of business on Monday, November 13th, we will take further action to seek relief for these individuals. Please let us know if you would like to discuss this request.

Respectfully,

David Chen, Law Student Intern
Susanna D. Evarts, Law Student Intern
Healy Ko, Law Student Intern
Victoria Roeck, Law Student Intern
Hannah Schoen, Law Student Intern
Emily Villano, Law Student Intern
Muneer I. Ahmad, Esq.
Marisol Orihuela, Esq.
Michael J. Wishnie, Esq.
Jerome N. Frank Legal Svcs. Org.
michael.wishnie@yale.edu
Phone: (203) 432-4800

Amy S. Taylor, Esq.
Deborah Axt, Esq.
Scott Foletta, Esq.
Alexia Schapira, Esq.
Make The Road New York
301 Grove Street
Brooklyn, NY 11237
Phone: (718) 418-7690

Jessica R. Hanson, Esq.
Mayra B. Joachin, Esq.
Melissa Keaney, Esq.
Karen C. Tumlin, Esq.
National Immigration Law Center
P.O. Box 70067
Los Angeles, CA 90070
Phone: (213) 639-3900

Justin B. Cox, Esq.
National Immigration Law Center
PO Box 170208
Atlanta, GA 30317
Phone: (678) 279-5441

Joshua A. Rosenthal, Esq.
National Immigration Law Center
3450 Wilshire Blvd, #108-62
Los Angeles, CA 90010
Phone: (213) 639-3900

*Attorneys for Batalla Vidal Plaintiffs*

# EXHIBIT C

```
 1            IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK
 2

 3      ---------------------------x
                                   )
 4      MARTIN JONATHAN BATALLA    )
        VIDAL, et al.,             )
 5                                 )
                 Plaintiffs,       )
 6                                 ) Case No.
                   v               ) 1:16-CV-04756(NGG)(JO)
 7                                 )
        ELAINE C. DUKE, Acting     )
 8      Secretary Department of    )
        Homeland Security          )
 9      JEFFERSON BEAUREGARD       )
        SESSION III, Attorney      )
10      General of the United      )
        States,and DONALD J TRUMP,)
11      President of the UNITED    )
        STATES,                    )
12                                 )
                 Defendants.       )
13                                 )
        ---------------------------x
14

15             Deposition of DONALD NEUFELD

16                    Washington, DC

17             Wednesday, October 18, 2017

18                      9:16 a.m.

19

20      Job No.: 37566

21      Pages: 1 - 211

22      Reported by: Donna Marie Lewis, RPR, CSR (HI)
```

```
 1            IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK
 2

 3      ---------------------------x
                                    )
 4      MARTIN JONATHAN BATALLA    )
        VIDAL, et al.,              )
 5                                  )
                 Plaintiffs,        )
 6                                  ) Case No.
                 v                  ) 1:16-CV-04756(NGG)(JO)
 7                                  )
        ELAINE C. DUKE, Acting      )
 8      Secretary Department of     )
        Homeland Security           )
 9      JEFFERSON BEAUREGARD        )
        SESSION III, Attorney       )
10      General of the United       )
        States,and DONALD J TRUMP,)
11      President of the UNITED    )
        STATES,                     )
12                                  )
                 Defendants.        )
13                                  )
        ---------------------------x
14

15           Deposition of DONALD NEUFELD, held at US

16      Conference of Mayors, 1620 I Street, NW,

17      Washington 20006 pursuant to Notice, before Donna

18      Marie Lewis, Registered Professional Reporter and

19      Notary Public of and for the District of Columbia.

20


21


22
```


