# EXHIBIT
# A



Secretary

**U.S. Department of Homeland Security**
Washington, DC 20528

**Homeland
Security**

June 15, 2012

MEMORANDUM FOR:     David V. Aguilar
Acting Commissioner, U.S. Customs and Border Protection

Alejandro Mayorkas
Director, U.S. Citizenship and Immigration Services

John Morton
Director, U.S. Immigration and Customs Enforcement

FROM:     Janet Napolitano
Secretary of Homeland Security

SUBJECT:     Exercising Prosecutorial Discretion with Respect to Individuals
Who Came to the United States as Children

By this memorandum, I am setting forth how, in the exercise of our prosecutorial discretion, the
Department of Homeland Security (DHS) should enforce the Nation's immigration laws against
certain young people who were brought to this country as children and know only this country as
home. As a general matter, these individuals lacked the intent to violate the law and our ongoing
review of pending removal cases is already offering administrative closure to many of them.
However, additional measures are necessary to ensure that our enforcement resources are not
expended on these low priority cases but are instead appropriately focused on people who meet
our enforcement priorities.

The following criteria should be satisfied before an individual is considered for an exercise of
prosecutorial discretion pursuant to this memorandum:

- came to the United States under the age of sixteen;
- has continuously resided in the United States for a least five years preceding the date of
  this memorandum and is present in the United States on the date of this memorandum;
- is currently in school, has graduated from high school, has obtained a general education
  development certificate, or is an honorably discharged veteran of the Coast Guard or
  Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple
  misdemeanor offenses, or otherwise poses a threat to national security or public safety;
  and
- is not above the age of thirty.

Our Nation's immigration laws must be enforced in a strong and sensible manner. They are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways. Prosecutorial discretion, which is used in so many other areas, is especially justified here.

As part of this exercise of prosecutorial discretion, the above criteria are to be considered whether or not an individual is already in removal proceedings or subject to a final order of removal. No individual should receive deferred action under this memorandum unless they first pass a background check and requests for relief pursuant to this memorandum are to be decided on a case by case basis. DHS cannot provide any assurance that relief will be granted in all cases.

1. With respect to individuals who are encountered by U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), or U.S. Citizenship and Immigration Services (USCIS):

- With respect to individuals who meet the above criteria, ICE and CBP should immediately exercise their discretion, on an individual basis, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- USCIS is instructed to implement this memorandum consistent with its existing guidance regarding the issuance of notices to appear.

2. With respect to individuals who are **in** removal proceedings but not yet subject to a final order of removal, and who meet the above criteria:

- ICE should exercise prosecutorial discretion, on an individual basis, for individuals who meet the above criteria by deferring action for a period of two years, subject to renewal, in order to prevent low priority individuals from being removed from the United States.
- ICE is instructed to use its Office of the Public Advocate to permit individuals who believe they meet the above criteria to identify themselves through a clear and efficient process.
- ICE is directed to begin implementing this process within 60 days of the date of this memorandum.
- ICE is also instructed to immediately begin the process of deferring action against individuals who meet the above criteria whose cases have already been identified through the ongoing review of pending cases before the Executive Office for Immigration Review.

3. With respect to the individuals who are **not** currently in removal proceedings and meet the above criteria, and pass a background check:

- USCIS should establish a clear and efficient process for exercising prosecutorial discretion, on an individual basis, by deferring action against individuals who meet the

2

above criteria and are at least 15 years old, for a period of two years, subject to renewal, in order to prevent low priority individuals from being placed into removal proceedings or removed from the United States.
- The USCIS process shall also be available to individuals subject to a final order of removal regardless of their age.
- USCIS is directed to begin implementing this process within 60 days of the date of this memorandum.

For individuals who are granted deferred action by either ICE or USCIS, USCIS shall accept applications to determine whether these individuals qualify for work authorization during this period of deferred action.

This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the framework of the existing law. I have done so here.

Janet Napolitano

3

# EXHIBIT B



# Consideration of Deferred Action
# for Childhood Arrivals

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-821D**
OMB No. 1615-0124
Expires 01/31/2019

| For USCIS Use Only | A- [          ]  Case ID: _____  ☐ Requestor interviewed on _____ | Receipt | Action Block |
|---|---|---|---|

| Returned: ___/___/___ | Received: ___/___/___ | Remarks | |
| Resubmitted: ___/___/___ | Sent: ___/___/___ | | |

*(Released - vertical text between Returned/Resubmitted and Received/Sent)*

| **To Be Completed by an Attorney or Accredited Representative, if any.** | ☐ Select this box if Form G-28 is attached to represent the requestor. | Attorney State Bar Number *(if any)*: |
|---|---|---|

▶ **START HERE - Type or print in black ink.** Read Form I-821D Instructions for information on how to complete this form.

## Part 1. Information About You *(For Initial and Renewal Requests)*

I am not in immigration detention **and** I have included Form I-765, Application for Employment Authorization, and Form I-765WS, Form I-765 Worksheet; and

I am requesting:

**1.** ☐ **Initial Request** - Consideration of Deferred Action for Childhood Arrivals

**OR**

**2.** ☐ **Renewal Request** - Consideration of Deferred Action for Childhood Arrivals

**AND**

For this Renewal request, my most recent period of Deferred Action for Childhood Arrivals expires on

*(mm/dd/yyyy)* ▶ [                ]

### Full Legal Name

**3.a.** Family Name *(Last Name)* [                ]

**3.b.** Given Name *(First Name)* [                ]

**3.c.** Middle Name [                ]

### U.S. Mailing Address *(Enter the same address on Form I-765)*

**4.a.** In Care Of Name *(if applicable)* [                ]

**4.b.** Street Number and Name [                ]

**4.c.** Apt. ☐  Ste. ☐  Flr. ☐ [                ]

**4.d.** City or Town [                ]

**4.e.** State [        ]  **4 f.** ZIP Code [                ]

## Removal Proceedings Information

**5.** Are you **NOW** or have you **EVER** been in removal proceedings, or do you have a removal order issued in any other context *(for example, at the border or within the United States by an immigration agent)*?

☐ Yes  ☐ No

**NOTE:** The term "removal proceedings" includes exclusion or deportation proceedings initiated before April 1, 1997; an Immigration and Nationality Act (INA) section 240 removal proceeding; expedited removal; reinstatement of a final order of exclusion, deportation, or removal; an INA section 217 removal after admission under the Visa Waiver Program; or removal as a criminal alien under INA section 238.

If you answered "Yes" to **Item Number 5.**, you must select a box below indicating your current status or outcome of your removal proceedings.

Status or outcome:

**5.a.** ☐ Currently in Proceedings *(Active)*

**5.b.** ☐ Currently in Proceedings *(Administratively Closed)*

**5.c.** ☐ Terminated

**5.d.** ☐ Subject to a Final Order

**5.e.** ☐ Other. Explain in **Part 8. Additional Information.**

**5.f.** Most Recent Date of Proceedings
*(mm/dd/yyyy)* ▶ [                ]

**5.g.** Location of Proceedings [                ]

**Part 1. Information About You** *(For Initial and Renewal Requests) (continued)*

**Other Information**

6. Alien Registration Number (A-Number) *(if any)*

   ▶ **A-** [ ][ ][ ][ ][ ][ ][ ][ ]

7. U.S. Social Security Number *(if any)*

   ▶ [ ][ ][ ][ ][ ][ ][ ][ ][ ]

8. Date of Birth   *(mm/dd/yyyy)* ▶ [                    ]

9. Gender   ☐ Male   ☐ Female

**10.a.** City/Town/Village of Birth
[                                        ]

**10.b.** Country of Birth
[                                        ]

11. Current Country of Residence
[                                        ]

12. Country of Citizenship or Nationality
[                                        ]

13. Marital Status
    ☐ Married   ☐ Widowed   ☐ Single   ☐ Divorced

**Other Names Used** *(If Applicable)*

If you need additional space, use **Part 8. Additional Information**.

**14.a.** Family Name *(Last Name)* [                        ]

**14.b.** Given Name *(First Name)* [                        ]

**14.c.** Middle Name [                        ]

**Processing Information**

15. Ethnicity *(Select **only one** box)*
    ☐ Hispanic or Latino
    ☐ Not Hispanic or Latino

16. Race *(Select **all applicable** boxes)*
    ☐ White
    ☐ Asian
    ☐ Black or African American
    ☐ American Indian or Alaska Native
    ☐ Native Hawaiian or Other Pacific Islander

17. Height   Feet [      ]   Inches [      ]

18. Weight   Pounds [   ][   ][   ]

19. Eye Color *(Select **only one** box)*
    ☐ Black    ☐ Blue    ☐ Brown
    ☐ Gray     ☐ Green   ☐ Hazel
    ☐ Maroon   ☐ Pink    ☐ Unknown/Other

20. Hair Color *(Select **only one** box)*
    ☐ Bald (No hair)   ☐ Black   ☐ Blond
    ☐ Brown            ☐ Gray    ☐ Red
    ☐ Sandy            ☐ White   ☐ Unknown/Other

**Part 2. Residence and Travel Information** *(For Initial and Renewal Requests)*

1. I have been continuously residing in the U.S. since at least June 15, 2007, up to the present time.   ☐ Yes   ☐ No

**NOTE:** If you departed the United States for some period of time before your 16th birthday and returned to the United States on or after your 16th birthday to begin your current period of continuous residence, and if this is an initial request, submit evidence that you established residence in the United States prior to 16 years of age as set forth in the instructions to this form.

**For Initial Requests:** List your current address and, to the best of your knowledge, the addresses where you resided since the date of your initial entry into the United States to present.

**For Renewal Requests:** List only the addresses where you resided since you submitted your last Form I-821D that was approved.

If you require additional space, use **Part 8. Additional Information.**

**Part 2.  Residence and Travel Information** *(For Initial and Renewal Requests) (continued)*

**Present Address**

**2.a.** Dates at this residence *(mm/dd/yyyy)*

From ▶ [            ]   To ▶ [ **Present** ]

**2.b.** Street Number and Name [            ]

**2.c.**  Apt. ☐   Ste. ☐   Flr. ☐   [            ]

**2.d.** City or Town [            ]

**2.e.** State [      ]   **2 f.** ZIP Code [            ]

**Address 1**

**3.a.** Dates at this residence *(mm/dd/yyyy)*

From ▶ [            ]   To ▶ [            ]

**3.b.** Street Number and Name [            ]

**3.c.**  Apt. ☐   Ste. ☐   Flr. ☐   [            ]

**3.d.** City or Town [            ]

**3.e.** State [      ]   **3 f.** ZIP Code [            ]

**Address 2**

**4.a.** Dates at this residence *(mm/dd/yyyy)*

From ▶ [            ]   To ▶ [            ]

**4.b.** Street Number and Name [            ]

**4.c.**  Apt. ☐   Ste. ☐   Flr. ☐   [            ]

**4.d.** City or Town [            ]

**4.e.** State [      ]   **4 f.** ZIP Code [            ]

**Address 3**

**5.a.** Dates at this residence *(mm/dd/yyyy)*

From ▶ [            ]   To ▶ [            ]

**5.b.** Street Number and Name [            ]

**5.c.**  Apt. ☐   Ste. ☐   Flr. ☐   [            ]

**5.d.** City or Town [            ]

**5.e.** State [      ]   **5 f.** ZIP Code [            ]

*Travel Information*

**For Initial Requests:** List all of your absences from the United States since June 15, 2007.

**For Renewal Requests:** List only your absences from the United States since you submitted your last Form I-821D that was approved.

If you require additional space, use **Part 8. Additional Information.**

**Departure 1**

**6.a.** Departure Date *(mm/dd/yyyy)* ▶ [            ]

**6.b.** Return Date *(mm/dd/yyyy)* ▶ [            ]

**6.c.** Reason for Departure

[            ]

**Departure 2**

**7.a.** Departure Date *(mm/dd/yyyy)* ▶ [            ]

**7.b.** Return Date *(mm/dd/yyyy)* ▶ [            ]

**7.c.** Reason for Departure

[            ]

**8.** Have you left the United States without advance parole on or after August 15, 2012?   ☐ Yes   ☐ No

**9.a.** What country issued your last passport?

[            ]

**9.b.** Passport Number

[            ]

**9.c.** Passport Expiration Date

*(mm/dd/yyyy)* ▶ [            ]

**10.** Border Crossing Card Number *(if any)*

[            ]

**Part 3.  For Initial Requests Only**

**1.** I initially arrived and established residence in the U.S. prior to 16 years of age.   ☐ Yes   ☐ No

**2.** Date of *Initial* Entry into the United States *(on or about)*

*(mm/dd/yyyy)* ▶ [            ]

**3.** Place of *Initial* Entry into the United States

[            ]

## Part 3.  For Initial Requests Only *(continued)*

**4.** Immigration Status on June 15, 2012 *(e.g., No Lawful Status, Status Expired, Parole Expired)*

[                                        ]

**5.a.** Were you **EVER** issued an Arrival-Departure Record (Form I-94, I-94W, or I-95)?   ☐ Yes  ☐ No

**5.b.** If you answered "Yes" to **Item Number 5.a.,** provide your Form I-94, I-94W, or I-95 number *(if available).*

► [   |   |   |   |   |   |   |   |   |   |   ]

**5.c.** If you answered "Yes" to **Item Number 5.a.,** provide the date your authorized stay expired, as shown on Form I-94, I-94W, or I-95 *(if available).*

*(mm/dd/yyyy)* ► [                    ]

### Education Information

**6.** Indicate how you meet the education guideline *(e.g., Graduated from high school, Received a general educational development (GED) certificate or equivalent state-authorized exam, Currently in school)*

[                                        ]

**7.** Name, City, and State of School Currently Attending or Where Education Received

[                                        ]

**8.** Date of Graduation *(e.g., Receipt of a Certificate of Completion, GED certificate, other equivalent state-authorized exam)* or, if currently in school, date of last attendance. *(mm/dd/yyyy)* ► [                    ]

### Military Service Information

**9.** Were you a member of the U.S. Armed Forces or U.S. Coast Guard?   ☐ Yes  ☐ No

If you answered "Yes" to **Item Number 9.,** you must provide responses to **Item Numbers 9.a. - 9.d.**

**9.a.** Military Branch

[                                        ]

**9.b.** Service Start Date *(mm/dd/yyyy)* ► [                ]

**9.c.** Discharge Date *(mm/dd/yyyy)* ► [                ]

**9.d.** Type of Discharge

[                                        ]

## Part 4.  Criminal, National Security, and Public Safety Information *(For Initial and Renewal Requests)*

If any of the following questions apply to you, use **Part 8. Additional Information** to describe the circumstances and include a full explanation.

