I, George Gascón, declare:

1. I am the District Attorney for the City and County of San Francisco. I have been the San Francisco District Attorney since 2011. Prior to becoming the District Attorney, I served as the San Francisco Chief of Police from August, 2009 through January, 2011. Before moving to San Francisco, I served as the Chief of Police in Mesa, Arizona for three years, and served in the Los Angeles Police Department for over twenty years. I have over 30 years' experience in law enforcement.

2. The goal and mission of my agency is to make San Francisco the safest large city in America by working to implement a modern justice system that focuses on crime prevention, victims, and violent offenders. I believe we are safer together when we remove barriers for victims of crime, work with the community to address neighborhood concerns, and provide services to our city's most vulnerable populations.

3. It is impossible to meet this goal and effectively police and prosecute if the communities you serve do not trust you. The absence of trust leads to reduced reporting of crimes and an unwillingness to work with law enforcement in order to ensure dangerous people are held accountable for their actions. This dynamic results in violent offenders getting away with crimes and recidivating because many members of our community are afraid to come forward. It is naïve to think that unreported crimes and criminals do not pose a threat that extends far beyond immigrant communities.

4. Immigrants, and in particular undocumented immigrants, fear interactions with law enforcement and distrust government agencies. Research shows that 70 percent of undocumented immigrants polled in a 2013 study were less likely to contact law enforcement authorities if they were victims of a crime. What's worse, 44 percent of Latinos surveyed, not just undocumented immigrants, reported being less likely to contact police officers if they have been the victim of a crime because they fear that police officers will use this interaction as an opportunity to inquire into their immigration status or that of people they know. University of Illinois at Chicago, Lake Research Partners: Insecure Communities: Latino Perceptions of Police Involvement in Immigration Enforcement, May 2013.

5. The current fear and distrust of law enforcement agencies is currently impacting my agency's ability to effectively ensure public safety. For example, my office recently prosecuted a domestic violence case that went to trial. At trial, a witness was cross-examined by a Deputy Public

Defender about her immigration status, with the line of questioning suggesting that she was testifying in order to secure a U-VISA for her cooperation. A judge ruled that the line of questioning was irrelevant, as the witness learned about the U-VISA program only after having reported the crime. The jury was unable to reach a verdict, and when we sought to retry the case the witness indicated she was unwilling to testify again in part due to the fact that her immigration status had become a focal point during the trial. As a result, we had to dismiss the case and the offender was not held accountable for his violent actions.

6. That fear and distrust of law enforcement has a detrimental impact on public safety has been my historical experience as well. When I came to Mesa to serve as Chief of Police, the city was experiencing increased violent and property crime. During my tenure there we were able to reduce both kinds of crime substantially. However, during that same time, in the unincorporated area of Maricopa County policed by Joe Arpaio's Sheriff's Department, crime was increasing. Between 2004 and 2007, Sheriff Arpaio presided over a 69 percent *increase* in violent crime rates, a 166 percent *increase* in homicides, and a *plummeting* arrest rate. Bolick, Clint. "Mission Unaccomplished: The Misplaced Priorities of the Maricopa County Sheriff's Office." *Goldwater Institute*, 2 Dec. 2008. We found that a reason crime was going up just across city lines, while in similar communities within city limits crime was going down, was because we began to develop a relationship with our community members who were willing to report crime and work with us. In the case of the Maricopa County Sheriff's Department, people were afraid to report crimes because they did not know if they, or a neighbor, could be deported as a result.

7. It is these experiences that have led me to take steps to ensure my office is accessible to all communities. For example, in 2013 my agency partnered with local community leaders to launch an immigration fraud public education campaign. The multilingual campaign in English, Spanish, and Chinese educated immigrant communities how to ensure an immigration consultant they had chosen was licensed or bonded. The campaign helped warn immigrant communities about scammers who made false claims of influence with government officials. Many were being defrauded by people who said they could move a client to the front of the line for work permits or U.S. visas. I have also moved our victim advocates out into the community in places where members of our immigrant community feel

safe coming to report crimes. It is my experience that undocumented immigrants often do not feel safe entering the Hall of Justice due to the significant police presence.

8. On a citywide basis, a key strategy is San Francisco's Sanctuary City status. This enables victims and witnesses to report crimes without fear that there will be an inquiry into their immigration status or someone they know.

