5. Alameda County is extremely diverse. More than 500,000 of the 1,647,700 million residents were born outside the United States. Almost 650,000 Alameda County residents speak a language other than English at home. The Hispanic community is 22.5% in Alameda County, which also hosts one of the largest Asian immigrant population (30.2%) including Indian, Pakistani, Vietnamese, and Chinese populations, as well as smaller clusters of a dozen other nationalities. More than 136 languages are spoken at home by children who attend Fremont schools alone. Particularly for the Latino and Asian immigrants, there is a cultural distrust of government where, in many countries of origin, the government and particularly law enforcement, were corrupt and dangerous.

6. As a result of the large immigrant population, I have increased the diversity of the Victim-Witness Assistance staff as well the administrative, investigative and attorney staff to reflect the communities we serve. I have created a "Diversity and Shared Community Committee" led by Nahid Aria who is an immigrant from war torn Afghanistan with several Office members who themselves are immigrants. One primary purpose of our Diversity Plan is to work with immigrant communities to build trust and faith that the Office serves them with dignity, respect and honesty. We publish materials for crime victims in several languages, including Spanish, Chinese, and Farsi. Many of our employees are bilingual, and are available to speak with immigrants in their native languages. Through our efforts, I and my staff have also worked closely with young individuals who are immigrants to America and are protected by DACA.

7. My experience in dealing with immigrants and especially with immigrants in this country without documentation is extensive. I have worked with those accused of crimes, with victims of crime, and with organizations that provide services to or advocate for immigrants and particularly those without documentation. It is undeniable that immigrant communities live in fear of being attacked or targeted by those motivated by hate and prejudice. It is undeniable that many immigrant communities have a fear and distrust of government and law enforcement agencies, including my Office based on their experiences or the culture of countries of origin. With current climates across our country, I and we are seeing more immigrants, especially

those without documentation, refusing to seek services or to participate in programs. Those programs include children attending school, seeking medical care as a result of a crime, or going to work. More particularly for undocumented immigrants, we are aware that large numbers of victims of crimes such as human trafficking, domestic violence and sexual assault, robberies and hate crimes are not reporting or are refusing to cooperate with law enforcement or the Office. Many are afraid to come forward and testify in court for fear of being detained by ICE and/or deported. I have been a co-signor of a letter to the United States Attorney General requesting that Courthouses be treated as "safe havens" for victims of crime. The response was not encouraging for those victims who fear ICE and/or deportation, which plainly stated, is keeping them away from my Office or the Courts;

8. I am aware that for many victims of crime, they fear their own deportation, or deportation of their DACA protected children. Many are reaching out to organizations that serve immigrant populations to seek the establishment of legal structures that will protect and care for their American born children if they are deported.

9. The District Attorney's Office cannot proceed with a prosecution without a witness or victim to testify in Court. Through our Hate Hotline, we receive calls reporting hate crimes, but more often than not, the victim of the alleged hate crime will not come forward. Under some circumstances, we would say "the victim is not cooperative" but with immigrant populations, particularly those without documentation, their fear is overwhelming and driving them further underground. The current political climate leaves the victims defenseless and leaves the District Attorney's Office powerless to hold offenders accountable;

10. It is impossible to list every incident where a crime witness or victim was reluctant to cooperate with this Office, but the following serve as examples:

   a. The Office's Environmental Protection Division was called upon to investigate the death of workers in an electroplating shop in East Oakland. While investigating the homicide, the Office learned that the owner of the shop deliberately hired undocumented immigrants from Latin American Companies. These workers were underpaid, and worked under deplorable conditions without adequate safety equipment.

The Office learned that there had been several previous incidents in which undocumented workers became seriously ill as a result of exposure to toxic chemicals. Some of the surviving workers, who cooperated with the homicide investigation, explained that they never reported the low wages, the substandard equipment, the dangerous conditions, or the prior injuries because they feared they would be deported. Had these witnesses come forward, the Office would have prosecuted the crimes under existing environmental and worker protection regulations. Such a prosecution would in all likelihood prevented the deaths of these exploited workers;

b. Through an investigation of a human trafficking case in cooperation with other law enforcement agencies, the Office uncovered a ring of brothels operating in and around Alameda County. The Office learned that the woman working in these brothels were undocumented Asian women, coerced into working by brothel owners. Their passports were confiscated. The women were confined to a building or a residence where they were obliged to engage in the sex trade. Investigative surveillance of these residences revealed that the women would be moved from one brothel to another every ten days. While confined to the brothel, the women did not leave the building for the entirety of their stay. Investigators were able to close the brothels and to arrest the local managers of the brothels. The women who worked in the brothels, were not arrested. Investigators were able to obtain sufficient information to successfully prosecute the local operators; however, the women who had been trafficked were reluctant to make statements. Consequently, the investigation was unable to uncover the higher level operators of this human trafficking operation;

