## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) No. 1:16-cv-04756 (NGG) (JO) |
| *v.* | ) ) |
| KIRSTJEN NIELSEN, Secretary, Department of Homeland Security, *et al.*, | ) ) December 15, 2017 |
| *Defendants.* | ) ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

From its creation in 2012, the Deferred Action for Childhood Arrivals ("DACA") program has transformed the lives of undocumented residents who came to the United States as children. Hundreds of thousands of individuals have relied on the deferred action available through the program to create futures for themselves here, investing in educational and professional opportunities and building families and homes. On September 5, 2017, Defendants abruptly terminated the DACA program ("DACA Termination"), summarily foreclosing the futures of countless individuals. Plaintiffs challenge the DACA Termination as unlawful under federal statutes and the U.S. Constitution.

On this motion, Plaintiffs ask the Court to certify a class of:

(1) all persons with deferred action through DACA as of September 5, 2017; and

(2) all persons who are or will be eligible for deferred action under the terms of the original DACA guidance issued by the Department of Homeland Security ("DHS") in 2012;

(3) *except* the individual recipients of, or applicants for, deferred action through DACA

who are Plaintiffs in other actions challenging the DACA Termination pending in a U.S.

District Court as of December 11, 2017.

*See* Third Am. Compl., ECF No. 113 ("TAC") ¶ 160.[1] Plaintiffs seek to certify this class as to

their claims under the Administrative Procedure Act ("APA"), on which they separately move

for a preliminary injunction.

The proposed class satisfies all class action prerequisites under Federal Rules of Civil

Procedure 23(a) and 23(b)(2). First, the class is sufficiently numerous that joinder is

impracticable. Second, the putative class presents common questions of law and fact, including

whether Defendants' decision to terminate DACA violated the APA. Third, like all class

members, the six individual Plaintiffs and the members and clients of the organizational Plaintiff

Make the Road New York have been deprived of the opportunity to apply for, renew, or receive

deferred action through DACA. Their claims for relief are thus typical of those of the class they

seek to represent. Fourth, Plaintiffs are able to fairly and adequately protect the interests of the

class. Finally, Defendants have acted or refused to act on grounds that apply generally to the

class, making certification of a Rule 23(b)(2) class appropriate.

---

[1] On September 5, 2017, when Plaintiffs requested leave to amend their complaint to, *inter alia,* add class allegations, ECF No. 46 at 5-6, no other individual had brought suit to challenge the termination of DACA. At a status conference on September 14, 2017, the Court granted leave to amend on consent of Defendants and set a schedule for briefing the class certification motion. Minute Entry (Sept. 15, 2017). Since then, at least nine other lawsuits challenging the DACA Termination have been filed, and the plaintiffs in these other actions include twenty-six individual DACA recipients or applicants. So as not to interfere with the claims of these twenty-six individuals and the district court adjudication of their claims, as discussed *infra*, Plaintiffs propose to exclude these twenty-six individuals from their class definition, or in the alternative, to allow these twenty-six persons to opt-out of any class certified by this Court.

Plaintiffs do not lightly request that this Court certify a class, especially one of this size and scope. Class certification is necessary here to ensure any relief ordered by the Court applies to all DACA recipients and potential future applicants (i.e., to return to the *status quo ante*) without the need for repeated litigation. In addition, at this time, no other plaintiff in any other challenge to the DACA Termination has moved to certify a class, nor do any of the other complaints include class allegations. Moreover, in this case and the pending California cases, Defendants have argued that nationwide injunctive relief is improper. *See* Defs.' Mot. to Dismiss, ECF No. 95-1 at 40 (relying on authority that Defendants characterize as "narrowing [an] injunction in part because the plaintiffs do not represent a class . . . .") (internal citation omitted); Defs.' Mot. to Dismiss at 58-59, *Regents of Univ. of California v. DHS*, No. 17-5211 (N.D. Cal. Nov. 1 2017), ECF No. 114 (arguing that "nationwide declaratory and injunctive relief is impermissible" and that any remedy ordered by Court "should be limited to particular individual Plaintiffs found to have cognizable claims"); Defs.' Reply in Supp. of Mot. to Dismiss at 20, *Regents of Univ. of California v. DHS*, No. 17-5211, (N.D. Cal. Dec 8, 2017), ECF No. 218 (same). For these reasons, Plaintiffs respectfully request that this Court certify the class proposed.

