UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARTÍN JONATHAN BATALLA VIDAL et al.,

                            Plaintiffs,

           -against-

**MEMORANDUM & ORDER**

**16-CV-4756 (NGG) (JO)**

KIRSTJEN M. NIELSEN, Secretary, Department of
Homeland Security, et al.,

                            Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK et al.,

                            Plaintiffs,

           -against-

**MEMORANDUM & ORDER**

**17-CV-5228 (NGG) (JO)**

DONALD TRUMP, President of the United States, et al.,

                            Defendants.
------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

On November 9, 2017, the court granted in part and denied in part Defendants' motion to dismiss the above-captioned challenges to the decision to rescind the Deferred Action for Childhood Arrivals ("DACA") program. (Nov. 9, 2017, Mem. & Order ("Nov. 9 M&O") (Dkt. 104[1]) at 2, 19-48.) The court agreed with Defendants that Plaintiffs lacked Article III standing to bring certain claims asserted in their then-operative complaints. (Id. at 32-46.) It rejected, however, Defendants' arguments that the decision to rescind the DACA program was

---

[1] All record citations refer to the docket in Batalla Vidal v. Nielsen, No. 16-CV-4756 (E.D.N.Y.), except as otherwise noted.

"committed to agency discretion by law," and therefore immune from judicial review under the Administrative Procedure Act ("APA"), see 5 U.S.C. § 701(a)(2) (Nov. 9 M&O at 20-28), or that the Immigration and Nationality Act ("INA") divests courts of jurisdiction to hear challenges to that decision, see 8 U.S.C. § 1252(g) (Nov. 9 M&O at 28-32). Defendants now move for the court to certify that order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Defs. Mot. for Certification for Interlocutory Appeal ("Defs. Mot.") (Dkt. 219); Defs. Mem. in Supp. of Mot. for Certification for Interlocutory Appeal ("Defs. Mem.") (Dkt. 219-1).) The court concludes that its November 9 M&O satisfies the requirements for Section 1292(b) certification, and it therefore GRANTS Defendants' motion.

I. **LEGAL STANDARD**

Federal courts of appeals typically hear appeals only from "final decisions of . . . district courts." 28 U.S.C. § 1291. A district court may, however, certify a non-final order in a civil case for interlocutory appeal, provided that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the termination of the litigation." Id. § 1292(b). "When a ruling satisfies [the Section 1292(b)] criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013) (quoting Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 111 (2009)). "Whether an interlocutory appeal is warranted lies squarely within the discretion of the district court." Garber v. Office of the Comm'r of Baseball, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014). The court need only identify one controlling question of law that satisfies Section 1292(b) to certify the entire order for appeal. City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 391-92 (2d Cir. 2008).

## II. DISCUSSION

Defendants contend that the November 9 M&O presents two questions of law that satisfy the requirements of Section 1292(b): "(1) whether or not the rescission of DACA was a decision 'committed to agency discretion by law;' and (2) whether or not the INA deprives federal district courts of jurisdiction over challenges to the Rescission Policy." (Def. Mem. at 4.) The court agrees that the first of these questions meets the requirements of Section 1292(b).[2]

### A. Controlling Question of Law

First, the issue of whether the decision to rescind the DACA program was "committed to agency discretion" presents a "controlling question of law." That question is "controlling" because reversal of this court's November 9 M&O on this point would require the dismissal of, at the least, Plaintiffs' substantive APA challenges to the rescission of the DACA program. That would plainly "terminate the action" as to these claims, Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990), and "significantly affect the conduct of the action" going forward, SEC v. Credit

---

[2] Because the court concludes that this question satisfies Section 1292(b), it need not address Defendants' argument that 8 U.S.C. § 1252(g) bars review of these cases because the rescission of the DACA program is a prerequisite to DACA beneficiaries' removal from the United States. See Republic of Colombia v. Diageo N. Am. Inc., 619 F. Supp. 2d 7, 13 n.1 (E.D.N.Y. 2007) ("The court need not consider whether the requirements for Section 1292(b) certification have been met for each . . . close legal issue addressed in the Order."). (Defs. Mem. at 11-13.) The court has previously explained why Defendants' argument about Section 1252(g) is inconsistent with the statutory text and with Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999). (Nov. 9 M&O at 28-32.) Defendants offer nothing to disturb the court's conclusion on this point. Nor will the court address Defendants' apparent contention that if "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), courts may not consider whether the agency complied with the APA's procedural requirements in taking that action. (Defs. Mem. at 10-11.) To the contrary, "under the APA the ultimate availability of substantive judicial review is distinct from the question of whether the basic rulemaking strictures of notice and comment and reasoned explanation apply." Am. Med. Ass'n v. Reno, 57 F.3d 1129, 1134 (D.C. Cir. 1995) (citing Lincoln v. Vigil, 508 U.S. 182, 195 (1993)); accord N.Y.C. Employees' Ret. Sys. v. SEC, 45 F.3d 7, 11 (2d Cir. 1995). Finally, Defendants argue that the DACA rescission is a "statement of policy exempt from notice-and-comment rulemaking" requirements (Defs. Mem. at 10), but, as the Plaintiffs in New York v. Trump (the "State Plaintiffs") correctly note, that is a merits argument that the court has yet to address, not a jurisdictional or justiciability argument that the court somehow overlooked in its November 9 M&O (State Pls. Mem. in Opp'n to Defs. Mot. ("State Pls. Opp'n") (Dkt. 193, No. 17-CV-5228) at 13 n.6).

