IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MARTÍN JONATHAN BATALLA VIDAL, *et al.*,

        Plaintiffs,

        v.

KIRSTJEN M. NIELSEN, in her official capacity as Secretary of Homeland Security, *et al.*,

        Defendants.

No. 16-cv-4756 (NGG) (JO)

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

Twelve separate actions currently pending in six district courts present overlapping APA challenges to the rescission of DACA—some of which are fully briefed and argued, including a set of related cases in which nationwide preliminary relief has been granted. Yet Plaintiffs ask this Court to disregard eleven of those suits by certifying a *mandatory*, nationwide class and issuing a decision that, once final, would effectively bind parties whose interests are being vigorously litigated before other courts. Recognizing the problematic nature of this request, Plaintiffs endeavor to carve out from their class "the individual recipients of, or applicants for, deferred action through DACA who are Plaintiffs in other actions challenging the DACA Termination pending in a U.S. District Court as of December 11, 2017." Pls.' Mem. in Supp. of Class Certification ("Pls.' Mem. in Supp.") at 2, ECF No. 124-1. But that attempt is ineffectual because, in a class certified under Federal Rule of Civil Procedure 23(b)(2), "the relief sought *must perforce* affect the entire class at once," *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 361-62 (2011) (emphasis added). Certification of a nationwide class here would encourage an improper race to a final judgment and "have a detrimental effect by foreclosing adjudication by a number of different courts and judges," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

Equally problematic is Plaintiffs' pursuit of a class that includes "all persons who … *will be* eligible for deferred action under the terms of the original DACA guidance," Pls.' Mem. in Supp., at 1. The named Plaintiffs, all of whom have received deferred action through the DACA Policy, argue strenuously that the rescission is arbitrary and capricious based on the alleged failure to consider the reliance interests of current recipients. Those reliance interests cannot be shared by individuals who never even *requested*, much less received, deferred action under DACA. Nor can Plaintiffs' information-sharing claims possibly be maintained by those who have never provided

the government with *any* personal information. The scope of the class designated by Plaintiffs is thus substantially overbroad, and class certification should be denied for this additional reason.

## **LEGAL STANDARDS**

Courts should take great care in determining whether to certify a class, especially a nationwide class against the federal government. Although the Supreme Court declined to adopt a blanket prohibition on such classes, it cautioned that "a federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano*, 442 U.S. at 702–03. The Court further acknowledged "the force of the [government's] contentions that nationwide class actions may have a detrimental effect by foreclosing adjudication by a number of different courts and judges, and of increasing, in certain cases, the pressures on this Court's docket." *Id.* at 702.

Apart from the specific concerns implicated by a request to certify a nationwide class against the federal government, a party seeking certification must meet the requirements of numerosity, commonality, typicality, and adequacy of representation, *see* Fed. R. Civ. P. 23(a). Because Plaintiffs here request certification under Rule 23(b)(2), they must also show that defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See Wal-Mart*, 564 U.S. at 345-46 (citation omitted). In other words, the "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 360 (citation omitted).

Plaintiffs claim that it "is well-settled that '[w]hen considering a motion for class certification, the Court accepts the allegations in the complaint as true.'" Pls.' Mem. in Supp. at 3–4 n.2 (citation omitted). Plaintiffs are wrong. On the contrary, a class action "may only be certified if the trial court is satisfied, after a *rigorous* analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982) (emphasis added). And the Second Circuit has confirmed that a trial court "may certify a class only after making *determinations* that each of the Rule 23 requirements has been met," which "can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established," *even if* those requirements overlap with the merits of the case. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (emphasis added). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove" that the requirements are met. *Wal-Mart*, 564 U.S. at 350.

