# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, Secretary of the Department of Homeland Security, et al., <br><br> *Defendants.* | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** <br><br> Case No. 1:16-cv-04756 (NGG) (JO) <br><br> Dated: April 18, 2018 |

## INTRODUCTION

Defendants' latest request for certification under 28 U.S.C. § 1292(b) fails to meet the high standard required for certification of an interlocutory appeal. Defendants do not present a controlling issue of law that, if resolved, would materially advance the disposition of this litigation.

Defendants' motion focuses exclusively on only one aspect of Plaintiffs' equal protection claim: allegations that campaign statements by then-candidate Donald Trump show discriminatory intent against Mexicans and Latinos. As this Court has recognized, Plaintiffs' equal protection claim is supported by other well-pled allegations, including discriminatory statements by the President while in office and numerous procedural and substantive departures from typical decision-making. Moreover, because Defendants request certification of an order denying a Rule 12(b)(6) motion, even an interlocutory appeal resolved on terms favorable to Defendants would not preclude Plaintiffs from amending their pleadings after remand, confirming that certification would not "materially advance" the litigation. The presence of a single evidentiary source to which Defendants object is not grounds for interlocutory appeal.

Defendants' question also fails to meet the high standard for certification because it is not a case-dispositive legal question that would affect the course or outcome of this litigation, and it therefore cannot be a "controlling question of law." Although the President's campaign statements are highly probative of an intent to discriminate, any dispute at the pleadings stage regarding the evidentiary weight of the campaign statements is premature. Nor is discovery completed, and Defendants have yet to produce the full administrative record, so the scope of evidence that will eventually support the equal protection claim is still to be determined.

Because certification would not materially advance this litigation nor resolve a controlling question of law, Defendants' motion should be denied.

1

**LEGAL STANDARD**

Certification for interlocutory review is a presumptively disfavored and "rare" means to appeal an "otherwise unappealable interlocutory order." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996) (reviewing legislative history and purpose of § 1292(b)). A "district court may certify a question for interlocutory appeal where (1) the court's decision 'involves a controlling question of law,' (2) 'as to which there is a substantial ground for difference of opinion,' and (3) 'an immediate appeal may materially advance the ultimate determination of the litigation.'" *AMTEC Int'l of N.Y. Corp. v. Beverage Alliance LLC*, No. 10-CV-1147 (NGG) (SMG), 2011 WL 4597480, at *2 (E.D.N.Y. Sept. 30, 2011) (quoting 28 U.S.C. § 1292(b)). Certification should be made in "'strictly limited'" circumstances, as "'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *AMTEC*, 2011 WL 4597480, at *2 (alteration in original) (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).

**ARGUMENT**

**I.  CERTIFICATION WILL NOT MATERIALLY ADVANCE THE LITIGATION**

The most important requirement for certifying an order under § 1292(b) is that doing so would materially advance the litigation. *Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194(SAS), 2004 WL 1555136, at *2 (S.D.N.Y. July 9, 2004); *see also Koehler*, 101 F.3d at 865-66 ("The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."). Here, certifying this Court's March 29 Order[1] to resolve the sole issue disputed by Defendants would not meaningfully advance this litigation because Defendants are only attacking one source of evidence supporting Plaintiffs' equal protection claim. Appellate review would not

---

[1] Order of Garaufis, J. (Mar. 29, 2018), ECF No. 260 (hereinafter, "March 29 Order").

eliminate any claims and would only further protract this litigation, not advance it.

The presence of a single evidentiary source to which Defendants object is not grounds for interlocutory appeal. In fact, even if the Second Circuit accepted Defendants' argument about campaign statements, that would not defeat Plaintiffs' pleadings. This Court did not determine that Plaintiffs' allegations about the campaign statements were *necessary* to plead an equal protection claim. March 29 Order at 18 n.8; Defs.' Mem. in Supp. of Mot. for Certification ("Defs.' Mem.," ECF No. 264-1) at 2. Appellate courts, moreover, are not in the business of "criticiz[ing] or revers[ing] such pleading decisions," because "a reversal at most could lead only to a remand for repleading." *Gottesman v. Gen. Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959) (declining to accept district court's certification of § 1292(b) appeal of order denying motion to dismiss on the pleadings as it was improvidently granted). Thus, as a general matter, rulings on the sufficiency of pleadings are not appropriate for interlocutory review under § 1292(b). *Id.* at 195-96; *see also Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 47 (2d Cir. 2015) (describing that the Second Circuit has a strong preference for resolving disputes on their merits, rather than based on curable procedural deficiencies).

