# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

Present: The Honorable    Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**    **Order GRANTING Plaintiffs' motion for class certification and GRANTING Plaintiffs' motion for a classwide preliminary injunction**

Before the Court are a motion for class certification and a motion for a classwide preliminary injunction, both filed by Plaintiffs José Eduardo Gil Robles, Ronan Carlos De Souza Moreira, and Jesús Alonso Arreola Robles ("Plaintiffs"). *See* Dkts. # 39 ("*Cert. Mot.*"), 40 ("*PI Mot.*"). Defendants Kirstjen Nielsen, James McCament, Mark J. Hazuda, Susan M. Curda, Thomas D. Homan, David Marin, and Kevin K. McAleenan ("Defendants") oppose the motions, *see* Dkts. # 53 ("*Cert. Opp.*"), 54 ("*PI Opp.*"), and Plaintiffs timely replied, *see* Dkts. # 57 ("*Cert. Reply*"), 58 ("*PI Reply*"). The Court held a hearing in these matters on February 26, 2018. Having considered the moving papers and oral arguments, the Court **GRANTS** Plaintiffs' motion for class certification and **GRANTS** Plaintiffs' motion for a classwide preliminary injunction.

I.    <u>Background</u>

This action stems from the termination of Plaintiffs' Deferred Action for Childhood Arrivals ("DACA"). They allege that "their permission to live in the United States and employment authorization [have been] arbitrarily stripped away . . . since President Trump took office, without any notice, reasoned explanation, or opportunity to be heard." *Cert. Mot.* 1:5–8.

   A.    <u>The DACA Program</u>

The Court previously outlined the history and features of the DACA program in its order granting Plaintiff Arreola's motion for a preliminary injunction. *See* Dkt. # 31 ("*Arreola Order*"), at 1–2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. |

Deferred action is a longstanding form of administrative action by which the Executive Branch decides, for humanitarian or other reasons, to refrain from seeking a noncitizen's removal and to authorize his or her continued presence in the United States. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999). On June 15, 2012, the Department of Homeland Security ("DHS") announced DACA, a deferred action program for young immigrants who came to the United States as children and are present in the United States without formal immigration status, in a memorandum issued by Secretary Janet Napolitano ("the Napolitano Memo"). *See Declaration of Dae Keun Kwon*, Dkt. # 16-4 ("*Kwon Decl.*"), ¶ 10, Ex. 9 ("Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children") at 2 ("*Napolitano Memo*"). Although DHS announced on September 5, 2017 that it was "winding down" the DACA program, officials confirmed that the same program rules would continue to apply until its end. *Cert. Mot.* 5:17–20.

Under DACA, young immigrants who entered the United States as children and meet specified educational and residency requirements, and who pass extensive criminal background checks, are eligible to receive deferred action. *See Napolitano Memo* at 1–2. A necessary predicate for DACA eligibility is that an individual must lack a lawful immigration status. *See Kwon Decl.* ¶ 21, Ex. 20 ("National Standard Operating Procedures (SOP): Deferred Action for Childhood Arrivals (DACA)") at 44 ("*DACA SOP*"). In addition, DACA recipients cannot have been convicted of a felony, a significant misdemeanor, or three or more other misdemeanors. *See Napolitano Memo* at 1. Deferred action under DACA is granted to qualifying individuals for a period of two years, subject to renewal. *See id.* at 2–3.

DHS's DACA Standard Operating Procedures ("the DACA SOP") set forth the procedures that U.S. Citizenship and Immigration Services ("USCIS") must follow in both granting and terminating DACA. *See DACA SOP* at 16; *see also Colotl v. Kelly*, 261 F. Supp. 3d 1328, 1334 (N.D. Ga. 2017) ("The SOP states that it is applicable to all personnel performing adjudicative functions and the procedures to be followed are not discretionary.").

B.    DACA Revocation

Ron Thomas, an official within USCIS, previously attested that the agency "automatically terminates DACA" upon the issuance of a Notice to Appear ("NTA")[1] in immigration court, a

---

[1] An NTA is issued as a predicate step to commencing removal proceedings. *See* 8 U.S.C. § 1229(a) ("In removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien . . ."). In general, "[a]liens may be removed if they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 567 U.S. 387, 396 (2012); *see also* 8 U.S.C. §§ 1182(a), 1227(a).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

practice that has been in place since 2013. *See Declaration of Ron Thomas*, Dkt. # 23-2 ("*Thomas Decl.*"), ¶ 4. He also illustrated the scope of automatic DACA terminations, noting that "a more fulsome review of all automatic terminations of DACA would . . . involve a manual review of hundreds of cases." *Id.* ¶ 5.

Plaintiffs argue that automatic terminations following the issuance of an NTA are "unlawful," noting two "systemic policies and practices." *Cert. Mot.* 6:4–5. First, Plaintiffs contend that the "practice of revoking DACA without providing notice, a reasoned explanation, an opportunity to be heard prior to revocation, or a process for reinstatement where the revocation is in error" violates the DACA SOP, which "do not allow for termination without notice in the vast majority of cases, including in Plaintiffs' and the proposed class members." *Id.* 6:6–14. Second, Plaintiffs note that the practice of revoking DACA automatically upon the issuance of an NTA is fundamentally unsound because all DACA recipients necessarily could be charged with unlawful presence. *See id.* 6:15–25.

### C.     Plaintiffs' Histories

#### i.     Plaintiff José Eduardo Gil Robles

Plaintiff Gil has lived in the United States since 1998 when, at the age of five, he entered the country without inspection at a border crossing. *See Declaration of José Eduardo Gil Robles*, Dkt. # 39-4 ("*Gil Decl.*"), ¶ 1. He eventually settled in Minnesota and graduated from high school in the Minneapolis area, and has five younger siblings, all of whom were born in the United States and are U.S. citizens. *Id.* ¶¶ 2–3. Gil first applied for DACA in 2015; it was granted in August of that year and was valid until August 2017. *Id.* ¶¶ 8–9. In April 2017, he applied for DACA renewal, which was approved and valid until August 13, 2019. *Id.* ¶ 10. Using the work authorization that accompanies DACA, Gil first worked as a baker and then began employment with a logistics company. *Id.* ¶ 11. He also obtained a Social Security Number and a driver's license. *Id.* ¶ 13.

The parties do not dispute that Gil was arrested in September 2017; however, they characterize the nature of that arrest very differently. Plaintiffs assert that Gil was "charged with a misdemeanor for driving on a cancelled license, which is still pending." *Cert. Mot.* 7:4–5; *Gil Decl.* ¶ 14. To supplement this assertion, Plaintiffs have provided the declaration of Gil's attorney, as well as emails from an Assistant Minneapolis City Attorney indicating that Gil was charged "with the misdemeanor offense of Driving After Cancellation"—*not* "the gross misdemeanor offense of Driving After Cancellation" or "a weapons violation"—and a copy of the complaint issued after his arrest. *See Declaration of Maria Teresa Trafton*, Dkt. # 57-5 ("*Trafton Decl.*"), ¶¶ 1–3, Exs. A, B. Defendants counter that Gil was "arrested and charged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

with two felonies, including First Degree Assault and transferring a firearm without a background check to a prohibited person." *Cert. Opp.* 2:23–24; *see also Declaration of Jeremy Anderson*, Dkt. # 53-1 ("*Anderson Decl.*"), ¶ 6.[2] Plaintiffs note that "a minor traffic offense, such as driving without a license," is not, according to a USCIS list of frequently asked questions relating to DACA, "considered a misdemeanor for purposes of this process." *Kwon Decl.* ¶ 20, Ex. 19 at 20. Defendants, however, assert that the more severe offenses with which they claim Gil was charged made him an "enforcement priority," which prompted his DACA termination. *Cert. Opp.* 2:25–27; *Anderson Decl.* ¶ 10.

In any event, Gil was released on bond after the immigration judge determined that he was not a danger to the community. *Gil Decl.* ¶¶ 19–20. However, while in detention, Gil received a notice from USCIS terminating his renewed DACA based on the issuance of an NTA by Immigration and Customs Enforcement ("ICE"). *Gil Decl.* ¶¶ 22–23, 30, Ex. B. The notice reported that his DACA and employment authorization "terminated automatically as of the date [his] NTA was issued." *Id.* ¶ 30, Ex. B. No additional notice or explanation was provided, and he was not provided a chance to respond. *Id.* ¶ 23.

### ii. Plaintiff Ronan Carlos De Souza Moreira

Plaintiff Moreira was born in Brazil and entered the United States in 2006, along with his two brothers and mother, on a visitor's visa. *See Declaration of Ronan Carlos De Souza Moreira*, Dkt. # 39-3 ("*Moreira Decl.*"), ¶ 1. His mother is a Legal Permanent Resident and his older brother is a U.S. citizen. *Id.* ¶ 5. Moreira attended public schools in Marietta, Georgia and graduated from high school in 2012. *Id.* ¶ 2. He first applied for DACA in 2013, and applied for and received renewals in 2015 and 2017. *Id.* ¶ 7. In August 2014, after leaving college due to his finances and working several temporary jobs, Moreira began his employment at a flooring company, eventually becoming a manager. *Id.* ¶¶ 4, 9.

Although both parties contend that Moreira was arrested in November 2017, they again dispute the nature of the offense with which he was charged. Plaintiffs claim that he was "charged with a misdemeanor for possession of an altered identification document, but has not been convicted." *Cert. Mot.* 8:1–2; *Moreira Decl.* ¶¶ 12–14. Defendants contend that this assertion is "incorrect[]," and that instead Moreira "was arrested for Forgery in the First Degree,

---

[2] Specifically, Defendants claim that Gil "and his companions were engaged in felonious and dangerous behavior, including shooting at people with a BB gun from a car." *Anderson Decl.* ¶ 7. Gil conceded that "one of the passengers in the car when [he] was pulled over had a toy pellet gun and had supposedly shot it from the car window," but at the time of his bond hearing, his lawyer "explained to the judge that the pellet gun was a toy, not a firearm, and that it was not [his]," and that he "did not touch the pellet gun or shoot it." *Gil Decl.* ¶ 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

a felony." *Cert. Opp.* 3:1–2, 3 n. 1; *see also Declaration of Derrick A. Eleazer*, Dkt. # 53-1 ("*Eleazer Decl.*"), ¶ 3.  Plaintiffs counter that although Moreira "was initially arrested on suspicion of forgery, he was never charged with that crime," and provide the criminal accusation filed against Moreira that supports this contention.  *Cert. Reply* 4:9–12; *see also Declaration of David Hausman*, Dkt. # 57-3 ("*Hausman Decl.*"), ¶ 2, Ex. A.

