## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, ANTONIO ALARCÓN, ELIANA FERNANDEZ, CARLOS VARGAS, CAROLINA FUNG FENG, M.B.F., by her next friend LUCIA FELIZ, XIMENA ZAMORA, SONIA MOLINA, and JOHANA LARIOS SAINZ, <br><br> On behalf of themselves and all other similarly situated individuals <br><br> and MAKE THE ROAD NEW YORK, <br><br> On behalf of itself, its members, and its clients, <br><br> *Plaintiffs*, <br><br> v. <br><br> CHAD WOLF, *in his official capacity as the purported Acting Secretary of Homeland Security*, et al., <br><br> Defendants. | Case No. 1:16-cv-04756 (NGG)(JO) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> August 28, 2020 |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 4

    A.  The Supreme Court Ruling and the 2020 Wolf Memorandum ........................ 5

    B.  Procedural History ...................................................................................... 7

ARGUMENT ................................................................................................................... 9

    I.    LEGAL STANDARDS GOVERNING MOTIONS FOR CLASS CERTIFICATION .... 10

    II.   PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(A) ................................. 12

        A.    Numerosity: The Proposed Classes Are So Numerous That Joinder Would be
              Impracticable ............................................................................................ 12

        B.    Commonality: The Proposed Classes Present Common Questions of Law and Fact  14

        C.    Typicality: Plaintiffs' Claims Are Typical of Those of Other Class Members .......... 16

        D.    Adequacy: Named Plaintiffs Will Fairly and Adequately Represent the Interests of....
              the Class .................................................................................................. 19

        E.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel ............................ 21

        F.    Ascertainability: The Proposed Classes Are Defined Using Objective Criteria ........ 22

    III.   CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(B)(2) BECAUSE
          THE INDIVIDUAL PLAINTIFFS SEEK FINAL INJUNCTIVE AND
          DECLARATORY RELIEF ............................................................................ 23

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdi v. Duke,*
   323 F.R.D. 131 (W.D.N.Y. 2017)................................................................................. 9

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)................................................................................. 17, 21

*Batalla Vidal v. Nielsen,*
   279 F. Supp. 3d 401 (E.D.N.Y. 2018) ........................................................................ 1

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010)................................................................................. 11

*Casa de Maryland v. U.S. Dep't of Homeland Sec.*,
   924 F.3d 684 (4th Cir. 2019) ................................................................................. 1, 18

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006)................................................................................. 19

*Dep't of Homeland Sec. v. Regents of the Univ. of California,*
   591 U.S. ___, 140 S. Ct. 1891 (2020)................................................................. *passim*

*Dial Corp. v. News Corp.*,
   314 F.R.D. 108 (S.D.N.Y. 2015) ................................................................................. 17

*Floyd v. City of New York*,
   283 F.R.D. 153 (S.D.N.Y. 2012) ................................................................................. 17, 23

*Gardner v. Cont'l Casualty Co.*,
   316 F.R.D. 57 (D. Conn. 2016)................................................................................. 11

*German v. Fed. Home Loan Mortg. Corp.*,
   885 F. Supp. 537 (S.D.N.Y. 1995)................................................................................. 14

*Guadagna v. Zucker,*
   332 F.R.D. 86 (E.D.N.Y. 2019) ................................................................................. 4, 11, 21

*Hill v. City of New York*,
   136 F. Supp. 3d 304 (E.D.N.Y. 2015) ................................................................................. 12

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011)..........................................................19, 21

*In re Payment Card*,
330 F.3d 11 (E.D.N.Y. 2019)..........................................................16

*In re Petrobras*,
*Sec.*, 862 F.3d 250 (2d Cir. 2017)..........................................................22

*Johnson v. Nextel Commc'ns Inc.*,
780 F.3d 128 (2d Cir. 2015)..........................................................11, 14, 15

*L.V.M. v. Lloyd*,
318 F. Supp. 3d 601 (S.D.N.Y. 2018)..........................................................9, 23

*Lewis v. Alert Ambulette Serv. Corp.*,
No. 11-CV-442 (JBW), 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012) .....................................14

*LoCurto v. AT&T Mobility Servs, LLC.*,
No. 13-cv-4303, 2018 WL 4519201 (S.D.N.Y. Sept. 20, 2018) ...........................................17

*Marcus v. AXA Advisors, LLC*,
307 F.R.D. 83 (E.D.N.Y. 2015)..........................................................18

*Marisol A. by Forbes v. Giuliani*,
929 F. Supp. 662 (S.D.N.Y.1996)..........................................................16, 17

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)..........................................................11, 14

*Marriott v. Cnty. of Montgomery*,
227 F.R.D. 159 (N.D.N.Y. 2005)..........................................................17

*Mendez v. MCSS Rest. Corp.*,
No. 16-CV-2746 (NGG) (RLM), 2019 WL 2504613 (E.D.N.Y. June 17, 2019) ...................13

*Nat'l Ass'n for the Advancement of Colored People v. Trump*,
298 F. Supp. 3d 209 (D.D.C. 2018) ..........................................................1

*Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*,
772 F.3d 111 (2d Cir. 2014)..........................................................12, 13

*R.F.M. v. Nielsen*,
365 F. Supp. 3d 350 (S.D.N.Y. 2019)..........................................................9, 23

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
   908 F.3d 476 (9th Cir. 2018) ...................................................................... 1

*Regents of Univ. of California v. U.S. Dep't of Homeland Sec.*,
   279 F. Supp. 3d 1011 (N.D. Cal. 2018) ...................................................... 1

*Samele v. Zucker*,
   324 F. Supp. 3d 313 (E.D.N.Y. 2018) ........................................................ 4

*Scott v. Chipotle Mexican Grill, Inc.*,
   954 F.3d 502 (2d Cir. 2020)....................................................................... 14

*Shabazz v. Morgan Funding Corp.*,
   269 F.R.D. 245 (S.D.N.Y. 2010) .............................................................. 11

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)..................................................................................... 9

*Sharif ex rel. Salahuddin v. N.Y. State Educ. Dep't*,
   127 F.R.D. 84 (S.D.N.Y. 1989) ................................................................ 11

*Sheinberg v. Sorenson*,
   606 F.3d 130 (3d Cir. 2010)....................................................................... 21

*Shelter Realty Corp. v. Allied Maint. Corp.*,
   574 F.2d 656 (2d Cir. 1978)......................................................................... 4

*Shepard v. Rhea*,
   *No.* 12-CV-7220, 2014 WL 5801415 (S.D.N.Y. Nov. 7, 2014) .............. 15

*Spicer v. Pier Sixty LLC*,
   269 F.R.D. 321 (S.D.N.Y. 2010) .............................................................. 17

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ..................................................................... 14

