**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

---

MARTÍN JONATHAN BATALLA VIDAL,
ANTONIO ALARCÓN, ELIANA FERNANDEZ,
CARLOS VARGAS, CAROLINA FUNG FENG,
M.B.F., by her next friend LUCIA FELIZ,
XIMENA ZAMORA, SONIA MOLINA
and JOHANA LARIOS SAINZ,

      On behalf of themselves and all other
      similarly situated individuals,

and MAKE THE ROAD NEW YORK,

      On behalf of itself, its members, and its
      clients,

      *Plaintiffs*,

      v.

CHAD WOLF, *in his official capacity as the
purported Acting Secretary of Homeland Security*,
et al.,

      *Defendants*.

Case No. 1:16-cv-04756 (NGG)(JO)

August 28, 2020

---

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 2

DACA PROGRAM: ORIGINS AND IMPACT ............................................................... 2

TRUMP ADMINISTRATION'S FAILED ATTEMPT TO UNLAWFULLY RESCIND DACA IN 2017 .. 3

UNLAWFUL DESIGNATIONS AT THE DEPARTMENT OF HOMELAND SECURITY ....................... 4

THE WOLF MEMORANDUM'S RENEWED ATTACK ON DACA ................................................ 8

STANDARD FOR SUMMARY JUDGMENT ............................................................... 11

ARGUMENT .................................................................................................................. 11

I.   DEFENDANT WOLF'S DESIGNATION AS ACTING DHS SECRETARY IS
     UNLAWFUL UNDER THE FVRA AND HSA .............................................................. 12

     A.   The FVRA Sets Unambiguous Limits on Executive Appointments ............................ 12

     B.   The HSA Implements a Provision of the FVRA Pertaining to Order of Succession 14

     C.   The Trump Administration Has Failed to Abide by the Requirements of the FVRA
          and the HSA ...................................................................................................... 15

          1. The Designation of Mr. McAleenan as Acting Secretary Was Unlawful, Voiding
          the November Delegation on Which Defendant Wolf's Designation Rests .............. 16

          2. Even if His Designation Were Lawful, Mr. McAleenan's November Delegation
          Exceeded the FVRA's 210-Day Limit, Rendering it Void ......................................... 17

          3. The Duration of Mr. McAleenan's Purported Tenure as Acting Secretary
          Triggered the FVRA's Clawback Provision, Prohibiting Defendant Wolf's
          Appointment ...................................................................................................... 18

          4. Because Defendant Wolf Has Also Exceeded the 210-Day Limit, The Wolf
          Memorandum is Void Ab Initio ............................................................................ 20

II.  DEFENDANT WOLF'S DESIGNATION AS ACTING SECRETARY ALSO
     VIOLATES THE APPOINTMENTS CLAUSE .............................................................. 20

     A.   The Appointments Clause Empowers Congress to Scrutinize Executive
          Appointments .................................................................................................... 21

     B.   Executive Designations That Are Not Temporary Violate the Appointments Clause 22

*C.*   *Constitutionally, Neither Defendant Wolf Nor Any Other Individual May Be Designated Acting Secretary* ............................................................................ 23

**III.    THIS COURT SHOULD VACATE THE WOLF MEMORANDUM AND ENJOIN DEFENDANT WOLF FROM TAKING FURTHER ACTION ON DACA** ..... 23

*A.*   *Because Defendant Wolf Was Serving in Violation of the FVRA, the Wolf Memorandum Has No Force or Effect* ............................................................... 23

*B.*   *Alternatively, the Wolf Memorandum Should be Set Aside Because Defendant Wolf's Designation Violates the Constitution* ................................................... 24

*C.*   *Defendant Wolf Should Be Enjoined from Making Further Changes to the DACA Program* ........................................................................................................ 24

**CONCLUSION** ............................................................................................................ **25**

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242 (1986) .................................................... 11

*Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018) .................................... 4

*Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684 (4th Cir. 2019) ...... 4

*Cudahy Packing Co. of Louisiana v. Holland*, 315 U.S. 357 (1942) ............................. 17

*Department of Homeland Security v. Regents of the University of California*, 591 U.S. ___, 140 S. Ct. 1891 (2020) ............................................................................................... 1, 4

*Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision,* 139 F.3d 203 (D.C. Cir. 1998) .... 13

*Edmond v. United States*, 520 U.S. 651 (1997) ..................................................... 21, 24

*Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991) ..................................... 21

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) .............................................. 11

*Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550 (9th Cir. 2016) ............... 23

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.,* 534 U.S. 124 (2001) ............... 15

*L.M.-M. v. Cuccinelli*, 442 F.Supp.3d 1 (D.D.C. 2020) ............................................... 24

*N.M. Health Connections v. HHS*, 340 F. Supp. 3d 1112 (D.N.M. 2018) .................... 19

*Nat'l Ass'n for the Advancement of Colored People v. Trump*, 298 F. Supp. 3d 209 (D.D.C.) ..... 4

*Nat'l Ass'n for the Advancement of Colored People v. Trump*, 315 F. Supp. 3d 457 (D.D.C. 2018) ........................................................................................................................ 4

*NLRB v. SW Gen., Inc.*, 580 U.S. ___, 137 S. Ct. 929 (2017) ....................... 13, 15, 23

*Olympic Fed. Sav. & Loan Ass'n v. Dir., Office of Thrift Supervision*, 732 F. Supp. 1183 (D.D.C. 1990) .................................................................................................................. 25

*Quality Health Servs. of P.R., Inc. v. Nat'l Labor Relations Bd.*, 873 F.3d 375 (1st Cir. 2017) . 23-24

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ............................... 11

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018) 4

*Regents of Univ. of California v. United States Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011 (N.D. Cal.) ................................................................................................................... 4

*Ryder v. United States*, 515 U.S. 177 (1995) .............................................................. 25

*SW Gen., Inc. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015) ............................................... 13

*United States v. Eaton*, 169 U.S. 331 (1898) .............................................................. 22

*United States v. Hilario*, 218 F.3d 1 (1st Cir. 2000) .................................................. 22

*United States v. Smith*, 962 F.3d 755 (4th Cir. 2020) ................................................. 22

*United States v. Valencia*, 2018 WL 6182755 (W.D. Tex. 2018) .............................. 22

*Williams v. Phillips*, 360 F. Supp. 1363 (D.D.C. 1973) ............................................. 25

## STATUTES

5 U.S.C. § 101 ............................................................................................................... 21

5 U.S.C. § 3345 ............................................................................................................... 1

5 U.S.C. § 3345(b) ........................................................................................................ 13

5 U.S.C. § 3346(a) .............................................................................................. 8, 13, 20

5 U.S.C. § 3347(a) ........................................................................................................ 14

5 U.S.C. § 3348(b)(1) .............................................................................................. 13, 18

5 U.S.C. § 3348(d)(1) .......................................................................................... 14, 18, 20

5 U.S.C. § 3348(d)(2) .......................................................................................... 14, 18, 20

5 U.S.C. § 3348(e)(1) ............................................................................................ 24
5 U.S.C. § 3346(a)(1) ................................................................................ 12, 15, 18
6 U.S.C. § 101 ........................................................................................................ 1
6 U.S.C. § 112(a)(1) ............................................................................................... 5
6 U.S.C. § 113(a)(1)(A) ..................................................................................... 6, 14
6 U.S.C. § 113(a)(1)(F) .......................................................................................... 5
8 U.S.C. § 1182(d)(5) ............................................................................................ 2
U.S. Const., art. II, §2, cl. 2. ............................................................................... 21