Olender Legal Solutions
A Global Litigation Solutions Company

888.445.3376            www.olenderreporting.com
202.898.1108                 Worldwide Coverage

```
 1                   A P P E A R A N C E S

 2     ON BEHALF OF PLAINTIFFS:

 3               JEROME N. FRANK LEGAL SERVICES
                 ORGANIZATION AT YALE LAW SCHOOL
 4               BY:  DAVID CHEN, LAW STUDENT INTERN
                      MICHAEL WISHNIE, ESQUIRE
 5                    VICTORIA ROECK, LAW STUDENT INTERN
                 Yale Law School
 6               127 Wall Street
                 New Haven CT 06511
 7               Telephone: (203) 432-4800
                 Email: michael.wishnie@yale.edu
 8


 9               NATIONAL IMMIGRATION LAW CENTER
                 BY: JOSHUA A. ROSENTHAL, ESQUIRE
10                   KAREN C. TUMLIN, ESQUIRE
                 P.O. Box 70067
11               Los Angeles, CA 90070
                 Telephone: (213) 639-3900

12


13               GIBSON,DUNN & CRUTCHER, LLP
                 BY:  ANDREW WILHELM, ESQUIRE
14               1050 Connecticut Avenue, NW
                 Washington, D C 20036
15               Telephone: 202 887-3556
                 Email: awilhelm@gibsondunn.com

16


17
                 COVINGTON & BURLING, LLP
18               BY:  IVANO M VENTRESCA, ESQUIRE
                 Telephone: 202 662-5203
19               Email: iventresca@cov.com


20


21


22
```



```
 1    APPEARANCES:  (Continued)

 2    ON BEHALF OF PLAINTIFFS: (Continued)

 3
               MAKE THE ROAD NEW YORK
 4
               BY: CARLOS VARGAS, ESQUIRE
 5                 SCOTT FOLETTA, ESQUIRE
                   CAROLINA FUNG FENG, ESQUIRE
 6             301 Grove Street
               Brooklyn, NY 11237
 7             Telephone: 718 727-1222
                          929 244-3456
 8                        917 251-1373
               Emails: carlos.vargas@maketheroadny.org
 9                     scott.foletta@maketheroadny.org
                   carolina.fungfen@maketheroadny.org
10

11
               NEW YORK ATTORNEY GENERAL'S OFFICE
12             BY:  SANIA W. KHAN, ESQUIRE
               120 Broadway
13             New York, NY 10271
               Telephone: (212) 416-8534
14             Email: sania.khan@ag.ny.gov

15

16             STATE OF CALIFORNIA, DEPT OF JUSTICE
               OFFICE OF THE ATTORNEY GENERAL
17             BUREAU OF CHILDREN'S JUSTICE
               BY: MICHAEL L. NEWMAN, DIRECTOR
18             300 S. Spring Street
               Suite 1702
19             Los Angeles, CA 90013
               Telephone: 213 897-2642
20             Email: michael.newman@doj.ca.gov

21

22
```



```
 1    APPEARANCES: (Continued)

 2

 3    ON BEHALF OF DEFENDANTS:

 4           UNITED STATES DEPARTMENT OF JUSTICE
             BY:  KATE BAILEY, TRIAL ATTORNEY
 5

 6           U S DEPARTMENT OF HOMELAND SECURITY
             U S CITIZENSHIP AND IMMIGRATION SERVICES
 7           BY: EVAN R. FRANKE, ESQUIRE
             20 MASSACHUSETTS AVENUE, NW,
 8           Suite 4210
             Washington, DC 20529-2120
 9           Telephone: (202) 272-1446
             Facsimile: (202) 272-1405
10           Email: Evan.Franke@dhs.gov

11

12           U S DEPARTMENT OF HOMELAND SECURITY
             OFFICE OF THE GENERAL COUNSEL
13           BY: REID COX, ATTORNEY-ADVISOR

14

15           U S DEPARTMENT OF JUSTICE
             BY: JOHN TYLER, ESQUIRE
16

17

18

19

20

21

22
```



```
 1                    I N D E X

 2   WITNESS:

 3       DONALD NEUFELD

 4   EXAMINATION BY:                              PAGE

 5       Mr. Chen                                   11

 6       Ms. Khan                                  156

 7       Mr. Ventresca                             171

 8       Mr. Newman                                190

 9

10                   E X H I B I T S

11   NEUFELD
     EXHIBITS:           DESCRIPTION               PAGE
12

13   No. 38    Defendant's Objections and Responses  57

14   No. 39    Declaration of Donald Neufeld        171

15

16

17

18

19

20

21

22
```

```
 1   apply to evaluate whether they should be accepted?
 2        A    Whether or not the hurricane that
 3   impacted Puerto Rico played a role in preventing
 4   the timely filing.
 5        Q    And you concluded that it had played
 6   some role in the filing of these six applications.
 7   Is that correct?
 8        A    Yes.
 9        Q    How did you come to that conclusion?
10        A    Five of them were postmarked shortly
11   before October 5 and it was reasonable to conclude
12   that the hurricane likely impacted the timely
13   delivery -- you know, that they would be received
14   before October 5.  The other one was filed shortly
15   afterward and as I recall the requester stated
16   that the hurricane had impacted them getting it
17   timely filed.
18        Q    And you had also mentioned that after
19   October 5 you had -- SCOPS had received about
20   4,000 late file notices.  Is that correct?
21        A    No.  What I said is that Tracy Renaud
22   indicated to me that it was approximately 4,000
```

Olender Legal Solutions
A Global Litigation Solutions Company
888.445.3376
202.898.1108
www.olenderreporting.com
Worldwide Coverage

```
 1   that had been filed at the lockbox.
 2       Q   Do you know if those 4,000 were all
 3   rejected?
 4       A   I don't know whether they have in fact
 5   been rejected or if they have been flagged for
 6   rejection but not yet processed.
 7       Q   Do you know if SCOPS or USCIS plans to
 8   reject those 4,000 applications?
 9       A   Yes, that is the current plan.
10       Q   Do you know if the October 5 deadline
11   caused more applications than usual between the 30
12   day window of October 5 -- sorry, September 5 and
13   October 5?
14       A   No, I don't.
15       Q   Do you know how many usually -- how many
16   applications, renewal applications are usually
17   filed within a 30-day period?
18       A   I do not.  I see reports but I don't
19   remember what the numbers are.
20       Q   And would those -- are these reports
21   that you are referring to the same reports that
22   you mentioned -- mentioned before updating you
```


Olender Legal Solutions
A Global Litigation Solutions Company

888.445.3376
202.898.1108

www.olenderreporting.com
Worldwide Coverage