**1.** Have you **EVER** been arrested for, charged with, or convicted of a felony or misdemeanor, *including incidents handled in juvenile court,* in the United States?  *Do not include minor traffic violations unless they were alcohol- or drug-related.*   ☐ Yes  ☐ No

**If you answered "Yes," you must include a certified court disposition, arrest record, charging document, sentencing record, etc., for each arrest, unless disclosure is prohibited under state law.**

**2.** Have you **EVER** been arrested for, charged with, or convicted of a crime in any country other than the United States?   ☐ Yes  ☐ No

**If you answered "Yes," you must include a certified court disposition, arrest record, charging document, sentencing record, etc., for each arrest.**

**3.** Have you **EVER** engaged in, do you continue to engage in, or plan to engage in terrorist activities?   ☐ Yes  ☐ No

**4.** Are you **NOW** or have you **EVER** been a member of a gang?   ☐ Yes  ☐ No

**5.** Have you **EVER** engaged in, ordered, incited, assisted, or otherwise participated in any of the following:

**5.a.** Acts involving torture, genocide, or human trafficking?   ☐ Yes  ☐ No

**5.b.** Killing any person?   ☐ Yes  ☐ No

**5.c.** Severely injuring any person?   ☐ Yes  ☐ No

**5.d.** Any kind of sexual contact or relations with any person who was being forced or threatened?   ☐ Yes  ☐ No

**6.** Have you EVER recruited, enlisted, conscripted, or used any person to serve in or help an armed force or group while such person was under age 15?   ☐ Yes  ☐ No

**7.** Have you EVER used any person under age 15 to take part in hostilities, or to help or provide services to people in combat?   ☐ Yes  ☐ No

## Part 5.  Statement, Certification, Signature, and Contact Information of the Requestor *(For Initial and Renewal Requests)*

**NOTE:**  Select the box for either **Item Number 1.a.** or **1.b.**

**1.a.** ☐ I can read and understand English, and have read and understand each and every question and instruction on this form, as well as my answer to each question.

**1.b.** ☐ The interpreter named in **Part 6.** has read to me each and every question and instruction on this form, as well as my answer to each question, in

[                              ],

a language in which I am fluent.  I understand each and every question and instruction on this form as translated to me by my interpreter, and have provided true and correct responses in the language indicated above.

### *Requestor's Certification*

I certify, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct and that copies of documents submitted are exact photocopies of unaltered original documents.  I understand that I may be required to submit original documents to U.S. Citizenship and Immigration Services (USCIS) at a later date.  I also understand that knowingly and willfully providing materially false information on this form is a federal felony punishable by a fine, imprisonment up to 5 years, or both, under 18 U.S.C. section 1001.  Furthermore, I authorize the release of any information from my records that USCIS may need to reach a determination on my deferred action request.

**2.a.** Requestor's Signature

➡ **Don't forget to sign!**

**2.b.** Date of Signature *(mm/dd/yyyy)* ▶ [          ]

### *Requestor's Contact Information*

**3.** Requestor's Daytime Telephone Number

[                              ]

**4.** Requestor's Mobile Telephone Number

[                              ]

**5.** Requestor's Email Address

[                              ]

## Part 6.  Contact Information, Certification, and Signature of the Interpreter *(For Initial and Renewal Requests)*

### *Interpreter's Full Name*

Provide the following information concerning the interpreter:

**1.a.** Interpreter's Family Name *(Last Name)*

[                              ]

**1.b.** Interpreter's Given Name *(First Name)*

[                              ]

**2.** Interpreter's Business or Organization Name *(if any)*

[                              ]

### *Interpreter's Mailing Address*

**3.a.** Street Number and Name [                  ]

**3.b.** Apt. ☐  Ste. ☐  Flr. ☐ [                  ]

**3.c.** City or Town [                  ]

**3.d.** State [      ]  **3.e.** ZIP Code [          ]

**3.f.** Province [                  ]

**3.g.** Postal Code [                  ]

**3.h.** Country

[                              ]

### *Interpreter's Contact Information*

**4.** Interpreter's Daytime Telephone Number

[                              ]

**5.** Interpreter's Email Address

[                              ]

## Part 6.  Contact Information, Certification, and Signature of the Interpreter *(For Initial and Renewal Requests) (continued)*

### Interpreter's Certification

**I certify that:**

I am fluent in English and [                    ] which is the same language provided in **Part 5.**, **Item Number 1.b.**;

I have read to this requestor each and every question and instruction on this form, as well as the answer to each question, in the language provided in **Part 5.**, **Item Number 1.b.**; and

The requestor has informed me that he or she understands each and every instruction and question on the form, as well as the answer to each question.

**6.a.**  Interpreter's Signature

[                                        ]

**6.b.**  Date of Signature  *(mm/dd/yyyy)* ▶ [                ]

## Part 7.  Contact Information, Declaration, and Signature of the Person Preparing this Request, If Other than the Requestor *(For Initial and Renewal Requests)*

### Preparer's Full Name

Provide the following information concerning the preparer:

**1.a.**  Preparer's Family Name *(Last Name)*

[                                        ]

**1.b.**  Preparer's Given Name *(First Name)*

[                                        ]

**2.**  Preparer's Business or Organization Name

[                                        ]

### Preparer's Mailing Address

**3.a.**  Street Number and Name [                        ]

**3.b.**  Apt. ☐  Ste. ☐  Flr. ☐ [                ]

**3.c.**  City or Town [                        ]

**3.d.**  State [        ]  **3.e.**  ZIP Code [            ]

**3.f.**  Province [                        ]

**3.g.**  Postal Code [                        ]

**3.h.**  Country

[                                        ]

### Preparer's Contact Information

**4.**  Preparer's Daytime Telephone Number

[                                        ]

**5.**  Preparer's Fax Number

[                                        ]

**6.**  Preparer's Email Address

[                                        ]

### Preparer's Declaration

I declare that I prepared this Form I-821D at the requestor's behest, and it is based on all the information of which I have knowledge.

**7.a.**  Preparer's Signature

[                                        ]

**7.b.**  Date of Signature  *(mm/dd/yyyy)* ▶ [                ]

**NOTE:**  If you need extra space to complete any item within this request, see the next page for **Part 8. Additional Information.**

### Part 8.  Additional Information *(For Initial and Renewal Requests)*

If you need extra space to complete any item within this request, use the space below.  You may also make copies of this page to complete and file with this request.  Include your name and A-Number *(if any)* at the top of each sheet of paper; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

### *Full Legal Name*

**1.a.** Family Name *(Last Name)*

**1.b.** Given Name *(First Name)*

**1.c.** Middle Name

**2.** A-Number *(if any)*

▶ A-

**3.a.** Page Number

**3.b.** Part Number

**3.c.** Item Number

**3.d.**

**4.a.** Page Number

**4.b.** Part Number

**4.c.** Item Number

**4.d.**

**5.a.** Page Number

**5.b.** Part Number

**5.c.** Item Number

**5.d.**



# Instructions for Consideration of Deferred Action for Childhood Arrivals

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-821D**
OMB No. 1615-0124
Expires 01/31/2019

## What is the Purpose of this Form?

An individual may file Form I-821D, Consideration of Deferred Action for Childhood Arrivals, to request that U.S. Citizenship and Immigration Services (USCIS) exercise prosecutorial discretion in his or her favor under the Deferred Action for Childhood Arrivals (DACA) process, including consideration for Renewal of deferred action. USCIS considers deferring action (including Renewal of deferred action) on a case-by-case basis, based on the guidelines in the **What is a Childhood Arrival for Purposes of This Form** section of these instructions. Deferred action is a discretionary determination to defer removal of an individual as an act of prosecutorial discretion. Individuals who receive deferred action will not be placed into removal proceedings or removed from the United States for a specified period of time, unless the Department of Homeland Security (DHS) chooses to terminate the deferral. See the Secretary of Homeland Security's memorandum issued on June 15, 2012 (Secretary's memorandum), upon which the DACA process is based, at **www.uscis.gov/childhoodarrivals**.

## When Should I Use Form I-821D?

Use this form to request consideration of Initial DACA or Renewal of DACA. Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion. All individuals filing Form I-821D, whether for an Initial or a Renewal of deferred action, must also file Form I-765, Application for Employment Authorization, and Form I-765 Worksheet, Form I-765WS. See the **Evidence for Initial Requests Only** and **Evidence for Renewal Requests Only** sections of these instructions for more information.

**CAUTION:** If you file this request more than 150 days prior to the expiration of your current period of deferred action, USCIS may reject your submission and return it to you with instructions to resubmit your request closer to the expiration date. **USCIS encourages renewal requestors to file as early in the 150-day period as possible - ideally, at least 120 days prior to the DACA expiration date.**

**NOTE:** If you have received DACA and you are filing within one year after your last period of deferred action expired, please follow the instructions provided below for renewal requestors.

**NOTE:** If U.S. Immigration and Customs Enforcement (ICE) initially deferred action in your case and you are seeking a Renewal, you must file Form I-821D and select and complete **Item Number 2.** in **Part 1.** of Form I-821D. You must also respond to ALL subsequent questions on the form. You must also submit documentation to establish how you satisfy the guidelines as if you were filing an Initial request for consideration of deferred action.

If you are currently in immigration detention, you may not request consideration of DACA or Renewal of DACA from USCIS. If you think you meet the guidelines of this process, you should identify yourself to your deportation officer.

## What is a Childhood Arrival for Purposes of This Form?

An individual may be considered for Initial DACA if he or she:

1. Was under 31 years of age as of June 15, 2012;

2. Came to the United States before reaching his or her 16th birthday;

3. Has continuously resided in the United States since June 15, 2007, up to the present time;

4. Was present in the United States on June 15, 2012 and at the time of making his or her request for consideration of deferred action with USCIS;

5. Had no lawful status on June 15, 2012;

   **NOTE:** No lawful status on June 15, 2012 means that:

   **A.** You never had a lawful immigration status on or before June 15, 2012; or

   **B.** Any lawful immigration status or parole that you obtained prior to June 15, 2012 had expired as of June 15, 2012.

6. Is currently in school, has graduated or obtained a certificate of completion from high school, has obtained a general educational development (GED) certificate, or is an honorably discharged veteran of the U.S. Armed Forces or U.S. Coast Guard; and

7. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

An individual may be considered for **Renewal** of DACA if he or she met the guidelines for consideration of Initial DACA (see above) AND he or she:

1. Did not depart the United States on or after August 15, 2012 without advance parole;

2. Has continuously resided in the United States since he or she submitted his or her most recent request for DACA that was approved up to the present time; and

3. Has not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, and does not otherwise pose a threat to national security or public safety.

## Who May File Form I-821D?

1. **Childhood Arrivals Who Have Never Been in Removal Proceedings.** If you have never been in removal proceedings, submit this form to request that USCIS consider deferring action in your case. You must be 15 years of age or older at the time of filing and meet the guidelines described in the Secretary's memorandum to be considered for deferred action.

2. **Childhood Arrivals Whose Removal Proceedings Were Terminated.** If you were in removal proceedings which have been terminated by the immigration judge prior to this request, you may use this form to request that USCIS consider deferring action in your case. You must be 15 years of age or older at the time of filing and meet the guidelines described in the Secretary's memorandum to be considered for deferred action.

3. **Childhood Arrivals In Removal Proceedings, With a Final Removal Order, or With Voluntary Departure.** If you are in removal proceedings, have a final order of removal, exclusion, or deportation issued in any other context, have a voluntary departure order, or if your proceedings have been administratively closed, you may use this form to request that USCIS consider deferring action in your case, even if you are under 15 years of age at the time of filing. For the purpose of this form, "removal proceedings" includes exclusion or deportation proceedings initiated before April 1, 1997, an Immigration and Nationality Act (INA) section 240 removal proceeding, expedited removal, reinstatement of a final order of exclusion, deportation, or removal, an INA section 217 removal after admission under the Visa Waiver Program, removal as a criminal alien under INA section 238, or any other kind of removal proceeding under U.S. immigration law in any other context (e.g., at the border or within the United States by an immigration agent).

4. **Childhood Arrivals Whose Case Was Deferred and Who Are Seeking Renewal of DACA.** If USCIS or ICE deferred action in your case under DACA, you may use this form to request consideration of Renewal of DACA from USCIS.

## General Instructions

USCIS provides forms free of charge through the USCIS website. In order to view, print, or fill out our forms, you should use the latest version of Adobe Reader, which can be downloaded for free at http://get.adobe.com/reader/.

Each request must be properly signed and accompanied by Form I-765 with fees and Form I-765WS. If you are under 14 years of age, your parent or legal guardian may sign the request on your behalf. A designated representative may sign if the requestor is unable to sign due to a physical or developmental disability or mental impairment. A photocopy of a signed request or typewritten name in place of a signature is not acceptable. This request is not considered properly filed until accepted by USCIS.

**Evidence.** You must submit all required evidence and supporting documentation with your request at the time of filing. See the **Evidence for Initial Requests Only** and **Evidence for Renewal Requests Only** sections of these instructions for more details.

You should keep all documents that support how you meet the DACA guidelines so you can provide them if they are requested by USCIS.