9. Establishing trust will remain difficult as long as undocumented immigrants feel unsafe coming forward. That is why the language we are seeing from our President in the media, which is making entire immigrant communities-our neighbors, friends and family-feel unsafe, is so harmful. These statements are making our immigrant communities less likely to come forward and work with authorities both as victims and witnesses. Our system only functions when the community works with us, and it is incredibly difficult to make people feel like they are part of our community and to bring them out of the shadows and ensure they feel safe reporting crimes to police when they often view local law enforcement authorities as closely associated with the views and aims of the federal government and this President.

10. Having served in multiple states and jurisdictions, and working with various communities as both a police officer and prosecutor, I have seen that public safety is highly dependent on cooperation from all members of our community-including immigrants. In fact, a recent study from the University of California, San Diego demonstrates the benefit of policies proven to enhance cooperation. Their study found that there are broad benefits for local jurisdictions that resist complying with federal immigration enforcement, concluding that there are, on average, 35.5 fewer crimes committed per 10,000 people in sanctuary jurisdictions compared to non-sanctuary counties. Wong, Tom. "The Effects of Sanctuary Policies on Crime and the Economy." *Center for American Progress*, 26 Jan. 2017. The study also found that working with federal immigration made it harder for local police agencies to investigate crime because witnesses and victims who were in the country illegally were less likely to come forward if they thought they risked being detained or deported.

11. Based on my own experiences and studies such as the aforementioned, I can conclude that my agency's ability to fulfill its mission depends on immigrants being able to come out of the shadows and work with law enforcement without fear of immigration consequences.

12. The rescission of DACA will add to the number of undocumented persons in our community, will perpetuate mistrust of law enforcement authorities and further depress cooperation among immigrant communities with police. Therefore, the rescission of DACA will be detrimental to my agency's ability to maintain public safety and enforce the law.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 25, 2017, at San Francisco, California.

George Gascón
San Francisco District Attorney

# EXHIBIT ZZ

| | |
|---|---|
| JEFFREY M. DAVIDSON (SBN 248620)<br>ALAN BERSIN (SBN 63874)<br>COVINGTON & BURLING LLP<br>One Front Street, 35th Floor<br>San Francisco, CA 94111-5356<br>Telephone: (415) 591-6000<br>Facsimile: (415) 591-6091<br>Email: jdavidson@cov.com,<br>abersin@cov.com<br>*Attorneys for Plaintiffs The Regents of the University of California and Janet Napolitano, in her official capacity as President of the University of California* | XAVIER BECERRA<br>Attorney General of California<br>MICHAEL L. NEWMAN<br>Supervising Deputy Attorney General<br>JAMES F. ZAHRADKA II (SBN 196822)<br>1515 Clay Street, 20th Floor<br>P.O. Box 70550<br>Oakland, CA 94612-0550<br>Telephone: (510) 879-1247<br>Email: James.Zahradka@doj.ca.gov<br>*Attorneys for Plaintiff State of California* |
| THEODORE J. BOUTROUS, JR. (SBN 132099)<br>ETHAN D. DETTMER (SBN 196046)<br>JESSE S. GABRIEL (SBN 263137)<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-7520<br>Email: tboutrous@gibsondunn.com,<br>edettmer@gibsondunn.com,<br>jgabriel@gibsondunn.com<br>*Attorneys for Plaintiffs Dulce Garcia, Miriam Gonzalez Avila, Saul Jimenez Suarez, Viridiana Chabolla Mendoza, Norma Ramirez, and Jirayut Latthivongskorn* | JOSEPH W. COTCHETT (SBN 36324)<br>NANCY L. FINEMAN (SBN 124870)<br>COTCHETT, PITRE & McCARTHY, LLP<br>San Francisco Airport Office Center<br>840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>Telephone: (650) 697-6000<br>Facsimile: (650) 697-0577<br>Email: nfineman@cpmlegal.com<br>*Attorneys for Plaintiff City of San Jose*<br><br>JONATHAN WEISSGLASS (SBN 185008)<br>STACEY M. LEYTON (SBN 203827)<br>ERIC P. BROWN (SBN 284245)<br>ALTSHULER BERZON LLP<br>177 Post Street, Suite 300<br>San Francisco, CA 94108<br>Telephone: (415) 421-7151<br>Facsimile: (415) 362-8064<br>Email: jweissglass@altber.com<br>*Attorneys for Plaintiffs County of Santa Clara and Service Employees International Union Local 521* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JANET NAPOLITANO, in her official capacity as President of the University of California,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY and ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security,<br><br>Defendants. | CASE NO. 17-CV-05211-WHA<br><br>**DECLARATION OF NANCY E. O'MALLEY** |