c. A girl of fourteen or fifteen years old was found murdered behind a dumpster at the back of a restaurant in Castro Valley. Her identity was unknown and investigators were unable even to identify her. As it was discovered, the young woman was in America without documentation. As a result, no missing person report had been filed. Without knowing who the victim was, investigators were left with very few leads. Investigators found no witnesses to the crime itself, but through a series of interviews

with witnesses, many of whom were themselves undocumented, they were eventually able to learn her name, and to contact her family in Mexico. With this information, they were able to establish that she had come to live with a family friend in the United States. With this information, the investigators were able to learn additional facts that led this Office to charge the family friend with the young girl's murder. Because of the girl's undocumented status, however, it took so long to identify her that the defendant was able to flee to Mexico before the police even became aware of his identity. Efforts to locate and extradite the defendant for trial have been hampered in part by the fact that some of the undocumented witnesses have moved on or otherwise no longer willing or available to testify. To this day, the defendant has not faced justice for this horrible murder of this innocent girl;

11. As stated above, the Office has implemented strategic initiatives to reach out to the immigrant community to foster a spirit of trust, engagement and cooperation. Throughout my tenure as District Attorney, I have emphasized the value of diversity and inclusiveness in the conduct of the Office. I have made sure that my Office reaches out to all members of the Alameda County community, including the many immigrants who call Alameda County their home. We have maintained a presence in immigrant communities through speaking engagements or by maintaining information booths during fairs or festivals celebrated by these communities within our county. We have assisted victims in seeking "U" or "T" visas." We provide contact information and identify resources that will enable ever victim of crime to seek the protection of the criminal justice system, regardless of country of origin or of immigration status. We seek to stress that it is the voice, and not the language of our residents that matters. However, we are seeing a decline in engagement of victims of crime from immigrant communities;

12. Despite the Office's best efforts, establishing trust with the immigrant community remains difficult. While the Office can assure our victims that we will not ask them for their legal status, and that we will not take steps to reveal their identities to immigration authorities, we can make no promises as to what federal immigration authorities will do. In the current climate, it is very difficult to convince undocumented victims or witnesses to reveal

themselves to the criminal justice system because they believe that in so doing they expose themselves to arrest, detention or deportation.

13. If the Alameda County District Attorney's Office is to continue our mission to protect all of our residents, we need to assure all victims, especially those without documentation, that they will not be penalized for stepping forward to tell the truth. Our ability to convince them to step forward therefore depends on our ability to truthfully inform and convince them that they have no reason to fear law enforcement or government agencies.

14. The Deferred Action for Childhood Arrivals (DACA) program is one important tool available to the Office in protecting residents without documentation. For those who participate, DACA provides the federal government's assurance that they will not be penalized for cooperating with the Office. DACA participants know they are able to call the police when they have been victimized without fear that they will be arrested instead of the criminals who have attacked them. DACA also benefits others in our community because DACA participants feel free not only to speak up in their own defense, but also to testify as witnesses for victims of crime who are here without documentation, who might otherwise be rendered voiceless by their fear of governmental agencies. However, those victims and other individuals in the community, in our colleges and in the workplaces, who are currently protected by DACA, are living in dire fear of losing their residency status in America. Many have shared with me that they have no memory of nor do they know anyone in their country of origin. There is no question that the uncertainty of their future is causing tremendous trauma to them and yet, their fear is also keeping them away from services;

15. Based on the foregoing, I conclude that the rescission of DACA will be detrimental to my Office's ability to provide, ensure or uphold public safety and enforcement of the law for all who live, work or travel into Alameda County.

1  I declare under penalty of perjury under the laws of the United States that the foregoing is
2  true and correct and that this declaration was executed on the 24th day of October, 2017.

*Nancy E. O'Malley*
NANCY E. O'MALLEY
District Attorney of Alameda County

7
DECLARATION OF NANCY E. O'MALLEY
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 24th day of October, 2017.

*Nancy E. O'Malley*
NANCY E. O'MALLEY
District Attorney of Alameda County

---

7
DECLARATION OF NANCY E. O'MALLEY
All DACA Cases (Nos. 17-5211, 17-5235, 17-5329, 17-5380, 17-5813)