## I.      FACTS AND PROCEEDINGS

Plaintiffs hereby incorporate by reference a summary of the facts and proceedings as set out in their motion for preliminary injunction. In this section, Plaintiffs highlight only matters relevant to the instant motion and not addressed there. The facts set forth here are, except where noted, those alleged in the Third Amended Complaint.[2]

---

[2] It is well-settled that "[w]hen considering a motion for class certification, the Court accepts the allegations in the complaint as true." *Cortigiano v. Oceanview Manor Home for Adults*, 227

### A.   The DACA Memorandum and Defendants' DACA Termination

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano ("the Secretary") issued a memorandum announcing the creation of the nationwide DACA program, which set out guidelines through which agency officials could consider, as an exercise of prosecutorial discretion, requests by "certain undocumented immigrants who entered the United States as children" for grants of deferred action. *Batalla Vidal v. Duke*, 2017 WL 5201116, at *2 (E.D.N.Y. Nov. 9, 2017); ECF No. 60-1, Ex. A ("2012 DACA Memo"). Per the terms of that guidance, DHS considered requests for deferred action "on a case by case basis." *Id*. Since the Secretary issued that guidance in 2012, nearly 800,000 individuals have received deferred action and employment authorization through the U.S. Citizenship and Immigration Services ("USCIS") as a result of DACA. *Batalla*, 2017 WL 5201116, at *2; Decl. of Michael J. Wishnie dated Dec. 15, 2017 ("Wishnie Decl."), Attach. 1 (USCIS, *Deferred Action for Childhood Arrival Process – Through Fiscal Year 2017, 3rd Qtr.* (Sept. 20, 2017)) (attached hereto as Exhibit A). Additionally, Defendants have approved nearly one million deferred action renewal requests. DACA has enabled these individuals to enroll in colleges and universities and obtain jobs, driver's licenses, bank accounts, homes, mortgages, and health insurance (through employment, school, or state-run programs). TAC ¶ 82. DACA recipients have come to rely on the program to support themselves and their families and to live without the constant fear of deportation and separation from their homes and families. *Id*.

---

F.R.D. 194, 203 (E.D.N.Y. 2005). When necessary, a court may consider material outside the pleadings in determining the appropriateness of class certification. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982) ("[The District Court must] develop a sufficient evidentiary record from which to conclude the requirements of numerosity, typicality, commonality of question, and adequacy of representation have been met."); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.").

On September 5, 2017, Defendant Attorney General Sessions announced the termination of the DACA program. TAC, Ex. F. That same day, former Acting Secretary Duke issued a memorandum outlining procedures whereby DHS would effectuate the termination of the DACA deferred action program. TAC, Ex. E ("DACA Termination Memo"). The DACA Termination Memo directs DHS agents to categorically reject all initial applications for deferred action received from the affected population after September 5, 2017. *Id*. It also directs DHS to consider renewal applications from those who had deferred action through DACA that expires on or before March 5, 2018, but only if USCIS receives those renewal applications by October 5, 2017. *Id.* The DACA Termination Memo instructs DHS to reject renewal applications from those whose deferred action through DACA expires after March 5, 2018, or that are received after October 5, 2017. *Id.*

### B.     Procedural History

On September 5, 2017, shortly after Defendant Sessions announced the termination of DACA, Plaintiffs sought leave to amend their complaint so as to include class allegations, Pre-Mot. Conference Letter, ECF No. 46, at 5, which they elaborated by order of the Court. Pls.' Letter dated Sept. 11, 2017, ECF No. 52. At a status conference on September 14, 2017, the Court granted leave to amend on consent of Defendants and set a schedule for briefing the class certification motion. Minute Entry (Sept. 15, 2017). Plaintiffs thus filed a Second Amended Complaint ("SAC") on September 19, 2017, adding class allegations. SAC ¶¶ 132-43.

On September 26, 2017, the Court re-set the briefing schedule on dispositive motions, but declined at that time to set a schedule for the motion for class certification. Order, ECF No. 67. At a pre-motion conference on November 16, 2017, the Court granted the Plaintiffs leave to amend their procedural due process claim "no later than January 5, 2018" and approved a new

schedule on the motion for class certification. Minute Entry (Nov. 17, 2017). On December 11,

2017, Plaintiffs filed their Third Amended Complaint. Today, they move for a preliminary

injunction and for class certification.

## II.   ARGUMENT

The Court should certify the class proposed by Plaintiffs pursuant to Federal Rules of

Civil Procedure 23(a) and 23(b)(2). Plaintiffs seek a nationwide injunction from this Court in

order to provide relief to the millions of individuals who have relied on deferred action through

DACA. Defendants have already challenged the scope of this Court's remedial power. *See* Defs.'

Mot. To Dismiss, ECF No. 95-1 at 40 (contending that nationwide injunctive relief is

impermissible absent class certification); *see also* Defs.' Mot. to Dismiss at 58-59, *Regents of*

*Univ. of California v. DHS*, No. 17-5211 (N.D. Cal. Nov. 1 2017), ECF No. 114 (same, and

arguing that any remedy ordered by Court "should be limited to particular individual Plaintiffs

found to have cognizable claims"); Defs.' Reply in Supp. of Mot. to Dismiss at 20, *Regents of*

*Univ. of California v. DHS*, No. 17-5211, (N.D. Cal. Dec 8, 2017), ECF No. 218 (same).