Bancorp, Ltd., 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000).[3] Furthermore, this question is one "of law" for purposes of Section 1292(b), as it presents an essentially legal issue as to whether the rescission of guidelines for immigration authorities' exercise of prosecutorial discretion is itself an exercise of prosecutorial discretion that is presumptively unreviewable under 5 U.S.C. § 701(a)(2) and Heckler v. Chaney, 470 U.S. 821 (1985).

### B. Substantial Ground for Difference of Opinion

Second, there are substantial grounds for difference of opinion on this question. In this circuit, an order may furnish "substantial ground for difference of opinion" when it presents issues that are "difficult and of first impression." Klinghoffer, 921 F.2d at 25; Hart v. Rick's Cabaret Int'l, Inc., 73 F. Supp. 3d 382, 393 (S.D.N.Y. 2014) ("A substantial ground for difference of opinion exists when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." (quoting In re Facebook, Inc. IPO Secs. & Deriv. Litig., 986 F. Supp. 2d 524, 539 (S.D.N.Y. 2014))). In the court's view, the application of Section 701(a)(2) of the APA to the rescission of the DACA program presents such a difficult issue of first impression. In its November 9 M&O, the court concluded that Defendants' rescission of the DACA program did not fall into Section 701(a)(2)'s "very narrow exception" to the APA's presumption of reviewability of agency action—an exception that applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 410

---

[3] The State Plaintiffs contend that the November 9 M&O presents no "controlling issue of law" because reversal of this court's holding that Plaintiffs' APA claims are justiciable would "have no bearing" on Plaintiffs' claim that the decision to rescind DACA violated the Equal Protection Clause of the Fifth Amendment. (State Pls. Opp'n at 7-8.) District courts have discretion, however, to certify an order for interlocutory appeal even when reversal of the order would not terminate the action in its entirety. See Klinghoffer, 921 F.2d at 24 ("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." (citations omitted and emphasis added)).

4

(1971) (internal quotation marks and citation omitted). (Nov. 9 M&O at 20-21.) This was because there was indeed "law to apply" to Defendants' decision and because the rescission of the DACA program did not fall within a class of decisions, such as agency decisions not to take enforcement action, that are presumptively immune from APA review. (Id. at 21-26.)

Although the court has no misgivings about these conclusions, these issues are admittedly difficult and debatable. Chaney clearly establishes that an agency's decision not to take enforcement action is presumptively not subject to judicial review under the APA. 470 U.S. at 830-31. It is less clear, however, whether and how this rule applies to DACA and other deferred-action programs that, at least on their face, simply provide guidelines for the exercise of immigration authorities' prosecutorial discretion. (See Mem. from Janet Napolitano, Sec'y, DHS, to David V. Aguilar, Acting Comm'r, U.S. Customs & Border Protection, et al. (June 15, 2012) at 1-3 (Admin. R. (Dkt. 77-1) at 1-3).) Closely related issues have repeatedly divided the Court of Appeals for the Fifth Circuit. Compare Texas v. United States, 809 F.3d 134, 163-69 (5th Cir. 2015) ("Texas II") (concluding that the Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") program was subject to judicial review under the APA notwithstanding Section 701(a)(2)), aff'd by an equally divided Court, 136 S. Ct. 2271 (2016), and Texas v. United States, 787 F.3d 733, 754-62 (5th Cir. 2015) ("Texas I") (same, in denying stay), with Texas II, 809 F.3d at 196-202 (King, J., dissenting) (stating that the case was non-justiciable because DAPA merely "provide[d] guidelines for th[e] exercise of prosecutorial discretion"), and Texas I, 787 F.3d at 769-76 (Higginson, J., dissenting) (same). (See Batalla Vidal Pls. Mem. in Opp'n to Defs. Mot. (Dkt. 226) at 9 n.3.)