## ARGUMENT

### I. Certification of a Nationwide Class Would Improperly Interfere With Parallel Litigation in Other Courts

Plaintiffs seek certification of a class comprised of all current DACA recipients and all individuals "who are or will be eligible" under the terms of the original DACA policy, "*except* the individual recipients of, or applicants for, deferred action through DACA who are Plaintiffs in other actions challenging the DACA Termination pending in a U.S. District Court as of December 11, 2017." Pls.' Mem. in Supp. at 1–2. That definition fundamentally miscomprehends the nature of a (b)(2) class, which is mandatory precisely because "the relief sought must perforce affect the entire class at once," *Wal-Mart*, 564 U.S. at 361-62. In other words, Plaintiffs cannot exclude from a (b)(2) class the named plaintiffs in identical cases around the country because the "key to the

3

(b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 360 (citation omitted). The relief Plaintiffs seek, "enjoin[ing] the termination of the [sic] DACA and award[ing] provisional relief directing Defendants to restore the DACA program pending final adjudication on the merits," *see* Pls.' Mem. in Support of Mot. for Prelim. Inj. at 40, ECF No. 123-1, would necessarily apply to *all* individuals who meet the DACA guidelines, including those who have chosen to litigate in other courts, represented by other counsel. Plaintiffs' recognition of this tension is evidenced by the internal contradictions in their argument. Plaintiffs first contend that, "[s]o as not to interfere with the claims of the[] twenty-six individuals [named in other pending actions] and the district court adjudication of their claims … Plaintiffs propose to exclude these twenty-six individuals from their class definition, or in the alternative, to allow [them] to opt-out." Pls.' Mem. in Supp. at 2 n.1. But later in their memorandum Plaintiffs expressly affirm that the relief they seek would necessarily "apply to all members of the proposed class equally and *indivisibly*," *id.* at 19 (emphasis added). Because Plaintiffs seek "an indivisible injunction benefitting all its members at once," *Wal-Mart*, 564 U.S. at 362, they cannot avoid interference with other suits simply by carving out just *twenty-six* individuals from among the hundreds of thousands they seek to represent.

Nor would the inevitable conflict between class certification in this case and matters pending in other courts be limited to the twenty-six individuals Plaintiffs wish to exclude. Plaintiffs in five related actions[1] pending in the Northern District of California are litigating these same issues on behalf of, *inter alia*, "[a]pproximately 4,000 undocumented students" enrolled in the

---

[1] *See State of California. v. DHS*, No. 17-5235 (N.D. Cal.); *Regents of the Univ. of Cal. v. DHS*, No. 17-5211 (N.D. Cal.); *Cnty. of Santa Clara v. Trump*, No. 17-5813 (N.D. Cal.); *Garcia v. DHS*, No. 17-5380 (N.D. Cal.); *City of San Jose v. Trump*, No. 17-5329 (N.D. Cal.).

University of California[2] as well as all individuals who allegedly would have been eligible for DACA in California, Maine, Maryland, and Minnesota.[3] Judge Alsup granted plaintiffs' request for a preliminary injunction on January 9, 2018, and ordered DHS to "maintain the DACA program on a nationwide basis on the same terms and conditions as were in effect before the rescission on September 5, 2017, including allowing DACA recipients to renew DACA" (although he specifically excluded new requestors who have never received deferred action and rejected plaintiffs' request that advance parole for DACA recipients be reinstated). Order Granting Prov. Relief at 27, *Regents of the Univ. of Cal. v. DHS*, No. 17-5211 (N.D. Cal. Jan. 10, 2018), ECF No. 234. Critically, that injunction *applies* to named Plaintiffs here along with all members of the proposed class who have received deferred action under DACA. In Maryland a coalition of nine nonprofit associations brought APA claims identical to Plaintiffs' on behalf of their affected members, whom they claim total tens of thousands of individuals nationwide.[4] That case has been fully briefed and argued since December 15, 2017. A court in the District of Columbia is hearing a case brought by the NAACP on behalf of its members across the country who may qualify for DACA,[5] as well as a related case seeking to vindicate the rights of Princeton University students and employees of Microsoft Corporation.[6] Those cases will be fully briefed and argued by February 2, 2018. And APA challenges to the rescission of DACA also are pending before courts in Florida and Virginia.[7]

---

[2] *See* Doc. 1, Compl. at 5, *Regents*, No. 17-5211 (N.D. Cal.).
[3] *See* Doc. 1, Compl., *State of California*, No. 17-5235 (N.D. Cal.). In his January 9, 2018, order granting provisional relief, Judge Alsup dismissed (with leave to amend) the states of Maine and Minnesota, on the ground that their alleged injuries do not fall within the INA's zone of interests.
[4] *See* Doc. 1, Compl. at 11–14, *Casa de Maryland v. DHS*, No. 17-2942 (D. Md.).
[5] *See* Doc. 1, Compl. at 4, *NAACP v. Trump*, No. 17-1907 (D.D.C.).
[6] *See* Doc. 1, Compl., *Trustees of Princeton Univ. v. DHS,* No. 17-2325 (D.D.C.).
[7] *See Diaz v. DHS*, No. 17-24555 (S.D. Fla.); *Park v. Sessions*, No. 17-1332 (E.D. Va.).