Defendants do not demonstrate why a different result is justified here. Even if one accepts Defendants' argument that campaign statements cannot be used to prove an intent to discriminate (even where, as here, they are highly probative), Plaintiffs' complaint contains ample allegations aside from President Trump's pre-election statements to survive a motion to dismiss. *See, e.g.*, Pls.' Third Amended Complaint, ¶¶ 97-100, ECF No. 113. Discriminatory intent is rarely susceptible to direct proof, and as such Plaintiffs are entitled to use a variety of evidentiary sources to prove their claim. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) ("Determining whether invidious discriminatory purpose was a motivating factor demands

3

a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."); *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010). Such evidence can include, but is not limited to, the impact of the challenged action, the "historical background of the decision," the "specific sequence of events leading up" to the decision, substantive or procedural departures from the normal process of making such a decision, and the "administrative history" of the decision, "especially where there are contemporary statements" made by the decisionmaker. *Arlington Heights*, 429 U.S. at 267-68; *accord Hayden*, 594 F.3d at 163. Because Plaintiffs have sufficiently alleged discriminatory intent even without the President's campaign statements, an interlocutory appeal on Defendants' narrow evidentiary question would not materially advance the litigation.

For example, if needed, Plaintiffs could amend in evidence about more of the President's statements and actions since he was elected, which strongly suggest that he did not shed his views about immigrants when he became President. Since Plaintiffs filed their complaint, President Trump has made many racially charged statements largely targeting immigrants of color, who almost exclusively compose the population of DACA recipients.[2] He has also put forward legislative proposals that block relief for DACA recipients unless exchanged for significantly restricting legal immigration of people of color—including angrily asking in a meeting why he should allow so many individuals from "shithole countries" to migrate to the United States.[3] *See*

---

[2] *See generally* Pls.' Mem. in Supp. of Mot. for Prelim. Inj., *New York et al. v. Trump*, No. 17-5228, 12-15 (E.D.N.Y. Dec. 15, 2017), ECF No. 96-1 (providing examples of and explaining Defendants' use of "racial code words" about Latino and Mexican immigrants).

[3] *See* Wintour, Burke, & Livsey, *'There's No Other Word But Racist': Trump's Global Rebuke For 'Shithole' Remark*, The Guardian (Jan. 13, 2018, 05:38 EST), https://bit.ly/2FwuELw (last visited Apr. 17, 2018); *see also* Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss, 19-20, ECF No. 240; March 29 Order at 18 n.8; Pls.' Mem. in Supp. of Mot. for Prov. Relief, *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 17-5211, 30-31 (N.D. Cal. Nov. 1, 2017), ECF No. 111 (explaining how President Trump's use of DACA recipients as a bargaining chip for restricting immigration of people of color shows pretext, which is evidence of discriminatory purpose).

4

*generally* Jeff Stein & Andrew Van Dam, *Trump Immigration Plan Could Keep Whites in U.S. Majority for up to Five More Years*, Wash. Post (Feb. 6, 2018), https://wapo.st/2EP7oqv (last visited Apr. 17, 2018).

Further, Plaintiffs could amend in the judicial *finding* in the preliminary injunction decision —not just Plaintiffs' allegations—that the DACA Termination departed from the procedural and substantive requirements of the Administrative Procedure Act ("APA"), which is relevant to the *Arlington Heights* analysis of discriminatory purpose.[4] Thus, in addition to campaign statements, discriminatory intent in this case is bolstered by Defendants' post-hoc rationales for ending DACA that are not reflected in the administrative record—and Defendants' explanation that Acting Secretary Duke decided to end DACA despite President Trump and the White House publicly stating that President Trump personally made that decision.[5] *See* Mem. & Order, 5-6, 45, ECF No. 254.[6] Defendants' failure to consider reliance interests of nearly a million DACA beneficiaries before terminating the program also supports discriminatory intent. *See id.* at 42-44. This Court's preliminary injunction order is replete with these and other examples of substantive and procedural

---

[4] Departures from the normal procedural sequence of the agency's decision-making can provide "evidence that improper purposes are playing a role." *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1038 (2d Cir. 1979) (quoting *Arlington Heights*, 429 U.S. at 267). Departures from the normal substantive standards can also be probative of discriminatory purpose, "particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached." *Arlington Heights*, 429 U.S. at 267.

[5] *Cf.* Daniel W. Drezner, *The Stranger Things About Polarization & Foreign Policy*, Wash. Post (Apr. 12, 2018), https://wapo.st/2HyBkg5 ("Senior U.S. officials describe a president who is operating largely on impulse, with little patience for the advice of his top aides. 'A decision or statement is made by the president, and then the principals—Mattis or Pompeo or Kelly—come in and tell him we can't do it,' said one senior administration official. 'When that fails, we reverse-engineer a policy process to match whatever the president said.'") (last visited Apr. 17, 2018).

[6] *See* Pls.' Mem. In Supp. of Mot. for a Prelim. Inj., 27-28, ECF No. 123-1; Pls.' Mem. in Supp. of Mot. for Prelim. Inj., *New York*, No. 17-5228, 13 ("Defendants' contradictory rationales for terminating DACA masked the true basis for their decision—animus toward Latinos, who make up 93% of DACA grantees.") (internal quotation marks omitted).