As with Gil, Defendants assert that "on the basis of [these] criminal activities . . . [Moreira] had become an enforcement priority," and so ICE issued an NTA.  *Eleazer Decl.* ¶ 5. Also like Gil, although Moreira was released on bond, he received a notice from USCIS terminating his DACA due to the NTA, with no additional explanation and without being given an opportunity to respond.  *Moreira Decl.* ¶¶ 16, 18–19, 26, Ex. B.

### iii.    *Plaintiff Jesús Alonso Arreola Robles*

Plaintiff Arreola's background was recounted in the Court's order granting his motion for a preliminary injunction.  *See Arreola Order* at 2–3.  His experience resembles those of Gil and Moreira in many of the relevant particulars.

### iv.    *Putative Class Members*

Plaintiffs assert that their experiences "are representative of DACA terminations nationally," and that their counsel are aware "of at least 17 individuals around the country who, in the last ten months alone, have had their DACA and work authorization terminated without notice, a reasoned explanation, or an opportunity to respond, even though they continue to be eligible for DACA."  *Cert. Mot.* 8:12–18; *see also Declaration of Katrina L. Eiland*, Dkt. # 39-13 ("*Eiland Decl.*"), ¶¶ 2–14.

Furthermore, Plaintiffs suggest that, "[g]iven that there are currently nearly 700,000 DACA recipients across the country, there are likely at least dozens—if not many more—in the same situation whose stories have not reached Plaintiffs' counsel."  *Cert. Mot.* 8:18–21.  They point to news stories suggesting that federal immigration authorities are applying increased scrutiny to DACA recipients, "presumably looking for a reason to hold them and revoke their DACA status."  *Id.* 9:3–9; *see also Eiland Decl.* ¶¶ 21, 23, Exs. 6, 8.  They also note a memorandum issued by former DHS Secretary John Kelly ("the Kelly Memo"), which read that "Department personnel should prioritize removable aliens" who have only been "charged with," not necessarily convicted of, "any criminal offense that has not been resolved."  *Id.* ¶ 18, Ex. 3 at 2.  Although DACA recipients are expressly exempt from the Kelly Memo's expanded priorities, *see Colotl*, 261 F. Supp. 3d at 1343 ("[T]he Kelly Memo, by its own terms, has no application to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

the DACA program."), Plaintiffs claim that USCIS has nevertheless targeted individuals who remain eligible for DACA, in violation of the DACA SOP. *Cert. Mot.* 10:7–10.

Defendants argue that the relevant details of at least three of the identified class members are distinct from Plaintiffs'. Jessica Colotl, for instance, is mentioned by Plaintiffs as a potential class member. *See Eiland Decl.* ¶ 7. Defendants note that she "is not subject to DACA termination" because, following the issuance of a preliminary injunction in a separate action, USCIS reinstated her previous DACA grant, which subsequently expired. USCIS denied Colotl's renewal request "after providing her with notice of its intent to do so, and an opportunity to respond." *Cert. Opp.* 3:12–17. Felipe Abonza Lopez, also cited by Plaintiffs, *see Eiland Decl.* ¶ 11, "had his DACA terminated automatically through the issuance of an NTA after [Customs and Border Protection ("CBP")] encountered him engaged in alien smuggling." *Cert. Opp.* 3:18–22.[3] Lastly, Daniel Ramirez Medina, another putative class member, *see Eiland Decl.* ¶ 13, "had his DACA terminated automatically after DHS issued him an NTA based on statements he made indicating gang affiliation." *Cert. Opp.* 4:1–6; *see also Declaration of Michael A. Melendez*, Dkt. # 53-1 ("*Melendez Decl.*"), ¶¶ 4–5.[4]

D.      Procedural History

Plaintiffs Inland Empire – Immigrant Youth Collective and Arreola originally filed their class action complaint on October 5, 2017. *See* Dkt. # 1. The following month, on November 20, 2017, the Court granted Arreola's motion for a preliminary injunction, enjoining USCIS's decision to terminate his DACA. *See Arreola Order* at 15–16.

Plaintiffs now move to certify a class under Federal Rule of Civil Procedure 23(b)(2), consisting of

> [a]ll recipients of Deferred Action for Childhood Arrivals ("DACA") who, after January 19, 2017, have had or will have their DACA grant and employment authorization revoked without notice or an opportunity to respond, even though they have not been convicted of a disqualifying criminal offense.[5]

---

[3] Plaintiffs counter that "like Mr. Arreola, Mr. Abonza Lopez was not charged with any crime, and USCIS terminated his DACA based on the issuance of an NTA charging him with unlawful presence." *Cert. Reply* 4:16–18.

[4] Plaintiffs contend that "[p]roposed class member Daniel Ramirez Medina likewise was never charged with any crime, and USCIS terminated his DACA based on an NTA charging him with unlawful presence." *Cert. Reply* 4:19–24.

[5] In their first amended complaint, Plaintiffs also propose an "Enforcement Priority" Class. *See* Dkt. # 32, ¶ 169. However, that proposed class is not at issue in the pending motion. *See Cert.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

*Cert. Mot.* 3:6–10. They also ask this Court "to grant a classwide preliminary injunction; vacate and enjoin Defendants' unlawful revocation of Plaintiff[] Gil's, Plaintiff Moreira's, and proposed class members' DACA and work permits; and enjoin Defendants from revoking Plaintiffs' and proposed class members' DACA and work permits pursuant to their unlawful policies and practices in the future." *PI Mot.* 2:14–18.

II.    Legal Standard

    A.    Motion for Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Dukes*, 564 U.S. at 348–49 (internal quotation marks omitted).

In a motion for class certification, the burden is on the plaintiffs to make a prima facie showing that class certification is appropriate, *see In re N. Dist. of Cal. Dalkon Shield IUD Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982), and the Court must conduct a "rigorous analysis" to determine the merit of plaintiffs' arguments. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Plaintiffs must be prepared to "prove" that there are "*in fact*" sufficiently numerous parties or that common questions exist, and frequently this will require some "overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350 (emphasis in original). Rule 23 does not, however, grant the court license to "engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466 (citing *Dukes*, 564 U.S. at 351 n. 6).

Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court. Rule 23(a) ensures that the named plaintiffs are "appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 564 U.S. at 349. Plaintiffs must satisfy all of Rule 23(a)'s four requirements—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b). *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

    B.    Motion for Preliminary Injunction

*Mot.* 3 n. 2.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A party seeking a preliminary injunction must make a "clear showing" of: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20, 22 (2008).

III.    Discussion

A.      Motion for Class Certification

Plaintiffs move to certify a class under Rule 23(b)(2), which can be maintained if the Rule 23(a) factors are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

As a threshold matter, in their opposition to class certification, Defendants devote a considerable amount of ink to describing, among other things, the Immigration and Nationality Act ("INA") and the powers vested to DHS regarding immigration policy; deferred action and prosecutorial discretion; and USCIS's authority to grant DACA and CBP's and ICE's abilities to issue NTAs. *See Cert. Opp.* 7:17–13:7. Some of this information is useful at the class certification stage; specifically, when it is "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466. However, beyond that limited function, these arguments will not be used for the purpose of assessing the merits of Plaintiffs' claims generally, because "[w]hether class members could actually prevail on the merits of their claims is not a proper inquiry in determining" preliminary questions relating to class certification. *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1112 (9th Cir. 2014) (internal quotation marks omitted).[6]

The Court will first consider the Rule 23(a) factors before examining whether Rule 23(b)(2) is satisfied.

        i.      *Rule 23(a)*

---

[6] Defendants vigorously contest the Court's jurisdiction over this action. *See Cert. Opp.* 4:8–19; *PI Opp.* 6:6–13:17. Because the Court concludes that it has jurisdiction, *see* Part III.B.i.a below, it will proceed with consideration of class certification.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

The Court will analyze each of Rule 23(a)'s four requirements—numerosity, commonality, typicality, and adequacy—in turn.

### a.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no fixed number which satisfies the numerosity requirement; it "requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980). In general, however, "courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). When, as here, plaintiffs seek injunctive or declaratory relief, "the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the number of unknown and future members of [the proposed class] is sufficient to make joinder impracticable." *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004); *see also Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 586 (C.D. Cal. 2012) ("[W]ith . . . additional future members likely to be added, Plaintiffs have shown sufficient numerosity to satisfy the requirements of Rule 23(a)(1).").

Here, "Plaintiffs' counsel is aware of at least 17 DACA recipients who, in the last ten months alone, have had their DACA terminated without notice or process, despite remaining eligible for the program," and estimates that, given the increased rate of DACA revocations and increased scrutiny on the part of federal immigration authorities, there are likely "at least dozens—if not many more—who have already had their DACA terminated." *Cert. Mot.* 11:25–12:5. Since filing their motion, Plaintiffs "have learned of five additional individuals who have had their DACA terminated without process despite remaining eligible, bringing the total number of known affected DACA recipients to 22." *Cert. Reply* 9 n. 8; *see also Second Declaration of Katrina L. Eiland*, Dkt. # 57-1 ("*Second Eiland Decl.*"), ¶¶ 3–8.

### 1.    Identified Class Members

To begin, Defendants challenge whether the identified DACA recipients can be properly considered as members of the proposed class. *See Cert. Opp.* 17:20–18:1. As discussed above, Defendants suggest that Plaintiffs Gil and Moreira were charged with felonies and so *have* been "convicted of a disqualifying criminal offense," which thus puts them outside the definition of the proposed class. However, the evidence provided by Plaintiffs in the form of arrest records and declarations creates at least the plausible suggestion that Defendants are "attempt[ing] to rely on improper post hoc rationalizations." *Cert. Reply* 4:25–26. The same inference applies to proposed class members Abonza Lopez and Medina, both of whom, Plaintiffs maintain, have *not*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

committed disqualifying criminal offenses and are thus proper class members. Consequently, the Court cannot assume, as Defendants do, that "at least seven of the 17 individual Plaintiffs . . . are not properly considered members of the class Plaintiffs seek to certify." *Cert. Opp.* 17:20–22.