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
   262 F.3d 134 (2d Cir. 2001)....................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................. 14, 16

*Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*,
   331 F.R.D. 279 (S.D.N.Y. 2019) ......................................................... 14, 18

*Zivkovic v. Laura Christy LLC,*
   329 F.R.D. 61 (S.D.N.Y. 2018) ............................................................................ 17

**Federal Statutes**

5 U.S.C. § 706(2)(A) ............................................................................................ 15, 17

5 U.S.C. § 3348(d) ..................................................................................................... 15

**Federal Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Fed. R. Civ. P. 23(a) ........................................................................................... *passim*

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 12

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 14

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 16, 18

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 19, 21

Fed. R. Civ. P. 23(b) ............................................................................................... 9, 11

Fed. R. Civ. P. 23(b)(2) ....................................................................................... *passim*

Fed. R. Civ. P. 23(c)(1)(A) ........................................................................................ 11

Fed. R. Civ. P. 23(c)(5) .............................................................................................. 11

Fed. R. Civ. P. 23(g) ............................................................................................. 21, 24

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ............................................................................ 22

**Other Authorities**

1 Newberg on Class Actions § 3:80 (5th ed.) .......................................................... 21

3 Newberg on Class Actions § 7:30 (5th ed.) .......................................................... 12

## INTRODUCTION

On June 18, 2020, after nearly three years of litigation, uncertainty, upheaval, and stress, the Supreme Court issued a ruling: The Trump administration's 2017 attempted termination of Deferred Action for Childhood Arrivals ("DACA") was unlawful.  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. ___, 140 S. Ct. 1891 (2020) ("*Regents*").  In New York, Martín Jonathan Batalla Vidal, Antonio Alarcón, Eliana Fernandez, Carolina Fung Feng, Carlos Vargas, Johana Larios Sainz, Sonia Molina, Ximena Zamora, M.B.F., (collectively the "Individual Plaintiffs") and more than a million young people[1] were able to hope that their dreams—for a steady paycheck, to drive a car, to pursue higher education, to live with their families without fear of separation, and more—were once again within reach.  But Defendants had other plans.

Unswayed by the Supreme Court, two circuit courts, and three district courts,[2] including this court, that have ruled against them, administration officials publicly questioned the legality of the Supreme Court decision and intimated that they did not intend to comply.[3]  But then the

---

[1] *See* Ex. A, Rebert Decl., Attach. 2, Nicole Prchal Svajlenka, Tom Jawetz, and Philip E. Wolgin, *The Trump Administration Must Immediately Resume Processing New DACA Applications*, CTR. FOR AM. PROGRESS (July 13, 2020), https://www.americanprogress.org/issues/immigration/news/2020/07/13/487514/trump-administration-must-immediately-resume-processing-new-daca-applications/.

[2] *Regents*,140 S. Ct. at 1916; *Casa de Maryland v. U.S. Dep't of Homeland Sec*., 924 F.3d 684, 704-705 (4th Cir. 2019); *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 510 (9th Cir. 2018);  *Nat'l Ass'n for the Advancement of Colored People v. Trump*, 298 F. Supp. 3d 209, 238 (D.D.C. 2018), *adhered to on denial of reconsideration,* 315 F. Supp. 3d 457 (D.D.C. 2018); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 420-33 (E.D.N.Y. 2018); *Regents of Univ. of California v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1037-1046 (N.D. Cal. 2018).

[3] *See, e.g., DHS Statement on Supreme Court Decision on DACA*, DHS (last published June 18, 2020), https://www.uscis.gov/news/news-releases/uscis-statement-on-supreme-courts-daca-decision (quoting Defendant Wolf, "[t]he DACA program was created out of thin air and implemented illegally . . . .This ruling usurps the clear authority of the Executive Branch to end unlawful programs."); *USCIS Statement on Supreme Court's DACA Decision*, USCIS (last

Department of Homeland Security ("DHS") fell silent about DACA.  Even as the Duke Memorandum was formally vacated and more than 300,000 people became eligible to submit first-time applications[4] for DACA, including 55,000 young people who had aged into eligibility over the previous three years of litigation, the agency failed to update their website to acknowledge *Regents* or provide any guidance.  *See* Rebert Decl., Attach. 2; Fourth Am. Compl. ("FAC"), ECF No. 308, ¶¶ 94-97.  DHS then failed to adjudicate applications in accordance with the Napolitano Memorandum, privately placing them in a "bucket," *see* ECF No. 302.1, at 19, 22 (Hr'g Tr., *Casa de Maryland v. U.S. Dep't of Homeland Sec.* (D. Md. July 24, 2020)) ("*Casa* Hearing"), and then abruptly issued a new memorandum on July 28, 2020 vastly curtailing crucial components of DACA. *See* Ex. A, Rebert Decl., Attach. 4., Memorandum from Acting Secretary Chad Wolf, Reconsideration of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" (July 28, 2020) ("Wolf Memorandum"); FAC, ECF No. 308, ¶¶ 101-109.

On this motion, the Individual Plaintiffs ask the Court to certify:

A "DACA Class" (for the claims challenging the appointment of Defendant Wolf and the legality of the 2020 Wolf Memorandum and its implementing guidance, including the Edlow Memorandum): All persons who are or will be *prima facie* eligible for deferred action under the terms of the 2012 Napolitano Memorandum; and

---

updated June 19, 2020), https://www.uscis.gov/news/news-releases/uscis-statement-on-supreme-courts-daca-decision (quoting Joseph Edlow, "[t]oday's court opinion has no basis in law and merely delays the President's lawful ability to end the illegal Deferred Action for Childhood Arrivals amnesty program").

[4] "First-time" and "initial" applications are used interchangeably throughout the brief to refer to applications made by someone who has never before had DACA.

A "<u>Pending Applications Subclass</u>" (for the claims challenging the application of the 2020 Wolf Memorandum and its implementing guidance, including the Edlow Memorandum, to certain DACA applications):   All persons who had an application for deferred action through DACA, whether an first-time or renewal, pending at U.S. Citizenship and Immigration Services ("USCIS") on any date between June 30, 2020, and July 28, 2020, that have not been or will not be adjudicated in accordance with the 2012 Napolitano Memorandum.

*Excluded* from the DACA Class and the Pending Applications Subclass are the individuals who are *prima facie* eligible for deferred action through DACA and who bring a federal lawsuit challenging the Wolf Memorandum.[5]

---

[5] So as not to interfere with the claims of individuals and the district courts adjudicating their claims, Plaintiffs propose to exclude individuals who are *prima facie* eligible for DACA and bring their own federal lawsuits challenging the Wolf Memo, or in the alternative, to allow these individuals to op-out of any class certified by this Court.