OTHER AUTHORITIES

Ben Miller-Gootnick, *Boundaries of the Federal Vacancies Reform Act*, 56 HARV. J. ON LEGIS.
    459 (2019) ........................................................................................................ 13
Exec. Order No. 13753, § 1, 81 Fed. Reg. 90,667 (Dec. 9, 2016) ........................ passim
HSA Delegation 00106, Revision 08.5 .................................................... 6, 7, 8, 16, 17
HSA Delegation 00106, Revision No. 08.6 ........................................................ passim
Joseph Edlow, "*Implementing Acting Secretary Chad Wolf's July 28, 2020 Memorandum,*
    "*Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial*
    *Discretion with Respect to Individuals Who Came to the United States as Children,'*"
    Aug. 21, 2020 .................................................................................................... 10
Mem. From Chad Wolf, to Mark Morgan, Matthew Albence, Joseph Edlow,
*Reconsideration of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial*
    *Discretion with Respect to Individuals Who Came to the United States as Children,"*
    July 28, 2020 ................................................................................................ passim
Mem. from Elaine C. Duke, Acting Sec'y of Homeland Sec., to James W. McCament,
    Acting Dir., U.S. Citizenship and Immigration Servs., *Memorandum on Rescission of*
    *Deferred Action For Childhood Arrivals (DACA)*, Sept. 5, 2017 ..................... 3, 4, 9
Mem. from Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas,
    Dir., USCIS, *Exercising Prosecutorial Discretion With Respect to Individuals Who*
    *Came to the United States as Children*, June 15, 2012 .................................... 2, 4, 9

RULES

Fed. R. Civ. P. 56(c) .............................................................................................. 11

REGULATIONS

8 C.F.R. § 274a.12(c)(14) ....................................................................................... 2

## INTRODUCTION

The  U.S. Supreme Court has already admonished the Trump Administration for failing to "turn square corners" by violating fundamental tenets of federal administrative law, designed to ensure executive agency accountability, in its drive to end the Deferred Action for Childhood Arrivals ("DACA") program. *Department of Homeland Security v. Regents of the University of California*, 591 U.S. ___, 140 S. Ct. 1891, 1909 (2020) ("*Regents*") (internal quotations omitted). Undeterred, the Administration continues to play catch-me-if-you-can with the law—and the lives of over a million young people—this time, in direct contravention of the requirements of federal appointment statutes and the Constitution. Those laws are basic to separation of powers principles and serve as an essential check on executive abuse of power.

While the Trump Administration has repeatedly sought to evade congressional scrutiny of its executive appointments, Plaintiffs ask this Court to fix but one of these many problems: Defendant Wolf's unlawful memorandum on DACA (the "Wolf Memorandum"), which is void *ab initio* because of his unlawful designation as the Acting Secretary of the Department of Homeland Security ("DHS"). The Wolf Memorandum is unlawful for five reasons. **First,** the prior designation of Kevin McAleenan as Acting Secretary ran afoul of the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345 *et seq*., and the Homeland Security Act ("HSA"), 6 U.S.C. § 101 *et seq*., because it failed to follow DHS's governing order of succession. Therefore, Mr. McAleenan's subsequent modification of that order of succession—on which Defendant Wolf's assumption of the Acting Secretary role relied—was void. **Second,** even if Mr. McAleenan's appointment were lawful, he made his modification to the order of succession on his 212th day purporting to be Acting Secretary, in violation of the FVRA's 210-day limit on acting officers. **Third,** because Mr. McAleenan had already purported to be in the Acting Secretary role for more

than 210 days, the FVRA required that office to remain vacant; as a result, neither Wolf nor anyone else was permitted to assume the Acting Secretary role. **Fourth,** even assuming Wolf's designation as Acting Secretary were lawful, the Wolf Memorandum is also without force or effect because he issued it on his 258th day of purporting to be Acting Secretary. **Finally,** the Trump Administration's serial installation of officials as Acting Secretary violates the Appointments Clause of the Constitution.

The result of this latest unlawful attack on DACA is the same as the first time: the livelihoods and futures of more than a million DACA recipients and applicants are once again put in jeopardy. Plaintiffs, who bear the cost of the Administration's repeated recklessness with DACA, move for partial summary judgment seeking vacatur of the unlawfully issued Wolf Memorandum.

## STATEMENT OF FACTS

### DACA Program: Origins and Impact

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano announced the creation of the DACA program, setting out guidelines for U.S. Citizenship and Immigration Services ("USCIS") to use its prosecutorial discretion to extend deferred action to certain young immigrants "who were brought to this country as children and know only this country as home." Mem. from Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas, Dir., USCIS, *Exercising Prosecutorial Discretion With Respect to Individuals Who Came to the United States as Children*, June 15, 2012 ("Napolitano Memorandum"). Local Rule 56.1 Statement of Undisputed Material Facts ("SOUF"), ¶ 1. Those granted deferred action also became eligible, via pre-existing regulations, for employment authorization, 8 C.F.R. § 274a.12(c)(14), and advance parole, 8 U.S.C. § 1182(d)(5).

In the eight years following the DACA program's announcement, over 825,000 individuals

have received deferred action and employment authorization. SOUF ¶ 2. Approximately 40,000 of those individuals live in New York State alone. *Id.* ¶ 3. As a result of the DACA program, these young people have been able to enroll in colleges and universities, and to obtain jobs, driver's licenses, bank accounts, and health insurance. *Id.* ¶ 4. They have also contributed significantly to their communities, employers, and the economy. *Id.* ¶ 5.

**Trump Administration's Failed Attempt to Unlawfully Rescind DACA in 2017**

After more than five years of the DACA program's success—and despite the incalculable benefit the program created in those years— on September 5, 2017, then-Acting Secretary of Homeland Security Elaine Duke abruptly announced that DHS would terminate the DACA program. *See* Mem. from Elaine C. Duke, Acting Sec'y of Homeland Sec., to James W. McCament, Acting Dir., U.S. Citizenship and Immigration Servs., *Memorandum on Rescission of Deferred Action For Childhood Arrivals (DACA)*, Sept. 5, 2017 ("Duke Memorandum"). SOUF ¶ 7. Based on spurious legal reasoning, and without consideration of the catastrophic impact the policy would have, the Duke Memorandum directed DHS to categorically reject all first-time DACA applications received after September 5, 2017 and limit the renewal-eligible population. *Id.* ¶ 8.

Defendants' actions triggered a wave of lawsuits across the nation by DACA recipients, civil rights organizations, universities, private corporations, labor unions, states, and municipalities.[1] The results of this litigation were swift and clear: in every case but one, district courts held that the DACA termination was or likely was arbitrary and capricious in violation of the Administrative

---

[1] *See State of New York et al. v. Trump et al.*, No. 17-cv-5228 (E.D.N.Y. Sept. 6, 2017); *Regents of the University of California et al. v. Department of Homeland Security et al.*, No. 17-cv-5211 (N.D. Cal. Sept. 8, 2017 ("*UC Regents District Court*"); *State of California et al. v. Department of Homeland Security et al.*, No. 17-cv-5235 (N.D. Cal. Sept. 11, 2017; *County of Santa Clara et al. v. Trump et al.*, No. 17-cv-5813 (N.D. Cal. Oct. 10, 2017; *City of San Jose v. Trump et al.*, No. 17-cv-5329 (N.D. Cal. Sept. 14, 2017; *Garcia et al. v. United States et al.*, No. 17-cv-5380 (N.D. Cal. Sept. 18, 2017; *NAACP et al. v. Trump et al.*, No. 17-cv-1907 (D.D.C. Sept. 18, 2017) ("*NAACP Trustees of Princeton University et al. v. United States et al.*, No. 17-cv-2325 (D.D.C. Nov. 3, 2017; *CASA de Maryland et al. v. Trump et al.*, No. 17-cv-2942 (D. Md. Oct. 5, 2017.