**NOTE:** If you are submitting a **Renewal Request** for consideration of DACA to USCIS, you do not need to re-submit documents you already submitted with your previous DACA requests.

**Biometric Services Appointment.** Individuals requesting DACA must provide fingerprints, photographs, and signatures (biometrics). You may receive a notice scheduling you to appear at an Application Support Center (ASC) for biometrics collection. Failure to comply with the notice may result in the denial of your deferred action request. USCIS may, in its discretion, waive the collection of certain biometrics.

**Copies.** You may submit a legible photocopy of any document, unless you are specifically required to file an original document with this request. Original documents submitted when not required may remain a part of the record, and USCIS will not automatically return them to you.

**Translations.** Any document you submit to USCIS that contains a foreign language must have a full English translation. The translator must certify that the English translation is complete and accurate, and that he or she is competent to translate from the foreign language into English.

An example of a certification would read, "I [typed name], certify that I am fluent (conversant) in the English and [insert other language] languages, and that the above/attached document is an accurate translation of the document attached entitled [name of document]." The certification should also include the date, the translator's signature and typed name, and the translator's address.

**Advance Parole.** If you wish to file a request for Advance Parole, please follow the instructions for filing Form I-131, Application for Travel Document. You can get the most current information on how to apply for advance parole by visiting the USCIS website at www.uscis.gov/i-131 or calling the National Customer Service Line at 1-800-375-5283 or 1-800-767-1833 (TTY for the hearing impaired). Customer service officers are available Monday - Friday from 8 a.m. - 6 p.m. in each U.S. time zone.

**Travel Warning.** On or after August 15, 2012, if you travel outside of the United States before USCIS has determined whether to defer action in your case, you will not be considered for deferred action. Even after USCIS has deferred action in your case under DACA, you should not travel outside the United States unless you have been issued an Advance Parole Document by USCIS. Deferred action will terminate automatically if you travel outside the United States without obtaining an Advance Parole Document from USCIS. In addition, leaving the United States, even with an Advance Parole Document, may impact your ability to return to the United States.

**How To Fill Out Form I-821D**

1.  This form consists of eight parts. Requestors for Initial DACA and those requestors seeking Renewal of DACA should fill out most parts. However, only requestors for Initial DACA should complete **Part 3.** See below for greater detail.

    **Part 1. Information About You.** All requestors must complete this part.

    **Part 2. Residence and Travel Information.** All requestors must complete this part. Please be aware that Initial requestors must provide more extensive information than Renewal requestors.

    **Part 3. For Initial Requests Only.** Renewal requestors should skip this part.

    **Part 4. Criminal, National Security, and Public Safety Information.** All requestors must complete this part.

    **Part 5. Statement, Certification, Signature, and Contact Information of the Requestor.** All requestors must complete this part.

    **Part 6. Contact Information, Certification, and Signature of the Interpreter.** Any requestor using an interpreter must complete this part.

    **Part 7. Contact Information, Declaration, and Signature of the Person Preparing this Request, If Other than the Requestor.** If you had someone else prepare your request, he or she must complete this part.

    **Part 8. Additional Information.** Any requestor may complete this part if additional space is needed.

2.  Further Information on filling out Form I-821D:

    **A.** Type or print legibly in black ink.

    **B.** If you need extra space to complete any item within this request, use **Part 8. Additional Information** and make additional copies of this sheet as needed. Type or print your name and Alien Registration Number (A-Number) (if any) at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

    **C.** Answer all questions fully and accurately. If an item is not applicable or the answer is "none," type or print "N/ A," unless otherwise directed.

    **D.** All dates must be entered as mm/dd/yyyy. You may provide approximate dates if you do not know the exact date. Do not leave a date response blank.

    **E. Processing Information.** You must provide the biometrics information requested in **Part 1., Item Numbers 15. - 20.** Providing this information as part of your request may reduce the time you spend at your USCIS ASC appointment.

    **F. Part 5. Statement, Certification, Signature, and Contact Information of the Requestor.** Select the box that indicates whether someone interpreted this form for you. If applicable, the attorney, accredited representative, or other individual who helped prepare this form for you must complete **Part 7.** and sign and date the form. Every request must contain the requestor's original signature. A photocopy of a signed request or a typewritten name in place of a signature is **not** acceptable. Sign and date the form and provide your daytime telephone number, mobile telephone number, and email address. If you are under 14 years of age, your parent or legal guardian may sign the request on your behalf. A designated representative may sign if the requestor is unable to sign due to a physical or developmental disability or mental impairment.

    **G. Part 6. Contact Information, Certification, and Signature of the Interpreter.** If you used an interpreter to read the instructions and complete the questions on this form, the interpreter must fill out **Part 6.** The interpreter must provide his or her full name, the name of his or her business or organization, an address, a daytime telephone number, and an email address. He or she must also sign and date the form.

**H. Part 7. Contact Information, Declaration, and Signature of the Person Preparing this Request, If Other Than the Requestor.** If the person who completed this request, is someone other than the person named in **Part 1.**, he or she must complete this section of the request, provide his or her name, the address of his or her business or organization (if any), and his or her contact information. If the person completing this request is an attorney or accredited representative, he or she must submit a completed Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, along with this request. Further, the attorney or accredited representative, and anyone who assisted in preparing your request, must sign and date the request. This section of the request **MUST** contain the original signature of the attorney or accredited representative, and anyone who assisted in preparing your request. A typewritten name in place of a signature is not acceptable.

---

## Evidence for Initial Requests Only

**NOTE:** If you are submitting an **Initial Request** for consideration of DACA to USCIS, you will need to submit documents showing how you believe you have satisfied each DACA guideline.

1. What documents should you submit with your Form I-821D?

    A. You do not need to submit original documents unless USCIS requests them.

    B. Evidence and supporting documents that you file with your Form I-821D should show that you are at least 15 years of age at the time of filing, if required (see the **Who May File Form I-821D** section of these instructions for more information), and that you meet all of the following:

        (1) Were born after June 15, 1981 (i.e., You were not age 31 or older on June 15, 2012);

        (2) Arrived in the United States before 16 years of age;

        (3) Have continuously resided in the United States since June 15, 2007, up to the present time;

        (4) Were present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;

        (5) Had no lawful status on June 15, 2012; and

        (6) Are currently in school, graduated or received a certificate of completion from high school, obtained a GED certificate or other equivalent state-authorized exam in the United States, or that you are an honorably discharged veteran of the U.S. Armed Forces or U.S. Coast Guard.

2. What documents do you need to provide to prove identity?

    Submit copies of any of the following:

    A. Passport;

    B. Birth certificate accompanied by photo identification;

    C. Any national identity document from your country of origin bearing your photo and/or fingerprint;

    D. Any U.S. government immigration or other document bearing your name and photograph (e.g., EADs, visas, driver's licenses, non-driver cards);

    E. Any school-issued form of identification with photo;

    F. Military identification document with photo;

    G. State-issued photo ID showing date of birth; or

    H. Any other document with photo that you believe is relevant.

    **NOTE:** Expired documents are acceptable.

---

3. **What documents may show that you came to the United States before your 16th birthday?**

Submit copies of any of the following documents:

**A.** Passport with an admission stamp indicating when you entered the United States;

**B.** Form I-94, I-94W, or I-95 Arrival-Departure Record;

**C.** Any Immigration and Naturalization Service (INS) or DHS document stating your date of entry (e.g., Form I-862, Notice to Appear);

**D.** Travel records, such as transportation tickets showing your dates of travel to the United States;

**E.** School records (e.g., transcripts, report cards) from the schools that you have attended in the United States, showing the names of the schools and periods of school attendance;

**F.** Hospital or medical records concerning treatment or hospitalization, showing the names of the medical facilities or physicians and the dates of the treatment or hospitalization;

**G.** Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding); or

**H.** Any other document that you believe is relevant.

4. **If you left the United States for some period of time before your 16th birthday and returned on or after your 16th birthday to begin your current period of continuous residence, what documents may show that you established residence before your 16th birthday?**

Submit copies of any of the following documents:

**A.** School records (e.g., transcripts, report cards) from the schools that you have attended in the United States, showing the names of the schools and periods of school attendance;

**B.** Employment records (e.g., pay stubs, W-2 Forms, certification of the filing of Federal income tax returns, state verification of the filing of state income tax returns, letters from employers, or, if you are self employed, letters from banks and other firms with whom you have done business);

**C.** Documents evidencing that you were physically present in the United States for multiple years prior to your 16th birthday; or

**D.** Any other relevant document.

5. **What documents may show that you continuously resided in the United States since June 15, 2007, up to the present date?**

Submit copies of any relevant documents such as:

**A.** Rent receipts, utility bills (e.g., gas, electric, phone), or receipts or letters from companies showing the dates during which you received service. You may submit this documentation even if it only has the name of your parents or legal guardians, as long as you also submit other evidence (e.g., third party documentation) that connects you to your residence at that address;

**B.** Employment records (e.g., pay stubs, W-2 Forms, certification of the filing of Federal income tax returns, state verification of the filing of state income tax returns, letters from employers, or, if you are self employed, letters from banks and other firms with whom you have done business);

**NOTE:** In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates. Letters must include: your address at the time of employment, exact periods of employment, periods of layoff, and duties with the employer. Letters must also be signed by the employer and include the employer's contact information.

**C.** School records (e.g., transcripts, report cards) from the schools that you have attended in the United States, showing the names of the schools and periods of school attendance;

**D.** Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records);

**E.** Hospital or medical records concerning treatment or hospitalization, showing the names of the medical facilities or physicians and the dates of the treatment or hospitalization;

**F.** Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding);

**G.** Money order receipts for money sent in or out of the country; passport entries; birth certificates of children born in the United States; dated records of bank transactions; correspondence between you and another person or organization; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, rental agreements, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

**H.** Any other relevant document.

**6. Do brief departures interrupt continuous residence?**

A brief, casual, and innocent absence from the United States will not interrupt your continuous residence.  If you were absent from the United States for any period of time, your absence will be considered brief, casual, and innocent, if it was on or after June 15, 2007, and before August 15, 2012, and:

**A.** The absence was short and reasonably calculated to accomplish the purpose for the absence;

**B.** The absence was not because of an order of exclusion, deportation, or removal;

**C.** The absence was not because of an order of voluntary departure or an administrative grant of voluntary departure before you were placed in exclusion, deportation, or removal proceedings; and

**D.** The purpose of the absence and/or your actions while outside of the United States were not contrary to law.

**In Part 3. Arrival/Residence Information,** list all your absences from the United States since June 15, 2007. Include information about all your departure and return dates, and the reason for your departures.  Documents you can submit that may show your absence was brief, casual, and innocent include, but are not limited to:

**A.** Plane or other transportation tickets or itinerary showing the travel dates;

**B.** Passport entries;

**C.** Hotel receipts showing the dates you were abroad;

**D.** Evidence of the purpose of the travel (e.g., you attended a wedding or funeral);

**E.** Copy of Advance Parole Document issued by USCIS; and

**F.** Any other evidence that could support a brief, casual, and innocent absence.

**7. What documents may demonstrate that you were present in the United States on June 15, 2012?**

Submit copies of any relevant documents such as:

**A.** Rent receipts, utility bills (e.g., gas, electric, phone), or receipts or letters from companies showing the dates during which you received service You may submit this documentation even if it only has the name of your parents or legal guardians, as long as you also submit other evidence (e.g., third party documentation) that connects you to your residence at that address;

**B.** Employment records (e.g., pay stubs, W-2 Forms, certification of the filing of Federal income tax returns, state verification of the filing of state income tax returns, letters from employers, or, if you are self employed, letters from banks and other firms with whom you have done business);

**NOTE:**  In all of these documents, your name and the name of the employer or other interested organization must appear on the form or letter, as well as relevant dates.  Letters must include: your address at the time of employment, exact periods of employment, periods of layoff, and duties with the employer.  Letters must also be signed by the employer and include the employer's contact information.

C.  School records (e.g., transcripts, report cards) from the schools that you have attended in the United States, showing the names of the schools and periods of school attendance;

D.  Military records (e.g., Form DD-214, Certificate of Release or Discharge from Active Duty; NGB Form 22, National Guard Report of Separation and Record of Service; military personnel records; or military health records);

E.  Hospital or medical records concerning treatment or hospitalization, showing the names of the medical facilities or physicians and the dates of the treatment or hospitalization;

F.  Official records from a religious entity in the United States confirming your participation in a religious ceremony, rite, or passage (e.g., baptism, first communion, wedding);

G.  Money order receipts for money sent in or out of the country; passport entries; birth certificates of children born in the United States; dated records of bank transactions; correspondence between you and another person or organization; automobile license receipts, title, vehicle registration, etc.; deeds, mortgages, rental agreements, contracts to which you have been a party; tax receipts; insurance policies; receipts; postmarked letters; or

H.  Any other relevant document.

**8.  What documents may show you had no lawful status on June 15, 2012?**  (Submit documents if you were admitted or paroled, or otherwise obtained a lawful immigration status, on or before June 15, 2012, or you were or are in removal proceedings.)

Submit copies of any of the following documents:

A.  Form I-94, I-94W, or I-95 Arrival/Departure Record showing the date your authorized stay expired;

B.  If you have a final order of exclusion, deportation, or removal issued as of June 15, 2012, submit a copy of that order and related charging documents, if available;

C.  An INS or DHS charging document placing you into removal proceedings, if available; or

D.  Any other document that you believe is relevant to show that on June 15, 2012, you had no lawful status.

**9.  What documents may demonstrate that you:  a) are currently in school in the United States at the time of filing; b) have graduated or received a certificate of completion or a certificate of attendance from a U.S. high school, a U.S. public or private college or university, including community college; or c) have obtained a GED certificate or other equivalent state-authorized exam in the United States?** (If applicable)

USCIS recognizes that schools, educational programs, school districts, and state education agencies around the country issue educational records in a variety of formats.  USCIS does not require educational records to be presented in any particular format.