| | | |
|---|---|---|
| 1 | STATE OF CALIFORNIA, STATE OF MAINE, STATE OF MARYLAND, and STATE OF MINNESOTA, | CASE NO. 17-CV-05235-WHA |
| 2 | | |
| 3 | Plaintiffs, | |
| 4 | v. | |
| 5 | U.S. DEPARTMENT OF HOMELAND SECURITY, ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security, and the UNITED STATES OF AMERICA, | |
| 6 | | |
| 7 | | |
| 8 | Defendants. | |
| 9 | CITY OF SAN JOSE, a municipal corporation, | CASE NO. 17-CV-05329-WHA |
| 10 | Plaintiffs, | |
| 11 | v. | |
| 12 | DONALD J. TRUMP, President of the United States, in his official capacity, ELAINE C. DUKE, in her official capacity, and the UNITED STATES OF AMERICA, | |
| 13 | | |
| 14 | | |
| 15 | Defendants. | |
| | DULCE GARCIA, MIRIAM GONZALEZ AVILA, SAUL JIMENEZ SUAREZ, VIRIDIANA CHABOLLA MENDOZA, NORMA RAMIREZ, and JIRAYUT LATTHIVONGSKORN, | CASE NO. 17-CV-05380-WHA |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | Plaintiffs, | |
| 20 | v. | |
| 21 | UNITED STATES OF AMERICA, DONALD J. TRUMP, in his official capacity as President of the United States, U.S. DEPARTMENT OF HOMELAND SECURITY, and ELAINE DUKE, in her official capacity as Acting Secretary of Homeland Security, | |
| 22 | | |
| 23 | | |
| 24 | Defendants. | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

DECLARATION OF NANCY E. O'MALLEY
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

| | |
|---|---|
| COUNTY OF SANTA CLARA and SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 521,<br><br>          Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, JEFFERSON BEAUREGARD SESSIONS, in his official capacity as Attorney General of the United States; ELAINE DUKE, in her official capacity as Acting Secretary of the Department of Homeland Security; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>          Defendants. | CASE NO. 17-CV-05813-WHA |

DECLARATION OF NANCY E. O'MALLEY
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

I, Nancy E. O'Malley, declare and state as follows:

1. I am Nancy E. O'Malley, the elected District Attorney for the County of Alameda and have served as District Attorney since 2009;

2. I have worked in the Alameda County District Attorney's Office since 1984, beginning as a Deputy District Attorney. I served as the Chief Assistant District Attorney for the Office from 1999 until becoming the District Attorney of Alameda County. There are 410 employees, including 158 attorneys, 75 sworn peace officers, 40 Victim Assistants;

3. While Chief Assistant, I founded the Alameda County Justice Center (ACFJC), a one-stop center, with more than 30 onsite and over 50 offsite agencies providing comprehensive and collaborative responses to victims of domestic violence and their children, to victims of sexual assault and child sexual abuse, elder abuse and importantly, to victims of all forms of human trafficking. The ACFJC is also a place of empowerment for survivors. Children (0-5 years old) are learning to read and growing their vocabularies; their moms who have been victims of domestic violence are learning job skills and career paths; teens who have lived in homes with domestic violence are going to stay-away wilderness camp and receiving homework help; commercially sexually exploited minors are participating in the Young Woman's Saturday Program (YWSP) to begin their recovery from victimization to pathways for a safe, productive and healthy future. Forty-five percent (45%) of the clients at the ACFJC are mono-lingual Spanish and more than 100 languages are spoken. Many clients have quietly disclosed that they are in this country without documentation ("undocumented"). More than 125 young women have participated in the YWSP and several have disclosed that they are protected under DACA. The ACFJC is one of seven (7) Trauma Recovery Centers (TRC) in California providing psychological, behavioral health and health care services to clients;

4. I have worked closely with and supervised our Victim-Witness Assistance Division, which provides a variety of services for victims, witnesses, and their families recovering from the devastating impacts of crime. Annually, the staff works with nearly 10,000 victims and their families, providing nearly 90,000 victim services. The ACFJC serves an additional 14,000 clients per year, including women, their children and approximately 1,000 men;