Plaintiffs disagree that this Court lacks the power to order nationwide relief absent

certification of a class.  Nevertheless, because the requirements of Rule 23(a) and 23(b)(2) are

satisfied in this case and the class action mechanism was designed for issues, such as this one,

that affect millions of people, Plaintiffs seek certification of a class to remove the issue from

dispute. The class that Plaintiffs seek to certify comprises:

(1) all persons with deferred action through DACA as of September 5, 2017 and

(2) all persons who are or will be eligible for deferred action under the terms of the 2012

Guidance,

(3) *except* the individual recipients of, or applicants for, deferred action through DACA who are Plaintiffs in other actions challenging the DACA Termination in a U.S. District Court as of December 11, 2017.[3]

*See* TAC ¶ 160.[4] Plaintiffs seek to certify this class on their APA claims.

## A.    Applicable Standards

This decision to certify a class must occur "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). To be certified as a class, Plaintiffs must demonstrate numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)-(4); *see, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (setting forth prerequisites of Rule 23(a)); *Marisol A. v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997) (same).

Plaintiffs must also satisfy the requirements of one of the three types of class actions under Rule 23(b). *Brown*, 609 F.3d at 476. Plaintiffs are proceeding under (b)(2), pursuant to which certification is proper when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

---

[3] The other cases challenging the DACA Termination pending before a U.S. district court as of December 11, 2017 are: *New York v. Trump*, No. 17-5228 (E.D.N.Y. filed Sept. 6, 2017); *Regents of Univ. of California v. DHS*, No. 17-5211 (N.D. Cal. filed Sept. 8, 2017); *State of California v. DHS*, No. 17-5235 (N.D. Cal. filed Sept. 11, 2017); *City of San Jose v. Trump*, No. 17-5329 (N.D. Cal. filed Sept. 14, 2017); *Garcia v. U.S.*, No 17-5380 (N.D. Cal. filed Sept. 18, 2017); *City of Santa Clara v. Trump*, No. 17-5813 (N.D. Cal. filed Oct. 10, 2017); *CASA de Maryland v. DHS*, No. 17-2942 (D. Md. filed Oct. 5, 2017); *NAACP v. Trump*, No. 17-1907 (D.D.C. filed Sept. 18, 2017); and *Park v. Sessions*, No. 17-1332 (E.D. Va. filed Nov. 21, 2017).

[4] In the alternative, the Court may certify a class of all persons (1) with deferred action through DACA as of September 5, 2017; and (2) who are or will be eligible for deferred action under the terms of the 2012 DACA Guidance (the class proposed by Plaintiffs in their Second Amended Complaint), so long as the Court in its discretion permits individual plaintiffs in actions challenging the DACA Termination in other U.S. district courts to opt out. This Court may permit opt-outs even in a (b)(2) class. *See Messier v. Southbury Training Sch.*, 183 F.R.D. 350, 353 (D. Conn. 1998) ("[C]ourts may allow opt-outs in (b)(1) and (b)(2) actions using sound discretion."); *see also* 2 Newberg on Class Actions § 4:36 ("[N]otice and opt out rights are not required in (b)(2) class actions, but they are discretionary, may be permitted, and have been employed."); *see generally Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) ("Because of the potential for abuse, a district court has both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *City of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304 (2d Cir. 1990) (interpreting Rule 23(d) "liberally" to enable district courts to make procedural decisions, which ensure "the fair and efficient conduct of the action").

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see e.g.*, *Brown*, 609 F.3d at 476 (summarizing requirements of Rule 23(b)(2)); *Parker v. Time Warner Entertainment Co.*, 331 F.3d 13, 18-19 (2d Cir. 2003) (same).

The Second Circuit has instructed district courts to interpret Rule 23 liberally. *Marisol A.*, 126 F.3d at 377; *see also In re Cablevision Consumer Litig.*, No. 10–CV–4992 (JS)(AKT), 2014 WL 1330546, at *5 (E.D.N.Y. Mar. 31, 2014) ("[Rule 23 requirements] should be given a liberal rather than a restrictive interpretation") (internal quotations omitted); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 98 (E.D.N.Y. 2012) (same).