How Chaney should apply to an agency's decision to terminate DACA—a deferred-action program of broad applicability—is more uncertain still. The rescission of that program is

neither an enforcement decision nor a non-enforcement decision, but a <u>non</u>-non-enforcement decision. Is such a decision simply another exercise of prosecutorial discretion, as Defendants would have it (Defs. Mem. at 6-8), or does it present special considerations not found in <u>Chaney</u> and other challenges to non-enforcement decisions, as this court has previously held? <u>See</u> <u>Chaney</u>, 470 U.S. at 831-32 (holding that an agency's non-enforcement decision is presumptively not subject to APA review because it (1) "often involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," (2) does not involve the agency's "exercise [of] its <u>coercive</u> power over an individual's liberty or property rights," (3) does not "provide[] a focus for judicial review," inasmuch as the agency has not exercised its power; and (4) "shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict"). (Nov. 9 M&O at 23-26.) In light of the difficulty of this question and the apparent absence of controlling authority, the court concludes that there is a "substantial ground for difference of opinion" on this question.[4]

---

[4] This is not to say that the court finds Defendants' arguments on this point persuasive. Defendants strain to analogize the rescission of DACA to <u>Chaney</u>, but there is a meaningful difference between an agency's refusal to initiate enforcement action and the elimination of a program that guided when the agency would decline to initiate enforcement action. Defendants aver that DHS remains free "to later extend deferred action on an individualized basis to persons regardless of if they are former DACA recipients" (<u>id.</u> at 7), but the memorandum rescinding the DACA program made clear that DHS "[w]ill reject all DACA initial requests" received after September 5, 2017 (Mem. from Elaine C. Duke, Acting Sec'y, DHS, to James W. McCament, Acting Dir., U.S. Citizenship & Immigration Servs., <u>et al.</u>, Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" (Sept. 5, 2017) at 4 (Admin. R. at 255)). That at the very least "curtails" DHS's ability to exercise prosecutorial discretion with respect to previously DACA-eligible individuals. (Nov. 9 M&O at 24.) Fundamentally, Defendants imply that if an agency's decision not to institute enforcement proceedings is unreviewable under the APA, then the reversal of that decision must also be unreviewable. (<u>Cf.</u> Defs. Mem. at 7-8 ("[P]rosecutorial discretion cannot be a one-way valve whereby the Secretary is free to expand the availability of deferred action without subjecting that decision to judicial review, but, once a policy is announced, any later attempt to change course falls outside the agency's discretion and is only amenable to APA review.").) <u>Chaney</u> makes clear, however, that decisions not to initiate enforcement action are unlike decisions to initiate enforcement action in key respects. <u>See</u> 470 U.S. at 831-32. To the court, the decision to end a non-enforcement policy—and to open the door for the resumption of enforcement actions—more closely resembles the latter.

## C. Material Advancement of the Ultimate Termination of the Litigation

Third, the court is satisfied that an interlocutory appeal from its November 9 M&O could materially advance the ultimate termination of this litigation. If, on appeal, the Second Circuit were to conclude that the decision to rescind DACA was "committed to agency discretion by law," barring review of that decision under Section 701(a)(2), then such a ruling would necessarily require the dismissal of, at the least, Plaintiffs' substantive APA challenges to that decision. That would not only simplify this court's task but might also reduce the scope of discovery. See Zygmuntowicz v. Hosp. Investments, Inc., 828 F. Supp. 346, 353 (E.D. Pa. 1993) (ultimate termination of litigation materially advanced if interlocutory appeal would, inter alia, "eliminate issues thus making discovery much easier and less costly").

In deciding that interlocutory appeal may materially advance the ultimate termination of the litigation, the court is mindful of—and indeed, deeply concerned by—the risk that an interlocutory appeal would unreasonably delay the prompt resolution of these cases. Such delay, of course, does not advance the ultimate termination of this litigation. See Ahrenholz v. Bd. of Trs. of Univ. of Ill., 219 F.3d 674, 675-76 (7th Cir. 2000). This risk of delay is especially troubling in light of the extraordinary urgency of these cases. Plaintiffs aver that, every day, approximately 122 DACA recipients lose their deferred action and work authorization. (Batalla Vidal Pls. Mot. for Preliminary Inj. (Dkt. 123) at 1-2.) On March 5, 2018, current DACA beneficiaries who have had no opportunity to renew their benefits will begin to lose their right to work in this country and to face the possibility of deportation. (Mem. from Elaine C. Duke, Acting Sec'y, DHS, to James W. McCament, Acting Dir., U.S. Citizenship & Immigration Servs., et al., Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" (Sept. 5, 2017) at 4 (Admin. R. at 255).) The prompt resolution of these cases is thus of profound

7

importance not only to the approximately 800,000 DACA recipients, but also to their families, friends, employers, schools, and communities, and, indeed, to the nation as a whole.