Certification of Plaintiffs' proposed class, which would include tens of thousands (if not hundreds of thousands) of individuals whose rights are being vigorously litigated in parallel matters, would run afoul of the Supreme Court's admonition that "a federal court when asked to certify a nationwide class should take care to ensure that … certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano*, 442 U.S. at 702. This is because it "often will be preferable to allow several courts to pass on a given class claim in order to gain the benefit of adjudication by different courts." *Id.*; *cf. United States v. Mendoza*, 464 U.S. 154, 160 (1984) (disallowing nonmutual collateral estoppel against the government on ground it "would substantially thwart the development of important questions of law by freezing the first final decision rendered"). Moreover, certification here would create a perverse incentive for plaintiffs in other suits to race to a final judgment because the "judgment in a class action lawsuit binds all members of the class" and "will bind those absent class members even though they never themselves actively litigated their claims." *See* 6 William B. Rubenstein, Newberg on Class Actions § 18:1 (5th ed. 2014); Restatement (Second) of Judgments § 41(1), (2) (recognizing binding effect of class judgment on members); *see also Wal-Mart*, 564 U.S. at 364 (expressing concern that, were Rule 23(b)(2) class improperly certified, absent class members "would be *precluded* by litigation they had no power to hold themselves apart from"); *accord Taylor v. Sturgell*, 553 U.S. 880, 893 (2008); *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 263 (3d Cir. 2011) (applying *Wal-Mart* and explaining that "strong commonality of interests" is required under Rule 23(b)(2) because "all class members will be bound by a single judgment"). In other words, a final judgment in this case (following proper class certification) would be preclusive on members of the class—including those whose rights are directly at issue in other, pending cases— even though a judge already has granted provisional relief to the very individuals Plaintiffs wish

to represent. It is hard to imagine a scenario in which certification would more directly "interfere with the litigation of similar issues in other judicial districts," *Califano*, 442 U.S. at 702.

Implicitly recognizing this problem, Plaintiffs insist that this Court can, in the alternative, certify a class of *all* persons who may qualify for DACA (including named plaintiffs in other suits) as long as the Court "permits individual plaintiffs in actions challenging the DACA [t]ermination in other U.S. district courts to opt out." Pls.' Mem. in Supp. at 7 n.4. In this Plaintiffs are flatly incorrect. Their "authority" for the proposition that this Court may allow individuals to opt out of a (b)(2) class comes from a district court case issued years before *Wal-Mart*, which, as the Second Circuit recognized, "significantly altered the applicable analysis for class certification under Rule 23(b)(2)." *Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012). Contrary to Plaintiffs' contention, the *Wal-Mart* court explained that, because "the relief sought must perforce affect the entire class at once … these are also *mandatory* classes: The Rule *provides no opportunity* for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." 564 U.S. 361-62 (emphasis added). Plaintiffs fail even to acknowledge this guidance. And appellate courts interpreting *Wal-Mart* overwhelmingly have held that the mandatory nature of a (b)(2) class precludes individual opt-outs. *See Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) ("Because a (b)(2) class is mandatory, the rule provides no opportunity for (b)(2) class members to opt out[.]"); *Berry v. Schulman*, 807 F.3d 600, 609, 612 (4th Cir. 2015) (citation omitted) (rejecting objectors' request to opt out of (b)(2) class on ground that opt-out is not provided by the Rule and is "unnecessary" because "the relief sought is uniform"), *cert. denied sub nom. Schulman v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 137 S. Ct. 77 (2016); *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) (holding that "class members *may not opt out*" of Rule 23(b)(2) certifications (emphasis added and citation

7

omitted)); *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015) ("[T]here is no right to opt out from [a (b)(2)] class"); *see also Amara v. Cigna Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) (Rule 23(b)(2) class members "need not be given notice and opt-out rights"); 3 Newberg on Class Actions, *supra*, § 9:51 ("[C]ases in which courts have enabled class members to opt out of (b)(1) or (b)(2) classes tend to be those that involve individualized monetary damages. The … *Wal-Mart* case undermines the very viability of these particular types of class actions."). Plaintiffs' contention that this Court may cure their defective class certification motion by permitting individuals litigating in another venue to opt out simply cannot be squared with *Wal-Mart* and persuasive authority interpreting it.

The "key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted,'" *Wal-Mart*, 564 U.S. 360 (citation omitted). The ruling sought by Plaintiffs would thus bind with equal force all those whose rights are being determined in other cases, including those who have retained separate counsel, and would provide no opportunity to opt out of litigation being conducted by a law school clinic and two nonprofits with whom many class members have no affiliation. Because such a ruling would "improperly interfere with the litigation of similar issues in other judicial districts" and prevent the "benefit of adjudication by different courts" of similar claims, *Califano*, 442 U.S. at 702, this Court should deny certification and limit its ruling to the parties before it.

## II. Plaintiffs' Class Definition is Substantially Overbroad

Plaintiffs also overreach by pursuing certification of a class that includes individuals who never have received—or even requested—deferred action under DACA. *See* Pls.' Mem. in Supp. at 1 (encompassing "all persons *who are or will be eligible* for deferred action" under DACA (emphasis added)). All of the named individual Plaintiffs in this suit are current or former recipients of DACA, and have premised their substantive APA claim on the Former Acting

8

Secretary's purported failure to "consider[] the reliance interests that the program has engendered." *See, e.g.*, Pls.' PI Mot. at 7; *see also id.* 15–20. Individuals who allegedly merely *met the DACA guidelines*, but have yet to receive (or even request), deferred action under DACA cannot share Plaintiffs' alleged reliance interests. Indeed, Judge Alsup excluded such individuals from his preliminary injunction, finding that "while plaintiffs have demonstrated that DACA recipients … are likely to suffer substantial, irreparable harm as a result of the rescission, they have not made a comparable showing as to individuals who have never applied for or obtained DACA." Order Granting Prov. Relief at 47, *Regents of the Univ. of Cal. v. DHS*, No. 17-5211 (N.D. Cal. Jan. 10, 2018), ECF No. 234. Class representatives cannot, therefore, establish typicality, which requires that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (quotation omitted), *cert. denied*, 137 S. Ct. 1332 (2017); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability" (citation omitted)).

And while Defendants maintain that Plaintiffs' information-sharing claim is wholly without merit given the government's unequivocal representation that the policy has not, in fact, changed in any manner, Nov. 30, 2017 FAQs No. 5, https://www.uscis.gov/daca2017/mail-faqs, any information-sharing claim Plaintiffs *did* have could not possibly be shared by individuals who have not provided the government with any sensitive personal information. Indeed, individuals who have not provided information to the government lack Article III standing to bring an information-sharing claim because they have no conceivable injury. A properly designated class will include members claiming a common injury, *Wal-Mart*, 564 U.S. at 349-350, yet here Plaintiffs' claimed

9

injuries fall apart as applied to individuals who have never been granted DACA. Plaintiffs have failed to meet their burden to demonstrate that class certification is proper and to properly designate a class, *see* 6 Newberg on Class Actions, *supra*, § 7:20, and their motion should be denied.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court deny Plaintiffs' motion for class certification.

Dated: January 13, 2018  Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

RICHARD P. DONOGHUE
United States Attorney

BRETT A. SHUMATE
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOHN R. TYLER
Assistant Branch Director

BRAD P. ROSENBERG
Senior Trial Counsel

*/s/ Kate Bailey*
KATE BAILEY
STEPHEN M. PEZZI
RACHAEL WESTMORELAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel.: (202) 514-9239

10

Fax: (202) 616-8470
Email: kate.bailey@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
Tel: (718) 254-6288
Fax: (718) 254-7489
Email: joseph.marutollo@usdoj.gov

*Counsel for Defendants*