5

departures, which provide evidence of discriminatory intent independently of the campaign statements on which Defendants focus their request for extraordinary interlocutory review. *See generally id.* at 5-6, 23-30, 37-46.

Plaintiffs could also amend in evidence from Defendants' still-uncompleted administrative record, which Defendants have had an obligation to produce for nearly six months. Indeed, also relevant to the *Arlington Heights* analysis is the "administrative history" of the challenged action, 429 U.S. at 267. This Court and the Second and Ninth Circuits have held Defendants should have already produced the full administrative record, not just the parts they wanted Plaintiffs and the judiciary to see. ECF No. 254 at 50; Order, *In re Nielsen*, No. 17-3345 at 2-3 (2d Cir. Dec. 27, 2017); *In re United States*, 875 F.3d 1200, 1205 (9th Cir. 2017). Because the factual record is not yet fully developed, it would not advance this litigation to allow a premature appeal on one form of evidence supporting Plaintiffs' equal protection claim. *See Gottesman*, 268 F.2d at 196 ("It would seem axiomatic that appeals challenging pre-trial rulings upholding pleadings against demurrer could not be effective in bringing nearer the termination of litigation; on the contrary, they only stimulate the parties to more and greater pre-trial sparring apart from the merits.").

Finally, Defendants argue that granting certification to review this Court's order preserving Plaintiffs' equal protection claim would combine the pieces of this litigation already on appeal at the Second Circuit.[7] ECF No. 264 at 8-9. But only this Court's order granting a preliminary injunction is currently on appeal. Because the injunction was granted on other claims, review of evidentiary issues on the separate equal protection claim would not advance the litigation nor

---

[7] Defendants' claim of judicial economy is confounding after their repeated attempts to seek exceptions to the ordinary rules of civil litigation, including unsuccessfully seeking a writ of mandamus to challenge this Court's appropriate orders regarding discovery record-completion. Order, *In re Nielsen*, No. 17-3345, 5 (2d Cir. 2017), ECF No. 171 (finding "no basis for the extraordinary remedy of mandamus relief" and denying petition).

efficiently resolve the case. While Defendants first asked for interlocutory review of this Court's jurisdictional rulings, ECF No. 219, that request is effectively moot, because the Second Circuit will review the same jurisdictional questions in the preliminary injunction case,[8] which Defendants have recognized by asking the Second Circuit to hold their still-pending § 1292(b) motion on the jurisdictional questions in abeyance. *See* Defs.'-Pet'rs.' Fed. R. App. P. 28(j) Ltr., *Batalla Vidal v. Nielsen*, No. 18-122, 2 (2d Cir. Apr. 10, 2018), ECF No. 53. As a result, adding an additional interlocutory appeal before the Second Circuit would only overcomplicate this litigation without moving the parties any closer to a resolution.[9]

## II. DEFENDANTS DO NOT IDENTIFY A CONTROLLING ISSUE OF LAW

For similar reasons, Defendants do not identify a question of law that would be controlling on the outcome of this litigation. A question of law may be "controlling" when reversal of the lower court's order would either "result in dismissal, 'significantly affect the conduct' of the case, or have 'precedential value for a large number of cases.'" *Ryan, Beck & Co. v. Fakih*, 275 F. Supp. 2d 393, 396 (E.D.N.Y. 2003) (quoting *SEC v. Credit Bancorp*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000)). Reversal of a Rule 12(b)(6) order on appeal for sufficiency of the pleadings cannot be "controlling" under § 1292(b) because even if reversed on appeal, a plaintiff may seek leave to replead.

---

[8] *See* Br. for Defs.-Appellants, *Batalla Vidal v. Nielsen*, No. 18-485, 15-32 (2d Cir. Mar. 16, 2018), ECF No. 119.

[9] This is especially true give that, contrary to Defendants' assertions, Defs.' Mem. at 9, Plaintiffs can seek discovery not only on their equal protection claim but also on their procedural due process claim (on which Defendants have not argued certification would be appropriate and which the Second Circuit is not required to review even if Defendants are permitted to pursue an interlocutory appeal), as well as to complete the administrative record. *Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982). But because under § 1292(b) the entire order is certified, not just a single issue, *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 9 (E.D.N.Y. 2007), certification of the March 29 Order would necessarily pause discovery on Plaintiffs' procedural due process claim until after the appeal was resolved, further protracting this litigation.

7

The allegations in a complaint do not determine the ultimate theory on which Plaintiffs proceed to summary judgment or trial. And they certainly do not determine what evidence is eventually presented or the potential weight and relevance of that evidence, especially when Defendants have provided an incomplete administrative record and repeatedly thwarted discovery. Here, the relevance of President Trump's campaign statements as part of Plaintiffs' overall proof cannot be coherently determined at this stage. For example, the campaign statements could explain the administrative history of the DACA Termination, could provide circumstantial evidence of discriminatory intent, or could bolster other evidence or rebut an aspect of Defendants' case against the equal protection claim. *See Arlington Heights*, 429 U.S. at 267-68. Because the allegations in the complaint are not determinative of the later litigation of claims, a reversal on appeal would not affect the course of this litigation, much less terminate Plaintiffs' equal protection claim. This is compounded by the fact that a developed record is not yet present in this case.[10] Particularly in the context of all the other evidence of discriminatory intent, *supra*, even a holding that the campaign statements are inadmissible would neither terminate the claim nor materially affect how this case proceeds. Nor, moreover, do Defendants have any argument that the statements are irrelevant to the equal protection inquiry as a matter of law.

Defendants desire that the Second Circuit prematurely review the weight of certain factual allegations. But Defendants do not cite a single case certifying the denial of a Rule 12(b)(6) motion

---

[10] It would not be prudent to ask the Second Circuit to review the question of admissibility of the campaign statements, for example, when the answer to that single question may well be immaterial to the ultimate resolution of Plaintiffs' equal protection claim, given the amount of other evidence available. *See Oneida Indian Nation v. Cty. of Oneida*, 622 F.2d 624, 628 (2d Cir. 1980) (declining to grant certification on questions that might disappear upon full development of the factual record, noting that deciding those issues would be akin to issuing an advisory opinion) (citing *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979)); *see also Koehler*, 101 F.3d at 867 (citing *Oneida*, 622 F.2d at 628).

on the sufficiency of the pleadings for interlocutory appeal. And rightly so: Defendants' thin argument for why the March 29 Order presents a controlling issue of law would render all Rule 12(b)(6) orders denying motions to dismiss on sufficiency of the pleadings "controlling," a prospect that courts have not endorsed, and that would upend the final judgment rule.[11]

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' request for certification of its March 29 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: April 18, 2018

Respectfully submitted,

*/s/ Jessica R. Hanson*
Jessica R. Hanson, Esq.
NATIONAL IMMIGRATION LAW
CENTER
3450 Wilshire Blvd., #108-62
Los Angeles, CA 90010
Phone: (213) 639-3900

//
//
//
//
//
//

---

[11] Nor does Defendants' citation of only two cases establish substantial ground for disagreement regarding the relevance of race-based campaign statements, especially where one of these cases is mischaracterized. *See* Defs.' Mem. at 6 (citing *Int'l Refugee Assistance Project v. Trump* ("*IRAP*"), 883 F.3d 233, 268 (4th Cir. 2018), *as amended* (Feb. 28, 2018), and *Casa de Maryland v. U.S. Dep't of Homeland Sec.*, 284 F. Supp. 3d 758, 775 (D. Md. 2018)); *but see IRAP*, 883 F.3d at 266 (holding that since the Fourth Circuit did not *need* to rely on Trump's pre-election statements to hold that the President intended to discriminate against Muslim immigrants, it would not do so).

9

David Chen, Law Student Intern
Susanna D. Evarts, Law Student Intern
Laura Kokotailo, Law Student Intern*
Victoria Roeck, Law Student Intern
Hannah Schoen, Law Student Intern
Muneer I. Ahmad, Esq. (MA 9360)
Marisol Orihuela, Esq. †
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SVCS. ORG.
Phone: (203) 432-4800

Amy S. Taylor, Esq. (AT 2056)
Deborah Axt, Esq. (DA 4885)
Scott Foletta, Esq. (SF 9452)
Alexia Schapira, Esq. (AS 8222)
Natalia Renta, Esq. ‡ (NR)
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Phone: (718) 418-7690

Jessica R. Hanson, Esq. †
Mayra B. Joachin, Esq. †
Karen C. Tumlin, Esq. †
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd., #108-62
Los Angeles, CA 90010
Phone: (213) 639-3900

Justin B. Cox, Esq.†
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317
Phone: (678) 279-5441

Trudy S. Rebert, Esq. (TR 6959)
NATIONAL IMMIGRATION LAW CENTER
PO Box 721361
Jackson Heights, NY 11372
Phone: (646) 867-8793

Joshua A. Rosenthal, Esq.†
NATIONAL IMMIGRATION LAW CENTER
PO Box 34573
Washington, DC 20043
Phone: (202) 216-0261

*Attorneys for Plaintiffs*

\* Motion for law student appearance forthcoming
† Appearing *pro hac vice*
‡ *Pro hac vice* motion forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2018 I electronically filed PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) with the Clerk of the Court for the United States District Court for the Eastern District of New York by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Jessica R. Hanson*
Jessica R. Hanson