Defendants also challenge whether even proposed class members who have *not* committed disqualifying offenses can properly be included in the class. As they explain, "Plaintiffs indicate only that they are aware that these individuals lost DACA despite having no 'disqualifying criminal convictions,' which . . . is insufficient to determine whether each individual received process or whether the DACA SOP provides for process prior to termination in their cases." *Id.* 18:2–6. As a result, Defendants claim that "each claim would have to be assessed individually." *Id.* 18:7–8. The Court disagrees.

Whether the DACA SOP permit automatic revocation in cases where a DACA recipient has committed no disqualifying offense is essentially a merits question, and not one that ought to be fully resolved at this time. However, it can nevertheless be considered because numerosity "overlap[s] with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350.

Defendants assert that the relevant guidelines permit automatic termination of DACA whenever immigration authorities issue an NTA. *See Cert. Opp.* 11:19–12:6 ("[P]ursuant to the DACA SOP and Appendix I, and in conjunction with the NTA Memo, when USCIS discovers certain conduct that suggests DACA should be terminated, USCIS should refer such conduct to ICE, who may issue an NTA that automatically terminates DACA, with no additional notice or opportunity to respond."). The Court, however, has previously rejected this argument, noting that "Defendants point to no provision in the DACA SOPs that permits automatic termination as a result of an NTA based on unauthorized presence." *Arreola Order* at 11. Indeed, the Court determined that "[t]here appears to be only one narrow circumstance in which automatic termination based on an NTA is appropriate—when an NTA is issued after USCIS determines that a disqualifying offense or public safety concern is deemed to be 'Egregious Public Safety' ["EPS"]." *Id.* (citing *DACA SOP* at 137).[7] Otherwise, "'unless there are criminal, national security, or public safety concerns,' the DACA termination guidelines prescribe the issuance of a Notice of Intent to Terminate and require that '[t]he individual should be allowed 33 days to file a brief or statement contesting the grounds cited.'" *Arreola Order* at 11 (quoting *DACA SOP* at 137–38) (alteration in original); *see also Gonzalez Torres v. U.S. Dep't of Homeland Sec.*, No. 17cv1840 JM(NLS), 2017 WL 4340385, at *3 (S.D. Cal. Sept. 29, 2017) ("[E]xcept in EPS

---

[7] An EPS case is defined by USCIS and ICE as a case "where information indicates [that an] alien is under investigation for, has been arrested for (without disposition), or has been convicted of" murder, rape, sexual abuse, firearms trafficking, human rights violations, or various other serious offenses. *See Kwon Decl.* ¶ 22, Ex. 21 at 3–4.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|

| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. |
|---|---|

cases, the DACA SOP requires notice and an ability to contest the [Notice of Termination] before DACA status may be terminated.").

Similarly, Defendants argue that "DACA also terminates automatically if a DACA recipient travels outside the United States . . . without first receiving advance parole" or if "DHS deems a DACA recipient an enforcement priority or when USCIS finds that a person is an EPS concern but ICE declines to issue an NTA." *Cert. Opp.* 15:4–9. While these assertions are both true to an extent—the "enforcement priority" exception *also* requires a "process of referring the case to multiple entities for various determinations prior to termination," *Colotl*, 261 F. Supp. 3d at 1342—Defendants do not claim that any of the identified class members either left the country impermissibly or received proper process after being deemed enforcement priorities.

Defendants do not suggest, and there is no indication in the record, that either the named Plaintiffs or any of the proposed class members received an NTA on the basis of an EPS determination, because they left the country without following the proper procedure, or were deemed an enforcement priority and received the required determination process. Therefore, because Plaintiffs did not commit disqualifying criminal offenses, they were entitled to notice and an opportunity to respond, and so are properly members of the proposed class.

### 2. *Potential Class Members*

Even if all 22 of the identified class members are included, however, satisfaction of the numerosity requirement is not a foregone conclusion. As mentioned, the Ninth Circuit has noted that numerosity is "satisfied when a class includes at least 40 members," *Rannis*, 380 F. App'x at 651, and smaller classes have been deemed insufficient. *See, e.g.*, *Harik v. California Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003) (rejecting classes of seven, nine, and ten members because "[t]he Supreme Court has held fifteen is too small"); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough."). However, in addition to the 22 identified members, Plaintiffs have made a compelling case that the number is likely higher, *see Cert. Mot.* 11:28–12:5, and "courts have held that [w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) (alteration in original and internal quotation marks omitted).

Plaintiffs also note that their "proposed class also includes individuals who *will have* their DACA terminated without notice or process, despite continuing to be eligible, if Defendants' policies and practices are not enjoined." *Cert. Mot.* 12:19–21 (emphasis in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

original). Considering that there are hundreds of thousands of DACA recipients across the country, and the admission that USCIS "automatically terminates DACA" upon the issuance of an NTA, *Thomas Decl.* ¶ 4, the Court agrees that an inference of future class members is reasonable. Moreover, the presence of future class members renders joinder inherently impractical, thus satisfying the numerosity requirement's fundamental purpose. *See, e.g.*, *Sueoka*, 101 F. App'x at 653 ("Because plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the number of unknown and future members of proposed [class] is sufficient to make joinder impracticable."); *Ali v. Ashcroft*, 213 F.R.D. 390, 408–09 (W.D. Wash. 2003) (quoting *National Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986)) ("[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size.") (internal quotation marks omitted); *Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001) ("The joinder of potential future class members who share a common characteristic, but whose identity cannot be determined yet is considered impracticable."); *Smith v. Heckler*, 595 F. Supp. 1173, 1186 (E.D. Cal. 1984) ("[S]pecial consideration applies to actions seeking declaratory or injunctive relief against conduct that is likely to cause future harm. Joinder in the class of persons who may be injured in the future has been held impracticable, without regard to the number of persons already injured.").

Courts within this Circuit have certified classes with a similar number of known class members, particularly when, as here, the class might also include unknown present and future class members. *See, e.g.*, *Saravia v. Sessions*, No. 17-cv-03615-VC, 2017 WL 5569838, at *21 (N.D. Cal. Nov. 20, 2017) (certifying nationwide class of unaccompanied minors based on evidence of 15 known members and likelihood of future members); *Chief Goes Out v. Missoula Cty.*, No. CV 12-155-M-DWM, 2013 WL 139938, at *3 (D. Mont. Jan. 10, 2013) (certifying class of 18 members because "small classes may satisfy the numerosity requirement where, as here, the class includes both ascertainable members and a fluid composition of future, unidentified members"). Based on the class members identified by Plaintiffs and the likelihood of both unknown and future members, the Court concludes that joinder is impracticable, and so the numerosity requirement is satisfied.

> b. *Commonality*

Under Rule 23(a)(2), Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This means that the class members' claims must "depend on a common contention." *Dukes*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

*Id.* "[E]ven a single [common] question will do." *Id.* at 359 (internal quotation marks omitted). Thus, Rule 23(a)(2) requires not just a common question, but one that is "capable of classwide resolution." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015). The Ninth Circuit has held that "in a civil-rights suit, [] commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

Here, Plaintiffs have identified a number of legal questions common to the proposed class, including whether Defendants' practice of terminating DACA without notice and an opportunity to be heard violates their internal rules and the Administrative Procedure Act ("APA"), and whether the practice violates the due process clause of the U.S. Constitution. *Cert. Mot.* 14:14–15:4. These common issues are sufficient to satisfy the requirement's permissive standard. *See Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 257 (C.D. Cal. 2008) ("Courts have found that a single common issue of law or fact is sufficient to satisfy the commonality requirement."). The Court also agrees with Plaintiffs that the class members share a common core of facts, such as the DACA program's requirements and procedures. *See Cert. Mot.* 15:11–16. As for the requirement that class members "have suffered the same injury," *Dukes*, 564 U.S. at 349–50, the narrow tailoring of the class definition—to include only those individuals who lost their DACA without notice and did not commit disqualifying criminal offenses—ensures commonality of injury. Given this commonality, should the Court decide that Defendants' practices violate the APA or due process clause, the requested relief—a nationwide injunction preventing termination of DACA pursuant to those practices—would benefit the entire class. Therefore, the common answers to the legal questions presented would "drive the resolution of the litigation." *Ellis*, 657 F.3d at 981 (quoting *Dukes*, 564 U.S. at 350).

In opposition, Defendants primarily argue that "[d]etermining whether an individual's DACA terminated because of the issuance of an NTA or because of some other discretionary decision would require precisely the type of individualized analysis the Supreme Court recognized could prevent a finding of commonality." *Cert. Opp.* 20:22–25 (citing *Dukes*, 564 U.S. at 350). This argument, though, is premised on a flawed assumption—specifically, that automatic termination of DACA is acceptable in a variety of circumstances, such that the proposed class definition is impermissibly overbroad. While there are some instances in which the DACA SOP might permit automatic termination of a potential class member's DACA—for example, if the class member received an EPS designation or traveled abroad without following the proper procedure—the Court agrees with Plaintiffs that such cases likely constitute a "very small number of individuals." *Cert. Reply* 6 n. 5. Plaintiffs note that, as a practical matter, most individuals who are deemed EPS would have also been convicted of a disqualifying crime and would therefore be excluded from the class definition; indeed, Defendants have not identified a single potential class member whose DACA was terminated due to EPS but did *not* commit a

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

disqualifying criminal offense. *See id.* 6:17–22. Furthermore, even if the proposed class were to include some members whose DACA were properly terminated, this alone would not defeat certification, because "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012); *see also Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification. What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice."). The Ninth Circuit has noted that "even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016); *see also id.* (distinguishing between "the possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members" and "a flaw that may defeat predominance, such as the existence of large numbers of class members who were never *exposed* to the challenged conduct to begin with") (emphasis in original).[8]

This same analysis applies to DACA recipients who are reclassified as enforcement priorities. According to the DACA SOP,

> If after consulting with ICE, USCIS determines that exercising prosecutorial discretion after removal has been deferred under DACA is not consistent with the Department of Homeland Security's enforcement priorities, and ICE does not plan to issue an NTA, the officer should refer the case to HQSCOPS [Headquarters Service Center Operations], though [sic] the normal chain of command, to determine whether or not a NOIT [Notice of Termination] is appropriate.

*DACA SOP* at 138. At that point, DACA may be terminated without additional notice or an opportunity to respond, but *only if* this procedure is followed. *See Colotl*, 261 F. Supp. 3d at 1342; *DACA SOP* at 138 (titling this section "Enforcement Priority – DACA *Not* Automatically Terminated") (emphasis added). Defendants claim that some proposed class members, including Plaintiffs Gil and Moreira, had their DACA terminated because they were determined to be enforcement priorities. However, there is no indication that the above procedure was followed in their cases, which would mean that the automatic termination of their DACA grants would be

---

[8] For this reason, the Court declines Plaintiffs' invitation to "modify the class definition," *Cert. Reply* 6 n. 5, even though it retains this prerogative. *See Armstrong*, 275 F.3d at 871 n. 28 ("Where appropriate, the district court may redefine the class.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|----------|--------------------------|------|-------------------|

| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. |
|-------|-------------------------------------------------------------------------------|

subject to the same legal questions as other class members. In addition, even if this procedure *were* followed in some class members' cases, that alone would not preclude certification.[9]

Whatever factual dissimilarities that may exist among the proposed class members do not prevent class certification; as Plaintiffs note, their claims "challenge Defendants' common termination policies and practices as categorically violating the APA and the Due Process Clause—not the agency's ultimate exercise of discretion with respect to each recipient." *Cert. Mot.* 16:15–19. Because these issues create common legal questions amenable to common answers, Rule 23(a)'s commonality requirement is satisfied.

        *c.*    *Typicality*

Rule 23(a)(3) requires that the named Plaintiffs' claims be typical of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The danger that this requirement is meant to guard against is that "absent class members will suffer if their representative is preoccupied with [claims or defenses] unique to it." *Ellis*, 657 F.3d at 984. To meet the typicality requirement, Plaintiffs must therefore establish that other class members have the same or similar injury as them; that the action is based on conduct that is not unique to them as the named Plaintiffs; and that other class members have been injured by the same course of conduct. *See id*.

The Court agrees that Plaintiffs' claims are typical of the claims of the proposed class. Each Plaintiff, like each member of the proposed class, had valid DACA and work authorization that USCIS terminated without notice or an opportunity to be heard, and now claims that this practice violates the APA and the due process clause. *See Cert. Mot.* 17:11–16. Plaintiffs' claims are thus reasonably co-extensive with the other class members'.

Defendants' challenge to the typicality requirement, by their admission, "essentially mirrors its argument that Plaintiffs failed to meet their commonality requirement." *Cert. Opp.* 22 n. 9. This is not surprising, since "[t]he commonality and typicality requirements of Rule

---

[9] Defendants also suggest another commonality obstacle: that "[o]ther putative class members may be in removal proceedings as a result of termination of their DACA by NTA issuance, and some may even have an administratively filed order of removal or have already been removed." *Cert. Opp.* 21:17–20. However, an individual who is in removal proceedings is still eligible for DACA, *see Napolitano Memo* at 3, and so may challenge the legality of future revocation. As for those who have already been removed, Plaintiffs note that "individuals who obtain a lawful immigration status or are deported have no need for DACA." *Cert Reply* 8 n. 7.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

23(a) tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel.*, 457 U.S. at 157 n. 13. Consequently, Defendants' typicality challenge fails to the same extent as their commonality challenge. Even if the named Plaintiffs' individual cases contain some factual variations, that does not change the fact that all are challenging the legality of Defendants' DACA revocation practices under the APA and due process clause. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) ("The particular characteristics of the Petitioner or any individual detainee will not impact the resolution of this general statutory question and, therefore, cannot render Petitioner's claim atypical"); *Ali*, 213 F.R.D. at 409 (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir. 1964)) ("[T]ypicality is not defeated if there are legal questions common to all class members."). As discussed above, Defendants' contention that Plaintiffs Gil and Moreira were eligible for automatic revocation because of their enforcement priority findings is inconsistent with the DACA SOP, which specifically indicates that DACA is *not* automatically terminated in those situations. *See DACA SOP* at 138. If their DACA grants were terminated without following the proper procedure, or if the enforcement priority finding was a post hoc rationalization, then their challenges under the APA and due process clause would be "reasonably coextensive" with the other class members'; again, "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Because Plaintiffs' claims raise the same legal issues as the proposed class members', and because minor factual variations need not prevent certification, the Court concludes that the typicality requirement is satisfied.

### d. Adequacy

Rule 23(a)(4) requires Plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when the class representatives do not have any conflicts of interest with other class members, and the Court is confident that the representative plaintiffs will prosecute the action "vigorously on behalf of the class." *Evon*, 688 F.3d at 1031. A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members. *See Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992). In addition, the district court should inquire into the zeal and competence of class representatives' counsel. *See id.*

To begin, neither Defendants nor the Court questions the competence of Plaintiffs' counsel, who have acquitted themselves well during this litigation and have demonstrated the

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

experience and resources necessary to pursue this matter to completion. *See Declaration of Jennifer Chang Newell*, Dkt. # 39-3 ("*Newell Decl.*"), ¶¶ 2–27. Plaintiffs further note that "[a]ttorneys from the ACLU Immigrations' Rights Project and ACLU of Southern California have been appointed class counsel and successfully litigated similar class action lawsuits in this district and in courts across the country." *Cert. Mot.* 18:11–19; *see also Rodriguez*, 591 F.3d at 1111; *Garcia v. Johnson*, No. 14-cv-01775-YGR, 2014 WL 6657591, at *15 (N.D. Cal. Nov. 21, 2014) (finding Plaintiffs' counsel "experienced in protecting the interests of noncitizens and handling complex and class action litigation, including litigation on behalf of immigration detainees").

Instead, Defendants challenge the adequacy of the named Plaintiffs. They suggest that "the three named Plaintiffs are not properly part of the class that Plaintiffs seek[] to certify," *Cert. Opp.* 24:15–16, and although it is true that this Court issued a preliminary injunction restoring Arreola's DACA, *see Arreola Order* at 15–16, as discussed above, the fact that Gil and Moreira were purportedly designated as enforcement priorities does not alter their challenges to Defendants' practices under the APA and due process clause. Defendants also argue that class certification is inappropriate because "the claims of each of the named Plaintiffs is subject to dismissal," *Cert. Opp.* 24:10–25, and cite to *Lierboe v. State Farm Mutual Automobile Insurance Co.*, 350 F.3d 1018 (9th Cir. 2003), in which the Ninth Circuit determined that a class could not be certified when the class representative did not have standing. *Id.* at 1022–23. However, as discussed in Part III.B.i.a below, the Court concludes that it has jurisdiction to hear this case, and it has not ruled to dismiss any of the named Plaintiffs from this action. Accordingly, *Lierboe* does not present the Court with a compelling reason to deny certification.

Finally, Defendants suggest that proposed class members might have "divergent interests," noting that at least two of the identified class members have already initiated proceedings on their own behalves, and that "many other putative class members, even with ongoing removal proceedings, may be able to reapply for DACA and could receive additional process." *Cert. Opp.* 24:26–25:14. As to the first point, the Court does not see how other suits undertaken by potential class members create divergent interests here, and Defendants do not identify any specific conflict. As for the *possibility* that class members might reapply for DACA and receive additional process in the future, "this circuit does not favor denial of class certification on the basis of speculative conflicts." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003). Moreover, even if some class members receive relief in the future, certification under Rule 23(b)(2) is "appropriate for cases where plaintiffs bring a class action on behalf of a shifting population." *Perez-Olano*, 248 F.R.D. at 259 (internal quotation marks omitted).

In short, because the Court concludes that the named Plaintiffs and their counsel will

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

fairly and adequately protect the interests of the class, the adequacy requirement of Rule 23(a) is satisfied.

        ii.     *Rule 23(b)(2)*

        Because the four requirements of Rule 23(a) are satisfied, the Court will now consider whether certification is appropriate under Rule 23(b)(2).

        Certification of a class under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Ninth Circuit has held that "'it is sufficient' to meet the requirements of Rule 23(b)(2) [when] 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez*, 591 F.3d at 1125 (quoting *Walters*, 145 F.3d at 1047). Rule 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions." *Walters*, 145 F.3d at 1047; *see also Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 213 (N.D. Cal. 2015). "The rule does not require [the Court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*, 591 F.3d at 1125; *see also Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.") (internal quotation marks omitted).

        a.     *Proposed Class*

        The Court agrees that "Rule 23(b)(2)'s requirements are plainly met" here. *Cert. Mot.* 21:23. Plaintiffs ask the Court to declare that Defendants' termination policies and practices, which have impacted the proposed class, are unlawful, and to enjoin USCIS from enforcing unlawful DACA terminations and unlawfully terminating DACA in the future. *See generally PI Mot.* Plaintiffs contend that

> [t]his relief would benefit Plaintiffs as well as all members of the proposed classes in the same fashion. No individual class member would be entitled to a different injunction or declaratory judgment. The requested relief would address these policies or practices in a single stroke, and thus the proposed class plainly warrants certification under Rule 23(b)(2).

UNITED STATES DISTRICT COURT<br>
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|

| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. |
|---|---|

*Cert. Mot.* 22:4–8. The Court agrees. *See Parsons v. Ryan*, 754 F.3d 657, 689 (9th Cir. 2014) ("[E]very [member] in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice."); *Rodriguez*, 591 F.3d at 1126 (certifying class of immigrant detainees under Rule 23(b)(2) where "relief from a single practice is requested by all class members").

The Court also agrees that nationwide certification is appropriate, given the centralized nature and scope of Defendants' practices. The potential class members identified by Plaintiffs come from various states, including Texas, Louisiana, Georgia, Minnesota, South Dakota, North Carolina, New Jersey, and California. *See Cert. Mot.* 22:17–20; *Eiland Decl.* ¶¶ 2–14; *Second Eiland Decl.* ¶¶ 3–8. Furthermore, there are currently nearly 700,000 DACA recipients in all 50 states, *see Eiland Decl.* ¶ 48, Ex. 33, and Defendants have indicated that USCIS has a practice of automatically terminating individual DACA grants upon the issuance of an NTA. *See Thomas Decl.* ¶ 4. Accordingly, to certify a class that is *not* nationwide in scope might result in the application of unlawful practices based solely on geographic location, a piecemeal situation that would lead to arbitrary results. *See Arnott*, 290 F.R.D. at 589 (quoting *Califano*, 442 U.S. at 702) (certifying nationwide class after noting that "the interests of judicial efficiency, economy, and equity weigh in favor of class certifications that offer relief 'dictated by the extent of the violation established, not by the geographical extent of the plaintiff class'"); *Gorbach v. Reno*, 181 F.R.D. 642, 644 (W.D. Wash. 1998) ("[A]nything less [than] a nationwide class would result in an anomalous situation allowing the INS to pursue denaturalization proceedings against some citizens, but not others, depending on which district they reside in.").

       *b.*    *Ascertainability*

Defendants challenge certification under Rule 23(b)(2) on ascertainability grounds, arguing that "[n]ot only must the challenged practice apply to all class members, but it must be readily ascertainable that the practice has injured every member." *Cert. Opp.* 13:16–17. To begin, the cases cited by Defendants for this proposition are inapposite, because each concerned, in whole or at least in part, class certification under Rule *23(b)(3)*, not *23(b)(2)*. *See Santos v. TWC Admin. LLC*, No. CV 13-04799 MMM (CWx), 2014 WL 12558009, at *11 (C.D. Cal. Aug. 4, 2015); *Colapinto v. Esquire Deposition Servs., LLC*, Nos. CV 09-07584 SJO (PLAx), SACV 10-00297 SJO (PLAx), 2011 WL 913251, at *7 (C.D. Cal. Mar. 8, 2011); *Flores v. CVS Pharmacy, Inc.*, No. 2:07-cv-05326-JHN-Ex, 2010 WL 3656807, at *7 (C.D. Cal. Sept. 7, 2010). As for Rule 23(b)(2), the Ninth Circuit has not yet ruled whether the judicially implied ascertainability requirement applies to it, *see In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015), but other circuits have concluded that it does *not*. *See Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("The decisions of other federal courts and the purpose of Rule 23(b)(2) persuade us that ascertainability is not an additional requirement for certification of a

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

(b)(2) class seeking only injunctive and declaratory relief."); *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many [] other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief."); *Shook v. El Paso Cty.*, 386 F.3d 963, 972 (10th Cir. 2004) ("[M]any courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting [] population."); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (determining that ascertainability is a requirement under Rule 23(b)(3) but not Rule 23(b)(2)).

However, even if the ascertainability requirement were to apply to this proposed class, the Court concludes that it would be satisfied because it is "administratively feasible" to ascertain whether an individual is a member. *Greater L.A. Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*, No. CV 13-7172 PSG (ASx), 2014 WL 12561074, at *5 (C.D. Cal. May 6, 2014). As discussed above, this is not a case where rigorous, individualized inquiries are necessary. Membership in the class is defined by (1) the nature of an individual's DACA revocation, and (2) whether that individual has been convicted of a disqualifying criminal offense. Accordingly, the definition is "precise, objective, and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). That some administrative effort is required does not preclude certification. *See, e.g.*, *Moreno v. Napolitano*, No. 11 C 5452, 2014 WL 4911938, at *6–7 (N.D. Ill. Sept. 30, 2014) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012)) ("[T]he size of the potential class and the need to review individual files to identify its members are not reasons to deny class certification.").[10]

---

[10] Defendants also argue that the proposed class is overbroad because it "captures individuals for whom it is necessary to analyze their claims on a case by case basis to determine whether they have similarly been impacted by the policy challenged by the putative class." *Cert. Opp.* 14:12–14; *see also id.* 15:1–17:7 ("The Court here would have to determine not just that an individual's DACA was terminated without advance notice and an opportunity to respond, but the reason why no advance notice and opportunity to respond was provided, and what process was followed prior to termination."). These arguments, as discussed earlier in this order, are based on the flawed premise that automatic DACA termination is a common and permissible feature of the program. However, as the Court has concluded both here and in its prior order, *see generally Arreola Order*, automatic termination is only permissible in what appears to be a relatively small subset of cases. Therefore, the Court is not concerned with overbreadth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

In summation, because the declaratory and injunctive relief sought by Plaintiffs and proposed class members would remedy their injuries as a whole, the Court concludes that certification under Rule 23(b)(2) is appropriate.[11]

### iii.   Rule 23(g)

Plaintiffs' counsel seek to be appointed as Class Counsel. *See Cert. Mot.* 23:12–13.

Under Rule 23(g) of the Federal Rules of Civil Procedure, a district court must appoint class counsel at the time the class is certified, unless otherwise provided by statute. *See Fed. R. Civ. P.* 23(g). The class counsel must fairly and adequately represent the interests of the class, and the court must review the counsel's work in investigating claims, experience in handling class action litigation, and the resources counsel will commit to representing the class. *See Fed. R. Civ. P.* 23(g)(1).

As discussed in Part III.A.i.d above, Plaintiffs' counsel have previously litigated a number of similar class actions, including cases involving immigration law. *See Garcia*, 2014 WL 6657591, at *15. They have also demonstrated that they possess the experience and resources needed to pursue this matter to completion, *see Newell Decl.* ¶¶ 2–27, and have thus far served Plaintiffs well during the course of this litigation. Defendants have provided no challenges to their qualifications, and the Court sees no reason not to appoint Plaintiffs' counsel as Class Counsel.

### iv.   Summation

Because the Court concludes that the proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(2), it **GRANTS** Plaintiffs' motion for class certification.

---

[11] The Court's conclusion here is consistent with the decisions of a number of courts that have certified nationwide classes under Rule 23(b)(2) in similar actions challenging the federal government's administration of immigration programs. *See, e.g.*, *Walters*, 145 F.3d at 1053 (affirming certification of nationwide class of individuals challenging adequacy of notice in document fraud cases); *Wagafe v. Trump*, No. C17-0094-RAJ, 2017 WL 2671254, at *16 (W.D. Wash. June 21, 2017) (certifying nationwide class of naturalization applicants challenging national security screening procedures); *Arnott*, 290 F.R.D. at 589 (certifying nationwide class of immigrant investors challenging USCIS's retroactive application of new rules); *Santillan v. Ashcroft*, No. C 04-2686 MHP, 2004 WL 2297990, at *12 (N.D. Cal. Oct. 12, 2004) (certifying nationwide class of lawful permanent residents challenging delays in receiving documentation of their status).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

B.    Motion for Preliminary Injunction

Much of the discussion that follows mirrors the arguments and analyses presented in the Court's previous order granting Plaintiff Arreola's motion for a preliminary injunction. *See generally Arreola Order.* Defendants repeat many of the same contentions that the Court previously rejected, and give few reasons why it should revise the conclusions it reached at that time. The Court will nevertheless address the arguments for and against the issuance of a preliminary injunction.

i.    *Likelihood of Success on the Merits*

a.    *Jurisdiction*

As a threshold matter, Defendants challenge this Court's ability to review the revocation of class members' DACA, based on the APA and other statutes.

1.    *APA*

Although the APA permits judicial review of agency actions where "there is no other adequate remedy in a court," 5 U.S.C. § 704, Defendants note that the APA precludes review of agency decisions that are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and that the Supreme Court has held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). Defendants therefore conclude that "individual DACA terminations, especially where based on issuance of NTAs, fall squarely within that category of agency discretion for which judicial review is improper." *PI Opp.* 12:18–20.

The Court disagrees. The jurisdictional bar cited by Defendants applies only where there is "no meaningful standard against which to judge the agency's exercise of discretion." *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003) (quoting *Heckler*, 470 U.S. at 830). By contrast, a court can review an agency decision when, like here, there are "statutes, regulations, established agency policies, or judicial decisions that provide a meaningful standard against which to assess" an agency's action. *Mendez-Gutierrez*, 340 F.3d at 868; *see also ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015) (quoting *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003); *Socop-Gonzalez v. Immigration & Naturalization Serv.*, 208 F.3d 838, 844 (9th Cir. 2000)) ("Even where statutory language grants an agency 'unfettered discretion,' its decision may nonetheless be reviewed if regulations or agency practice provide a 'meaningful standard by which this court may review its exercise of discretion.'").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

Here, the decision to revoke DACA is governed by both the Napolitano Memo and the DACA SOP, and the Ninth Circuit has repeatedly found that APA jurisdiction exists where "discretion has been legally circumscribed by various memoranda." *Alcaraz v. Immigration & Naturalization Serv.*, 384 F.3d 1150, 1161 (9th Cir. 2004); *see also Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011) (looking to an agency's interim certification standards to "supply the standard against which we can judge the agency's decision-making"); *Mendez-Gutierrez*, 340 F.3d at 868 (noting that the absence of a specific statute or regulation "does not . . . mean that there are no meaningful standards against which to evaluate" an agency's decision where other rules and regulations apply). Other courts that have similarly examined the Napolitano Memo and DACA SOP have also concluded that they contain the sort of detailed policy directives that provide courts with the standards needed to review DACA revocation. *See Gonzalez Torres*, 2017 WL 4340385, at *5 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Alcaraz*, 384 F.3d at 1162) ("Defendants' failure to follow the termination procedures set forth in the DACA SOP is arbitrary, capricious, and an abuse of discretion."); *Colotl*, 261 F. Supp. 3d at 1340 ("Defendants' argument that § 701(a) of the APA bars this Court from reviewing an agency's non-discretionary review process fails."); *see also Texas v. United States*, 809 F.3d 134, 170 (5th Cir. 2015) (determining that the "grant of lawful presence and accompanying eligibility for benefits is a substantive rule").

In its prior order, the Court noted that Plaintiffs "challenge[] USCIS' determination that [] DACA should be automatically terminated based on CBP's issuance of an NTA, not any eventual enforcement decision in removal proceedings." *Arreola Order* at 5. Because DACA eligibility and revocation are governed by the aforementioned regulations, the Court has a meaningful standard with which to scrutinize the agency's decision, and so judicial review is not barred by the APA. *See Ramirez Medina v. U.S. Dep't of Homeland Sec.*, No. C17-0218RSM, 2017 WL 5176720, at *8 (W.D. Wash. Nov. 8, 2017) ("Defendants' alleged failure to follow the procedures detailed in the DACA SOP does not implicate agency decision. Therefore, the jurisdiction-stripping provisions of . . . § 701(a) are not applicable to prevent this Court from determining whether Defendants complied with their non-discretionary procedures.").

2.      *Section 1252(g)*

Defendants also point to § 1252(g) for their jurisdictional claim, which mandates that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). The Supreme Court has explained that § 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno*, 525 U.S. at 944 n. 9. Accordingly, Defendants

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|----------|--------------------------|------|-------------------|

| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. |
|-------|------------------------------------------------------------------------------|

assert that "because issuance of an NTA and termination of DACA are steps 'leading up to' a final order of removal, they are squarely within the scope of 8 U.S.C. § 1252(g)." *PI Opp.* 8:3–4.

Defendants interpret § 1252(g) too broadly, as evidenced by the Supreme Court's *Reno* decision. There, in response to the "unexamined assumption that § 1252(g) covers the universe of deportation claims—that it is a 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review,'" the Supreme Court opined that "what § 1252(g) says is much narrower." *Reno*, 525 U.S. at 482. It concluded that "[t]he provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (emphasis in original). Section 1252(g) does *not* preclude review of "many other decisions or actions that may be part of the deportation process." *Id.* Consistent with this guidance, the Ninth Circuit has narrowly construed § 1252(g), distinguishing between the narrow category of actions that courts cannot review and those adjacent actions that are within their jurisdiction. In *Alcaraz*, for example, the Ninth Circuit held that even a claim closely related to the initiation of removal proceedings is not barred by § 1252(g), so long as it does not challenge the decision to commence proceedings itself. *Alcaraz*, 384 F.3d at 1160–61; *see also Catholic Soc. Servs. v. Immigration & Naturalization Serv.*, 232 F.3d 1139, 1150 (9th Cir. 2000) ("[Section 1252(g)] applies only to the three specific discretionary actions mentioned in its text, not to all claims relating in any way to deportation proceedings.").

Here, Plaintiffs challenge neither the issuance of NTAs nor the CBP's decisions to commence removal proceedings. Instead, they challenge the USCIS's separate and independent decision to revoke DACA *on the basis of an NTA*, which is independent of the limited category of decisions covered by § 1252(g). *See Ramirez Medina*, 2017 WL 5176720, at *6 ("[T]he Court ultimately finds that none of the statutes relied upon by Defendants applies to the narrower issues presented in this case; specifically, whether Defendants complied with their own non-discretionary procedures."); *Gonzalez Torres*, 2017 WL 4340385, at *4–5.

Furthermore, the Ninth Circuit has held that while § 1252(g) precludes review of the three specified discretionary decisions, it does *not* bar review of legal questions relating to those discretionary decisions. *See United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) ("The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority."); *see also Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While this provision bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|----------|--------------------------|------|-------------------|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

legal bases for those discretionary decisions and actions.").  Here, Plaintiffs bring their legal challenges under the APA and the due process clause.  These are the sorts of purely legal questions that, although related to a discretionary decision, are nevertheless permitted by the Ninth Circuit.

Because Plaintiffs mount legal challenges to decisions that are not within the limited category of discretionary actions enumerated by the statute, the Court concludes that § 1252(g) does not deprive it of jurisdiction over their claims.

> *3.      Sections 1252(a)(5) and 1252(b)(9)*

Lastly, Defendants contend that "[t]o the extent that Plaintiffs have any viable claims, the REAL ID Act, codified at 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9), bars them from raising those claims in district court, even before a final order of removal issues."  *PI Opp.* 9:1–3.  Section 1252(a)(5) requires that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter."  8 U.S.C. § 1252(a)(5).  Section 1252(b)(9) further provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9).  As one court characterized this statutory scheme, it was designed to "put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings."  *Aguilar v. U.S. Immigration & Customs Enf't*, 510 F.3d 1, 9 (1st Cir. 2007).

However, although the Supreme Court has explained that the purpose of § 1252(b)(9) is "to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals," it "applies only '[w]ith respect to review of an order of removal under subsection (a)(1).'"  *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 313 (2001).  Section 1252(a)(1), like § 1252(a)(5), refers to "[j]udicial review of a final removal" order.  8 U.S.C. § 1252(a)(1); *see also Singh v. Gonzalez*, 499 F.3d 969, 978 (9th Cir. 2007) ("By virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal.").

Plaintiffs do not seek judicial review of orders of removal; indeed, their challenges are independent of any removal proceedings.  *See Gonzalez Torres*, 2017 WL 4340385, at *5 ("Plaintiff brings a procedural challenge to termination of his DACA status, an issue independent from any removal proceedings.").  Furthermore, the Ninth Circuit has held that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

§ 1252(b)(9) does not deprive district courts of jurisdiction where a claim could not have been litigated in removal proceedings and the noncitizen would otherwise "have had no legal avenue to obtain judicial review of this claim." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016); *see also Mamigonian v. Biggs*, 710 F.3d 936, 945 (9th Cir. 2013) (permitting an APA action where the immigration judge "would be without jurisdiction" to adjudicate the claim and so "review would be unavailable" to plaintiff). An immigration judge in a removal proceeding does *not* have the power to grant or deny deferred action, or to review or reverse an agency's decision to revoke it. *See Gonzalez Torres*, 2017 WL 4340385, at *6 ("[A]n immigration judge has no jurisdiction to reinstate DACA status."); *see also Napolitano Memo* at 2–3 (conveying power to grant DACA to agencies); *Matter of Quintero*, 18 I. & N. Dec. 348, 350 (B.I.A. 1982) ("[N]either the immigration judge nor the Board may grant [deferred action] status or review a decision of the District Director to deny it."). Therefore, Plaintiffs could not have challenged the revocation of their DACA statuses at a removal proceeding, and so under Ninth Circuit precedent, jurisdiction is not barred.

Plaintiffs here are not challenging a final removal order, and the action they bring is premised on claims that could not have been brought in removal proceedings. Therefore, §§ 1252(a)(5) and 1252(b)(9) do not apply and do not deprive this Court of jurisdiction.

### b.    *Merits of Plaintiffs' Claims*

Because the Court again concludes that it has jurisdiction over this action, it will now consider the merits of Plaintiffs' claims.

### 1.    *APA Claim*

Plaintiffs argue that "Defendants' practice of terminating DACA based solely on the issuance of an NTA charging the DACA recipient with presence without admission or overstaying a visa is arbitrary and capricious and contrary to law in violation of the APA." *PI Mot.* 9:9–12. The Court agrees.

Under the APA, "agency action must be based on non-arbitrary, 'relevant factors.'" *Judulang v. Holder*, 565 U.S. 42, 55 (2011) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983)). The "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang*, 565 U.S. at 53. "When reviewing an agency action, [the Court] must assess, among other matters, 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quoting *State Farm*, 463 U.S. at 43).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|

| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. |
|---|---|

The Court agrees with Plaintiffs that this case is analogous to that which the Supreme Court considered in *Judulang*. *See PI Mot.* 9:20–10:3. There, the Supreme Court considered a Board of Immigration Appeals ("BIA") rule governing eligibility for a form of relief—suspension of deportation—which, like DACA, was not provided for in the INA and was therefore discretionary. *See Judulang*, 565 U.S. at 46–47. Despite this discretionary quality, the Supreme Court nonetheless determined that the rules applied by the agency must reflect reasoned decisionmaking, admonishing that "[a] method for disfavoring deportable aliens that bears no relation to these matters—that neither focuses on nor relates to an alien's fitness to remain in the country—is arbitrary and capricious." *Id.* at 55. The BIA's rule was invalidated because it was based on "a matter irrelevant to the alien's fitness to reside in this country," which indicated that "the BIA ha[d] failed to exercise its discretion in a reasoned manner." *Id.* at 53.

Plaintiffs make a compelling argument that, like the BIA's invalidated rule in *Judulang*, the decision to automatically terminate their DACA and its accompanying employment authorization based on the issuance of an NTA fails the requirements of the APA. First, based on the Napolitano Memo and the DACA SOP, a noncitizen's deportability due to unauthorized presence in the United States—the basis for NTAs—provides no relevant basis for terminating DACA. These guidelines enumerate the relevant considerations for a DACA grant, and not only is unauthorized presence an unmentioned factor, but the program was *specifically designed* for persons without lawful immigration status. *See, e.g.*, *DACA SOC* at 44 (indicating that an individual "may be favorably considered for DACA if" he/she "[e]ntered without inspection" or his/her "lawful immigration status expired"). The program's rules also make clear that even noncitizens who are, have been, or will be placed in removal proceedings are nonetheless eligible for DACA. *See Napolitano Memo* at 2; *DACA SOP* at 71 ("Individuals in removal proceedings may file a DACA request."); *Kwon Decl.* ¶ 17, Ex. 16 (Statement of Assistant Secretary Michael Dougherty and Acting Director James McCament) at 2 ("The 2012 memorandum also made clear that individuals could be considered for DACA even if they were already in removal proceedings or were subject to a final removal order."). The same is true for individuals with final removal orders, and even individuals who have "reenter[ed] the United States illegally after having been removed or after leaving voluntarily under an order of removal." *See DACA SOP* at 74–75.

Furthermore, if an NTA is issued against an applicant while her application is pending with USCIS—even if the NTA is based on a public safety concern—DACA can still be conferred on the applicant. *See Kwon Decl.* ¶ 22, Ex. 21 (November 7, 2011 Policy Memorandum titled "Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens") at 4 ("ICE's issuance of an NTA allows USCIS to proceed with adjudication . . . taking into account the basis for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

NTA."); *DACA SOP* at 93 (providing that if ICE accepts a case referred to it by USCIS during the DACA application process, then the "DACA Team will follow the standard protocols outlined in the November 7, 2011 NTA memorandum"). In such cases, USCIS is required to review all relevant circumstances, and may still grant a DACA request despite an NTA "[i]f a DACA requestor has been placed in proceedings on a ground that does not adversely impact the exercise of prosecutorial discretion." *DACA SOP* at 75; *see also id.* at 74 ("Final removal orders . . . should be reviewed carefully to examine the underlying grounds for removal.").

Accordingly, the Court agrees that "given that the filing of an NTA against a DACA applicant, or even the issuance of a final order of removal against a DACA applicant, does not render the individual ineligible for the program, DHS' practice of automatically terminating DACA on this basis is arbitrary and irrational." *PI Mot.* 12:1–4.

Finally, there is the issue of departure. Agencies are free to change course and depart from a prior decision, but they are also "obligated to supply a reasoned analysis for the change." *State Farm*, 463 U.S. at 42; *see also Federal Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("[T]he agency must show that there are good reasons for the new policy."). Here, in the case of each class member, DHS made a determination (and, in cases like the named Plaintiffs' where renewal was granted, multiple determinations) that the individual was eligible for and warranted a DACA grant. These decisions, pursuant to the relevant guidelines, were based on background checks and a review of the applicant's documentation. However, in each case, although the class member had not been charged with or convicted of a disqualifying criminal act, DHS's decisions were reversed and DACA was revoked—in Plaintiffs' words, "the agency [] abruptly chang[ed] course" even though "each [] class member continue[d] to be eligible for DACA." *PI Mot.* 13:22–24. The only explanation for this reversal provided to Plaintiffs was that their DACA was "terminated automatically" due to the NTA. *Kwon Decl.* ¶ 9, Ex. 8; *Moreira Decl.* ¶ 26, Ex. B; *Gil Decl.* ¶ 30, Ex. B. The Court maintains that "USCIS's one-sentence explanation fails to provide good reasons for the agency's change in position, as required by the APA." *Arreola Order* at 10; *see also Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (quoting *Fox Television Stations*, 556 U.S. at 516; *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015)) (explaining that an agency is "required to provide a 'reasoned explanation . . . for disregarding' the 'facts and circumstances' that underlay its previous decision"). In its prior order, the Court continued:

> [G]iven that *all* DACA recipients are necessarily removable due to their
> unauthorized presence, [t]he agency's reliance on an NTA citing [class members']
> presence without admission simply fails to explain, much less justify, the
> agency's decision to reverse course and terminate [their] DACA. Such an

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

arbitrary and unexplained decision fails to address [class members'] substantial reliance interests, which also runs counter to the Supreme Court's mandate.

*Arreola Order* at 10–11 (emphasis in original and internal quotation marks omitted); *see also Fox Television Stations*, 556 U.S. at 515 (holding that an agency must "provide a more detailed justification" when "its prior policy has engendered serious reliance interests that must be taken into account").

In opposition, Defendants contest the conclusions the Court reached when it issued Plaintiff Arreola's preliminary injunction and maintain that DHS did not violate its internal guidelines, asserting that "[w]hen a case is referred by USCIS, ICE may issue an NTA that automatically terminates DACA, with no additional notice or opportunity to respond." *PI Opp.* 19:6–8. Despite Defendants' disagreement, the Court repeats what it stated previously: the DACA SOP do not support this assertion. There are, as discussed throughout Part III.A above, only a few, narrow circumstances in which DACA can be terminated automatically, without notice and an opportunity to be heard. Defendants point to no provision in the DACA SOP that permits automatic termination as a result of an NTA based on unauthorized presence. They discuss ICE's and CBP's authority to issue NTAs, *see PI Opp.* at 18:25–19:8, and note that "there is no provision permitting USCIS to reverse ICE's decision," *id.* 19:14–15, but such assertions are not relevant—the issue is not whether DHS or its component agencies can issue NTAs, but instead whether USCIS can terminate DACA automatically solely on that basis.[12] The Court maintains that it cannot. Although an NTA filed on the basis of an EPS designation *can* result in automatic DACA termination, *see DACA SOP* at 137, "if the disqualifying criminal offense is non-EPS" then "[t]he individual should be allowed 33 days to file a brief or statement contesting the grounds cited in the Notice of Intent to Terminate." *Id.*; *see also Gonzalez Torres*, 2017 WL 4340385, at *6 (noting that NTAs based on an EPS designation and NTAs based on unauthorized presence "are not fungible, or 'flip sides of the same coin'"). Defendants contend that "it takes a particularly strained reading of the Napolitano Memo and DACA SOP to find that ICE and CBP cannot issue NTAs that have the effect of terminating DACA." *PI Opp.* 20:1–3. For the reasons discussed throughout this order, the Court disagrees.

Defendants also suggest that they have *not* reversed policy by automatically terminating DACA upon the issuance of an NTA, and hence that *Fox Television Stations* is inapposite. *See*

---

[12] Defendants argue that the Court's prior conclusion "relies on a starkly oversimplified consideration of the NTA decision process," and provide additional information as to how NTAs are issued. *PI Opp.* 20:16–22:19. Again, neither Plaintiffs nor the Court suggest that the NTA process itself is arbitrary or capricious, but instead that the decision to automatically terminate DACA solely on the basis of an NTA is inconsistent with the applicable guidelines and regulations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

*PI Opp.* 22:21–24:6. They note that "[t]he initial grant of DACA is heavily qualified with warnings that it is not protection from removal or a change in legal status, and that it may be terminated at any time, specifically for subsequent criminal activity." *Id.* 22:26–23:1. Accordingly, "[t]he automatic termination of Plaintiffs' DACA . . . is well within DACA SOP policy and practice, and demonstrates that there is no change in policy or practice as it applies to the putative class or individuals," *id.* 23:4–8, and therefore any variations merely constitute an "evolving analysis" that the Ninth Circuit has excluded from *Fox Television Stations* analysis. *Sierra Club v. Bureau of Land Mgmt.*, 786 F.3d 1219, 1226 (9th Cir. 2015).

To begin, the Court disagrees that no change in policy has occurred. Arbitrariness can be found not only in a change of official written policy, which may not have occurred here, but also through "a significant showing that analogous cases have been decided differently," which certainly has been made here. *LeMoyne-Owen Coll. v. National Labor Relations Bd.*, 357 F.3d 55, 61 (D.C. Cir. 2004); *see also California Pub. Utils. Comm'n v. Federal Energy Regulatory Comm'n*, 879 F.3d 966, 978 (9th Cir. 2018) (finding that the Federal Energy Regulatory Commission acted arbitrarily when it departed without explanation from a policy employed in previous decisions). However, even accepting Defendants' conclusion leads to another obstacle, one discussed in the Court's prior order: that Defendants' practices are unpersuasive and not entitled to deference. *See Arreola Order* at 12. Defendants cite to *Chemehuevi Indian Tribe v. Brown*, No. ED CV 16-1347-JFW (MRWx), 2017 WL 2971864 (C.D. Cal. Mar. 30, 2017), in which the court determined that an agency's "consistent practice . . . in an area within its expertise is itself entitled to at least traditional deference under *Skidmore v. Swift & Co.* due, in part, to the agency's specialized experience." *Id.* at *8 n. 9 (citation omitted). Defendants also point to fourteen instances when DACA was automatically terminated due to an NTA, as evidence of "consistent practice." *See Thomas Decl.* ¶ 5. The Court, as it concluded previously, "does not find this availing." *Arreola Order* at 12. Even accepting fourteen instances out of thousands of DACA terminations as a "consistent practice," Defendants imply that such a practice is only entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and is therefore due "respect only insofar as [it has] the power to persuade, which is a function of the thoroughness evident in [its] consideration and the validity of [its] reasoning." *Resident Councils of Wash. v. Leavitt*, 500 F.3d 1025, 1037 (9th Cir. 2007) (internal quotation marks omitted). The Court cannot afford this practice much respect given that "it apparently conflicts with the plain language of the DACA SOPs," and would permit the issuance of an NTA to automatically terminate DACA "notwithstanding the fact that the individual continues to be eligible for DACA and that all DACA recipients, by definition, lack lawful immigration status." *Arreola Order* at 12.

In short, either the practice at issue constitutes an arbitrary and impermissible change in agency policy, or it conflicts with applicable regulations in such a way as to be entitled to little

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|

| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. |
|---|---|

deference from this Court. Either way, the Court finds the practice problematic and not immune from APA scrutiny.

In summation, Defendants' opposition does not sway this Court from its previous conclusion that Plaintiffs make "a compelling argument that the decision to terminate [] DACA was arbitrary and capricious and in violation of the APA." *Arreola Order* at 13. Therefore, Plaintiffs have demonstrated a likelihood of success on the merits.[13]

### 2. *Due Process Claim*

Because the Court concludes that Plaintiffs' APA claim satisfies the first requirement of the preliminary injunction inquiry, it need not consider their due process claim at this time.

### ii. *Irreparable Injury*

In granting Plaintiff Arreola's preliminary injunction, the Court concluded that "the deprivation of Plaintiff's earnings and job opportunities caused by the loss of his DACA and [accompanying employment authorization] constitutes irreparable harm." This conclusion also applies to the class as a whole. Plaintiffs have provided evidence that, "like Plaintiffs, 91 percent of DACA recipients were employed, including at top Fortune 500 companies," and that 69 percent of DACA recipients reported that their earnings "helped [them] become financially independent." *PI Mot.* 20:1–5; *see also Eiland Decl.* ¶ 31, Ex. 16 at 2–3. In addition, 94 percent of DACA recipients surveyed stated that, because of DACA, they "pursued educational opportunities that [they] previously could not." *Eiland Decl.* ¶ 31, Ex. 16 at 4. After losing his DACA and employment authorization, Plaintiff Arreola lost his job as a cook at Chateau Marmont and could no longer work as a driver for Uber or Lyft, as he had previously done. *See Declaration of Jesus Alonso Arreola Robles*, Dkt. # 16-3 ("*Arreola Decl.*"), ¶ 40. Plaintiff Gil lost his job with a logistics company, *see Gil Decl.* ¶ 24, and Plaintiff Moreira can no longer work or drive. *See Moreira Decl.* ¶ 20. Defendants have given no reason to doubt that the loss of DACA and employment authorization will have a similarly deleterious effect on the other class members.

---

[13] Defendants also suggest that employment authorization must be treated differently than DACA, arguing that "to reinstate individual EADs [Employment Authorization Documents] would violate DHS regulations that operate independent of, and superior to, DACA policy." *PI Opp.* 3:16–17. However, as the Court discussed in its prior order, it does not agree with Defendants and concludes that automatic revocation of employment authorization in these cases is inconsistent with the applicable regulations. *See Arreola Order* at 11 n. 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

The Ninth Circuit has held that "loss of opportunity to pursue [one's] chosen profession" constitutes irreparable harm. *Enyart v. National Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("We have frequently recognized the severity of depriving a person of the means of livelihood."). Moreover, the Ninth Circuit has specifically found irreparable harm in a similar case involving DACA recipients. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (finding irreparable harm where professional opportunities are limited); *see also id.* ("The irreparable nature of Plaintiffs' injury is heightened by Plaintiffs' young age and fragile socioeconomic position. Setbacks early in their careers are likely to haunt Plaintiffs for the rest of their lives."). Furthermore, each of the named Plaintiffs has demonstrated that his earnings are used to support his family, *see Arreola Decl.* ¶¶ 2–5, 16; *Gil Decl.* ¶¶ 12, 26; *Moreira Decl.* ¶¶ 6, 10, which also suggests irreparable harm. *See Gonzalez Torres*, 2017 WL 4340385, at *6 ("The potential harm caused by Defendants' conduct includes the loss of employment, a core benefit under DACA. The deprivation of employment impacts Plaintiff's ability to financially provide for himself and his family.").

In addition, Plaintiffs note that "losing DACA has rendered many proposed class members' ineligible for driver's licenses, which in the vast majority of states are conditioned on showing lawful presence in the United States." *PI Mot.* 21:19–21; *see also Eiland Decl.* ¶ 32, Ex. 17 at 2. This likely explains why 90 percent of DACA recipients obtained driver's licenses or state identification cards for the first time after receiving DACA. *Eiland Decl.* ¶ 42, Ex. 27 at 4. The Court should also consider the emotional pain to which the named Plaintiffs have attested, *see Arreola Decl.* ¶ 40; *Gil Decl.* ¶ 26; *Moreira Decl.* ¶¶ 20, 22, which is also a cognizable form of irreparable injury. *See Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 709–10 (9th Cir. 1988) (noting that a plaintiff's injury is "emotional and psychological—and immediate" and that "[s]uch an injury cannot be adequately compensated for by a monetary award after trial"); *Colotl*, 261 F. Supp. 3d at 1343–44 ("Plaintiff's emotional distress caused by this insecurity is another factor in determining that Plaintiff will suffer irreparable injury without the entry of a preliminary injunction which compels Defendants to comply with DHS's SOP prior to denying Plaintiff her application to renew her DACA status or terminating that status.").

Defendants do not dispute that Plaintiffs and class members have suffered or will suffer injury as a result of losing DACA, and indeed concede that "the loss of the ability to work is a significant harm." *PI Opp.* 24:15. The Court therefore concludes that the loss of DACA constitutes irreparable harm for Plaintiffs and class members.

    *iii.*     *Balance of Hardships and Public Interest*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
| --- | --- | --- | --- |
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

The remaining two factors—balance of hardships and the public interest—merge when, as here, the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435.

There is undoubtedly a strong interest to be found in the effective and efficient enforcement of the nation's immigration laws. *See, e.g.*, *Reno*, 525 U.S. at 490–91 ("[T]he consequence of delay . . . in deportation proceedings . . . is to permit and prolong a continuing violation of United States law."). However, as the Court previously concluded, this interest does not outweigh the ongoing harm that Plaintiffs and class members have experienced or will experience as a result of losing their DACA grants and employment authorization, especially given that the Court is "simply requiring Defendants to comply with DHS's written procedures as to the adjudication of DACA applications and the termination of DACA status. There can be no harm to Defendants in requiring them to follow their own written guidelines, but the harm to Plaintiff by Defendants' failure to do so is significant." *Colotl*, 261 F. Supp. 3d at 1344. In addition, the Court again notes "the public interest that exists in ensuring that the government complies with its obligations under the law and follows its own procedures." *Arreola Order* at 15; *see also Brewer*, 757 F.3d at 1069 ("[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available.") (alterations in original); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."); *Colotl*, 261 F. Supp. 3d at 1344 ("[T]he public has an interest in government agencies being required to comply with their own written guidelines instead of engaging in arbitrary decision making."). Lastly, Plaintiffs note the significant financial contributions of DACA recipients, both to their families—71 percent of DACA recipients surveyed report that their increased earnings have allowed them to help their families financially, *Eiland Decl.* ¶ 31, Ex. 16 at 3—and to the United States. *See, e.g., id.* ¶ 34, Ex. 19 at 2 (estimating that "ending DACA would result in a loss of $460.3 billion from the national GDP over the next decade" and "would remove an estimated 685,000 workers from the nation's economy"). The public interest would not be served by eliminating class members' abilities to support their families and contribute to the national economy.

In opposition, Defendants argue that class members' injuries are "outweighed by the need for Defendants to pursue removal for individuals like the named Plaintiffs who have misused the trust given to them with the administrative grace of DACA." *PI Opp.* 24:15–17. However, Plaintiffs do not seek a permanent reinstatement of their DACA grants, but only the notice and process that is required by the DACA SOP and other regulations. If indeed any class members have misused the trust given to them, then that can be determined and addressed through proper adjudication. Defendants suggest that "the efficacy of [this] additional process . . . is questionable because DHS and its components have already exercised prosecutorial discretion to end the putative class members' DACA by deciding instead to place them into removal

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

proceedings." *Id.* 24:22–25. Questionable or not, Plaintiffs do not seek a guarantee of continued DACA, but merely the ability to be heard and the privilege of receiving fair and nonarbitrary treatment. As the Court previously concluded, "the public has a strong interest in ensuring that the nation's immigration laws are robustly—*and fairly*—enforced." *Arreola Order* at 15 (emphasis in original).

In short, the Court concludes that the harm to Plaintiffs and class members caused by automatic DACA termination and the consequent risk of employment loss and financial instability outweighs Defendants' interest in immigration enforcement, particularly given the Court's skepticism as to the fairness and legality of Defendants' practices. If Defendants placed their trust in Plaintiffs and class members through the act of deferred action, then Plaintiffs and class members in turn placed their trust in Defendants to only revoke DACA through a fair, nonarbitrary, and consistent process. It is in the public's interest that the expectations of both Defendants *and* Plaintiffs are realized, which requires equitable enforcement of the nation's immigration laws.

*iv. Summation*

Because Plaintiffs have demonstrated a likelihood of success on the merits of their APA claim and the existence of irreparable harm, and because neither a balancing of the hardships nor the public interest favors Defendants, the Court **GRANTS** Plaintiffs' motion for a classwide preliminary injunction.

IV. <u>Conclusion</u>

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for class certification and **GRANTS** Plaintiffs' motion for a classwide preliminary injunction.

A. <u>Class Certification</u>

The Court hereby **CERTIFIES** the following class under Rule 23(b)(2):

All recipients of Deferred Action for Childhood Arrivals ("DACA") who, after January 19, 2017, have had or will have their DACA grant and employment authorization revoked without notice or an opportunity to respond, even though they have not been convicted of a disqualifying criminal offense.

The Court also **APPOINTS** the moving Plaintiffs as Class Representatives and Plaintiffs'

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

counsel from the ACLU Immigrants' Rights Project and the ACLU of Southern California as
Class Counsel.

B.    Scope of Preliminary Injunction

Defendants and their agents, employees, assigns, and all those acting in concert with them
are enjoined as follows:

1.    It is hereby **ORDERED** that Defendants are preliminarily enjoined from terminating
grants of Deferred Action for Childhood Arrivals ("DACA") and related employment
authorization documents ("EADs") of class members absent a fair procedure that complies with
the Department of Homeland Security ("DHS") DACA Standard Operating Procedures as well
as the Memorandum from Janet Napolitano, Exercising Prosecutorial Discretion with Respect to
Individuals Who Came to the United States as Children (June 15, 2012), *available at*
https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretionindividuals-who-
came-to-us-as-children.pdf, and which includes, at a minimum, notice, a reasoned explanation,
and an opportunity to be heard prior to termination.

2.    It is hereby **ORDERED** that Defendants are preliminarily enjoined from terminating
grants of DACA and related EADs based solely on the issuance of a Notice to Appear ("NTA")
that charges the DACA recipient as removable due to his or her presence in the United States
without admission or having overstayed a visa.

3.    It is hereby **ORDERED** that Defendants' decisions after January 19, 2017 to terminate
the DACA grants and EADs of class members, without notice, a reasoned explanation, or an
opportunity to respond prior to termination, are preliminarily enjoined.  Defendants immediately
will restore those individuals' DACA and EADs, subject to their original date of expiration.

4.    It is hereby **ORDERED** that Defendants accept and adjudicate any applications to renew
DACA by individuals whose DACA grant and EAD would have expired on or before March 5,
2018, but were unable to apply for or obtain a renewal as a result of Defendants' unlawful
revocation decision, consistent with the terms of this Order.

C.    Implementation Procedures

5.    Within seven days of this order, the parties will meet and confer to develop a notice that
explains the requirements of this Order and provides class members with contact information for
Class Counsel.  Within 14 days of this Order, Defendants will send the notice to all individuals

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|---|---|---|---|
| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. | | |

whose DACA grant and EAD was revoked after January 19, 2017 without advance issuance of a Notice of Intent to Terminate ("NOIT") and provide copies of those notices to Class Counsel.

Within 14 days of this Order:

6.      Defendants shall identify all DACA recipients whose DACA grant and EAD was revoked after January 19, 2017 without issuance of a NOIT and determine if they have been convicted of a disqualifying criminal offense. If the individual has not been convicted of a disqualifying criminal offense, Defendants immediately will restore the individual's DACA grant and issue the individual a new EAD.

7.      If the individual's restored DACA grant and EAD have expired as of the date of this Order or will expire on or before March 5, 2018, Defendants will permit the individual 60 days from the date of this Order to submit a DACA renewal application to U.S. Citizenship and Immigration Services. If the individual's restored DACA grant and EAD expired on or before the date of this Order, Defendants temporarily will restore that individual's DACA grant and EAD for the 60-day period to submit a renewal application.

8.      Defendants shall provide Class Counsel with a list of all DACA recipients whose DACA grant and EAD was revoked after January 19, 2017 without issuance of a NOIT. That list shall include the following information for each person:

•      Name, Alien Number, Mailing Address, and Phone Number;

•      The date the individual's most recent DACA grant and EAD was granted;

•      The date the individual's most recent DACA grant and EAD was set to expire;

•      The date the individual's most recent DACA grant and EAD was revoked;

•      Whether the individual was found to have a disqualifying criminal conviction and, if so, what conviction(s);

•      If applicable, the date the individual's DACA grant and EAD was restored.

For each such person, Defendants also will provide Class Counsel with copies of the Notices of Action previously terminating the person's DACA grant and EAD, as well as the Notices of Action and EADs for individuals whose DACA grants and EADs are restored pursuant to this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 17-2048 PSG (SHKx) | Date | February 26, 2018 |
|----------|--------------------------|------|-------------------|

| Title | Inland Empire – Immigrant Youth Collective et al. v. Kirstjen Nielsen et al. |
|-------|------------------------------------------------------------------------------|

Order, including those DACA grants and EADs that are temporarily restored pursuant to paragraph 7.

**IT IS SO ORDERED.**