At the time of filing this motion, Plaintiffs are aware of the following lawsuits where plaintiffs have challenged the dismantling of DACA, some of which include individual plaintiffs:

- *New York v. Trump*, No. 17-cv-5228 (E.D.N.Y. filed Sept. 6, 2017) (originally filed as a challenge to the Duke Memorandum, plaintiffs' have been granted leave to file an amended complaint challenging the Wolf Memorandum);
- *Casa de Maryland v. U.S. Dep't of Homeland Sec.*, No. 17-cv-2942-PWG (D.Md. filed Oct. 5, 2017) (originally filed as a challenge to the Duke Memorandum, plaintiffs are currently pursuing a motion for contempt, or in the alternative, to compel compliance with the Fourth Circuit's mandate vacating the Duke Memorandum and to restore DACA to its pre-September 5, 2017 status) (ECF No. 115.1);
- *Nat'l Ass'n for the Advancement of Colored People v. Trump* No. 17-cv-1907-JDB (D.D.C. filed Sept. 18, 2017) (district court order remanding the 2017 Duke Memo to DHS was affirmed by the Supreme Court and the parties will file a joint status report by Sept. 16, 2020); *Princeton v. United States.*, No. 17-cv-2325-JDB (D.D.C. filed Nov. 3, 2017) (same);
- *Regents of Univ. of California v. U.S. Dep't of Homeland Sec.*, No. 17-cv-5211-WHA (N.D. Cal. filed Sept. 8, 2017) (originally filed as a challenge to the Duke Memorandum, plaintiffs submitted a letter on Aug. 18, 2020 seeking a status conference to discuss next steps in the litigation and note that they intend to bring challenges against the Wolf Memo) (Dkt. No. 304); *State of California v. DHS*, No. 17-cv-5235-WHA (N.D. Cal. filed Sept. 11, 2017) (same); *City of San Jose v. Trump*, No. 17-cv-5329-WHA (N.D. Cal. filed Sept.

*See* FAC, ECF No. 308, ¶¶ 176-91.

The proposed classes satisfy the class action requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2).

## BACKGROUND

The Individual Plaintiffs incorporate by reference the summary of facts and proceedings as set forth in their motion for partial summary judgment, filed simultaneously with the present motion.  FAC, ECF No. 308; Mot. for Partial Sum. J. ("MSJ"), ECF No. 310. In this section, Plaintiffs highlight only background relevant to the instant motion.  Except where otherwise noted, the facts set forth are alleged in the Fourth Amended Complaint.[6]

---

14, 2017) (same); *Garcia v. U.S.*, No. 17-cv-5380-WHA (N.D. Cal. filed Sept. 18, 2017) (same); *County of Santa Clara v. Trump*, No. 17-cv-5813-WHA (N.D. Cal. filed Oct. 10, 2017) (same);

- *Perez Lazarte v. Wolf*, 20-cv-894 (E.D. Va. filed Aug. 6, 2020) (challenging the Wolf Memorandum's retroactive change to shorten DACA renewal periods from two years to one year for plaintiffs who had submitted DACA renewal applications prior to the issuance of the Wolf Memorandum); and

- *FIEL Houston v. Wolf*, 20-cv-2515 (S.D. Tex. filed July 17, 2020) (seeking to compel USCIS to receive initial DACA applications pursuant to *Regents*). Plaintiffs filed a class certification motion on July 31, 2020 and seek to certify a class of:

> [I]ndividuals who have been denied the ability to file their DACA Applications by USCIS. Excluded from the Class are Defendants named herein and the Agencies for which they work. Likewise excluded from the class is any judge or judicial officer presiding over this matter and any members of their family and judicial staff.

Motion for Class Certification, at 4, *id.*, ECF 12. The schedule set by the court directs the parties to meet and confer on a schedule for briefing the plaintiffs' motion for class certification 14 days after the court has ruled on both the plaintiffs' motion for preliminary injunction and defendants' motion to dismiss.

[6] "[W]hen deciding a motion to certify a class, the allegations in the complaint are accepted as true." *Samele v. Zucker*, 324 F. Supp. 3d 313, 333 (E.D.N.Y. 2018) (citing *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978)).  A Court "may examine not only the pleadings, but also the evidentiary record, including any affidavits and results of discovery" when conducting the analysis to determine "whether the relevant requirements of Rule 23 have been met."  *Guadagna v. Zucker*, 332 F.R.D. 86, 91 (E.D.N.Y. 2019).

**A. The Supreme Court Ruling and the 2020 Wolf Memorandum**

On June 18, 2020, the Supreme Court rendered its decision that Defendants' 2017 Duke Memorandum—which had terminated the program for over a million DACA-eligible youth—was unlawful. *Regents*, 140 S. Ct. at 1916; Rebert Decl., Attach. 2. The Supreme Court concluded that Defendants' Duke Memorandum rescinding DACA violated the Administrative Procedure Act ("APA") because it did not provide a reasoned explanation for the policy it announced. *Id*.

The President and top DHS officials immediately and very publicly questioned the legality of the Supreme Court's decision and suggested that they would terminate DACA again. *See supra*, at 1, n.3, FAC, ECF No. 308, ¶ 93. The Supreme Court's ruling and the Fourth Circuit's mandate in a separate case formally vacated the 2017 Duke Memorandum on June 30, 2020. FAC, ECF No. 308, ¶¶ 95-96. Rather than clarifying how the agency would return to the *status quo ante* by implementing the Napolitano Memorandum, USCIS and DHS remained silent leaving a million young people without guidance. FAC, ECF No. 308, ¶¶ 97. The USCIS DACA webpage remained unchanged, continuing to state that it would not accept initial applications for DACA or advance parole, and USCIS issued no guidance on how it planned to comply with the Supreme Court's ruling. *Id*. As a result, many legal services providers cautioned eligible first-time applicants to wait to file. Ex. M, Valdes Decl., ¶ 14. Nevertheless, DACA recipients, including 166 Make the Road New York ("MRNY") clients, continued submitting applications to renew their deferred action through DACA. Valdes Decl. ¶ 11. First-time applicants, including young people who were eligible but unable to apply before the 2017 Duke Memorandum, such as Plaintiff Johana Larios Sainz, Ex. I, Larios Sainz Decl. ¶ 3, or people like Plaintiff M.B.F., Ex. L, M.B.F. Decl. ¶¶ 2-3, who had become eligible for DACA days after the Duke Memorandum was issued, submitted initial applications for DACA—and then waited. FAC, ECF No. 308, ¶ 97.

Many first-time applicants did not know what had become of their application or even whether USCIS had formally received it, since USCIS stopped issuing routine receipts. *See Casa* Hearing, ECF No. 302.1, at 37-38; FAC, ECF No. 308, ¶ 97. On June 24, 2020, in a status conference in the District of Maryland, the government disclosed that USCIS was holding first-time and most advanced parole applications received—neither rejecting them nor accepting them nor formally acknowledging their receipt—by placing them into a "bucket pending the policy consideration." *See Casa* Hearing, ECF No. 302.1, at 19, 22.

On July 28, 2020, Defendant Wolf issued a memorandum altering and vastly curtailing DACA. Rebert Decl., Attach. 4; FAC, ECF No. 308, ¶¶ 101-110. Defendant Wolf made three critical changes: He directed DHS personnel to: (1) "[r]eject all initial DACA requests and associated applications;" (2) limit the deferred action period granted on any DACA renewal requests and associated Employment Authorization Documents to one year rather than two years; and (3) "reject all pending and future applications for advance parole absent exceptional circumstances." *Id.* The changes were effective immediately and retroactively to apply to first-time DACA requests received after the issuance of the memorandum and to applications already pending before the agency. FAC, ECF No. 308, ¶¶ 102.

On August 24, 2020, nearly a month after the publication of the Wolf Memorandum, USCIS published a memorandum from purported USCIS Deputy Director for Policy Joseph Edlow setting forth additional guidance to USCIS personnel about implementing the Wolf Memorandum. Ex. A, Rebert Decl., Attach. 5, Memorandum from Joseph Edlow, Implementing Acting Secretary Wolf's July 28 Memorandum (Aug, 21, 2020) ("Edlow Memorandum"). The Edlow Memorandum made several key changes to DACA, including: (1) USCIS will generally reject any DACA renewal request received by USCIS more than 150 days before the expiration of the DACA

recipient's current DACA validity period; (2) USCIS will reject and return fees for all advance parole applications received since July 24, 2020; (3) USCIS provided 4 examples of "exceptional circumstances" where advance parole may be granted, including"[t]ravel to support the national security interests of the United States including U.S. military interests" and "[t]ravel in furtherance of U.S. federal law enforcement interests."  Rebert Decl., Attach. 5; FAC, ECF No. 308, ¶ 112.

The Wolf Memorandum's changes to DACA have harmed each of the Individual Plaintiffs. For example, some of the Individual Plaintiffs have experienced increased anxiety and stress-related ailments, Ex. F, Fernandez Decl. ¶4; Ex. G., Fung Feng Decl. ¶4; Ex. J, Molina Decl. ¶¶ 8; other describe worries and experiences being unable to obtain decent employment without DACA, M.B.F. Decl. ¶¶ 13, 19; Larios Sainz Decl. ¶¶ 10, 19; Molina Decl. ¶ 4; Ex. H, Vargas Decl. ¶ 8; Ex. K, Zamora Decl. ¶¶ 12, 15, 19; impacting their ability to pursue their other dreams such as pursing additional education. Fernandez Decl. ¶ 6; Larios Sainz Decl. ¶ 20;  M.B.F. Decl. ¶ 19.

**B. Procedural History**

On September 5, 2017, the same day that DHS issued the Duke Memorandum rescinding the DACA program as outlined in the Napolitano Memorandum, many of the Plaintiffs here sought leave to amend their complaint to challenge the memorandum and Defendants' termination of DACA, and to include class allegations. Pre-Mot. Conference Letter, ECF No. 46.  Plaintiffs filed their second amended complaint on September 19, 2017, ECF No. 60, to challenge the Duke Memorandum and a third amended complaint on December 11, 2017, ECF No. 113, to include due process claims arising after the second amendment.  Plaintiffs moved for a preliminary injunction ECF No. 123, and for class certification, ECF No. 124 on December 15, 2017.  On February 13, 2018, this Court issued a nationwide preliminary injunction, directing the government to "maintain the DACA program on the same terms and conditions that existed prior to the

promulgation of the DACA Rescission Memo," except for individuals who had never before had DACA or with respect to advance parole.  ECF No. 255, at 53.  Because a nationwide preliminary injunction was ordered, the Court denied Plaintiffs' motion for class certification as moot.  *Id.*, at 7, 55.  On February 20, 2018, Defendants filed a notice of appeal to the Second Circuit on the preliminary injunction, ECF No. 257, and sought certiorari before judgment in the Supreme Court. FAC, ECF No. 308, ¶ 90.

The Supreme Court granted certiorari and heard oral argument on the issues raised in this case and those arising out of the related cases from the Northern District of California and the District of the District of Columbia. *Id.*  On June 18, 2020, the Supreme Court issued its opinion. *Id.* at ¶ 91. The Supreme Court held that Defendants' termination of DACA was arbitrary and capricious, in violation of the APA, because DHS failed to offer sufficient reasoning for rescinding DACA and did not adequately consider the consequences of rescission, including assessment of the reliance interests at stake.  *Regents*, 140 S. Ct. at 1916. The Court affirmed the judgment in *NAACP* remanding the Duke Memorandum to DHS and consequently vacated the preliminary injunctions issued by this Court and the district court in the Northern District of California.  *Id*.

On July 21, 2020, Plaintiffs filed a letter with the Court requesting a status conference to discuss next steps in this litigation anticipation of the issuance of the Second Circuit mandate, ECF No. 295, followed by an additional letter on August 6 outlining Plaintiffs' intention to seek leave to amend their complaint. ECF No. 302.  Defendant Wolf issued his memorandum on July 28, 2018.  ECF No. 297.1.  At a status conference on August 13, 2020, the Court granted Plaintiffs' request to file an amended complaint. Minute Entry of Garaufis, J., Aug. 13, 2020.  At a hearing on August 20, 2020, the Court granted Plaintiffs' request to move for class certification, and set a schedule for the filing of the amended complaint, administrative record, motion for partial

summary judgment on the Federal Vacancies Reform Act ("FVRA") and appointments claims, and motion for class certification.  ECF No. 307.  On August 21, 2020 Defendant Edlow issued his memorandum.  Rebert Decl., Attach. 5.

## ARGUMENT

Plaintiffs' proposed classes meet the prerequisites of Federal Rule of Civil Procedure 23(a) and the requirements of Rule 23(b)(2), and should be certified.  Where the prerequisites of Rule 23(a) (i.e. numerosity, commonality, typicality, and adequacy of representation) are satisfied and the suit falls into one of the three categories described by Rule 23(b), a plaintiff has a "categorical" right to pursue their claim as a class action.  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010).  Defendants' drastic curtailment of DACA by immediately and retroactively barring all first-time applicants, halving the duration of DACA grants from two years to one, and rejecting all applications of advanced parole absent undefined "exceptional circumstances," has directly harmed Plaintiffs and the class members they seek to represent.  It is a paradigmatic case for class certification.  Courts routinely certify Rule 23 classes in suits challenging unlawful agency actions.  *See, e.g., L.V.M. v. Lloyd,* 318 F. Supp. 3d 601 (S.D.N.Y. 2018) (certifying class to challenge agency's changed policy slowing the release of immigrant unaccompanied minors to their families or foster care);  *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 367-370 (S.D.N.Y. 2019) (certifying class to challenge DHS policy changes to Special Immigration Juvenile status); *Abdi v. Duke*, 323 F.R.D. 131, 140 (W.D.N.Y. 2017) (certifying class of detainees held at New York's largest immigration detention facility for challenge to ICE parole and bond procedures), *sub class de-certified sub. nom. Abdi v. McAleenan*, 405 F. Supp. 3d 467, 477 (W.D.N.Y. 2019).

Plaintiffs seek to certify a class and subclass comprised of:

A "DACA Class" (for the claims challenging the appointment of Defendant Wolf and the legality of the 2020 Wolf Memorandum and its implementing guidance, including the Edlow Memorandum): All persons who are or will be *prima facie* eligible for deferred action under the terms of the 2012 Napolitano Memorandum; and

A "Pending Applications Subclass" (for the claims challenging the application of the 2020 Wolf Memorandum and its implementing guidance, including the Edlow Memorandum, to certain DACA applications):   All persons who had an application for deferred action through DACA, whether first-time or renewal, pending at USCIS on any date between June 30, 2020, and July 28, 2020, that have not been or will not be adjudicated in accordance with the 2012 Napolitano Memorandum.

*Excluded* from the DACA Class and the Pending Applications Subclass are the individuals who are *prima facie* eligible for deferred action through DACA and who bring a federal lawsuit challenging the Wolf Memorandum.[7]

The Individual Plaintiffs request the appointment of each of the Individual Plaintiffs as class representatives for the DACA Class and of Plaintiffs Sonia Molina, Johana Larios Sainz, and M.B.F. as class representatives for the Pending Applications Subclass.   The DACA Class Representatives seek declaratory and injunctive relief to compel Defendants to set aside the Wolf Memorandum and the Edlow Memorandum. The Pending Applications Subclass Representatives seek declaratory and injunctive relief to compel Defendants to process their DACA-related applications in accordance with the 2012 Napolitano Memorandum and related guidance. These proposed classes meet the requirements of Rule 23(a) and 23(b)(2).

## I.    LEGAL STANDARDS GOVERNING MOTIONS FOR CLASS CERTIFICATION

---

[7] *See supra*, at 3, n.5.

Rule 23 dictates that the decision to certify a class must come "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). For certification, a class must satisfy each of the four prerequisites outlined by Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see e.g., Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Plaintiffs must also satisfy the requirement of one of the three types of class actions under Rule 23(b). *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010*)*. Plaintiffs are seeking certification under Rule 23(b)(2), which is proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Brown*, 609 F.3d at 476.

When determining whether to certify a class, Rule 23 should be given "liberal rather than restrictive construction and courts are to adopt a standard of flexibility." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (quoting *Sharif ex rel. Salahuddin v. N.Y. State Educ. Dep't*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989)). Close calls should be resolved in favor of certification. *See Johnson*, 780 F.3d at 137 ("We accord greater deference to district court decisions granting class certification than to decisions declining to certify a class"); *Guadagna v. Zucker*, 332 F.R.D. 86, 91 (E.D.N.Y. 2019) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'") (alteration in original) (quoting *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 249 (S.D.N.Y. 2010)).

A class may be divided into subclasses "[w]hen appropriate" and each is treated as a class under Rule 23. Fed. R. Civ. P. 23(c)(5); *see also Est. of Gardner v. Cont'l Casualty Co.*, 316 F.R.D. 57, 68 (D. Conn. 2016) (requiring the court to ensure that each subclass satisfied the class

action requirements where plaintiffs proposed classes and subclasses). Subclassing "may be undertaken at any time [and] Courts will generally consider subclassing when the need arises." *See* 3 Newberg on Class Actions § 7:30 (5th ed.) (internal quotation marks omitted); *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) (courts may "alter or modify the class, create subclasses, and decertify the class whenever warranted.").

## II. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(A)

### A. Numerosity: The Proposed Classes Are So Numerous That Joinder Would be Impracticable

Plaintiffs' proposed classes satisfies the numerosity requirement. Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is "no magic number," *Hill v. City of New York*, 136 F. Supp. 3d 304, 353 (E.D.N.Y. 2015), *order amended and supplemented*, No. 13-CV-6147 (PKC)(JO), 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019), in the Second Circuit, "[n]umerosity is presumed for classes larger than forty members." *Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014), *as amended* (Nov. 12, 2014).

Both classes include more than 40 members each and easily satisfy the numerosity requirement. With respect to the DACA Class, as of June 30, 2020, USCIS reported that there were 645,610 current DACA recipients. *See* Rebert Decl., Attach. 1, at 12, *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, No. 17-cv-5211 (N.D. Cal. July 1, 2020), ECF No. 299-2. An estimated 1.1 million undocumented immigrants are *prima facie* eligible for DACA, including approximately 825,000 immigrants who have held DACA and an estimated 300,000 individuals who are eligible to submit initial requests for DACA. S*ee* Rebert Decl., Attach. 2. Since the Trump administration terminated DACA in 2017, an estimated 55,000 additional young people have aged into eligibility. *See id.*; *see, e.g.,* M.B.F. Decl, ¶2.

Although Plaintiffs do not know the total number of class members in the Pending Applications Subclass who had DACA applications pending with USCIS between June 30, 2020 and July 28, 2020, and which have not been or will not be adjudicated under the 2012 Napolitano Memorandum, available data makes clear that the subclass satisfies numerosity requirements and that the subclass is far too numerous for joinder to be practicable.  USCIS Quarterly Reports submitted to the district court in the *Regents* case show that an average of approximately 32,000 renewal applications were pending at any given time between March 2018 and June 2020.  *See* Rebert Decl., Attach. 3, Quarterly Summary Reports, *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 17-CV-5211-WHA (N.D. Cal.), ECF Nos. 272.-2, 277-2, 279-2, 281-2, 285-2, 290-2, 292-2, 294-2, 297-2; Rebert Decl., Attach. 1.  Additionally, Plaintiff Make the Road New York's legal department on its own had 166 clients, including Plaintiff Molina, with renewal applications pending, and one first-time DACA application for Plaintiff Johanna Larios Sainz, when Defendant Wolf issued the 2020 Wolf Memorandum on July 28.[8]  *See* Valdes Decl. 11; Molina Decl. ¶ 2; Larios Sainz Decl. ¶ 3.  Others across the country, such as M.B.F., working with private attorneys or other legal service providers also submitted first-time DACA applications. *See* Decl. M.B.F. ¶3.  Plaintiffs therefore easily satisfy the numerosity requirement for class certification.  *See Pennsylvania Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 120 (presuming numerosity is satisfied "for classes larger than forty members"); *Mendez v. MCSS Rest. Corp.*, No. 16-CV-2746 (NGG) (RLM), 2019 WL 2504613, at *7 (E.D.N.Y. June 17, 2019) (Garaufis, J.) ("The precise number of class members need not be established, 'so long as [P]laintiffs reasonably

---

[8] Prior to Defendants issuing the Wolf Memorandum, Plaintiff MRNY also submitted two initial applications on behalf of MRNY members, which were sent by USPS Priority Mail before July 28 but were not received by USCIS until July 29 or 30, after the memo's issuance. Valdes Decl. ¶ 17.

estimate the number to be substantial.'") (quoting *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442 (JBW), 2012 WL 170049, at *9 (E.D.N.Y. Jan. 19, 2012)).

### B. Commonality: The Proposed Classes Present Common Questions of Law and Fact

The commonality prong of Rule 23 requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Commonality is satisfied where the question is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. "[W]hat matters. . . is not the raising of common 'questions' …but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 521, n.9 (2d Cir. 2020) (quoting *Wal-Mart*, 564 U.S. at 350). "The claims for relief need not be identical" nor must the facts. *See Johnson*, 780 F.3d at 137 ("[R]ather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members"); *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 553-554 (S.D.N.Y. 1995) (certifying a class even though members suffered different levels of injury from lead exposure, since there were common questions of law related to whether defendants abided with law's requirement of providing "decent, safe, and sanitary housing"). Rather, "'[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Johnson*, 780 F.3d at 137 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)); *see also Marisol A.*, 126 F.3d at 377 (affirming district court class certification where "plaintiffs allege[d] that their injuries derive from a unitary course of conduct by a single system"). Commonality is assumed "[w]hen the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief." *Westchester Indep. Living Ctr., Inc. v. State Univ. of*

*N.Y., Purchase Coll.*, 331 F.R.D. 279, 292 (S.D.N.Y. 2019) (alteration in original) (quoting *Shepard v. Rhea, No*. 12-CV-7220, 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014)).

The proposed classes present common questions of fact and of law, resolution of which will not require individualized determinations based on any class member's circumstances, including:

For the DACA Class:

(a) Whether Defendant Wolf is serving unlawfully as the Acting Secretary of Homeland Security in violation of the order of succession set out by the Federal Vacancies Reform Act and the Homeland Security Act. FAC, ECF No. 308 ¶ 183(1);

(b) Whether Defendant Wolf lacked legal authority to issue the Wolf Memorandum, and therefore it "must have no force or effect," 5 U.S.C. § 3348(d). *Id.* at 184(2);

(c) Whether Kevin McAleenan assuming the Role of Acting Secretary of Department of Homeland Security was unlawful, such that any changes to orders of succession that he made were unlawful. *Id.* at ¶ 183(3)

(d) Whether the Edlow Memorandum is invalid and must be set aside, *Id.* at ¶ 183(4);

(e) Whether the Wolf Memorandum is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A). *Id.* at ¶ 183(5).

For the Pending Applications Subclass:

(f) Whether class members are entitled to have their DACA applications, which were pending with USCIS on any day between June 30 and July 28, 2020, adjudicated in accordance with the Napolitano Memorandum. *Id.* at ¶ 184(1);

(g) Whether class members' due process rights were violated by USCIS's failure to adjudicate their requests for deferred action in accordance with the terms of the Napolitano Memo. *Id.* at ¶ 184(2);

(h) Whether Defendants violated the due process rights of class members by applying the terms of the Wolf Memorandum and the Edlow Memorandum without providing adequate notice. *Id.* at ¶ 184(3);

The resolution of these questions will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). Thus, because all proposed members of each of the classes are aggrieved by Defendant Wolf's unlawful tenure as Acting Secretary of DHS and Defendants' arbitrary and capricious issuance and implementation of the Wolf and Edlow Memoranda, and the Pending Applications Subclass members were denied the opportunity to have their applications considered under the terms of the 2012 Napolitano Memorandum, the commonality requirement is satisfied.

### C.  Typicality: Plaintiffs' Claims Are Typical of Those of Other Class Members

Plaintiffs also satisfy the typicality requirement as "the claims or defenses of the representative parties" are "typical of the claims or defenses of the class" members. Fed. R. Civ. P. 23(a)(3). The typicality requirement is met where the claims of class representatives "arise from the same practice or course of conduct that gives rise to the claims of the proposed class members," *Marisol A. by Forbes v. Giuliani,* 929 F. Supp. 662, 691 (S.D.N.Y.1996), *aff'd,* 126 F.3d 372 (2d Cir. 1997), and where "each class member makes similar legal arguments to prove the defendant's liability." *In re Payment Card*, 330 F.3d 11, 53 (E.D.N.Y. 2019). The "requirement is not highly

demanding," as the claims of named representatives need not be identical with the claims of each class member. *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), *amended*, No. 13-CV-6802, 2016 WL 690895 (S.D.N.Y. Feb. 9, 2016); *see also Floyd v. City of New York*, 283 F.R.D. 153, 176 (S.D.N.Y. 2012) (explaining that the claims of representatives need not be identical), *amended*, No. 13-CV-6802, 2016 WL 690895 (S.D.N.Y. Feb. 9, 2016); *Marriott v. Cnty. of Montgomery,* 227 F.R.D. 159, 172 (N.D.N.Y. 2005) (recognizing that the claims of the named plaintiffs do not need to be identical with those of each class member). All that is required is that the claims "share the same essential characteristics." *Dial Corp.*, at 113.

In the Second Circuit, the typicality and commonality analysis often merge, and courts will find Plaintiffs to have satisfied both requirements where their "claims arise from the same unlawful practices or legal theories." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 70–71 (S.D.N.Y. 2018); *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010); *LoCurto v. AT&T Mobility Servs., LLC.*, No. 13-cv-4303, 2018 WL 4519201, at *14 (S.D.N.Y. Sept. 20, 2018); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

The claims asserted by the proposed classes satisfy typicality. With respect to the DACA Class, each of the Individual Plaintiffs brings claims asserting that the Wolf Memorandum—issued by Defendant Wolf while unlawfully serving as Acting Director of Department of Homeland Security in violation of the Federal Vacancies Reform Act and the Homeland Security Act—was unlawfully issued, which is the same unlawful conduct that "gives rise to the claims of the proposed class members." *Marisol A. by Forbes,* 929 F. Supp. at 691. Similarly, each of the Individual Plaintiffs allege that the Edlow Memo is invalid as it derives from the Wolf Memo and that the 2020 Wolf Memo is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). FAC, ECF No. 308, ¶¶ 215-16.

The Pending Applications Subclass's claims similarly arise from the same unlawful conduct.  The Individual Plaintiffs challenge of the review or rejection of their applications under the 2020 Wolf and Edlow Memos are typical of those in the class.  Each member of the Pending Applications Subclass, whether they requested DACA for the first time or a DACA renewal, submitted a DACA application that they contend should have been reviewed under the terms of the 2012 Napolitano Memo. Initial requests pending between the issuance of the Fourth Circuit mandate in *Casa de Maryland* vacating the 2017 DACA Memo on June 30, 2020, and the issuance of the 2020 Wolf Memo on July 28, 2020, should have been considered under the 2012 Napolitano Memo because that was the only DACA Memo lawfully in effect.  DACA recipients with renewal requests pending on July 28, 2020 likewise should have been considered under the 2012 Napolitano Memo, but were retroactively and unlawfully limited by Defendants' issuance Wolf Memo, and later the Edlow Memo.  Defendants deprived Plaintiffs Johana Larios Sainz, Sonia Molina, and M.B.F., and putative Pending Applications Subclass members of their procedural due process right to consideration of their request for deferred action under the terms of the 2012 Napolitano Memo.

For both classes, Plaintiffs' claims share the "essential characteristics" of the putative class as a whole, and thus satisfy the typicality requirements of Rule 23(a). *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 100 (E.D.N.Y. 2015).  Additionally, where a class seeks injunctive and declaratory relief, as the proposed classes do here, "[t]ypicality may be assumed." *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 293 (S.D.N.Y. 2019).  Consequently, Plaintiffs satisfy the typicality requirements of Rule 23(a)(3).

18

### D.  Adequacy: Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  Speculative and hypothetical conflicts do not suffice to defeat class certification; rather, a conflict must be fundamental.  *Id.* at 259. (J. Straub, concurring).

The Individual Plaintiffs are highly motivated to pursue this action vigorously to protect their interests and those of other class members, and have no interests in conflict, let alone a fundamental one, with the classes they seek to represent.  Plaintiffs Batalla Vidal, Alarcón, Fernandez, Fung Feng, and Vargas have been involved in this case since 2017 or longer, and have been energetic and engaged in the case.  Ex. D, Batalla Vidal Decl. ¶¶ 6, 8; Ex. E, Alarcón Decl., ¶¶ 9, 12; Fernandez Decl. ¶¶ 9, 12; Fung Feng Decl. ¶¶ 5, 8; Vargas Decl., ¶¶ 5, 9. Some of these plaintiffs have long understood the impact the case could have on other DACA recipients, and have thought of themselves as representing a broader class of DACA recipients, even without the formal designation.  Batalla Vidal Decl. ¶ 11; Alarcón Decl. ¶ 12; Fung Feng Decl. ¶ 8; Vargas Decl. ¶ 10.  Plaintiffs Batalla Vidal, Alarcón, Fernandez, Fung Feng, and Vargas have participated actively by regularly attending court proceedings, whether in this court, the Second Circuit, or the Supreme Court, in-person and via telephone, and taken an active role in shaping the litigation.  All of the Individual Plaintiffs, including those who joined the lawsuit upon the filing of the Fourth Amended Complaint, are also highly motivated to pursue this action vigorously given the

19

numerous harms that they and other DACA recipients face.  *See* Larios Sainz Decl. ¶¶ 27-29; Molina Decl. ¶¶ 18-20; M.B.F. Decl. ¶¶ 33-34.

Due to Defendants' reckless and unlawful changes to DACA, Plaintiffs face compounding hardships.  Undertaking basic goals that so many of their peers take for granted – walking down the street without fear, pursuing an education, being able to access a decent job—are often out of reach for those without DACA and are tenuous for those suddenly facing yearly renewals following on the heels of three years of uncertainty from the Trump administration's prior attempts to end DACA.  Plaintiffs without DACA describe a sense of hopelessness; those with DACA expressed fear and uncertainty about having to renew every year.

For example, Plaintiffs report increased anxiety and stress-related ailments. Fernandez Decl. ¶ 4; Fung Feng Decl.  ¶4; Molina Decl. ¶¶ 7-8, 20.  M.B.F., who Defendants have locked out of applying for DACA, received a Notice to Appear in immigration court and is facing the risk of deportation and the potential accrual of unlawful presence which would result in their being barred from the U.S. for years.  M.B.F. Decl. ¶¶ 4, 28, 30. Plaintiffs describe being unable to obtain decent employment without DACA, Batalla Vidal Decl. ¶ 3; Fung Feng Decl. ¶ 8; Vargas Decl. ¶ 8, Larios Sainz Decl. ¶¶ 9, 19; Molina Decl. ¶ 4; Zamora Decl. ¶ 19; M.B.F. Decl. ¶ 19.  This in turn impacts other dreams, like being able take advantage of educational opportunities, to earn a college degree, or attend the college of their choice.  Larios Sainz Decl. ¶ 20; Molina Decl. ¶3; Zamora Decl. ¶¶ 12, 14-15, 20; M.B.F. Decl. ¶¶ 13-14, 16-18, 29.  Without work authorization or by having to renew ever year, changing jobs or figuring out how to pay application fees is considerably more fraught for plaintiffs.  Batalla Vidal Decl. ¶¶ 2-3; Alarcón Decl. ¶ 12; Fernandez Decl. ¶ 12; Molina Decl. ¶¶13-14.  With the opportunity to apply for advance parole snatched away, Plaintiffs Batalla Vidal, Alarcón and Fernandez are unable to travel to meet with family, including sick or elderly

relatives or explore job opportunities abroad.  Batalla Vidal Decl. ¶¶ 4-5; Alarcón Decl. ¶¶ 6, 8; Fernandez Decl. ¶¶ 6-8.  The stress, fear, and loss of or inability to access everyday dreams caused by Defendants' unlawful actions makes the Individual Plaintiffs well suited to serve as Class Representatives.

Plaintiffs also seek the same remedies as the Proposed Classes through declaratory and injunctive relief.  All the members of the proposed DACA Class have a shared interest in having the Wolf Memo and the Edlow memo vacated.  Similarly, all the members of the proposed Applications Class have a shared interest in having their requests for deferred action considered under the 2012 Napolitano Memorandum.  Batalla Vidal Decl. ¶ 8; Alarcón Decl. ¶ 11; Fernandez Decl. ¶ 11; Fung Feng Decl. ¶ 7; Vargas Decl.  ¶ 7;  Larios Sainz Decl. ¶ 27; Molina Decl. ¶ 18; Zamora Decl. ¶ 23; M.B.F. Decl. ¶ 33.  As such, Plaintiffs' interests are not "antagonistic to the interests of other class members," *In re Literary Works in Elec. Databases Copyright Litig.*, 654 at 249. Here the requirements of Rule 23(a)(4) are easily satisfied.[9]

### E.  The Court Should Appoint Plaintiffs' Counsel as Class Counsel

Upon certification of a class, Rule 23(g) requires the appointment of class counsel. *Guadagna v. Zucker*, 332 F.R.D. 86, 97 (E.D.N.Y. 2019).  In doing so, the Court considers "(i)

---

[9] Traditionally, courts have considered Rule 23(a)(4)'s adequacy requirement to "factor[] in competency and conflicts of class counsel."  *Amchem*, 521 U.S. at 626 n.20.  However, in 2003, Rule 23 was amended to add a new provision at 23(g), entitled "Class Counsel."  Courts have taken a variety of approaches to this change, including everything from ignoring Rule 23(g) altogether, to migrating their former class counsel analysis to Rule 23(g), to analyzing class counsel adequacy under both Rule 23(a)(4).  1 Newberg on Class Actions § 3:80 (5th ed.).  Following *Sheinberg v. Sorenson*, 606 F.3d 130, 132-135 (3d Cir. 2010) (stating that class counsel adequacy is now "governed by Rule 23(g)"), class counsel adequacy is formally analyzed here under Rule 23(g).  However, regardless of whether class counsel adequacy falls under Rule 23(a)(4) or 23(g), Plaintiffs' counsel satisfy the requirements for the reasons discussed *infra*, at III.E.

"the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing this class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Plaintiffs are represented by attorneys at the National Immigration Law Center and Make the Road New York, and by attorneys, a cooperating attorney, and law student interns at the Jerome N. Frank Legal Services Organization at Yale Law School. The counsel involved are experienced in litigating complex civil rights matters and class actions. *See* Rebert Decl. ¶¶ 10, 14, 17; Ex. B, Ahmad Decl. ¶¶ 6-11; Ex. C, Austin Decl. ¶¶ 3, 5-6; *see also* Rebert Decl. ¶¶ 4-5. They have deep expertise in immigration law as well as DACA practice and procedures, Rebert Decl. ¶¶ 10, 13-14, 17; Ahmad Decl. ¶¶ 3, 4, 10; Austin Decl. ¶ 4, have litigated this case for nearly three years, including at the Supreme Court, Rebert Decl. ¶¶ 6, 10, 11, 15; Austin Decl. ¶¶ 6-7, and have devoted and will continue to devote substantial time and resources to the prosecution of this action. Rebert Decl. ¶ 6; Ahmad Decl. ¶ 12; Austin Decl. ¶ 7.

### F. Ascertainability: The Proposed Classes Are Defined Using Objective Criteria

In the Second Circuit, the implicit ascertainability requirement "asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). The proposed classes easily meet this "modest threshold requirement." *Id.* The DACA Class members are easily identified using the criteria for consideration for deferred action through DACA as outlined in the 2012 Napolitano Memo. *See* ECF 77.1, Admin. Record, at 1; *see, e.g.,* Larios Sainz Decl. ¶¶ 4-7; Zamora Decl. ¶¶ 4-7; M.B.F. Decl. ¶¶ 5-8. The Pending Applications Subclass members are identified by whether they had requests for deferred action through DACA pending at the agency

on any date between June 30, 2020 and July 28, 2020, that have not or will not be adjudicated in accordance with the 2012 Napolitano Memo. Individuals excluded from the classes can be identified by their publicly-filed complaints.

## III.   CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(B)(2) BECAUSE THE INDIVIDUAL PLAINTIFFS SEEK FINAL INJUNCTIVE AND DECLARATORY RELIEF

Finally, class certification is warranted under Rule 23(b)(2) because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Courts have routinely granted class certification where, as here, the class seeks injunctive or declaratory relief – including where plaintiffs challenge agency action in immigration policy. *See, e.g., R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 359-60 (S.D.N.Y. 2019) (granting class certification to a class of plaintiffs seeking to enjoin USCIS' reliance on a new Special Immigrant Juvenile status policy); *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 608–09 (S.D.N.Y. 2018) (granting class certification to a class of plaintiffs seeking injunctive and declaratory relief regarding an agency policy delaying the release of unaccompanied migrant children). *Floyd v. City of New York*, 283 F.R.D. 153, 159-160, 177 (S.D.N.Y. 2012) (granting class certification where plaintiffs seek declaratory and injunctive relief for individuals subjected to stop and frisk practice).

In issuing the Wolf Memorandum in violation of the FVRA, the HSA, the Appointments Clause, and the APA, Defendants acted on grounds that apply generally to the DACA Class such that declaratory or injunctive relief setting it aside is appropriate to the class as a whole. Likewise, USCIS's review of the Pending Application Subclass's DACA requests deprived class members of the proper adjudication of their requests under the terms of the 2012 Napolitano Memorandum and Plaintiffs intend to seek declaratory and injunctive relief that would require USCIS to review

23

their DACA requests under the terms of that memo.  In sum, given that Plaintiffs seek to set aside a government policy of widespread application, have suffered from the same statutory violation as a result of the government's issuance of the Wolf Memorandum and the Edlow Memorandum, and seek the same declaratory and injunctive relief, certification under Rule 23(b)(2) is appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) certify this action to proceed as a class action pursuant Rules 23(a) and (b)(2) of the Federal Rules of Procedure; (2) appoint the Individual Plaintiffs to serve as Class Representatives; and (3) appoint the National Immigration Law Center, Jerome N. Frank Legal Services Organization at Yale Law School, and Make the Road New York as Class Counsel pursuant to Rule 23(g).

Respectfully submitted,

Dated: August 28, 2020

*/s/ Trudy S. Rebert*

Trudy S. Rebert, Esq. (TR 6959)
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 721361
Jackson Heights, NY 11372
(646) 867-8793
rebert@nilc.org

Araceli Martínez-Olguín, Esq. (AM 2927)
Mayra B. Joachin, Esq. (*pro hac vice*)
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900

Paige Austin, Esq. (PA 9075)
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
(718) 418-7690

*Attorneys for Batalla Vidal Plaintiffs*

Camila Bustos, Law Student Intern*
Armando Ghinaglia, Law Student Intern
Edgar A. Melgar, Law Student Intern*
Ramis Wadood, Law Student Intern
Muneer I. Ahmad, Esq. (MA 9360)
Marisol Orihuela, Esq. (*pro hac vice*)
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SERVICES ORG.
P.O. Box 209090
New Haven, CT 06520
(203) 432-4800

Karen C. Tumlin, Esq. (*pro hac vice*)
Cooperating Attorney
JEROME N. FRANK LEGAL SERVICES ORG.
P.O. Box 209090
New Haven, CT 06520
(323) 316-0944

* Motion for law student appearance forthcoming

24