Procedure Act ("APA"); circuit courts affirmed the same.[2] On June 18, 2020, the Supreme Court—like all lower courts it was reviewing—concluded that Defendants' 2017 termination of the DACA program violated the APA. *Regents,* 140 S. Ct. at 1916. The Court explained that Defendants failed to conduct the reasoned analysis required by the APA and to adequately consider the incredible hardship their decision would inflict on DACA recipients and their communities. *Id.* at 1910-15. By setting aside the Duke Memorandum, *Regents* required Defendants to fully restore the DACA program to the terms of the Napolitano Memorandum—including the acceptance of (1) first-time applications and (2) requests for advance parole. There are approximately 300,000 individuals eligible to file first-time DACA applications. SOUF ¶ 6.

**Unlawful Designations at the Department of Homeland Security**

Through a convoluted series of steps, the Trump Administration connived to install Defendant Wolf as Acting DHS Secretary while evading congressional oversight. Following DHS Secretary Kirstjen Nielsen's resignation on April 7, 2019, Kevin McAleenan assumed the role and functions of Acting Secretary, SOUF ¶¶ 17-18, in violation of the legally required order of succession. When McAleenan subsequently amended DHS's order of succession—the order on which Defendants relied to install Defendant Wolf as Acting Secretary—McAleenan lacked authority to do so because his installation as then-Acting Secretary was invalid. Consequently, Defendant Wolf's installation as Acting Secretary was also unlawful.

Under the HSA, the order of succession in the event of a vacancy in the office of the DHS Secretary is the Deputy Secretary and then the Under Secretary for Management. 6 U.S.C. §§

---

[2] *Batalla Vidal v. Nielsen*, 279 F. Supp. 401 (E.D.N.Y. 2018); *Nat'l Ass'n for the Advancement of Colored People v. Trump*, 298 F. Supp. 3d 209 (D.D.C.), *adhered to on denial of reconsideration*, 315 F. Supp. 3d 457 (D.D.C. 2018); *Regents of Univ. of California v. United States Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011 (N.D. Cal.), *aff'd sub nom. Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018); *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684 (4th Cir. 2019).

113(a)(1), 113(g)(1). The HSA further authorizes the Secretary to designate additional officers "in further order of succession" to serve as Acting Secretary if the top three positions (i.e., Secretary, Deputy Secretary, and Under Secretary of Management) are vacant.[3] *Id.* § 113(g)(2). Executive Order 13753, issued in December 2016, established that further order of succession, listing sixteen additional DHS officers in line after the Under Secretary of Management. *See* Exec. Order No. 13753, § 1, 81 Fed. Reg. 90,667 (Dec. 9, 2016) ("EO 13753"). SOUF ¶ 9.

On December 5, 2017, Kirstjen Nielsen was confirmed by the U.S. Senate as Secretary of Homeland Security. *Id.* ¶ 12. Nielsen was the last DHS Secretary appointed with the advice and consent of the Senate, as required by law. *See* 6 U.S.C. § 112(a)(1). She resigned on April 7, 2019, *id.* ¶ 17, and the Trump Administration has left her office vacant for over 500 days without submitting any nomination for the office to the Senate, *see id.* ¶ 22. At the time of Secretary Nielsen's resignation on April 7, 2019, the office of Deputy Secretary was vacant, while the office of Under Secretary for Management was held by Claire Grady, who had been Senate-confirmed for the position and was the next person in the order of succession who could lawfully assume the role of Acting Secretary. *Id.* ¶ 20.  Therefore, on the day of Secretary Nielsen's resignation, Ms. Grady should have become Acting DHS Secretary by law. But the Trump Administration contravened this legally required order of succession, contriving to install McAleenan as Acting Secretary.

The relevant chronology is as follows:

- **February Delegation.**[4] On February 15, 2019, Secretary Nielsen exercised her

authority under the HSA, 6 U.S.C. § 113(g)(2), to designate an order of succession following the

---

[3] Although the Secretary may set an order of succession for the Deputy Director position, that order must reflect that the Under Secretary for Management is the first assistant for the purposes of the FVRA.  6 U.S.C. § 113(a)(1)(F).

[4] A chart depicting the February Delegation's orders of succession is attached as Appendix 1.

Under Secretary for Management.   HSA Delegation 00106, Revision No. 08.4 ("February Delegation"). *See* SOUF ¶ 13. This delegation specified a different source document providing the order of succession for each of two tracks:

> *Track 1:* In cases of the Secretary's death, resignation, or inability to perform the functions of the office, the order of succession was governed by E.O. 13753. February Delegation § II.A. *See* SOUF ¶ 13.

> *Track 2:* In cases where the Secretary was unavailable to act during a disaster or catastrophic emergency, the order of succession was governed by Annex A to the February Delegation. February Delegation § II.B. *See* SOUF ¶ 13.

At the time that the February Delegation was issued, the orders of succession in E.O. 13753 and Annex A were identical. Under both, the first four positions in the order of succession were: (1) Deputy Secretary (as required by 6 U.S.C. § 113(a)(1)(A)); (2) Under Secretary of Management (as required by § 113(g)(1)); (3) Administrator of the Federal Emergency Management Agency ("FEMA"); and (4) Director of the Cybersecurity and Infrastructure Security Agency ("CISA").[5]

- **April Delegation.**[6] On April 7, 2019, Secretary Nielsen tendered her resignation, stating that it was effective that same day. SOUF ¶ 17. Later that day, President Trump announced via Twitter that McAleenan, then the U.S. Customs and Border Protection ("CBP") Commissioner, and seventh in line in the order of succession under E.O. 13753, would assume the role of Acting Secretary. *Id.* ¶¶ 9, 18. At 10:36 pm, Secretary Nielsen announced via Twitter that, despite her resignation earlier that day, she would supposedly remain Secretary until April 10, 2019. *Id.* ¶ 19.

- According to DHS, Nielsen established a new order of succession by revising HSA

---

[5] The Director of CISA is the successor office to the Under Secretary for National Protection and Programs, which is listed as fourth in the order of succession in E.O. 13753. SOUF ¶ 16.

[6] A chart depicting the April Delegation's orders of succession is attached as Appendix 2. A chart depicting the proper order of succession based on the April Delegation is attached as Appendix 3.

Delegation 00106 on April 10, 2019. HSA Delegation 00106, Revision 08.5 ("April Delegation"). SOUF ¶ 24. By its explicit text, the April Delegation only changed Track 2 of the February Delegation—i.e., the order of succession "in the event [she was] unavailable to act during a disaster or catastrophic emergency." *Id.* ¶ 25. Specifically, the April Delegation replaced the text of Annex A with a new order of succession, this one listing the Commissioner of CBP, McAleenan, as third in the order of succession. *Id.* ¶ 24. The April Delegation left undisturbed Track 1 of the February Delegation—i.e., the order of succession that applied in case of the Secretary's death, resignation, or inability to perform the functions of the office. Track 1 continued to be governed by E.O. 13753, which placed the CBP Commissioner 7th in the order of succession. *See id.* ¶ 9.

- The office of Deputy Secretary has been vacant since April 14, 2018. *See id.* ¶ 26.

- On April 10, 2019, Claire Grady, Under Secretary for Management, also resigned. *Id.* ¶ 21. Under Track 1 of the April Delegation, Under Secretary Grady should have become Acting Secretary upon Secretary Nielsen's resignation on April 7, 2019. *See id.* ¶ 27. Also under Track 1 of the April Delegation, the FEMA Director was next in the order of succession after the Under Secretary for Management. *Id.* ¶ 28. On April 10, 2019, that office was vacant and temporarily filled by an acting official. *Id.* ¶ 29. The next position in the order of succession was the Director of CISA, Christopher Krebs, who was confirmed by the Senate on June 12, 2018. *Id.* ¶ 30. Even assuming that Secretary Nielsen's resignation did not become effective until April 10, 2019, Director Krebs should have assumed the Acting Secretary position upon the resignation of Under Secretary Grady.

- Instead of following the lawful order of succession and designating Director Krebs, Defendant Trump installed McAleenan as Acting Secretary,  on April 10, 2019. *Id.* ¶¶ 18, 22.

- **November Delegation.**[7] On November 8, 2019, the 212th day of his purported designation as Acting Secretary, McAleenan sought to revise the DHS order of succession once again, HSA Delegation 00106, Revision No. 08.6 ("November Delegation"). SOUF ¶ 31.[8] The November Delegation maintained the two-track structure of the February and April Delegations, but substituted Annex A for E.O. 13753. *Id.* As a result, a single order of succession, Annex A, governed both tracks. The November Delegation also modified Annex A's order of succession, such that the first four officers were as follows: (1) Deputy Secretary; (2) Under Secretary for Management; (3) Commissioner of CBP; and (4) Under Secretary for Strategy, Policy, and Plans. *Id.* Thus, the Commissioner of CBP was substituted for the Director of FEMA and the Under Secretary for Strategy, Policy, and Plans was substituted for the Director of CISA.

- On November 13, 2019, Defendant Wolf was serving as the Under Secretary for Strategy, Policy, and Plans. *Id.* ¶ 32.

- On November 13, 2019, five days after he issued the November Delegation, and 217 days after purporting to serve as Acting Secretary, McAleenan resigned as the purported Acting Secretary.  *Id.* ¶ 33. At the time of McAleenan's resignation, the Deputy Secretary, the Under Secretary for Management, and the CBP Commissioner positions were all vacant. *Id.* ¶ 34. Claiming to be the next officer in DHS's order of succession, Defendant Wolf assumed the office of Acting DHS Secretary. *Id.* ¶ 35.

**The Wolf Memorandum's Renewed Attack on DACA**

On July 28, 2020, after more than a month of silence on the status of the DACA program following *Regents* and on his 258th day purporting to be Acting Secretary, Defendant Wolf issued

---

[7] A chart depicting the November Delegation's order of succession is attached as Appendix 4. A chart depicting the government's alleged order of succession based on the November Delegation is attached as Appendix 5.

[8] The FVRA sets a 210-day limit for officials to serve as acting officers starting from the date of the vacancy, absent certain exceptions that are not applicable here. 5 U.S.C. § 3346(a).

the Wolf Memorandum, rescinding the Duke Memorandum entirely. Mem. From Chad Wolf, to Mark Morgan, Matthew Albence, Joseph Edlow, *Reconsideration of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"*, July 28, 2020. SOUF ¶ 36. Although Defendant Wolf purported to "reconsider" the Napolitano Memorandum, he rescinded core components of the Napolitano Memorandum and made "immediate changes" to the DACA program. *Id.* ¶ 37.

Among those "immediate changes" are instructions for DHS personnel to "reject all pending and future initial requests for DACA, to reject all pending and future applications for advance parole absent 'exceptional circumstances,' and to shorten DACA renewals" from two years to one year. *Id.* ¶ 38. The Wolf Memorandum makes no distinction in how the agency is to treat applications for DACA filed after the Supreme Court's decision in *Regents* (June 18, 2020), after the Fourth Circuit's mandate formally vacated the Duke Memorandum (June 30, 2020), or after the Wolf Memorandum was issued (June 28, 2020). *Id.* at ¶ 39. It retroactively rejects the applications of individuals like Plaintiffs Johana Larios Sainz and M.B.F. who applied for DACA after the *Regents* decision went into effect and before the Wolf Memorandum was issued. *Id.* ¶ 40.

The Wolf Memorandum orders that renewals of deferred action and accompanying work authorization be granted for one-year, rather than two-year, periods, claiming that there are no asserted reliance interests affected by the shortening of renewal periods. *Id.* ¶ 41. While Defendant Wolf acknowledged that the change entails an increase in the total amount of renewal fees that noncitizens will be required to pay, he justifies these fees as "processing costs." *Id*. There is no rational explanation supporting the reduction in renewal periods besides the Trump Administration's desire to curtail the policy during what is presented as an "interim" period.

Beyond the cursory and abrupt nature of these changes, the Wolf Memorandum also fails

to explain why the agency was not bound to return to the *status quo ante* after *Regents* or after the issuance of the Fourth Circuit's mandate. *Id.* ¶ 42. Instead, it merely states that the program was being frozen "on an interim basis." *Id.*

The Wolf Memorandum again upends the lives of more than 1.1 million individuals, their families, communities, and employers, among them some 800,000 individuals who currently have DACA, *Id.* ¶ 2, and over 300,000 DACA-eligible individuals—a significant number of whom became eligible during the course of litigation before *Regents* was decided—whom the Wolf Memorandum renders unable to apply for DACA, *id.* ¶ 6. These individuals will continue to face the threat of forcible removal from the only country that many of them have known as home. Like Plaintiffs, they have grown up in American neighborhoods, attended American schools, nurtured American families, and structured their lives around living in the United States.

On August 21, 2020, Defendant Joseph Edlow, Deputy Director for Policy at USCIS, issued a memorandum purporting to implement the Wolf Memorandum. Joseph Edlow, "*Implementing Acting Secretary Chad Wolf's July 28, 2020 Memorandum, "Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children'"*", Aug. 21, 2020 ("Edlow Memorandum"). SOUF ¶ 43. The Edlow Memorandum instructs USCIS to "generally reject DACA renewal requests received more than 150 days prior to the expiration of the DACA recipient's current DACA validity period." *Id.* ¶ 44. It also stipulates that "in most instances, traveling abroad for educational purposes, employment related purposes, or to visit family members living abroad will not warrant advance parole under Secretary Wolf's interim policy regarding the discretionary exercise of parole for urgent humanitarian reasons or significant public benefit." *Id.* ¶ 45. The Edlow Memorandum provides the following non-exhaustive examples of exceptional circumstances

under which DACA recipients can seek advance parole: "Travel to support the national security interests of the United States including U.S. military interests; Travel in furtherance of U.S. federal law enforcement interests; Travel to obtain life-sustaining medical treatment that is not otherwise available to the alien in the United States; Travel needed to support the immediate safety, well-being, or care of an immediate relative, particularly minor children of the alien." *Id.* ¶ 46.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is granted in favor of a moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 256 (1986). A fact is only material "if it might affect the outcome of the suit under the governing law," and an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted). A court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## ARGUMENT

The Wolf Memorandum is void *ab initio* for five independent reasons. First, Mr. McAleenan's designation as Acting Secretary was unlawful under the FVRA and the HSA because it violated the order of succession governing in case of a Secretary's resignation. As such, Mr. McAleenan was without authority to establish the order of succession that enabled Defendant Wolf to assume the position of Acting Secretary, and his action could not be ratified. Second, Mr. McAleenan had been in office for 212 days when he unlawfully altered the order of succession,

exceeding the FVRA's 210-day limit on acting officers. Third, because Mr. McAleenan's purported tenure as Acting Secretary, which totaled 214 days, used up all of the FVRA's 210-day allowance for acting officials, the statute required the position to remain vacant; Defendant Wolf's assumption of the acting position therefore was unlawful. Fourth, even assuming Defendant Wolf properly assumed the role of Acting Secretary, he issued the Wolf Memorandum 256 days after claiming that role, rendering his action without force or effect, and ineligible for ratification, under the FVRA. Finally, the Trump Administration's use of prolonged and indefinite acting appointments, as was the case here, violates the Appointments Clause.

Because Defendant Wolf cannot lawfully exercise the functions of Acting DHS Secretary under the FVRA and the HSA, the Wolf Memorandum has no force or effect and must be set aside. If the Court does not grant Plaintiffs summary judgment on their statutory claims, it should hold that Defendant Wolf's continued exercise of the duties of DHS Secretary violates the Appointments Clause, declare the Wolf Memorandum unlawful, and vacate the Memo.

## I. DEFENDANT WOLF'S DESIGNATION AS ACTING DHS SECRETARY IS UNLAWFUL UNDER THE FVRA AND HSA

Because Defendant Wolf was never properly designated as Acting Secretary under the FVRA or the HSA, the Wolf Memorandum constitutes unlawful action by an unlawfully designated officer and must be set aside. Further, because the Wolf Memorandum was issued in violation of the FVRA, it can have no legal force or effect.

### A. The FVRA Sets Unambiguous Limits on Executive Appointments

Congress has recognized that, under certain circumstances, the practical realities of governance may limit the President's ability to expeditiously seek the advice and consent of the Senate as required by the Appointments Clause. The FVRA thus allows the President to designate acting officials to temporarily perform the functions of vacant offices. *See* 5 U.S.C. §§ 3346(a)(1),

3348(b)(1). The Supreme Court has acknowledged the same: the FVRA redresses a practical problem that arises when "a vacancy arises and the President and Senate cannot promptly agree on a replacement." *NLRB v. SW Gen., Inc.*, 580 U.S. ___, 137 S. Ct. 929, 934 (2017). To "account for this reality," Congress has "authoriz[ed] the President to direct certain officers to *temporarily* carry out the duties of [a vacant office]." *Id.* (emphasis added). *See also* Ben Miller-Gootnick, *Boundaries of the Federal Vacancies Reform Act*, 56 HARV. J. ON LEGIS. 459, 462 (2019).

In enacting the FVRA, Congress did not grant the President a blank check.[9] Rather, the FVRA lays out unambiguous limits on the scope of acting officers. First, the FVRA circumscribes the President's powers by specifying which individuals may be designated acting officers, *see* 5 U.S.C. § 3345(a), and by barring certain individuals from serving as acting officers, *see id.* § 3345(b). Second, it specifies that acting officers are to serve temporarily only, and unequivocally provides that no person may serve "for longer than 210 days beginning on the date the vacancy occurs" absent limited exceptions that are here inapplicable. *Id.* § 3346(a).[10] Acting officers serving in excess of the 210-day limit trigger a clawback provision in the FVRA that requires the office to then "remain vacant," foreclosing additional designations of acting officers, and requiring the President to formally submit a nomination to the Senate. *See id.* § 3348(b)(1). Accordingly, the FVRA bars indefinite vacancies that might allow the President to end-run the Appointments Clause. Furthermore, any action taken by an acting officer whose designation fails to comply with

---

[9] In fact, the FVRA emerged from an era of presidential abuse of the appointments power. Congress enacted the FVRA at a time when over twenty percent of all principal officers served without Senate confirmation, *SW Gen.*, 137 S. Ct. at 936, and it was framed as "a reclamation of the Congress's Appointments Clause power." *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 70 (D.C. Cir. 2015), aff'd, 137 S. Ct. 929 (2017). Indeed, Congress has enacted vacancy statutes since "the beginning of the nation." *Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision,* 139 F.3d 203, 209-10 (D.C. Cir. 1998) (recounting history and development of vacancy statutes).

[10] One way an acting officer may serve longer than the FVRA's 210-day limit is if "a first or second nomination for the office is submitted to the Senate." 5 U.S.C. § 3346(a). In that case, the acting officer may continue to serve while the nomination is pending. Although President Trump on August 25, 2020 nominated Defendant Wolf, because Defendant Wolf did not lawfully assume the role of Acting Secretary, his nomination does not authorize his continuing position or cure the legal defects in this case.

the core provisions of the FVRA "shall have no force or effect," 5 U.S.C. § 3348(d)(1), and may not be ratified, *id.* § 3348(d)(2). Congress thus has responded to the need for bureaucratic continuity while preserving the Senate's authority to supervise executive appointments.

### B.   The HSA Implements a Provision of the FVRA Pertaining to Order of Succession

Sections 3345 and 3346 of the FVRA are the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the consent of the Senate," subject to limited exceptions. 5 U.S.C. § 3347(a). The FVRA contains only one applicable exception here. Section 3347(a)(1) of the FVRA expressly permits an alternative designation process when another statutory provision specifies as such.[11] In the case of DHS, that statutory provision lies in the HSA, which provides that: (1) the Deputy DHS Secretary shall assume the role of Acting DHS Secretary when a vacancy occurs, 6 U.S.C. § 113(a)(1)(A); (2) the Under Secretary for Management shall serve as Acting DHS Secretary if neither the Secretary nor the Deputy Secretary is available, 6 U.S.C. § 113 (g)(1); and (3) the DHS Secretary "may designate such other officers of the Department in further order of succession to serve as Acting Secretary," 6 U.S.C. § 113(g)(2). In other words, the HSA's delegation authority implements Section 3347(a)(1) of the FVRA and does no more. It does not provide a wholly independent source of appointment authority that excuses lack of compliance with the FVRA's requirements.

Section 113 of the HSA provides only a limited exception to the FVRA to direct who may serve in the Acting DHS Secretary role; It does not, as the government recently conceded, supplant the FVRA.[12] And "'when two statutes are capable of coexistence, it is the duty of the courts, absent

---

[11] The other exception, regarding recess appointments, is inapplicable here. 5 U.S.C. § 3347(a)(2).

[12] SOUF ¶ 10:

a clearly expressed congressional intention to the contrary, to regard each as effective.'" *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.,* 534 U.S. 124, 143-44 (2001) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). That is exactly the case with the FVRA and the HSA. The authority granted to the DHS Secretary in Section 113(g) of the HSA is granted "*[n]otwithstanding* chapter 33 of title 5" (which includes the FVRA). 6 U.S.C. § 113(g)(1)-(2). It is well established that "notwithstanding" clauses are relevant only "in the event of a clash" between two provisions. *SW Gen., Inc.,* 137 S. Ct. at 939 (quoting Antonin Scalia and Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 126-27 (2012)). But there is no conflict here, leaving nothing for a "notwithstanding" clause to resolve. No provision of the HSA—let alone Section 113(g)— displaces or alters the 210-day limit on the service of acting officers imposed by Section 3346(a)(1) of the FVRA. Read together, the HSA determines the order by which DHS officers are designated Acting Secretary, and the FVRA imposes temporal limits on that acting position.

### C. The Trump Administration Has Failed to Abide by the Requirements of the FVRA and the HSA

Trump Administration officials have repeatedly sought to alter the order of succession at DHS for no reason other than to ensure that select individuals, like Defendant Wolf, can assume office and push through poorly-reasoned policies while evading Congressional oversight. Despite their repeated attempts, Defendants failed to alter the order of succession lawfully such that Defendant Wolf could properly assume the office of Acting Secretary. In addition, they failed to abide by the FVRA's time limits for acting appointments. For these two independent reasons, the designation of Defendant Wolf as Acting Secretary of DHS was unlawful and the Wolf

---

[THE COURT:] How can I read the HSA as eclipsing the FVRA, replacing the FVRA? . . . [THE GOVERNMENT:] Again, I'm not trying to say [the HSA] eclipses [the FVRA]. I think they are read together, in conjunction, and there are certain provisions that refer to each other and that directs everybody to know when they do overlap; and then the sections that do not refer to each other are exclusive and do not conflict.

Memorandum cannot have the force of law.

### 1. The Designation of Mr. McAleenan as Acting Secretary Was Unlawful, Voiding the November Delegation on Which Defendant Wolf's Designation Rests.

On February 15 2019, through the February Delegation, then-Secretary Nielsen announced an expanded order of designating acting officers for DHS. SOUF ¶ 13. The February Delegation stipulates two separate tracks detailing orders of succession to the office of Acting DHS Secretary. *Id.* ¶ 14. First, in the case of the Secretary's death, resignation, or inability to perform the functions of office, the order of succession is governed by E.O. 13753. *Id*. Second, where the office of Secretary is vacant due to a disaster or catastrophic emergency, Annex A to the February Delegation ("Annex A") defines a separate order of succession. *See id.*

Then, on April 10, 2019,[13] Secretary Nielsen issued a new delegation, the April Delegation, purporting to change the order of succession, *id.* ¶ 24, in an improper attempt to guarantee Mr. McAleenan would lawfully assume the role of Acting Secretary. In the April Delegation, Secretary Nielsen amended only Annex A, providing that, in case of natural disaster or catastrophe, the Secretary would be succeeded by: (1) the Deputy Secretary (then vacant), followed by (2) the Under Secretary for Management (then vacant),[14] and only after by (3) the CBP Commissioner (then Mr. McAleenan). *Id.* ¶ 24-25. Mr. McAleenan then assumed the position of Acting Secretary, *id.* ¶ 22, allegedly relying on the order of succession stipulated by Annex A. But Annex A governed only in cases of natural disaster and catastrophes. Under the April Delegation, if the Secretary *resigned*, the Acting Secretary would instead be designated on the basis of E.O. 13753, since the

---

[13] Secretary Nielsen resigned effective April 7, 2019. *See* SOUF ¶ 17. On that day, Claire Grady was still the Under Secretary for Management, and was the first Senate-confirmed officer in the order of succession for Acting Secretary, as the Office of the Deputy Secretary was vacant. *Id.* ¶ 20. By a tweet later that evening on April 7, Secretary Nielsen communicated her intention to remain in office through April 10 despite her earlier resignation. *Id.* ¶ 19. On April 10, both Nielsen and Grady left office. *Id.* ¶ 19, 21.

[14] SOUF ¶ 21.

April Delegation did not change the order of succession in the event of resignations. *See id.* ¶ 25. As a result, Secretary Nielsen's proper successor when she resigned was the Director of CISA, not Mr. McAleenan, who was *seventh* in the line of succession as Commissioner of CBP. *Id.* ¶ 9, 30. Mr. McAleenan's designation as Acting Secretary was unlawful.

The Administration's efforts to unlawfully write in their preferred Acting Secretaries did not stop with Mr. McAleenan. On November 8, 2019, implicitly acknowledging that the previous delegation was faulty, Mr. McAleenan purportedly issued his own delegation, Delegation 00106 Revision No. 08.6 ("November Delegation"). SOUF ¶ 31, hoping to pave the way for Mr. Wolf to succeed as Acting Secretary. Under the November Delegation, the order of succession in all cases, whether by death, resignation, incapacity, disaster, or catastrophe would be: (1) Deputy Secretary (then vacant), (2) Under Secretary for Management (also vacant), (3) CBP Commissioner (the position to which Mr. McAleenan had been confirmed), and (4) Under Secretary for Strategy, Policy, and Plans (to which Defendant Wolf had been, at the time, nominated, and to which he later would be confirmed). *Id.*[15] The fact that the November Delegation specifies the order of succession in all cases is further evidence that Defendants recognized the Nielsen Delegations maintained two separate tracks.

### 2. Even if His Designation Were Lawful, Mr. McAleenan Issued the November Delegation After Exceeding the FVRA's 210-Day Limit, Rendering it Void.

Even if Mr. McAleenan had been lawfully designated Acting Secretary, he issued the

---

[15] Had the order stipulated by the November Delegation governed at the time of Secretary Nielsen's resignation in April 2019, Mr. McAleenan may have lawfully been designated Acting Secretary. But it unquestionably did not—and an officer impermissibly assuming the functions of Acting Secretary cannot, exercising those functions— retrospectively cure an unlawful appointment. *Cudahy Packing Co. of Louisiana v. Holland*, 315 U.S. 357, 361 (1942) ("A construction of the Act which would thus permit the Administrator to delegate all his duties, including those involving administrative judgment and discretion which the Act has in terms given only to him, can hardly be accepted unless plainly required by its words.").

November Delegation on his 212th day in office,[16] unambiguously past the 210-day limit on acting officers stipulated by the FVRA, and without an applicable time extension. *See* 5 U.S.C. § 3346(a)(1). Accordingly, the November Delegation, which effected changes to the order of succession in order to orchestrate Defendant Wolf's assumption of the Acting Secretary role, has "no force or effect", *id.* § 3348(d)(1), and may not be ratified, *id.* § 3348(d)(2).

On November 13, 2019, five days after issuing the November Delegation and shortly after Defendant Wolf had been confirmed by the Senate as Under Secretary for Strategy, Policy, and Plans, Mr. McAleenan resigned as both Acting Secretary and CBP Commissioner, clearing the way for Wolf to assume the role of Acting Secretary. SOUF ¶ 33. That same day, relying upon the November Delegation, Wolf did just that. *Id.* ¶ 35. But because the November Delegation was void under § 3348(d)(1), Wolf's assumption of the Acting Secretary role was unlawful.

### 3. The Duration of Mr. McAleenan's Purported Tenure as Acting Secretary Triggered the FVRA's Clawback Provision, Prohibiting Defendant Wolf's Appointment

Not only did the duration of Mr. McAleenan's time as purported Acting Secretary invalidate the November Declaration, it also triggered the FVRA's clawback provision. Under this provision, if an Acting Secretary performs the functions or duties of the office in excess of the 210-limit provided in § 3346(a)(1), "the office shall remain vacant." *Id.* § 3348(b)(1). This is a sanction designed by Congress to incentivize Executive compliance with the statute.

The office of Secretary of Homeland Security became "vacant" with the resignation of the last officer confirmed by the Senate. The last such officer, Secretary Nielsen, resigned in April 2019, and the office remained vacant for the duration of Mr. McAleenan's purported designation.

---

[16] The date of Secretary Nielsen's resignation – whether April 7, 2019 or April 10, 2019, does not matter: November 6, 2019 marks 210 days from April 10, 2019, and thus Mr. McAleenan's continued service as Acting Secretary after November 6 and Defendant Wolf's entire service were unlawful under the FVRA.

By the time Mr. McAleenan resigned as the purported Acting Secretary, he had occupied the role for 217 days. SOUF ¶ 33. The time limit on an acting appointment is not automatically reset with the resignation of an Acting Secretary. If that were the case, a President could designate a series of Acting Secretaries for consecutive periods of 210 days, without ever having to present the Senate with a nomination. Thus, even if Mr. McAleenan properly assumed the role of Acting Secretary, and even if Defendant Wolf had lawfully been next in the order of succession, by the time Mr. McAleenan left office, it was required to remain vacant. Neither Defendant Wolf nor any other person could lawfully assume the title of Acting Secretary.[17]

On August 14, 2020, the Government Accountability Office ("GAO"), which under the FVRA shall report to Congress any violation of the time limitations on acting officers, 5 U.S.C. § 3349, issued a report concluding that Defendant Wolf was unlawfully appointed. SOUF ¶ 47.[18] As the GAO has already concluded, this Court should find Defendant Wolf is an unlawfully appointed officer. *See N.M. Health Connections v. HHS,* 340 F. Supp. 3d 1112, 1173 (D.N.M. 2018) ("The GAO Report . . . is still entitled to respect as 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'") (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944)).[19]

---

[17] Defendant Trump's announcement that Defendant Wolf will be nominated to the Senate does not retrospectively render his previous service lawful, nor does it cure the Wolf Memorandum of its legal defect. Defendant Wolf was still unlawfully exercising the functions of Acting Secretary at the time the Wolf Memorandum was issued, and it should be vacated and set aside. In fact, Defendant Wolf's nomination leaves him ineligible to continue as Acting Secretary. Under the FVRA, "a person may not serve as an acting officer," if "the President submits a nomination of such person to the Senate for appointment to such office." 5 U.S.C. § 3345(a)(1)(B). The office of Secretary must remain vacant until an officer is confirmed by the Senate.

[18] Although DHS vociferously objected to the GAO's report and conclusions and called upon it to rescind its report, SOUF ¶ 48, the GAO declined to reverse or modify its report, noting that "DHS has not demonstrated that our prior decision contains error of either fact or law, nor has DHS presented information not previously considered that warrants reversal or modification of our decision," *Id.* ¶ 49.

[19] *Zapata Cty. et al. v. Trump et al.*, No. 20-cv-106 (S.D. Tex. Jul. 6, 2020); *Khudheyer et al. v. Cuccinelli et al.*, No. 20-cv-1882 (D.D.C. Jul. 13, 2020); *CASA de Maryland et al. v. Wolf et al.*, No. 20-cv-2118 (D. Md. Jul. 21, 2020); *Don't Shoot Portland et al. v. Wolf et al.*, No. 20-cv-2040 (D.D.C. Jul. 27, 2020); *Immigrant Legal Resource Center et al. v. Wolf et al.*, No. 20-cv-5883 (N.D. Cal. Aug. 20, 2020); *Pettibone et al. v. Trump et al.*, No. 20-cv-1464 (D. Or. Aug. 26, 2020).

**4. Because Defendant Wolf Has Also Exceeded the FVRA's 210-Day Limit, The Wolf Memorandum is Void Ab Initio**

A final statutory argument remains, albeit one reached only with considerable suspension of disbelief: Even assuming that McAleenan was properly appointed; and that his exceeding the 210-day limit did not invalidate the November Delegation; and that his 214-day duration as purported Acting Secretary did not require the position of Secretary to remain vacant, Wolf himself had exceeded the FVRA's 210-day limit when he issued the Wolf Memorandum. That memorandum was issued on July 28, 2020, Wolf's 256th day of purporting to be Acting Secretary. It therefore violated the FVRA's limit on acting appointments, 5 U.S.C. § 3346(a), has "no force or effect," *id.* § 3348(d)(1), and cannot be ratified, *id.* § 3348(d)(2).

## II. DEFENDANT WOLF'S DESIGNATION AS ACTING SECRETARY ALSO VIOLATES THE APPOINTMENTS CLAUSE

A separate reason for the Court to rule for Plaintiffs on their statutory claim is to avoid the significant constitutional questions that Defendants' conduct raises under the Appointments Clause. The Appointments Clause forbids indefinite acting appointments. Since 2019, the Trump Administration has consistently sought to exploit acting appointments, including that of Defendant Wolf, to evade congressional oversight mandated by the Appointments Clause. Defendant Trump has repeatedly described the designation of acting officers as an alternative to the formal nomination of officers to Congress, expressing his preference for acting appointments because they "give[] me more flexibility." [20] Appointments to the leadership of the Department of Homeland Security exemplify the Trump Administration's disregard of the Appointments Clause. Kirstjen Nielsen was the last person confirmed by the U.S. Senate as Secretary of Homeland Security on December 5, 2017. Since Secretary Nielsen's resignation in April 2019—510 days

---

[20] SOUF ¶ 11. The President stated, "I have 'acting' [sic]. And my 'actings' are doing really great . . . . I sort of like 'acting.' It gives me more flexibility." *Id.*

ago[21]—the Trump Administration has failed to present the Senate with a nominee to the position of Secretary of Homeland Security, relying instead on a series of acting officers, including, most recently, Defendant Wolf. Defendant Wolf's purported designation as Acting Secretary preserves an indefinite vacancy in violation of the Constitution, clearly infringing on the Senate's power of advice and consent over executive appointments.

### A. The Appointments Clause Empowers Congress to Scrutinize Executive Appointments

The Constitution clearly defines Congress's role in supervising Executive appointments. The Appointments Clause requires that the President appoint "Officers of the United States," such as the Secretary of Homeland Security, with "the Advice and Consent of the Senate." U.S. Const., art. II, §2, cl. 2.; 5 U.S.C. § 101. In requiring Congressional oversight of appointments, the Constitution provides an essential safeguard to "curb Executive abuses of the appointments power" and "to promote a judicious choice of persons" for filling positions of vital importance. *Edmond v. United States*, 520 U.S. 651, 659 (1997). The Appointments Clause is designed to prevent the "manipulation of official appointments," considered by the Founders as "the most insidious and powerful weapon of eighteenth century despotism." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 883 (1991) (internal quotation marks and citations omitted). *See id.* ("The Framers understood . . . that, by limiting the appointment power, they could ensure that those who wielded it were accountable to political force and the will of the people . . . ."). Congressional oversight over appointments is "more than a matter of etiquette or protocol; it is among the significant structural safeguards of the constitutional scheme," vital to a system of checks and balances. *Edmond*, 520 U.S. at 659.

---

[21] This appears to be the longest cabinet-level vacancy in history. Secretary Nielsen resigned effective April 7, 2019, but purported to continue exercising her authority until April 10. SOUF ¶¶ 17, 19. Regardless, at a minimum it has been 507 days since Nielsen left office. This is far past the 210 days contemplated by the FVRA. *See infra* Sec. II.C.

### B. Executive Designations That Are Not Temporary Violate the Appointments Clause

Congress and the President may establish a system for addressing temporary vacancies in positions that require the advice and consent of the Senate, just as Congress has done through the FVRA. The Supreme Court has insisted that a "subordinate officer" may only be "charged with the performance of the duty of the superior for a *limited* time, and under *special* and *temporary* conditions." *United States v. Eaton*, 169 U.S. 331, 343 (1898) (emphases added). Courts have acknowledged the possibility that "an acting tenure" may become "so lengthy that it . . . amounts . . . to a circumvention of the Appointments Clause." *United States v. Smith*, 962 F.3d 755, 764 n.3 (4th Cir. 2020); *see also United States v. Hilario*, 218 F.3d 19, 29 (1st Cir. 2000) (commenting that length of tenure by an inferior officer could transform that officer into a principal officer whose "continued service required nomination by the President and confirmation by the Senate").

Presumptively, at least for the head of a department, a temporary designation becomes a permanent appointment that requires the Senate's advice and consent when, *inter alia,* the President "fail[s] to nominate a permanent replacement within the timeframe designated by statute" or "make[s] a statement that implies [the officer's] appointment is permanent." *United States v. Valencia*, 2018 WL 6182755, at *7 (W.D. Tex. 2018). In these instances, the Executive's actions have signaled, explicitly or implicitly, that the officer's designation is no longer temporary. This is especially true for an acting official serving as the head of a department, whom the Executive has no intention of treating as an inferior officer subject to a Senate-confirmed principal official. Under these circumstances, the Executive's actions become an end run of Congress's constitutional power and responsibility under the Appointments Clause.

### C. Constitutionally, Neither Defendant Wolf Nor Any Other Individual May Be Designated Acting Secretary

The Trump Administration left the Secretary's position vacant for over 500 days after Secretary Nielsen resigned, clearly constituting a failure to nominate a permanent replacement within the timeframe designated by statute (210 days) . At that point, the Appointments Clause forbade any additional Acting Secretary designations. Until the Senate formally confirms a new Secretary, the office of Secretary of Homeland Security must remain vacant. Accordingly, neither Defendant Wolf nor any other individual may exercise the functions of Acting Secretary, and the Wolf Memorandum must be set aside as unlawful action by an officer without legal authority.

## III.  THIS COURT SHOULD VACATE THE WOLF MEMORANDUM AND ENJOIN DEFENDANT WOLF FROM TAKING FURTHER ACTION ON DACA

### A. Because Defendant Wolf Was Serving in Violation of the FVRA, the Wolf Memorandum Has No Force or Effect.

Because Defendant Wolf was unlawfully serving as Acting Secretary when he issued the Wolf Memorandum, his Memorandum is void *ab initio*. The FVRA clearly provides that actions by individuals unlawfully exercising the functions of a vacant office "shall have no force or effect." 5 U.S.C. § 3348(d). This Court should accordingly vacate the Wolf Memorandum.

The Supreme Court recently recognized a general rule that "actions taken in violation of the FVRA are *void ab initio*." *SW Gen., Inc.*, 137 S. Ct. at 938 n.2. Other courts have previously held the same: the FVRA "generally renders void actions taken in violation of its provisions." *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 564 (9th Cir. 2016) (voiding agency action because the authorizing officer was not lawfully serving pursuant to the FVRA). *See also Quality Health Servs. of P.R., Inc. v. Nat'l Labor Relations Bd.*, 873 F.3d 375, 383 n.7 (1st Cir.

2017) ("[A]ny action taken in violation of the [FVRA is] void ab initio.").[22] Thus, the proper action for this Court to take is to "set aside as *ultra vires*" the void agency action. *See L.M.-M. v. Cuccinelli*, 442 F.Supp.3d 1, 37 (D.D.C. 2020).

### B. Alternatively, the Wolf Memorandum Should be Set Aside Because Defendant Wolf's Designation Violates the Constitution

In the alternative, the Court should set aside the Wolf Memorandum under the Appointments Clause. Defendant Wolf's designation as Acting Secretary violates the Appointments Clause's prohibition on indefinite acting appointments. Because Defendant's Wolf was never constitutionally appointed, his actions must be set aside.

### C. Defendant Wolf Should Be Enjoined from Making Further Changes to the DACA Program.

Just as the FVRA requires the vacatur of the Wolf Memorandum, it also contemplates injunctive relief prohibiting Defendant Wolf from taking any further official action on the DACA program. The FVRA speaks equally on prior and future conduct: *any* agency action undertaken by an unlawfully-designated officer "in the performance of any function or duty of [that] vacant office . . . shall have no force or effect." 5 U.S.C. § 3348(d). If Defendant Wolf continues to unlawfully occupy the Office of DHS Secretary, this Court should exercise its equitable powers to prevent him from unlawfully interfering with the DACA program in the future.

Enjoining further unlawful action would not only satisfy the FVRA's remedial scheme; it would also carry forward the Appointments Clause's purpose of "curb[ing] Executive abuses of the appointment power." *Edmond*, 520 U.S. at 659. A litigant challenging the constitutional validity of an appointment under the Appointments Clause "is entitled to . . . whatever relief may

---

[22] These courts recognize a non-absolute "general" rule because 5 U.S.C. § 3348(e) exempts certain officeholders from the FVRA's remedial scheme. For example, actions taken in violation of the FVRA by the General Counsel of the National Labor Relations Board are not *void ab initio* (but may still be voidable). 5 U.S.C. § 3348(e)(1). But, importantly, none of § 3348(e)'s exemptions apply in this case.

be appropriate if a violation indeed occurred." *Ryder v. United States*, 515 U.S. 177, 182-83 (1995). Here, only an injunction against future action (in addition to the vacatur of the Wolf Memorandum) would appropriately address the dire constitutional concerns posed by Defendant Wolf's continued occupation of the Office of DHS Secretary without valid appointment. *See Williams v. Phillips*, 360 F. Supp. 1363, 1371 (D.D.C. 1973) ("[T]he Court finds that the defendant Phillips was not appointed lawfully to his post as Acting Director [under the Appointments Clause]. . . . An injunction will issue to restrain him from taking any actions as Acting Director . . . ."); *see also Olympic Fed. Sav. & Loan Ass'n v. Dir., Office of Thrift Supervision*, 732 F. Supp. 1183, 1202 (D.D.C. 1990), *appeal dismissed and remanded*, 903 F.2d 837 (D.C. Cir. 1990) (finding prospective injunctive relief appropriate when officers were not constitutionally appointed).

## CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court vacate the Wolf Memorandum and enjoin Defendant Wolf from taking further action on DACA because Defendant's Wolf designation as Acting Secretary violates the FVRA and HSA. In the alternative, Plaintiffs request the Wolf Memorandum be set aside because Defendant's Wolf designation violates the U.S. Constitution.

Dated: August 28, 2020

Respectfully submitted,

/s/ Muneer I. Ahmad
Maria Camila Bustos, Law Student Intern*
Armando Ghinaglia, Law Student Intern
Edgar A. Melgar, Law Student Intern*
Ramis Wadood, Law Student Intern
Muneer I. Ahmad, Esq. (MA 9360)
Marisol Orihuela, Esq. (*pro hac vice*)
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SERVICES ORG.

Trudy S. Rebert, Esq. (TR 6959)
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 721361
Jackson Heights, NY 11372
(646) 867-8793

Araceli Martínez-Olguín, Esq. (AM 2927)
Mayra B. Joachin, Esq. (*pro hac vice*)

P.O. Box 209090
New Haven, CT 06520
(203) 432-4800

Karen C. Tumlin, Esq. (*pro hac vice*)
Cooperating Attorney
JEROME N. FRANK LEGAL SERVICES ORG.
P.O. Box 209090
New Haven, CT 06520
(323) 316-0944

NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900

Paige Austin, Esq. (PA 9075)
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
(718) 418-7690

*Attorneys for Plaintiffs*

\* Motion for law student appearance
forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, a true and correct copy of the foregoing Memorandum of Law was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Muneer I. Ahmad
Muneer I. Ahmad, Esq. (MA 9360)
JEROME N. FRANK LEGAL SERVICES ORG.
muneer.ahmad@yale.edu
P.O. Box 209090
New Haven, CT 06520
(203) 432-4800