A.  To be considered "currently in school," you are to demonstrate that you are currently enrolled in one of the following:

    (1)  A U.S. public, private, or charter elementary school, junior high or middle school, high school, secondary school, alternative program, or home school program meeting state requirements;

    (2)  An education, literacy, or career training program (including vocational training) that has a purpose of improving literacy, mathematics, or English or is designed to lead to placement in post-secondary education, job training, or employment, and where you are working toward such placement, and that the program:

        (a)  Is administered by a non-profit entity; or

        (b)  Is funded in whole or in part by Federal, state, local, or municipal funds; or

        (c)  Is of demonstrated effectiveness;

**(3)** An education program in the U.S. assisting students in obtaining a regular high school diploma or its recognized equivalent under state law (including a certificate of completion, certificate of attendance, or alternate award), or in passing a GED exam or other equivalent state-authorized exam, and that the program:

    **(a)** Is administered by a non-profit entity; or

    **(b)** Is funded in whole or in part by Federal, state, local, or municipal funds; or

    **(c)** Is of demonstrated effectiveness;

**(4)** A U.S. public or private college or university including community college.

Evidence of enrollment may include, but is not limited to: school registration cards, acceptance or other letters demonstrating enrollment or attendance, current transcripts, report cards, progress reports, or other documents issued by a school district, state education agency, school, or program.  These documents should show your name; the name of the school district, or state educational agency, school, or program issuing the record; the dates or time periods of enrollment you are seeking to establish; and your current educational or grade level.

If you have been accepted for enrollment and your classes have not yet begun, you may submit an acceptance letter with evidence that you have registered for classes or any other relevant evidence showing you have committed to starting classes on a certain date, including, for example, a copy of your tuition bill, your class schedule, or your Individualized Educational Program.

If you are enrolled in an educational, literacy, or career training program (including vocational training or an ESL course), evidence that the program is funded in whole or in part by Federal, state, local, or municipal funds includes a letter or other documentation from an authorized representative of the program that includes information such as: your name and date of enrollment, the duration of the program and expected completion date, the program's source of public funding, and the program's authorized representative's contact information.

If you are enrolled in an education, literacy, or career training program that is not publicly funded, evidence that the program is of demonstrated effectiveness may include information from an authorized school representative relating to: the duration of the program's existence; the program's track record in placing students in employment, job training, or post-secondary education; receipt of awards or special achievement or recognition that indicate the program's overall quality; and/or any other information indicating the program's overall quality.

**B.** Evidence to show that you meet the educational guideline because you have "graduated from school" or "obtained a GED certificate" or other equivalent state-authorized exam in the United States includes, but is not limited to:

**(1)** A high school diploma from a U.S. public or private high school or secondary school;

**(2)** A recognized equivalent of a U.S. high school diploma under state law, including a GED certificate or other equivalent state-authorized exam, a certificate of completion, or a certificate of attendance;

**(3)** A transcript that identifies the date of graduation or program completion;

**(4)** An enrollment history that shows the date of graduation or program completion;

**(5)** A degree from a public or private college or university or a community college; or

**(6)** An alternate award from a U.S. public or private high school or secondary school.

These documents should show your name; the name of the U.S. school district, educational agency, school, or program issuing the record; the dates or time periods of enrollment you are seeking to establish; and your date of graduation or completion.

**10. What documents may demonstrate that you are an honorably discharged veteran of the U.S. Armed Forces or U.S. Coast Guard?** (If applicable)

Submit copies of the following documents:

**A.** Form DD-214, Certificate of Release or Discharge from Active Duty;

**B.** NGB Form 22, National Guard Report of Separation and Record of Service;

   **C.** Military personnel records;

   **D.** Military health records; or

   **E.** Any other relevant document.

**11. What additional documents should you submit if you are currently or have been in removal proceedings?**

Submit a copy of the removal order, any document issued by the immigration judge, or the final decision of the Board of Immigration Appeals (BIA), if available.  If you have not been in removal proceedings, this question does not apply to you.

**12. What evidence should I submit to demonstrate my criminal history?**

If you have been arrested for or charged with any felony (i.e., a Federal, state, or local criminal offense punishable by imprisonment for a term exceeding one year) or misdemeanor (i.e., a Federal, state, or local criminal offense for which the maximum term of imprisonment authorized is one year or less but greater than five days) in the United States, or a crime in any country other than the United States, you must submit evidence demonstrating the results of the arrest or charges brought against you.  If the charges against you were handled in juvenile court, and the records are from a state with laws prohibiting their disclosure, this evidence is not required.

   **A.** If you have ever been arrested for any felony or misdemeanor in the United States, or a crime in any country other than the United States, and no charges were filed, submit an original official statement by the arresting agency or applicable court order confirming that no charges were filed for each arrest.  If you are unable to provide such documentation or if it is not available, you must provide an explanation, including a description of your efforts to obtain such evidence, in **Part 8. Additional Information.**

   **B.** If you have ever been charged with or convicted of a felony or misdemeanor in the United States, or a crime in any country other than the United States, submit an original or court-certified copy of the complete arrest record and disposition for each incident (e.g., dismissal order, conviction and sentencing record, acquittal order).  If you are unable to provide such documentation or if it is not available, you must provide an explanation, including a description of your efforts to obtain such evidence, in **Part 8. Additional Information.**

   **C.** If you have ever had any arrest or conviction vacated, set aside, sealed, expunged, or otherwise removed from your record, submit:

      **(1)** An original or court-certified copy of the court order vacating, setting aside, sealing, expunging, or otherwise removing the arrest or conviction; or

      **(2)** An original statement from the court that no record exists of your arrest or conviction.

   If you are unable to provide such documentation or if it is not available, you must provide an explanation, including a description of your efforts to obtain such evidence, in **Part 8. Additional Information.**

   **NOTE:  You do not need to submit documentation concerning minor traffic violations such as driving without a license unless they were alcohol - or drug-related.**

---

**Evidence for Renewal Requests Only**

**NOTE:**  If you are submitting a **Renewal Request** for consideration of DACA to USCIS, you do not need to re-submit documents you already submitted with your previous DACA requests.

If you are seeking a **Renewal** of DACA, respond to all questions, except where the section or question indicates "For Initial Requests Only."

If you are currently in exclusion, deportation, or removal proceedings, see **Item Number 11.** (above) for additional guidance.

If you have any criminal history, see **Item Number 12.** (above) for additional guidance.

With your Renewal request, you only need to submit any new documents pertaining to removal proceedings or criminal history that you have not already submitted to USCIS.  If USCIS needs more documentation from you, USCIS will send a Request for Evidence to you explaining the needed information.  However, you should submit new documents if any of the following situations apply to you:

1.  You are currently in exclusion, deportation, or removal proceedings (please note, you do not need to submit these documents if your case was administratively closed); or

2.  You have been charged with, or convicted of, a felony or misdemeanor (please note, you do not need to submit these documents if you already submitted them with a previous DACA request).

**NOTE:**  You should keep all documents that support how you meet the DACA guidelines so you can provide them if they are requested by USCIS.

If ICE initially deferred action in your case and you are seeking a Renewal, you must select and complete **Item Number 2.** in **Part 1.** of Form I-821D.  You must also respond to **ALL** subsequent questions on the form.  You must also submit documentation to establish how you satisfy the guidelines as if you were filing an Initial request for consideration of deferred action.

**NOTE:**  You do not need to submit documentation concerning minor traffic violations such as driving without a license unless they were alcohol-or drug- related.

## Additional Information Relevant to ALL Requests for DACA

1.  **What other factors will USCIS consider when making a determination on deferred action?**

    USCIS will also conduct a background check.  USCIS may consider deferring action in your case even if you have been arrested or detained by any law enforcement officer and charges were filed, or if charges were filed against you without an arrest.  USCIS will evaluate the totality of the circumstances in reaching a decision on deferred action.

    In accordance with the Secretary's memorandum, if USCIS determines that you have been convicted of a felony, a significant misdemeanor, or three or more misdemeanors not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, or that you otherwise pose a threat to national security or public safety, USCIS is unlikely to defer action in your case.  See the Frequently Asked Questions at **www.uscis.gov/childhoodarrivals**.

    Even if you satisfy the threshold criteria for consideration of DACA, USCIS may deny your request if it determines, in its unreviewable discretion, that an exercise of prosecutorial discretion is not warranted in your case.

2.  **What else should you submit with Form I-821D?**

    USCIS will not consider deferring action in your case unless your Form I-821D is accompanied by Form I-765, with fees, and Form I-765WS.  If you do not include Form I-765 with all applicable fees with your Form I-821D, your entire submission will be rejected.

    **Optional E-Notification of Request Acceptance.**  You may submit Form G-1145, Notification of Application/ Petition Acceptance, an optional form, which will notify you electronically when USCIS accepts your request for DACA.

## What is the Filing Fee?

There is no filing fee for Form I-821D.  However, you must submit both filing and biometric services fees with Form I-765. Read Form I-765 filing instructions for complete information at **www.uscis.gov/I-765**.

## Where to File?

Please see our USCIS website at www.uscis.gov/I-821D or call the USCIS National Customer Service Center at 1-800-375-5283 for the most current information about where to file this form.  For TTY (deaf or hard of hearing) call: 1-800-767-1833.

## Address Changes

You must inform USCIS if you change your address.  For information on filing a change of address, go to the USCIS website at www.uscis.gov/addresschange or contact the USCIS National Customer Service Center at 1-800-375-5283.  For TTY (deaf or hard of hearing) call:  1-800-767-1833.

**NOTE:**  Do not submit a change of address request to USCIS Lockbox facilities because these facilities do not process change of address requests.

## Processing Information

**Initial Processing.**  Once your request has been received by USCIS, USCIS will check the request for completeness.  If you do not completely fill out the form, USCIS may deny or reject your request.

**Requests for More Information, Including Biometrics or Interview.**  We may request more information or evidence, or we may request that you appear at a USCIS office for an interview.  We may also request that you provide the originals of any copies you submit.  We will return these originals when they are no longer needed.

If the same documents are required for both Form I-821D and Form I-765 that are filed together, the documents only have to be submitted once.

At the time of any interview or other appearance at a USCIS office, USCIS may require that you provide biometric information (e.g., photograph, fingerprints, signature) to verify your identity and update your background information.

**Decision.**  USCIS will review your request to determine whether the exercise of prosecutorial discretion is appropriate in your case.  Each case will be considered on an individual, case-by-case basis.  Even if you satisfy the threshold criteria for consideration of DACA, USCIS may determine, in its unreviewable discretion, that deferred action is not warranted in your case.  You will be notified of the decision in writing.  There is no motion to reopen/reconsider the decision and there is no right to appeal.

## USCIS Forms and Information

To ensure you are using the latest version of this form, visit the USCIS website at www.uscis.gov where you can obtain the latest USCIS forms and immigration-related information.  If you do not have Internet access, you may order USCIS forms by calling our toll-free number at 1-800-870-3676.  You may also obtain forms and information by calling the USCIS National Customer Service Center at 1-800-375-5283.  For TTY (deaf or hard of hearing) call:  1-800-767-1833.

As an alternative to waiting in line for assistance at your local USCIS office, you can now schedule an appointment through our Internet-based system, **InfoPass**.  To access the system, visit our website at infopass.uscis.gov.  Use the **InfoPass** appointment scheduler and follow the screen prompts to set up your appointment.  **InfoPass** generates an electronic appointment notice that appears on the screen.

## Penalties

If you knowingly and willfully provide materially false information on Form I-821D, you will be committing a Federal felony punishable by a fine, or imprisonment up to five years, or both, under 18 U.S.C. Section 1001.  In addition, individuals may be placed into removal proceedings, face severe penalties provided by law, and be subject to criminal prosecution.

## USCIS Privacy Act Statement

**AUTHORITIES:**  The information requested on this form, and the associated evidence, is collected under the Immigration and Nationality Act, section 101, et seq.

**PURPOSE:**  The primary purpose for providing the requested information on this form is to determine if you should be considered for deferred action as a childhood arrival.  The information you provide will be used in making a decision whether to defer removal action in your case as an exercise of prosecutorial discretion.

**DISCLOSURE:**  The information you provide is voluntary.  However, failure to provide the requested information, and any requested evidence, may delay a final decision in your case or result in denial of your request.

**ROUTINE USES:**  The information you provide on this form may be shared with other Federal, state, local, and foreign government agencies and authorized organizations following approved routine uses described in the associated published system of records notices [DHS/USCIS-007 - Benefits Information System and DHS/USCIS-001 - Alien File, Index, and National File Tracking System of Records which can be found at **www.dhs.gov/privacy**].

## Other Disclosure Information

Information provided in this request is protected from disclosure to ICE and U.S. Customs and Border Protection (CBP) for the purpose of immigration enforcement proceedings unless the requestor meets the criteria for the issuance of a Notice To Appear or a referral to ICE under the criteria set forth in USCIS' Notice to Appear guidance (**www.uscis.gov/NTA**).  The information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of deferred action for childhood arrivals request itself, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense.  **The above information sharing clause covers family members and guardians, in addition to the requestor.**

This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

## Paperwork Reduction Act

An agency may not conduct or sponsor an information collection, and a person is not required to respond to a collection of information, unless it displays a currently valid OMB control number.  The public reporting burden for this collection of information is estimated at 3 hours per response, including the time for reviewing instructions and completing and submitting the form.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to:  U.S. Citizenship and Immigration Services, Regulatory Coordination Division, Office of Policy and Strategy, 20 Massachusetts Ave NW, Washington, DC 20529-2140; OMB No. 1615-0124.  **Do not mail your completed Form I-821D to this address.**

**Reminder**

### *For Initial and Renewal Request*

☐ Did you submit Form I-765 along with the filing and biometric services fees ($495) required for the application or employment authorization, and did you also submit a completed Form I-765WS?

☐ Did you answer every relevant **Item Number**?

☐ Did you provide an original, handwritten signature and date your request?

☐ Did you submit the necessary documents? For Initial requests, did you submit documents to meet each guideline? For Renewal requests, see the section titled Evidence for Renewal Requests Only.

☐ If you were issued a final order of exclusion, deportation, or removal, did you include a copy of that final order (if available and if you had not already submitted it to USCIS)?

☐ If your exclusion, deportation, or removal proceedings were terminated by an immigration judge, did you include a copy of the immigration judge's termination order (if available and if you had not already submitted it to USCIS)?

☐ If you have ever been arrested for, charged with, or convicted of any felony or misdemeanor in the United States or any crime in any country other than the United States, did you submit an original, official, or court-certified document that shows your complete arrest record and final disposition for each incident (if available and if you had not already submitted it to USCIS)?

### *For Initial Requests Only*

☐ Did you submit evidence to show that you came to the United States while under 16 years of age?

☐ Did you submit evidence to prove your identity, date of initial entry, and continuous residence from June 15, 2007 (or earlier) up to the present time?

☐ Did you submit evidence that you are currently in school, have a GED certificate, have graduated or received a certificate of completion from high school, or are an honorably discharged veteran of the U.S. Armed Forces or U.S. Coast Guard?

☐ Did you provide evidence showing that you had no lawful status as of June 15, 2012?

# EXHIBIT C

# Perma.cc record

Captured August 26, 2016 2:30 pm   See the Capture View (/S6G2-3D8M)   What is Perma.cc? (/about)

(https://www.uscis.gov/humanitaria

Show record details                              View the live page



Official Website of the Department of Homeland Security

Español | Blog | About USCIS | Contact Us

A-Z Index | Get Email Updates                                    Search our Site | Ask a Question

U.S. Citizenship and Immigration Services

FORMS     NEWS     CITIZENSHIP         GREEN CARD     TOOLS     LAWS

Home > Humanitarian > Consideration of Deferred Action for Childhood Arrivals Process

Share This Page     Print

**Humanitarian**

Battered Spouse, Children & Parents

**Consideration of Deferred Action for Childhood Arrivals Process**

Frequently Asked Questions

Renew Your DACA

Deferred Enforced Departure ▼

Humanitarian Parole ▼

Refugees & Asylum ▼

Special Situations ▼

Temporary Protected Status ▼

Victims of Human Trafficking & Other Crimes ▼

Female Genital Mutilation or Cutting (FGM/C)

# Frequently Asked Questions

FAQs updated June 15, 2015

- Chinese (PDF, 611 KB)
- Korean (PDF, 627 KB)
- Tagalog (PDF, 338 KB)
- Vietnamese (PDF, 454 KB)

General Information for All Requestors

- What is Deferred Action for Childhood Arrivals?
- DACA Process
- Background Checks
- After USCIS Makes a Decision

Initial Requests for DACA
Renewal of DACA
Travel
Criminal Convictions
Miscellaneous

I. General Information for All Requestors

A. What is Deferred Action for Childhood Arrivals?

Over the past several years, this Administration has undertaken an unprecedented effort to transform the immigration enforcement system into one that focuses on national security, public safety, border security and the integrity of the immigration system. As the Department of Homeland Security (DHS) continues to focus its enforcement resources on the removal of individuals who pose a danger to national security or a risk to public safety, DHS will exercise prosecutorial discretion as appropriate to ensure that enforcement resources are not expended on low priority cases, such as individuals who came to the United States as children and meet other key guidelines. Individuals who demonstrate that they meet the guidelines below may request consideration of deferred action for childhood arrivals (DACA) for a period of two years, subject to renewal for a period of two years, and may be eligible for employment authorization.

You may request consideration of DACA if you:

1. Were under the age of 31 as of June 15, 2012;
2. Came to the United States before reaching your 16th birthday;
3. Have continuously resided in the United States since June 15, 2007, up to the present time;
4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;
5. Had no lawful status on June 15, 2012, meaning that:

   - You never had a lawful immigration status on or before June 15, 2012, or
   - Any lawful immigration status or parole that you obtained prior to June

immediately contact the Law Enforcement Support Center's hotline at
1-855-448-6903 (staffed 24 hours a day, 7 days a week).

Q15: If I accepted an offer of administrative closure under the case-by-case review
process or my case was terminated as part of the case-by-case review process,
can I be considered for deferred action under this process?
A15: Yes. If you can demonstrate that you meet the guidelines, you will be able to
request consideration of DACA even if you have accepted an offer of
administrative closure or termination under the case-by-case review process.

Q16: If I declined an offer of administrative closure under the case-by-case review
process, can I be considered for deferred action under this process?
A16: Yes. If you can demonstrate that you meet the guidelines, you will be able to
request consideration of DACA even if you declined an offer of administrative
closure under the case-by-case review process.

Q17: If my case was reviewed as part of the case-by-case review process but I
was not offered administrative closure, can I be considered for deferred action
under this process?
A17: Yes. If you can demonstrate that you meet the guidelines, you will be able to
request consideration of DACA even if you were not offered administrative closure
following review of your case as part of the case-by-case review process.

Q18: Can I request consideration of DACA under this process if I am currently in a
nonimmigrant status (e.g. F-1, E-2, H-4) or have Temporary Protected Status (TPS)?
A18: No. You can only request consideration of DACA under this process if you
currently have no immigration status and were not in any lawful status on June 15,
2012.

Q19: Will the information I share in my request for consideration of DACA be used
for immigration enforcement purposes?
A19: Information provided in this request is protected from disclosure to ICE and
CBP for the purpose of immigration enforcement proceedings unless the
requestor meets the criteria for the issuance of a Notice To Appear or a referral to
ICE under the criteria set forth in USCIS' Notice to Appear guidance
(www.uscis.gov/NTA). Individuals whose cases are deferred pursuant to DACA will
not be referred to ICE. The information may be shared with national security and
law enforcement agencies, including ICE and CBP, for purposes other than
removal, including for assistance in the consideration of DACA, to identify or
prevent fraudulent claims, for national security purposes, or for the investigation
or prosecution of a criminal offense. The above information sharing policy covers
family members and guardians, in addition to the requestor. This policy, which may
be modified, superseded, or rescinded at any time without notice, is not intended
to, does not, and may not be relied upon to create any right or benefit,
substantive or procedural, enforceable by law by any party in any administrative,
civil, or criminal matter.

Q20: If my case is referred to ICE for immigration enforcement purposes or if I
receive an NTA, will information related to my family members and guardians also
be referred to ICE for immigration enforcement purposes?
A20: If your case is referred to ICE for purposes of immigration enforcement or
you receive an NTA, information related to your family members or guardians that
is contained in your request will not be referred to ICE for purposes of immigration
enforcement against family members or guardians. However, that information may
be shared with national security and law enforcement agencies, including ICE and
CBP, for purposes other than removal, including for assistance in the consideration
of DACA, to identify or prevent fraudulent claims, for national security purposes, or
for the investigation or prosecution of a criminal offense.

This policy, which may be modified, superseded, or rescinded at any time without
notice, is not intended to, does not, and may not be relied upon to create any right
or benefit, substantive or procedural, enforceable at law by any party in any
administrative, civil, or criminal matter.

Q21: Will USCIS verify documents or statements that I provide in support of a
request for DACA?

A21: USCIS has the authority to verify documents, facts, and statements that are
provided in support of requests for DACA. USCIS may contact education
institutions, other government agencies, employers, or other entities in order to
verify information.

<span style="color:blue">Return to top.</span>

[www.justice.gov/crt/worker-information](http://www.justice.gov/crt/worker-information).

Return to top.

Last Reviewed/Updated: 03/04/2016



**U.S. Citizenship and Immigration Services**

   

**TOPICS**
Adoption
Appeals
Archive
Avoid Scams
Citizenship
Citizenship Resource Center
Executive Actions on Immigration
Family
File Online
Green Card
History and Genealogy
Humanitarian
Military
Outreach
Visit the U.S.
Working in the U.S.

**VERIFICATION**
E-Verify
I-9 Central
myE-Verify
SAVE

**POLICIES**
USCIS Freedom of Information
Act and Privacy Act
No FEAR Act
Website Policies
Accessibility
Privacy and Legal Disclaimers
Social Media Policy
Plug-ins
Adobe Reader

**GOVERNMENT**
Passports
Visa Bulletin
U.S. Department of
Homeland Security
U.S. Customs & Border
Protection
U.S. Immigration &
Customs Enforcement
White House
U.S. Department of State
USA.gov

**National Customer Service Center**
1-800-375-5283
**TDD for the Deaf and Hard of Hearing**
1-800-767-1833

# EXHIBIT D



*Secretary*
**U.S. Department of Homeland Security**
Washington, DC 20528

# Homeland Security

December 30, 2016

The Honorable Judy Chu
U.S. House of Representatives
Washington, DC 20515

Dear Representative Chu:

On behalf of the Administration, I write in response to the letter you and 110 other members of Congress sent the President on December 5.  In your letter, you ask us "to do everything within [our] power to safeguard the personal identifying information of DACA enrollees."  We share your concerns.

Today there are 750,000 young people enrolled in DACA who, when they applied for enrollment, relied on the U.S. government's representations about the use of their personal identifying information.  Since DACA was announced in 2012, DHS has consistently made clear that information provided by applicants will be collected and considered for the primary purpose of adjudicating their DACA requests and would be safeguarded from other immigration-related purposes.  More specifically, the U.S. government represented to applicants that the personal information they provided will not later be used for immigration enforcement purposes except where it is independently determined that a case involves a national security or public safety threat, criminal activity, fraud, or limited other circumstances where issuance of a notice to appear is required by law.

We believe these representations made by the U.S. government, upon which DACA applicants most assuredly relied, must continue to be honored.

For decades, even dating back before DACA, it has been the long-standing and consistent practice of DHS (and its predecessor INS) to use information submitted by people seeking deferred action or other benefits for the limited purpose of adjudicating their requests, and not for immigration enforcement purposes except in the kinds of specified circumstances described above.  This was true, for example, under the deferred action policies extended to victims of human trafficking, to foreign students affected by Hurricane Katrina, to battered immigrants under the Violence Against Women Act, and to widows and widowers of American citizens.  Accordingly, people who requested to be considered under DACA, like those who requested deferred action in the past, have relied on our consistent practice concerning the information they provide about themselves and others.

The Honorable Judy Chu
Page 2

The U.S. government's practice of adhering to the assurances it makes to applicants for deferred action is also consistent with the way USCIS (and the INS before it) has long protected information submitted by those seeking other benefits or relief.  This includes but is not limited to individuals requesting temporary protected status, deferred enforced departure, or extended voluntary departure.  In these circumstances, as with deferred action requests, USCIS and INS have abided by a longstanding and consistent practice of using information to adjudicate specific applications, but not for immigration enforcement purposes absent the limited circumstances described above.

Since DACA began, thousands of Dreamers have been able to enroll in colleges and universities, complete their education, start businesses that help improve our economy, and give back to our communities as teachers, medical professionals, engineers, and entrepreneurs—all on the books.  We continue to benefit as a country from the contributions of those young people who have come forward and want nothing more than to contribute to our country and our shared future.

The co-signers of your letter will receive separate, identical responses.  Should you wish to discuss this further, please do not hesitate to contact me.

Sincerely,

Jeh Charles Johnson

2/2

# EXHIBIT E

 Official website of the Department of Homeland Security

 U.S. Department of
Homeland Security

# Memorandum on Rescission Of Deferred Action For Childhood Arrivals (DACA)

**Release Date:**  September 5, 2017

**MEMORANDUM FOR:**

James W. McCament
Acting Director
U.S. Citizenship and Immigration Services

Thomas D. Homan
Acting Director
U.S. Immigration and Customs Enforcement

Kevin K. McAleenan
Acting Commissioner
U.S. Customs and Border Protection

Joseph B. Maher
Acting General Counsel

Ambassador James D. Nealon
Assistant Secretary, International Engagement

Julie M. Kirchner
Citizenship and Immigration Services Ombudsman

**FROM:**

Elaine C. Duke
Acting Secretary

SUBJECT:

**Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"**

This memorandum rescinds the June 15, 2012 memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children," which established the program known as Deferred Action for Childhood Arrivals ("DACA"). For the reasons and in the manner outlined below, Department of Homeland Security personnel shall take all appropriate actions to execute a wind-down of the program, consistent with the parameters established in this memorandum.

## Background

The Department of Homeland Security established DACA through the issuance of a memorandum on June 15, 2012. The program purported to use deferred action—an act of prosecutorial discretion meant to be applied only on an individualized case-by-case basis—to confer certain benefits to illegal aliens that Congress had not otherwise acted to provide by law.[1] (#_ftn1) Specifically, DACA provided certain illegal aliens who entered the United States before the age of sixteen a period of deferred action and eligibility to request employment authorization.

On November 20, 2014, the Department issued a new memorandum, expanding the parameters of DACA and creating a new policy called Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA"). Among other things—such as the expansion of the coverage criteria under the 2012 DACA policy to encompass aliens with a wider range of ages and arrival dates, and lengthening the period of deferred action and work authorization from two years to three—the November 20, 2014 memorandum directed USCIS "to establish a process, similar to DACA, for exercising prosecutorial discretion through the use of deferred action, on a case-by-case basis," to certain aliens who have "a son or daughter who is a U.S. citizen or lawful permanent resident."

Prior to the implementation of DAPA, twenty-six states—led by Texas—challenged the policies announced in the November 20, 2014 memorandum in the U.S. District Court for the Southern District of Texas. In an order issued on February 16, 2015, the district court preliminarily enjoined the policies nationwide.[2] (#_ftn2) The district court held that the plaintiff states were likely to succeed on their claim that the DAPA program did not comply with relevant authorities.

The United States Court of Appeals for the Fifth Circuit affirmed, holding that Texas and the other states had demonstrated a substantial likelihood of success on the merits and satisfied

the other requirements for a preliminary injunction.[3] (# ftn3) The Fifth Circuit concluded that the Department's DAPA policy conflicted with the discretion authorized by Congress. In considering the DAPA program, the court noted that the Immigration and Nationality Act "flatly does not permit the reclassification of millions of illegal aliens as lawfully present and thereby make them newly eligible for a host of federal and state benefits, including work authorization." According to the court, "DAPA is foreclosed by Congress's careful plan; the program is 'manifestly contrary to the statute' and therefore was properly enjoined."

Although the original DACA policy was not challenged in the lawsuit, both the district and appellate court decisions relied on factual findings about the implementation of the 2012 DACA memorandum. The Fifth Circuit agreed with the lower court that DACA decisions were not truly discretionary,[4] (# ftn4) and that DAPA and expanded DACA would be substantially similar in execution. Both the district court and the Fifth Circuit concluded that implementation of the program did not comply with the Administrative Procedure Act because the Department did not implement it through notice-and-comment rulemaking.

The Supreme Court affirmed the Fifth Circuit's ruling by equally divided vote (4-4).[5] (# ftn5) The evenly divided ruling resulted in the Fifth Circuit order being affirmed. The preliminary injunction therefore remains in place today. In October 2016, the Supreme Court denied a request from DHS to rehear the case upon the appointment of a new Justice. After the 2016 election, both parties agreed to a stay in litigation to allow the new administration to review these issues.

On January 25, 2017, President Trump issued Executive Order No. 13,768, "Enhancing Public Safety in the Interior of the United States." In that Order, the President directed federal agencies to "[e]nsure the faithful execution of the immigration laws . . . against all removable aliens," and established new immigration enforcement priorities. On February 20, 2017, then Secretary of Homeland Security John F. Kelly issued an implementing memorandum, stating "the Department no longer will exempt classes or categories of removable aliens from potential enforcement," except as provided in the Department's June 15, 2012 memorandum establishing DACA,[6] (# ftn6) and the November 20, 2014 memorandum establishing DAPA and expanding DACA.[7] (# ftn7)

On June 15, 2017, after consulting with the Attorney General, and considering the likelihood of success on the merits of the ongoing litigation, then Secretary John F. Kelly issued a memorandum rescinding DAPA and the expansion of DACA—but temporarily left in place the June 15, 2012 memorandum that initially created the DACA program.

Then, on June 29, 2017, Texas, along with several other states, sent a letter to Attorney General Sessions asserting that the original 2012 DACA memorandum is unlawful for the same reasons

stated in the Fifth Circuit and district court opinions regarding DAPA and expanded DACA. The letter notes that if DHS does not rescind the DACA memo by September 5, 2017, the States will seek to amend the DAPA lawsuit to include a challenge to DACA.

The Attorney General sent a letter to the Department on September 4, 2017, articulating his legal determination that DACA "was effectuated by the previous administration through executive action, without proper statutory authority and with no established end-date, after Congress' repeated rejection of proposed legislation that would have accomplished a similar result. Such an open-ended circumvention of immigration laws was an unconstitutional exercise of authority by the Executive Branch." The letter further stated that because DACA "has the same legal and constitutional defects that the courts recognized as to DAPA, it is likely that potentially imminent litigation would yield similar results with respect to DACA." Nevertheless, in light of the administrative complexities associated with ending the program, he recommended that the Department wind it down in an efficient and orderly fashion, and his office has reviewed the terms on which our Department will do so.

## Rescission of the June 15, 2012 DACA Memorandum

Taking into consideration the Supreme Court's and the Fifth Circuit's rulings in the ongoing litigation, and the September 4, 2017 letter from the Attorney General, it is clear that the June 15, 2012 DACA program should be terminated. In the exercise of my authority in establishing national immigration policies and priorities, except for the purposes explicitly identified below, I hereby rescind the June 15, 2012 memorandum.

Recognizing the complexities associated with winding down the program, the Department will provide a limited window in which it will adjudicate certain requests for DACA and associated applications meeting certain parameters specified below. Accordingly, effective immediately, the Department:

- Will adjudicate—on an individual, case-by-case basis—properly filed pending DACA initial requests and associated applications for Employment Authorization Documents that have been accepted by the Department as of the date of this memorandum.

- Will reject all DACA initial requests and associated applications for Employment Authorization Documents filed after the date of this memorandum.

- Will adjudicate—on an individual, case by case basis—properly filed pending DACA renewal requests and associated applications for Employment Authorization Documents from current beneficiaries that have been accepted by the Department as of the date of this memorandum, and from current beneficiaries whose benefits will expire between the date of this memorandum and March 5, 2018 that have been accepted by the Department as of October 5, 2017.

- Will reject all DACA renewal requests and associated applications for Employment Authorization Documents filed outside of the parameters specified above.

- Will not terminate the grants of previously issued deferred action or revoke Employment Authorization Documents solely based on the directives in this memorandum for the remaining duration of their validity periods.

- Will not approve any new Form I-131 applications for advance parole under standards associated with the DACA program, although it will generally honor the stated validity period for previously approved applications for advance parole. Notwithstanding the continued validity of advance parole approvals previously granted, CBP will—of course—retain the authority it has always had and exercised in determining the admissibility of any person presenting at the border and the eligibility of such persons for parole. Further, USCIS will—of course—retain the authority to revoke or terminate an advance parole document at any time.

- Will administratively close all pending Form I-131 applications for advance parole filed under standards associated with the DACA program, and will refund all associated fees.

- Will continue to exercise its discretionary authority to terminate or deny deferred action at any time when immigration officials determine termination or denial of deferred action is appropriate.

This document is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigation prerogatives of DHS.

---

[1] (#_ftnref1) Significantly, while the DACA denial notice indicates the decision to deny is made in the unreviewable discretion of USCIS, USCIS has not been able to identify specific denial cases where an applicant appeared to satisfy the programmatic categorical criteria as outlined in the June 15, 2012 memorandum, but still had his or her application denied based solely upon discretion.

[2] (#_ftnref2) *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015).

[3] (#_ftnref3) *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015).

[4] (#_ftnref4) *Id.*

[5] (#_ftnref5) *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam).

[6] (#_ftnref6) Memorandum from Janet Napolitano, Secretary, DHS to David Aguilar, Acting Comm'r, CBP, et al., "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" (June 15, 2012).

[7] (#_ftnref7) Memorandum from Jeh Johnson, Secretary, DHS, to Leon Rodriguez, Dir., USCIS, et al., "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Whose Parents are U.S. Citizens or Permanent Residents" (Nov. 20, 2014).

Topics:   Border Security (/topics/border-security) , Deferred Action (/topics/deferred-action)

Keywords:   DACA (/keywords/daca) , Deferred Action for Childhood Arrivals (/keywords/deferred-action-childhood-arrivals)

Last Published Date: September 5, 2017

# EXHIBIT F

JUSTICE NEWS

**Attorney General Sessions Delivers Remarks on DACA**

Washington, DC ~ Tuesday, September 5, 2017

---

**Remarks as prepared for delivery**

Good morning. I am here today to announce that the program known as DACA that was effectuated under the Obama Administration is being rescinded.

The DACA program was implemented in 2012 and essentially provided a legal status for recipients for a renewable two-year term, work authorization and other benefits, including participation in the social security program, to 800,000 mostly-adult illegal aliens.

This policy was implemented unilaterally to great controversy and legal concern after Congress rejected legislative proposals to extend similar benefits on numerous occasions to this same group of illegal aliens.

In other words, the executive branch, through DACA, deliberately sought to achieve what the legislative branch specifically refused to authorize on multiple occasions. Such an open-ended circumvention of immigration laws was an unconstitutional exercise of authority by the Executive Branch.

The effect of this unilateral executive amnesty, among other things, contributed to a surge of unaccompanied minors on the southern border that yielded terrible humanitarian consequences. It also denied jobs to hundreds of thousands of Americans by allowing those same jobs to go to illegal aliens.

We inherited from our Founders—and have advanced—an unsurpassed legal heritage, which is the foundation of our freedom, safety, and prosperity.

As the Attorney General, it is my duty to ensure that the laws of the United States are enforced and that the Constitutional order is upheld.

No greater good can be done for the overall health and well-being of our Republic, than preserving and strengthening the impartial rule of law. Societies where the rule of law is treasured are societies that tend to flourish and succeed.

Societies where the rule of law is subject to political whims and personal biases tend to become societies afflicted by corruption, poverty, and human suffering.

To have a lawful system of immigration that serves the national interest, we cannot admit everyone who would like to come here. That is an open border policy and the American people have rightly rejected it.

Therefore, the nation must set and enforce a limit on how many immigrants we admit each year and that means all can not be accepted.

This does not mean they are bad people or that our nation disrespects or demeans them in any way. It means we are properly enforcing our laws as Congress has passed them.

It is with these principles and duties in mind, and in light of imminent litigation, that we reviewed the Obama Administration's DACA policy.

Our collective wisdom is that the policy is vulnerable to the same legal and constitutional challenges that the courts recognized with respect to the DAPA program, which was enjoined on a nationwide basis in a decision affirmed by the

Fifth Circuit.

The Fifth Circuit specifically concluded that DACA had not been implemented in a fashion that allowed sufficient discretion, and that DAPA was "foreclosed by Congress's careful plan."

In other words, it was inconsistent with the Constitution's separation of powers. That decision was affirmed by the Supreme Court by an equally divided vote.

If we were to keep the Obama Administration's executive amnesty policy, the likeliest outcome is that it would be enjoined just as was DAPA. The Department of Justice has advised the President and the Department of Homeland Security that DHS should begin an orderly, lawful wind down, including the cancellation of the memo that authorized this program.

Acting Secretary Duke has chosen, appropriately, to initiate a wind down process. This will enable DHS to conduct an orderly change and fulfill the desire of this administration to create a time period for Congress to act—should it so choose. We firmly believe this is the responsible path.

Simply put, if we are to further our goal of strengthening the constitutional order and the rule of law in America, the Department of Justice cannot defend this type of overreach.

George Washington University Law School Professor Jonathan Turley in testimony before the House Judiciary Committee was clear about the enormous constitutional infirmities raised by these policies.

He said: "In ordering this blanket exception, President Obama was nullifying part of a law that he simply disagreed with. ….If a president can claim sweeping discretion to suspend key federal laws, the entire legislative process becomes little more than a pretense…The circumvention of the legislative process not only undermines the authority of this branch but destabilizes the tripartite system as a whole."

Ending the previous Administration's disrespect for the legislative process is an important first step. All immigration policies should serve the interests of the people of the United States—lawful immigrant and native born alike.

Congress should carefully and thoughtfully pursue the types of reforms that are right for the American people. Our nation is comprised of good and decent people who want their government's leaders to fulfill their promises and advance an immigration policy that serves the national interest.

We are a people of compassion and we are a people of law. But there is nothing compassionate about the failure to enforce immigration laws.

Enforcing the law saves lives, protects communities and taxpayers, and prevents human suffering. Failure to enforce the laws in the past has put our nation at risk of crime, violence and even terrorism.

The compassionate thing is to end the lawlessness, enforce our laws, and, if Congress chooses to make changes to those laws, to do so through the process set forth by our Founders in a way that advances the interest of the nation.

That is what the President has promised to do and has delivered to the American people.

Under President Trump's leadership, this administration has made great progress in the last few months toward establishing a lawful and constitutional immigration system. This makes us safer and more secure.

It will further economically the lives of millions who are struggling. And it will enable our country to more effectively teach new immigrants about our system of government and assimilate them to the cultural understandings that support it.

The substantial progress in reducing illegal immigration at our border seen in recent months is almost entirely the product of the leadership of President Trump and his inspired federal immigration officers. But the problem is not solved. And without more action, we could see illegality rise again rather than be eliminated.

As a candidate, and now in office, President Trump has offered specific ideas and legislative solutions that will protect American workers, increase wages and salaries, defend our national security, ensure the public safety, and increase the general well-being of the American people.

He has worked closely with many members of Congress, including in the introduction of the RAISE Act, which would produce enormous benefits for our country. This is how our democratic process works.

There are many powerful interest groups in this country and every one of them has a constitutional right to advocate their views and represent whomever they choose.

But the Department of Justice does not represent any narrow interest or any subset of the American people. We represent all of the American people and protect the integrity of our Constitution. That is our charge.

We at Department of Justice are proud and honored to work to advance this vision for America and to do our best each day to ensure the safety and security of the American people.

Thank you.

---

**Speaker:**
Attorney General Jeff Sessions

**Attachment(s):**
Download ag_letter_re_daca.pdf

**Topic(s):**
Immigration

**Component(s):**
Office of the Attorney General

*Updated September 5, 2017*

# EXHIBIT G

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

---

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| RECEIPT NUMBER | | | CASE TYPE I821D CONSIDERATION OF DEFERRED ACTION FOR CHILDHOOD ARRIVALS |
|---|---|---|---|
| **RECEIPT DATE** November 19, 2014 | **PRIORITY DATE** | | **APPLICANT** |
| **NOTICE DATE** July 15, 2017 | **PAGE** 1 of 1 | | |
| | | | **Notice Type:** Notice of Action |

This notice is to advise you of action taken on this case. The official notice has been mailed according to the mailing preferences noted on the Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. Any relevant documentation was mailed according to the specified mailing preferences.

IF YOU HAVE ALREADY SUBMITTED YOUR REQUEST TO RENEW DEFERRED ACTION UNDER DACA, PLEASE DISREGARD THIS NOTICE.

Our records indicate that U.S. Citizenship and Immigration Services (USCIS) granted DACA in your case and that your current period of deferred action will expire in less than 180 days. If you wish to avoid a lapse in your period of deferred action and employment authorization, you must file a DACA renewal request with USCIS between 150 days and 120 days before the expiration date located on your current Form I-797 DACA approval notice and Employment Authorization Document (EAD). Form I-821D, Consideration of Deferred Action for Childhood Arrivals, was recently updated to allow for renewal filings and is available online at http://www.uscis.gov/i-821d. This form must be completed, properly signed and accompanied by a Form I-765, Application for Employment Authorization, and Form I-765WS, I-765 Worksheet.

Please be aware that if your current period of deferred action expires before you receive a renewal of DACA, you will accrue unlawful presence and will not be authorized to work. If you have not already done so, USCIS encourages you to submit your renewal request as soon as possible.

Deferred action is a discretionary determination to defer removal action of an individual as an act of prosecutorial discretion and each case will be considered on an individual, case-by-case basis. USCIS will notify you of its decision in writing.

For additional information on DACA, including documentation requirements for renewal or to download the required forms, please visit www.uscis.gov/childhoodarrivals. If you have already filed your renewal request with USCIS, please disregard this notice. You can check your case status online by visiting https://egov.uscis.gov/cris/Dashboard.do.

This courtesy copy may not be used in lieu of official notification to demonstrate the filing or processing action taken on this case.

THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.

---

Please see the additional information on the back. You will be notified separately about any other cases you filed.

CALIFORNIA SERVICE CENTER
US CITIZENSHIP & IMMIGRATION SVCS
24000 Avila Road
LAGUNA NIGUEL   CA   92677
Customer Service Telephone: (800) 375-5283



---

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C 07/11/14 Y 1/2

If you are visiting a field office and need directions, including public transportation directions, please see **www.uscis.gov/fieldoffices** for more information.

---

### Notice for Customers with Disabilities

USCIS is committed to providing customers with disabilities the same level of access to its programs and activities that customers without disabilities have (see the USCIS Web site for an explanation and examples of accommodations). If you need an accommodation for your appointment due to a disability that affects your access to a USCIS program or activity OR if a disability prevents you from going to the designated USCIS location for your appointment, please call the National Customer Service Center (NCSC) at 1-800-375-5283 (TTY: 1-800-767-1833) to request an accommodation.

**Call the NCSC even if you indicated on your application or petition that you require an accommodation. Also, you must contact the NCSC to request an accommodation each time you have an appointment with USCIS.** For example, you must call the NCSC to request an accommodation for your biometrics appointment and again for an accommodation for your interview appointment.

**NOTICE:** All domestic USCIS offices are accessible to individuals with physical disabilities. You do not need to request an accommodation if your ONLY need is an accommodation that would enable or facilitate you having physical access to a domestic USCIS office.

**NOTE:** Naturalization applicants should **not** call the NCSC to request an exception from the English and/or civics testing requirement. You **must** submit Form N-648, Medical Certification for Disability Exceptions to request an exception. See the form instructions for additional information.

# EXHIBIT H

**The New York Times**  |  https://nyti.ms/2hpeGf5

N.Y. / REGION

# Post Office Fails to Deliver on Time, and DACA Applications Get Rejected

Dozens of young immigrants mailed renewal forms weeks before they were due. But their paperwork was delayed in the mail and then denied for being late.

## Leer en español

By LIZ ROBBINS    NOV. 10, 2017

The paperwork was mailed from New York in plenty of time. On Sept. 14, Allison Baker, a lawyer for the Legal Aid Society, sent a client's application to renew a permit that would let him stay and work in the United States legally as part of the Deferred Action for Childhood Arrivals program — long before the Oct. 5 deadline. It was sent certified mail to be safe.

Tracking data from the United States Postal Service shows the envelope arriving in Chicago on Sept. 16 on its way to the regional processing warehouse of the United States Citizenship and Immigration Services, the agency that administers the program known as DACA.

Then the packet started circling Chicago in a mysterious holding pattern. From Sept. 17 to Sept. 19, it was "in transit to destination." Then its tracking whereabouts disappeared until Oct. 4. Once again, it was "on its way."

On Oct. 6, a day too late, it was delivered. And the application, for a 24-year-old man who asked to be identified only as José because his legal status was uncertain, was rejected.

José was not alone. According to lawyers from across the New York region, in at least 33 other cases, unusually long Postal Service delays resulted in rejections of DACA applications, throwing the lives of their clients into frantic limbo. Lawyers in Boston and Philadelphia, which also send their applications to the Chicago processing center, say they have not seen evidence of an issue with the mail.

But in Chicago, in the backyard of the U.S. Citizenship and Immigration Services agency, there were at least 41 DACA recipients whose renewals, sent well before the deadline, arrived late, advocates said. According to Representative Luis V. Gutiérrez, Democrat of Illinois, an applicant sent a renewal on Sept. 13 and it arrived on Oct. 6. Another sent the paperwork on Sept. 21, and it was received on Oct. 9. "Because somebody else did not do their job correctly we are taking innocent young immigrants and making them deportable," said Mr. Gutiérrez in a statement. "That is unacceptable."

On Thursday, in a rare admission from a federal agency, the U.S. Postal Service took the blame. David A. Partenheimer, a spokesman for the post office, said there had been an "unintentional temporary mail processing delay in the Chicago area."

But the U.S. Citizenship and Immigration Services agency said nothing more could be done; the decisions were final.

"According to U.S.C.I.S. regulations, a request is considered received by U.S.C.I.S. as of the actual date of receipt at the location for filing such request," Steve Blando, a spokesman for the agency, wrote in a statement. He added: "U.S.C.I.S. is not responsible for the mail service an individual chooses, or for delays on the part of mail service providers."

He later added, though, that "U.S.C.I.S. is committed to working with the U.S.P.S. to understand and address the U.S.P.S. error that occurred that delayed the mail."

Because DACA is an executive order, signed by President Barack Obama in 2012, and not a statute, applicants cannot appeal the decision. Still, immigrants and their advocates viewed the agency's unwillingness to revisit their applications as harsh and unfair.

"You can't put the burden on the applicant to ensure the government agencies did their job," said Camille Mackler, the director of legal initiatives for the **New York Immigration Coalition**. "Can you imagine if the I.R.S. didn't pick up their mail for two weeks and you get a penalty because of it?"

The DACA program had offered temporary protection and work permits for about 800,000 young adults who had been brought to the United States illegally as children.

On Sept. 5, Attorney General Jeff Sessions **announced** after months of speculation that the Trump administration was canceling the program. Recipients were allowed to keep their permits until they expired at the end of the current two-year term. The administration also offered a brief renewal window for recipients whose permits were expiring before March 5, which set off a scramble across the country from legal service providers to assist applicants.

There are three U.S. Citizenship and Immigration Services intake locations, known as lockboxes, in the United States: in Phoenix, Chicago and Lewisville, Tex., a suburb of Dallas.

According to the immigration agency, its employees do not pick up the mail from the lockbox. The United States Department of the Treasury manages the process but uses a courier service that picks up the mail from post offices each morning. Express Mail items, the agency said, are picked up in the afternoon. Also, items are delivered to the lockbox by the courier services FedEx, DHL and the United Parcel Service.

In a memo after DACA was rescinded, the Department of Homeland Security said renewals had to be "accepted" by Oct. 5. Immigration lawyers contrasted that with a permanent residency opportunity the government offered in 2001, when applications only had to be postmarked by the deadline of April 30. Acknowledging the high volume of applications, the government offered a grace period for paperwork to be received by May 3.

Immigration lawyers questioned why that was not an option in this case.

Hasan Shafiqullah, director of the immigration unit of the Legal Aid Society in New York, was disturbed by the lack of compassion from the agency.

"From the clients' perspective, they did the right thing," Mr. Shafiqullah said. "Filing three weeks before should be sufficient, and U.S.C.I.S. needs to recognize that and needs to exercise discretion."

According to an Oct. 18 deposition of an immigration official conducted as part of a federal lawsuit in Brooklyn, 4,000 DACA applications arrived late. One hundred and fifty-four thousand people were eligible to apply for renewal and 132,000 applications were received on time.

Tata Camara, 32, who came to the United States at age 15 from Guinea, sent her application on Sept. 29; she said it was the earliest she could afford to apply, since that day she got a donation for the $495 application fee from the New Economy Project, a New York nonprofit. BronxWorks, a legal services agency, helped her prepare her application.

She had installed two apps on her phone to track her application in the mail, but she became anguished when they showed her envelope had arrived in Chicago on Oct. 1 but seemed to stall there. She called every supervisor she could in the Chicago post office.

"It doesn't make any sense, I mail stuff all the time," Ms. Camara said. "I can understand one day of delay. Two days at most. But you can't even tell me where it is?"

According to the tracking record, her application arrived "at the unit" on Oct. 5, but was not actually delivered until Oct. 6.

She said she made an appointment to discuss the application with an immigration official next week. Five lawyers in New York said they had already received denials from the U.S. Citizenship and Immigration Services agency when pleading their case — via email, an 800-number and in person.

Linda Bennett-Rodriguez, a lawyer at the Empire Justice Center in White Plains, said one of her clients sent his application in on Sept. 12. She sent the

renewal form for his younger brother on Sept. 21, and it was accepted on Sept. 25.

The older brother's application was in transit for three weeks; it did not arrive at the regional facility in Chicago until Oct. 3. At that point, Ms. Bennett-Rodriguez raced to find a solution.

When it still had not arrived, hours before the deadline, she said that her client offered to fly from La Guardia Airport to Chicago to hand-deliver his application. But she learned there was no physical address listed for where he would go.

The post office tracking information showed his application arrived on Oct. 6.

"It was probably my worst day as an attorney," Ms. Bennett-Rodriguez said. "I knew the importance and I knew we filed with enough time."

Mr. Partenheimer, the post office spokesman, said the processing "issue has been resolved and we are investigating how it occurred." He added that the mail service would "work diligently" with the U.S. Citizenship and Immigration Services agency "concerning any potential issues this may cause for the affected individuals."

### *Correction: November 10, 2017*

An earlier version of this article referred incorrectly to a deposition in a federal lawsuit. It was not conducted by the immigration advocacy group Make the Road and did not include the number of applications received on time.

A version of this article appears in print on November 11, 2017, on Page A17 of the New York edition with the headline: Mail Is Late, and DACA Renewals Are Denied.

© 2017 The New York Times Company

# EXHIBIT I

U.S. Department of Homeland Security



U.S. Citizenship
and Immigration
Services

Dear Applicant,

We are sorry to inform you that we have rejected your
application for the reasons indicated on the I-797 Reject Notice.

You are invited to resubmit your application package after you
have corrected the reasons for rejection. If you have any
questions please contact lockboxsupport@uscis.dhs.gov.

**When you resubmit your application, please
enclose this letter with your re-submission.**

# Place this letter on top of your application package.

Thank you.

www.uscis.gov

102517 18:51 102417 RejDACA_ELIS-5757

Scanned by CamScanner

# EXHIBIT J

---------- Forwarded message ----------
From: **lockbox support** <lockboxsupport@uscis.dhs.gov>
Date: Wed, Nov 22, 2017 at 10:49 AM
Subject: RE: A███████  ATTN: Improperly Rejected DACA Filing -- Re-submitted -- IOE-
████████
To: Alexandra Lee ████
Cc: Jessica Young ██████████████████, Keiry Sanchez █████████████

Good afternoon:

The first DACA renewal submission for Maria Santamaria Rivas was rejected by lockbox (receipt number
██████████) because the lockbox did not receive a payment for the required filing fee. The payment
included was not a valid payment.  The check date listed was September 28, 201**2**.  As the payment was
not valid, the submission had to be rejected.  We apologize for the confusion in regards to the green
sheet that was included with your rejected filing, which does invite applicants to refile once they have
corrected the errors or omissions that led to its rejection, but that is only the case if the applicant is still
eligible to file.  Your DACA renewal resubmission ██████████) was rejected for untimely filed
because it was received by USCIS on October 11, 2017 which was after the filing deadline of October 5,
2017.

With the announcement of the phase-out of the DACA program, the DACA renewal must be received on
or before October 5, 2017 in order to be accepted. Beginning of October 6, 2017 USCIS is no longer
accepting initial or renewal filings for DACA requests per the phase-out of the DACA program that is
available on the USCIS web site, https://www.uscis.gov/daca2017.

The original received date cannot be assigned to a resubmission.  A prior filing date may only be applied
to a later submission if it is determined that the prior filing was rejected in error or that it was processed
incorrectly as a result of USCIS error. Unfortunately, that is not the case with your original filing.

USCIS is *currently not accepting* initial or renewal filings for DACA requests. For more information, please
refer to the following resources on our website.

- DHS: Frequently Asked Questions: Rescission of DACA (DHS)
- DHS: Fact Sheet: Recission of DACA
- Letter from Attorney General Sessions to Acting Secretary Duke on the Rescission of DACA
- USCIS Archived Content About DACA



**Hillary**

**The Lockbox Support Team**

**U.S. Citizenship and Immigration Services**

*email us at:* lockboxsupport@uscis.dhs.gov

**From:** Alexandra Lee [mailto ████████████████ ]
**Sent:** Friday, November 17, 2017 12:35 PM
**To:** lockbox support
**Cc:** Jessica Young; Keiry Sanchez
**Subject:** A██████████ ATTN: Improperly Rejected DACA Filing -- Re-submitted -- IOE-██████████ /IOE-
████████

Dear Adjudicating Officer,


I am writing on behalf of Jessica Young, Esq., Supervising Attorney at the Westchester Hispanic Coalition.

This is a follow up email to the one previously sent on Wednesday November 15, 2017.  Please see attached supplemental documents evidencing prior mailings through USPS on 09/29/17 and 10/10/17.

Also attached is USCIS Guidance on DACA Renewal Requests dated 11/15/17.


We respectfully request that you honor the ORIGINAL receipt date of 10/02/2017.  Thank you for your attention in this matter.



**Alexandra S. Lee, Esq.**

Immigration Staff Attorney

Westchester Hispanic Coalition

███████████████

White Plains, NY 10605

████████████████████████

Phone ███████████

Fax: ████████████

Confidentiality Notice: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy, or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.


Notificación de Confidencialidad: La información contenida en este correo electrónico y sus anexos pueden ser legalmente privilegiados y confidenciales. Si usted no es la persona a quien le corresponde este correo, se le notifica que cualquier divulgación, distribución o copia de este correo electrónico es estrictamente prohibida. Si usted ha recibido este correo electrónico por error, por favor notifique al remitente y elimine permanentemente el correo electrónico y los archivos adjuntos de inmediato. Usted no debe retener, copiar o usar este e-mail o cualquier anexo para cualquier propósito, ni revelar todo o parte de su contenido a ninguna otra persona. Gracias.

# EXHIBIT K



**U.S. Department of Justice**
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530

November 15, 2017

**By ECF**
The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: *Batalla Vidal, et al., v. Duke, et al.*, 16-cv-4756 (NGG) (JO)

Dear Judge Garaufis:

    Defendants write to notify the Court that this evening, United States Citizenship and Immigration Services (USCIS) issued the following statement:

> ### USCIS Guidance on DACA Renewal Requests Affected by Mail Service Issues
>
> U.S. Citizenship and Immigration Services (USCIS) has received reports that the U.S. Postal Service (USPS) has identified USPS mail service delays that affected a number of DACA renewal requests. Because the DACA policy has been rescinded and individuals can no longer request deferred action under DACA, and in light of the mail service delays identified by USPS, Acting Secretary of Homeland Security Elaine Duke has directed USCIS to accept DACA renewal requests from individuals who resubmit their DACA renewal request with individualized proof that the request was originally mailed in a timely manner and that the cause for receipt after the Oct. 5, 2017, deadline was the result of USPS mail service error. Affected DACA requestors who do not have such proof may contact USPS, which will review the cases on an individual basis and provide a letter if appropriate. USCIS will not accept requests that do not include individualized proof that the request was originally mailed in a timely manner to be received by the October 5 deadline, and that the cause for receipt after the Oct. 5, 2017, deadline was the result of USPS mail service error.
>
> In addition, USCIS had discovered certain cases in which the DACA requests were received at the designated filing location (*e.g.*, at the applicable P.O. Box) by the filing deadline, but were rejected. USCIS will proactively reach out to those DACA requestors to inform them that they may resubmit their DACA request. If a DACA

requestor does not receive such a notification and believes that his
or her DACA request was received at the designated filing location
by the filing deadline, he or she may resubmit his or her DACA
request with proof that the request was previously received at the
designated filing location on or before the filing deadline.

Additional guidance is forthcoming.

The statement is available on the USCIS website at the following link:
https://www.uscis.gov/news/alerts/uscis-guidance-daca-renewal-requests-affected-mail-service-
issues

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

BRIDGET M. ROHDE
Acting United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Branch Director

BRAD P. ROSENBERG
Senior Trial Counsel

*/s/ Stephen M. Pezzi*
STEPHEN M. PEZZI (D.C. Bar #995500)
KATE BAILEY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 305-8576
Fax:  (202) 616-8470
Email: stephen.pezzi@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office

Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
Tel: (718) 254-6288
Fax: (718) 254-7489
Email: joseph.marutollo@usdoj.gov

*Counsel for Defendants*

CC:

All Counsel of Record (by ECF)

# EXHIBIT L

Case 1:16-cv-04756-NGG-VMS   Document 113-3   Filed 12/11/17   Page 65 of 69 PageID #: 1262



**U.S. Citizenship and
Immigration Services**

# Frequently Asked Questions: Rejected DACA Requests

Specific guidance will be provided soon about the steps that a DACA recipient must take to resubmit his or her renewal request to USCIS if the filing was rejected due to U.S. Postal Service mail-service delays.

**Q1: Are any new DACA requests being accepted?**
A1: No. The DACA policy for accepting new, initial DACA requests ended on Sept. 5, 2017.

**Q2: Can I still submit a DACA renewal request?**
A2: No. The due date for DACA renewal requests was Sept. 5, 2017 for recipients whose DACA expired before Sept. 5, 2017, and Oct. 5, 2017 for recipients whose DACA expired between Sept. 5, 2017 and March 5, 2018.

**Q3: I believe that my DACA request was delivered by the deadline, but since it wasn't officially "received" by USCIS until the following day, my request was rejected and returned to me. What do I need to do to have my DACA request reconsidered?**
A3: USCIS will identify you and will send you a letter inviting you to resubmit your DACA request. You will have 33 days from the date of the letter to resubmit your request. You may wish to keep a copy of all materials included in your resubmission. USCIS expects to be able to identify and send letters to all persons in this situation.

**Q4: I believe that my DACA request was delivered by the deadline, but since it wasn't officially "received" by USCIS until the following day, my request was rejected and returned to me. However, I haven't been contacted by USCIS to resubmit my DACA request. What should I do?**
A4: If you believe your DACA request was delivered by the filing deadline but have not been contacted by USCIS to resubmit your request, you may email Lockbox Support and explain your situation prior to resubmitting your package for reconsideration. To contact Lockbox Support please email lockboxsupport@uscis.dhs.gov.  Provide any information you feel is relevant to your belief that your DACA request was received by USCIS in a timely manner.

**Q5: What will happen if my current DACA expires before my renewal is processed?  Will I be at risk of removal while this issue is being resolved?**
A5: Consistent with longstanding USCIS policy, you will not have deferred action if there is a gap of time between the end of your current DACA and the agency's adjudication of your renewal request. Therefore it is very important for you to resubmit your renewal request as soon as possible.

Information provided to USCIS for the DACA process will not make you an immigration priority for that reason alone. That information will only be proactively provided to ICE or CBP if the requestor meets the criteria for the issuance of a Notice To Appear or a referral to ICE under the criteria set forth in USCIS' Notice to Appear guidance (www.uscis.gov/NTA). This information-sharing policy has not changed in any way since it was first announced, including as a result of the Sept. 5, 2017 memo starting a wind-down of the DACA policy.  This policy, which may be modified, superseded, or rescinded at any time with or without notice (as has always been the case, and is noted in the archived USCIS DACA FAQs), is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable by law by any party in any administrative, civil, or criminal matter.

**Q6: If my DACA renewal request is approved after expiration of my current DACA, will the renewed deferred action apply retroactively?**
A6: No. In accordance with longstanding policy, an approved DACA request will not apply retroactively. An individual's deferred action under the DACA policy begins the day USCIS approves the renewal request and is generally valid for two years from the date of issuance.

**Q7: I submitted my renewal request on time, but it was rejected by USCIS for other reasons.  Can I resubmit it again?**
A7: If USCIS rejected your timely filed renewal request because it was not properly filed, that is a valid reason for rejection and it will not be reconsidered.  However, if you believe your request was improperly rejected, *i.e.*, it did include all required documents and information, and was properly signed and accompanied by the required fee or approved fee exemption, you may contact Lockbox Support for more information.  The email address for Lockbox Support is lockboxsupport@uscis.dhs.gov.  Please be prepared to identify and provide a detailed description of the error you believe was made.  If you identify a clear error by USCIS in the processing of your renewal request, USCIS may exercise its discretion to review your request again.

Case 1:16-cv-04756-NGG-VMS Document 113-8 Filed 12/01/17 Page 66 of 69 PageID #: 1263

*****

The above FAQs, which may be modified, superseded, or rescinded at any time with or without notice, are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable by law by any party in any administrative, civil, or criminal matter.

Last Reviewed/Updated: 11/30/2017

# EXHIBIT M

Case 1:16-cv-04756-NGG-VMS　Document 31-1　Filed 12/11/17　Page 68 of 69 PageID #: 1265



**U.S. Citizenship and Immigration Services**

# Frequently Asked Questions: Rejected DACA Requests

**Q1: Are any new DACA requests being accepted?**
A1: No. The DACA policy for accepting new, initial DACA requests ended on Sept. 5, 2017.

**Q2: Can I still submit a DACA renewal request?**
A2: No. The due date for DACA renewal requests was Sept. 5, 2017 for recipients whose DACA expired before Sept. 5, 2017, and Oct. 5, 2017 for recipients whose DACA expired between Sept. 5, 2017 and March 5, 2018.

**Q3: I believe that my DACA request was delivered by the deadline, but since it wasn't officially "received" by USCIS until the following day, my request was rejected and returned to me. What do I need to do to have my DACA request reconsidered?**
A3: USCIS will identify you and will send you a letter inviting you to resubmit your DACA request. You will have 33 days from the date of the letter to resubmit your request. You may wish to keep a copy of all materials included in your resubmission. USCIS expects to be able to identify and send letters to all persons in this situation.

**Q4: I believe that my DACA request was delivered by the deadline, but since it wasn't officially "received" by USCIS until the following day, my request was rejected and returned to me. However, I haven't been contacted by USCIS to resubmit my DACA request. What should I do?**
A4: If you believe your DACA request was delivered by the filing deadline but have not been contacted by USCIS to resubmit your request, you may contact Lockbox Support and explain your situation prior to resubmitting your package for reconsideration. To contact Lockbox Support please email lockboxsupport@uscis.dhs.gov. Provide any information you feel is relevant to your belief that your DACA request was received by USCIS in a timely manner.

**Q5: What will happen if my current DACA expires before my renewal is processed? Will I be at risk of removal while this issue is being resolved?**
A5: Consistent with longstanding USCIS policy, you will not have deferred action if there is a gap of time between the end of your current DACA and the agency's adjudication of your renewal request. Therefore it is very important for you to resubmit your renewal request as soon as possible.

Information provided to USCIS for the DACA process will not make you an immigration priority for that reason alone. That information will only be proactively provided to ICE or CBP if the requestor meets the criteria for the issuance of a Notice To Appear or a referral to ICE under the criteria set forth in USCIS' Notice to Appear guidance (www.uscis.gov/NTA). This information-sharing policy has not changed in any way since it was first announced, including as a result of the Sept. 5, 2017 memo starting a wind-down of the DACA policy. This policy, which may be modified, superseded, or rescinded at any time with or without notice (as has always been the case, and is noted in the archived USCIS DACA FAQs), is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable by law by any party in any administrative, civil, or criminal matter.

**Q6: If my DACA renewal request is approved after expiration of my current DACA, will the renewed deferred action apply retroactively?**
A6: No. In accordance with longstanding policy, an approved DACA request will not apply retroactively. An individual's deferred action under the DACA policy begins the day USCIS approves the renewal request and is generally valid for two years from the date of issuance.

**Q7: I submitted my renewal request on time, but it was rejected by USCIS for other reasons. Can I resubmit it again?**
A7: If USCIS rejected your timely filed renewal request because it was not properly filed, that is a valid reason for rejection and it will not be reconsidered. However, if you believe your request was improperly rejected, *i.e.*, it did include all required documents and information, and was properly signed and accompanied by the required fee or approved fee exemption, you may contact Lockbox Support for more information. The email address for Lockbox Support is lockboxsupport@uscis.dhs.gov. Please be prepared to identify and provide a detailed description of the error you believe was made. If you identify a clear error by USCIS in the processing of your renewal request, USCIS may exercise its discretion to review your request again.

**Q8: I believe that my DACA request was delivered to the USCIS designated filing location after the deadline because of U.S. Postal Service (USPS) mail-service delays. What do I need to do to have my DACA request reconsidered?**
A8: The USPS is working with USCIS to identify DACA requests that were received after the deadline due to USPS mail-service

Case 1:16-cv-04756-NGG-VMS Document 33-1 Filed 12/11/17 Page 69 of 69 PageID #: 1266

delays. As soon as USPS completes its assessment, identifies such requests, and provides this information to USCIS, USCIS will send affected DACA requestors a letter inviting them to resubmit their DACA request. If you receive such a letter, you will have 33 calendar days from the date of the letter to resubmit your request. You may wish to keep a copy of all materials included in your resubmission.

**Q9: When will USPS complete its assessment?**
A9: USPS anticipates that it will be able to identify DACA requests that were received after the deadline due to USPS mail-service delays and provide this information to USCIS by mid-December 2017.

**Q10: When will USCIS send letters informing DACA requestors that they were affected by USPS mail-service delays?**
A10: USCIS anticipates that it will be able to send letters to affected individuals approximately one week after USPS provides information to USCIS identifying the impacted requests.

**Q11: Will individuals who resubmit their DACA request need to resubmit the required fee?**
A11: Yes, unless they previously submitted evidence that USCIS had approved their request for a fee exemption, DACA requestors will need to resubmit the required fee. USCIS did not accept or process the fees for individuals whose DACA requests were rejected. When the agency rejected DACA requests, USCIS returned the entire package, including the fee if one was submitted.

**Q12: What should I include in my resubmission package?**
A12: Your resubmission package should include:

- Your original DACA request, including your completed and properly signed Form I-821D, Form I-765, Form I-765 Worksheet, if your originally submitted forms are still available to you, or you may submit newly completed forms; the correct filing fee or approved fee exemption request; and any required supporting evidence as described in the Instructions to the forms; and,
- The letter from USCIS inviting you to resubmit your DACA request.

**Q13: What is the deadline for resubmitting DACA requests?**
A13: Affected individuals will receive a letter from USCIS, and the resubmitted request must be properly filed and received by USCIS at the designated filing location within 33 calendar days of the date of USCIS' letter in order to be considered. You may wish to send your request with tracking information and/or take other steps to ensure your request is received by USCIS within the required timeframe.

******

As soon as USPS completes its assessment and USCIS sends DACA requestors affected by USPS mail service delays a letter inviting them to resubmit their DACA request, further guidance will be provided about how you may contact USPS and/or USCIS if you believe you were affected but you did not receive a letter from USCIS inviting you to resubmit your request.

The above FAQs, which may be modified, superseded, or rescinded at any time with or without notice, are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable by law by any party in any administrative, civil, or criminal matter.

Last Reviewed/Updated: 12/07/2017