Courts have not hesitated to certify Rule 23 classes in suits challenging unlawful agency actions, including arbitrary changes in policy by DHS. *See, e.g.*, *Mendez-Rojas v. Johnson*, No. 16-1024, 2017 WL 1397749, at *7 (W.D. Wash. June 30, 2016) (certifying a nationwide class of current and future asylum seekers who would be subjected to a DHS vetting policy); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 183 (D.D.C. 2015) (granting provisional certification of nationwide class of Central American asylum seekers who were or will have been denied release from detention due to a newly adopted DHS policy); *Santillan v. Ashcroft*, No. 04-2686, 2004 WL 2297990, at *12 (N.D. Cal. Oct. 12, 2004) (certifying nationwide class of persons who have been or will be granted lawful permanent resident status and to whom USCIS has failed to issue evidence of status as a lawful permanent resident); *see also Kirwa v. U.S. Dep't of Defense*, No. 17–1793, 2017 WL 4862763, at * 16 (D.D.C. Oct. 25, 2017) (certifying nationwide class of noncitizen members of the Army reserve arbitrarily denied access to naturalization forms by the military); *Kaplan v. Chertoff*, No. 06-5304, 2008 WL 200108, at *1 (E.D. Pa. Jan. 24, 2008) (conditionally certifying for settlement a nationwide class of individuals who had lost or will have lost their social security benefits because of unreasonable USCIS delays in processing

naturalization or adjustment of status applications).

B.   **Plaintiffs Satisfy the Requirements of Rule 23(a)**

The proposed class satisfies numerosity, commonality, typicality, and adequacy, the four requirements of Rule 23(a). Accordingly, Plaintiffs' motion should be granted.

1.   **Numerosity**

The proposed class satisfies the numerosity requirement of Rule 23(a)(1). To be maintained as a class action, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Typically, courts in the Second Circuit will find that a class is sufficiently numerous where there are at least forty members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Assif v. Titleserv, Inc.*, 288 F.R.D. 18, 23 (E.D.N.Y. 2012). Moreover, courts in this circuit "relax[] the numerosity requirement where, as here, the putative class seeks injunctive and declaratory relief pursuant to Rule 23(b)(2)." *Hill v. City of New York*, 136 F. Supp. 3d 304, 353 (E.D.N.Y. 2015) (internal quotations omitted); *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (same).

As of June 30, 2017, nearly 800,000 individuals had received deferred action through DACA since it was first announced in June 2012. Wishnie Decl., Attach. 1. As of September 4, 2017, there were 689,800 individuals with active grants of deferred action through DACA. *Id.*, Attach. 2 (USCIS, Approximate Active DACA recipients: Country of Birth, As of September 4, 2017). Moreover, the Migration Policy Institute estimates that 1.9 million undocumented immigrants were potentially eligible for deferred action under the DACA guidelines. *Id.*, Attach. 3 (Randy Capps, et al., Migration Policy Institute, "The Education and Work Profile of the DACA Population," (Aug. 2017)), at 3. This latter figure represents: (a) 1.3 million individuals who already meet eligibility criteria for deferred action under the DACA guidelines; (b) 398,000

undocumented immigrants who meet eligibility criteria except for the education requirement and

who could become eligible by enrolling in an adult education program; and (c) 228,000 young

individuals who will "age in" to the eligibility criteria, provided they continue their education.

*Id.*

Based on the data provided by USCIS, at least 680,000 individuals would qualify as class

members based on their currently active period of deferred action; an additional 500,000 or more

were eligible but had not applied, based on the Migration Policy Institute estimates from 2016;

and an additional 200,000 persons or more would become eligible in the future when they age

into the eligibility criteria. These estimates easily satisfy the numerosity requirement for class

certification. *See Consol. Rail Corp.*, 47 F.3d at 483; *Hill*, 136 F. Supp. 3d at 353.[5]

## 2.     Commonality

Plaintiffs also satisfy the requirement that "there are questions of law or fact common to

the class." Fed. R. Civ. P. 23(a)(2). For "purposes of Rule 23(a)(2), [e]ven a single [common]

question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation

marks omitted). The commonality requirement is satisfied if the question "is capable of

classwide resolution—which means that determination of its truth or falsity will resolve an issue

that is central to the validity of each one of the claims in one stroke." *Id.* at 2551; *see, e.g.*, *Sykes

v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (affirming finding of

commonality for class of debtors who have been or will be sued by defendants, where plaintiffs

identified "a common contention … capable of classwide resolution . . . central to the validity of

[their] claims"); *see also DL v. Dist. of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)

---

[5] Plaintiffs seeking class certification are not required to produce evidence of the exact size or identity of class members. *See Assif*, 288 F.R.D. at 23; *see also Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001) ("A plaintiff need not provide 'a precise quantification of their class,' and courts may 'make common sense assumptions' to support a finding of numerosity.").

(explaining that commonality is satisfied where there is "a policy or practice that affects all class members").

The proposed class presents common questions of law and fact, resolution of which will not require individualized determinations based on any class member's particular circumstances. On the motion for preliminary injunction filed simultaneously herewith, the common questions include: (a) whether Defendants' DACA Termination and change in the policy regarding the permissible uses of the sensitive information DACA applicants provided was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A); and (b) whether Defendants' DACA Termination constituted a substantive rule, such that notice-and-comment rulemaking was required under 5 U.S.C. § 706(2)(D).[6] The answers to those questions, moreover, will be the same for all members of the proposed class, and they will "drive the resolution of the litigation." *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015). Because all proposed class members are aggrieved by Defendants' arbitrary and procedurally deficient termination of deferred action under DACA and seek identical declaratory and injunctive relief, the commonality requirement is satisfied.[7]

---

[6] Plaintiffs now move to certify a class only on their APA claims. The proposed class also shares common questions of law and fact related to their equal protection claims, *see, e.g.*, TAC ¶ 165, and a sub-class may be appropriate on Plaintiffs' amended procedural due process claims. *Id.* Because Plaintiffs have not sought a preliminary injunction on their constitutional claims—as they await resolution of Defendants' mandamus petition before the Second Circuit and the remaining discovery disputes—the Court need not yet consider commonality or typicality as to those claims. Plaintiffs do not move to certify a class on their Regulatory Flexibility Act claim. *See* ECF No. 52, at 1 ("Plaintiffs intend . . . to seek class treatment for all claims except those arising under the Regulatory Flexibility Act").

[7] Defendants may object that because DACA involves case-by-case adjudications, there can be no commonality. Yet Plaintiffs do not here challenge the individual adjudication of any deferred action application or renewal. *See Batalla*, 2017 WL 5201116 at * 13 (E.D.N.Y. Nov. 9, 2017) (distinguishing challenges to individual adjudications and the "broad, programmatic challenges" in this case). Instead, whether Plaintiffs are entitled to relief depends on common, programmatic questions—whether the DACA Termination was carried out in accordance with APA requirements. Plaintiffs seek an order returning deferred action under DACA to the *status quo ante*, rather than an order on the merits of individual applications for deferred action. *See, e.g.*, *R.I.L-R*, 80 F. Supp. 3d at 183 (granting provisional class certification to Central American refugees seeking individualized consideration for release from detention); *Reid v. Donelan*, 297 F.R.D. 185, 194 (D. Mass 2014) (certifying a class of immigration detainees seeking consideration for release on bond, where individual hearings might result in grant or denial of bond); Order

### 3.      Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative

parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). For the same

reasons that Plaintiffs satisfy the commonality requirement, they also meet the typicality

requirement. Indeed, the Supreme Court has observed that the typicality, adequacy, and

commonality requirements "tend[] to merge." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

"Typicality requires that the claims of the class representatives be typical of those of the

class, and is satisfied when each class member's claim arises from the same course of events, and

each class member makes similar legal arguments to prove the defendant's liability." *Cent.*

*States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504

F.3d 229, 245 (2d Cir. 2007) (internal quotation marks omitted). Typicality, however, "does not

require that the situations of the named representatives and the class members be identical," *In re*

*Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001), and minor factual

differences are no bar to typicality. *See Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)

("[T]he typicality requirement is usually met irrespective of minor variations in the fact patterns

underlying individual claims."); *see also N.J. Carpenters Health Fund v. Residential Capital,*

*LLC*, 272 F.R.D. 160, 165 (S.D.N.Y. 2011) ("Courts in [the Second Circuit] have held that the

typicality requirement is not demanding.") (internal quotation marks omitted); 5 Moore's Federal

Practice § 23.24 (3d ed. 2017).

---

granting motion to certify class, *Valenzuela v. Ducey*, No. 16-3072, ECF No. 153 (D. Ariz. Dec. 6, 2017) (certifying class of noncitizens who possess certain categories of federally-issued Employment Authorization Documents, but nonetheless are denied Arizona driver's licenses or required to present additional documents to obtain them); *see also Massachusetts v. EPA*, 549 U.S. 497, 518 (2007) (holding that plaintiffs may challenge unlawful procedures without having to demonstrate that the result of those procedures would be different).

Rather, the central inquiry is whether the class representative's claims generally share the "essential characteristics" of the putative class as a whole. *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 100 (E.D.N.Y. 2015); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 185, 197–98 (S.D.N.Y. 2007) ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.") (internal quotation omitted). "The typicality prerequisite 'emphasizes that the representatives ought to be squarely aligned in interests with the represented group.'" 1 Newberg on Class Actions § 3:29 (quoting Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356, 387 n.120 (1967)).

Plaintiffs satisfy the typicality requirement. First, because of Defendants' unlawful and arbitrary action, the six individual Plaintiffs, the clients and members of organizational Plaintiff Make the Road New York ("MRNY"), and members of the proposed class alike have lost the ability to be considered for deferred action under the DACA guidelines. One member of MRNY, for example, received a letter from his high school confirming that he met DACA's education requirement on September 7, 2017—two days after the DACA Termination deprived him of the opportunity to apply for deferred action under the DACA guidelines. TAC ¶ 52; *see also id.* ¶¶ 10, 17, 20, 28, 42 (describing imminent expiration of individual Plaintiffs' currently-active periods of deferred action); *Id.* ¶ 142 (describing MRNY members who were unable to meet the Oct. 5 deadline); Decl. of Javier Valdes dated Dec. 15, 2017 ("Valdes Decl."), Pls. Mot. For Prelim. Inj., ECF No. 123, Ex. MMM, ¶¶ 25-34 (detailing stories of MRNY members who were unable to meet the Sept. 5 deadline).

Second, the harms suffered by the Plaintiffs are typical of the harms suffered by class members. Class members face the loss of educational and employment opportunities. Plaintiff

Martín Batalla Vidal, for example, currently relies on deferred action and the accompanying work authorization to work full-time caring for patients with serious health needs at Park Terrace Rehabilitation and Nursing Center in Queens, New York, and to study criminal justice at LaGuardia Community College. TAC ¶ 8; Decl. of Martín Batalla Vidal dated Dec. 13, 2017 ("Vidal Decl."), Pls. Mot. For Prelim. Inj., ECF No. 123, Ex. HHH, ¶¶ 18, 34; *see also* TAC ¶¶ 14-15, 19, 22, 43-44 (describing educational and employment opportunities lost by Plaintiffs); Valdes Decl. ¶¶ 47-61 (describing the staff members MRNY would lose if DACA is revoked). Plaintiff Carlos Vargas relies on deferred action and the accompanying work authorization to study at CUNY School of Law while working full-time to provide *pro bono* legal services to low-income New Yorkers. Decl. of Carlos Vargas dated Dec. 12, 2017 ("Vargas Decl.), Pls. Mot. For Prelim. Inj., ECF No. 123, Ex. EEE, ¶¶ 17-18. Losing DACA means he will lose his job, potentially his professional accreditation, and the possibility of being admitted to the New York bar. *Id* at ¶ 24.

Without these opportunities, class members will be unable to support themselves or their immediate, and extended family members through their incomes or their health insurance. Plaintiff Eliana Fernandez raises her two elementary-age, U.S. citizen children on her income. TAC ¶ 19; Decl. of Eliana Fernandez dated Dec. 12, 2017 ("Fernandez Decl."), Pls. Mot. For Prelim. Inj., ECF No. 123, Ex. LLL, ¶ 1; *see also* TAC ¶¶ 11, 14, 36-37, 44 (describing support Plaintiffs provide to immediate and extended family members). After losing deferred action, she will be unable to afford the mortgage on her house or her family's health insurance. TAC ¶ 19; Fernandez Decl. ¶ 13.

The DACA Termination also threatens all class members with deportation, a threat exacerbated by changes in DHS policy regarding interior enforcement of immigration laws as

well as information privacy. TAC ¶¶ 152-53, 155. Plaintiffs and class members alike are at risk

of separation from their families and communities, such as Plaintiff Mariano Mondragon, who

now lives with his two children and pregnant wife. *Id.* ¶¶ 36-37; Decl. of Mariano Mondragon

dated Dec. 13, 2017 ("Mondragon Decl."), Pls. Mot. For Prelim. Inj., ECF No. 123, Ex. GGG, ¶¶

14, 21; *see also* TAC ¶¶ 11, 14, 16, 19, 44 (describing Plaintiffs' family ties in the United

States).

Third, the theories under which the Plaintiffs seek declaratory and injunctive relief are the

same as those upon which all members of the class will rely.

Plaintiffs are typical of class members, both persons who did not have deferred action as

of September 5, 2017 and those who stand to lose deferred action previously conferred. Since the

announcement of the DACA program, Plaintiffs have relied on their eligibility for deferred

action under the DACA guidelines to plan for and invest in a future in this country. With the

threat of deportation eased, they have strengthened community ties, started families, and pursued

educational and employment opportunities. However, the DACA Termination forecloses these

opportunities and jeopardizes those ties. The injuries of both the Plaintiffs and the putative class

members "derive from [this] unitary course of conduct by a single system." *Marisol A.*, 126 F.3d

at 377. Thus, all Plaintiffs and members of the proposed class are aggrieved by Defendants'

unlawful agency action.

Moreover, Plaintiff MRNY brings claims on behalf of its members and clients, as well as

itself.[8] Some members and clients, including the six individual Plaintiffs in this action, have

already applied for or received deferred action through DACA. Other MRNY members or clients

---

[8] During motion practice last fall, in a brief served but not filed pursuant to this Court's "bundling" rule, Defendants conceded that MRNY has standing to sue on behalf of its members. *See* Mem. in Supp. of Defs.' Consolidated Mot. to Dismiss and in Opp'n to Pls.' Mot. for Summ. J. at 9, Nov. 10, 2016 ("Defendants do not contest that MRNY has standing as a membership organization[.]"), Wishnie Decl., Attach. 4.

were eligible under the 2012 DACA Memo but had not applied as of September 5, 2017, or

would have become eligible in the future but for the DACA Termination. TAC ¶¶ 49, 53. For

instance, MRNY has a significant number of "youth members," who were too young to apply for

deferred action through DACA as of September 5, 2017 but would have "aged in" to DACA's

eligibility criteria but for Defendants' unlawful termination. Valdes Decl. ¶¶ 26-33. The claims

of MRNY's youth members are typical of the claims of putative class members who were too

young to qualify for DACA when it was terminated but would otherwise have become eligible.

*See also* Wishnie Decl., Attach. 3 (estimating 228,000 persons would age-in to DACA after

2016).

Where, as here, the interests of Plaintiffs are squarely aligned with those of the proposed

class, minor or immaterial differences in individual circumstances cannot defeat 23(a)(3)

typicality. Plaintiffs satisfy the typicality requirement because "their claims arise from the same

conduct as those of the proposed members of the class, their claims are premised on the same

legal bases, and their interests are not adverse to the interests of other class members." *Mayer v.

Wing*, 922 F. Supp. 902, 908 (S.D.N.Y. 1996).

### 4.     Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement too

"tends to merge" with the inquiry into commonality and typicality. *See Amchem*, 521 U.S. at 626

n.20 (quoting *Falcon*, 457 U.S. at 157). "The adequacy inquiry under Rule 23(a)(4) serves to

uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at

625. Minor or speculative conflicts alone will not defeat class certification; instead, conflicts

must be "fundamental." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)

(internal quotation marks omitted); *see In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

No conflict exists between the proposed class representatives and the putative members of the class, let alone a fundamental one. Indeed, the Plaintiffs seek the same remedies through declaratory and injunctive relief. First, they all seek the opportunity to apply for or renew DACA through vacatur of the unlawful DACA Termination and its accompanying policy change regarding the sharing of sensitive personal information. Second, in their motion for preliminary relief filed today, the Plaintiffs assert the same claims as the other members of the class: the DACA Termination was arbitrary and capricious and failed to undergo the requisite notice-and-comment rulemaking procedures, in violation of the APA. Plaintiffs are knowledgeable about the facts, the litigation, and the obstacles persons facing the termination of the DACA program face daily, and are dedicated to actively participating in the litigation on behalf of all class members. Collectively, there is no more adequate representative.

"The adequacy [requirement] also factors in competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20. Class counsel in this case meet the adequacy requirement of Rule 23(a)(4). "The adequacy of counsel prong of Rule 23(a)(4) asks whether counsel are qualified, experienced and generally able to conduct the litigation and whether counsel will vigorously prosecute the interests of the class." 1 Newberg on Class Actions § 3:72 (internal quotations marks and citations omitted).

The Plaintiffs have retained adequate counsel to represent the class. Plaintiffs are represented by attorneys at the National Immigration Law Center and MRNY, and by attorneys and law student interns at the Jerome N. Frank Legal Services Organization at Yale Law School. The counsel involved are experienced in litigating complex civil rights matters and class actions.

*See* Wishnie Decl., ¶¶ 2, 4; Decl. of Karen C. Tumlin dated Dec. 15, 2017 (hereinafter "Tumlin

Decl."), ¶ 4 (attached hereto as Exhibit B); Decl. of Amy S. Taylor dated Dec. 15, 2017

(hereinafter "Taylor Decl."), ¶ 4 (attached hereto as Exhibit C). They have served as lead counsel

in class actions, Wishnie Decl. ¶ 3; Tumlin Decl. ¶ 5, have deep expertise in DACA practice and

procedures, Taylor Decl. ¶ 5, and they have devoted, and will continue to devote, substantial

time and resources to the prosecution of this action. Wishnie Decl. ¶ 7; Tumlin Decl. ¶ 6; Taylor

Decl. ¶ 6.

 For the same reasons, undersigned counsel satisfy Rule 23(g), which requires that the

Court appoint class counsel at the time of certification, and that in doing so the Court consider

(1) "the work counsel has done in identifying or investigating potential claims in the action," (2)

"counsel's experience in handling class actions, other complex litigation, and the types of claims

asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources

that counsel will commit to representing this class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

 Plaintiffs have met their initial burden to demonstrate adequacy of representation and,

absent any evidence to the contrary, the Court should thus presume the adequacy requirement

has been satisfied. *See, e.g.*, *Fleischman v. Albany Med. Ctr.*, No. 1:06–CV–765, 2008 WL

2945993 at *4 (N.D.N.Y. Jul. 28, 2008) ("[A]dequacy is easily presumed.").

  **5. Class Certification Is Appropriate Under Rule 23(b)(2).**

 A class action may be maintained pursuant to Rule 23(b)(2) when "the party opposing the

class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole." Fed. R. Civ. P. 23(b)(2). Courts in this circuit have held that class certification under

Rule 23(b)(2) is appropriate in cases involving federal statutory claims. *See Hill* 136 F. Supp. 3d

at 357-59 (finding class certification under Rule 23(b)(2) appropriate for claims arising under 42

U.S.C. § 1981 and the Family and Medical Leave Act claims); *Houser v. Pritzker*, 28 F. Supp. 3d

222, 249-50 (S.D.N.Y. 2014) (certifying class under Rule 23(b)(2) for claims arising under Title

VII of the Civil Rights Act of 1964). "The key to the (b)(2) class is the 'indivisible nature of the

injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be

enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*,

564 U.S. at 360 (internal quotation omitted).

Class certification is appropriate in this case because Defendants have acted on grounds

that apply generally to the class, such that declaratory or injunctive relief is appropriate to the

class as a whole. Fed. R. Civ. P. 23(b)(2). Defendants' unlawful DACA Termination affects all

class members in the same harmful manner. Because of Defendants' arbitrary and capricious

action, class members will be unable to apply for deferred action under the DACA guidelines. In

turn, they will lose the opportunity to work lawfully, pursue higher education, provide financial

support for themselves and their family members, obtain employer-sponsored health insurance,

and engage in everyday activities. Further, without deferred action, class members will live in

constant fear that they will be deported and separated from their families at any moment. Class

members do not seek individualized relief. Instead, they seek declaratory relief that the agency

action is unlawful and injunctive relief vacating the DACA Termination. The relief sought by

Plaintiffs would provide the entire proposed class the same opportunity to apply for a two-year

grant of deferred action under DACA through which they can obtain relief from deportation and

apply for employment authorization. In short, the nature of the alleged injuries and the requested

relief apply to all members of the proposed class equally and indivisibly.

**III.     CONCLUSION**

Plaintiffs seek to represent a class of (1) all persons with deferred action through DACA as of September 5, 2017, and (2) all persons who are or will be eligible for deferred action under the terms of the 2012 Guidance, (3) *except* the individual recipients of, or applicants for, deferred action through DACA who are Plaintiffs in any other action challenging the DACA Termination in a U.S. District Court as of December 11, 2017. The proposed class members are all adversely affected by Defendants' unlawful DACA Termination. Plaintiffs have met their burden to satisfy the requirements of Rule 23(a) and (b)(2), and the Court should therefore certify Plaintiffs' proposed class.

Respectfully submitted,                                    Dated: December 15, 2017

/s/ Michael J. Wishnie

David Chen, Law Student Intern
Susanna D. Evarts, Law Student Intern
Victoria Roeck, Law Student Intern
Healy Ko, Law Student Intern
Hannah Schoen, Law Student Intern
Emily Villano, Law Student Intern
Muneer I. Ahmad, Esq.[†]
Marisol Orihuela, Esq.[†]
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SVCS. ORG.
127 Wall Street
New Haven, CT 06511
Phone: (203) 432-4800


Amy S. Taylor, Esq. (AT 2056)
Deborah Axt, Esq. (DA 4885)
Scott Foletta, Esq. (SF 9452)
Alexia Schapira, Esq. (AS 8222)
Natalia Renta, Esq.*
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: (718) 418-7690


  † *Appearing* pro hac vice
  **Pro hac vice* motion forthcoming

Jessica R. Hanson, Esq.[†]
Mayra B. Joachin, Esq.[†]
Karen C. Tumlin, Esq.[†]
Trudy S. Rebert, Esq.*+
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd, #108-62
Los Angeles, CA 90010
Phone: (213) 639-3900

Justin Cox, Esq.[†]
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317
Phone: (678) 279-5441

Joshua A. Rosenthal, Esq.[†]
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street NW
Suite 200
Washington, DC 20005
Phone: (202) 216-0261

*Attorneys for Plaintiffs*

+Admitted only in Louisiana

20

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2017, true and correct copies of the foregoing notice of Motion for Class Certification, accompanying memorandum of law, and declarations attached thereto were filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Michael Wishnie
Michael Wishnie, Supervising Attorney (MW 1952)
Jerome N. Frank Legal Services Organization
127 Wall Street
New Haven, CT 06511
Tel: (203) 432-4800
Fax: (203) 432-1426
michael.wishnie@ylsclinics.org