Notwithstanding the obvious urgency of these cases, Defendants only requested Section 1292(b) certification more than six weeks after the court entered the November 9 M&O from which Defendants seek to appeal. Although neither Section 1292(b) nor Rule 5(a) of the Federal Rules of Appellate Procedure prescribe how quickly a party must move for certification of an order for interlocutory appeal, "courts have held that any delay in seeking amendment and certification 'must be reasonable.'" Morris v. Flaig, 511 F. Supp. 2d 282, 314 (E.D.N.Y. 2007) (quoting Green v. City of New York, No. 05-CV-0429 (DLI), 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006)); accord Century Pac., Inc. v. Hilton Hotels Corp., 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008). Defendants' delay in seeking certification is reprehensible, and the court would be within its discretion to deny Defendants' motion for this reason alone.[5] See Weir v. Propst, 915 F.2d 283, 285-86 (7th Cir. 1990) (two month delay in seeking Section 1292(b) certification was "gratuitous"); see also Ferraro v. Sec'y of U.S. Dep't of Health & Human Servs., 780 F. Supp. 978, 979 (E.D.N.Y. 1992) (unjustified two-and-a-half-month delay was an "indication that the saving of time is of little concern in this case," weighing against certification).

Despite its grave misgivings that Section 1292(b) certification will unduly delay these proceedings, the court nevertheless concludes that interlocutory review of the November 9 M&O

---

[5] In their reply brief, Defendants assert that "[a]ny 'delay' in this case is attributable to [their] filing of a petition for a writ of mandamus with the Second Circuit." (Defs. Reply in Supp. of Mot. (Dkt. 231) at 6.) That petition, however, only sought review of certain discovery- and record-related orders issued by this court and by Magistrate Judge James Orenstein; it did not request that the Second Circuit resolve jurisdictional or justiciability issues in the first instance. (Pet. for Writ of Mandamus (Dkt. 33, In re Elaine C. Duke, No. 17-3345 (2d Cir.)) at 4.) The court is aware of no reason why Defendants could not have promptly sought Section 1292(b) certification of its November 9 M&O, rather than waiting until the Second Circuit had denied their petition. See SEC v. Citigroup Global Mkts., Inc., 827 F. Supp. 2d 336, 339 (S.D.N.Y. 2011) (filing of mandamus petition does not deprive district court of jurisdiction).

8

would materially advance the resolution of this litigation. To avoid undue delay that may prevent the court from resolving these cases before March 5, 2018, Defendants should seek expedited consideration of this appeal. See Fed. R. App. P. 2. The court trusts that the Second Circuit will expeditiously review the November 9 M&O so that this court can promptly provide Plaintiffs with any relief to which they are legally entitled.

* * *

Finally, the court is mindful that both the Supreme Court and the Second Circuit have suggested that the court should consider certifying for interlocutory appeal its ruling on Defendants' threshold arguments for dismissal. In vacating the Ninth Circuit's denial of a writ of mandamus blocking discovery in related challenges to the DACA rescission, the Supreme Court directed that the U.S. District Court for the Northern District of California "should proceed to rule on the Government's threshold arguments and, in doing so, may consider certifying that ruling for interlocutory appeal under 28 U.S.C. § 1292(b) if appropriate." In re United States, No. 17-801, 2017 WL 6505860, at *2 (U.S. Dec. 20, 2017) (per curiam). Moreover, in these cases, the Second Circuit has noted that Defendants have "the right to ask the District Court to certify its ruling for interlocutory appeal" and suggested that "it may be prudent for the District Court to stay discovery pending the resolution of such proceedings." (Dec. 27, 2017, USCA Order (Dkt. 210) at 4.) Because Defendants have established that, at least with respect to the question of whether the DACA rescission was "committed to agency discretion by law," the court's November 9 M&O satisfies Section 1292(b), and in light of these courts' suggestions that it should consider whether an interlocutory appeal is appropriate, the court agrees that its November 9 M&O should be certified for interlocutory appeal.

## III. CONCLUSION

For the reasons stated above, Defendants' motion for the court to certify its November 9 M&O for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (Dkt. 219 in No. 16-CV-4756; Dkt. 184 in No. 17-CV-5228) is GRANTED. Discovery and record supplementation in these cases are stayed pending the Second Circuit's decision on Defendants' anticipated interlocutory appeal. (See Dec. 27, 2017, USCA Order at 4.)

SO ORDERED.

Dated: Brooklyn, New York
January 8, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge