**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

---

MARTÍN JONATHAN BATALLA VIDAL, et al.,

        *Plaintiffs*,

    v.

CHAD WOLF, et al.,

        *Defendants*.

Case No. 1:16-cv-04756 (NGG)(JO)

---

**BRIEF OF AMICUS CURIAE MORTON ROSENBERG
IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

UPNIT K. BHATTI
MARK S. DAVIES
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005
(202) 339-8400
ubhatti@orrick.com
mark.davies@orrick.com

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ......................................................................... 1

BACKGROUND ................................................................................................... 2

A.   After Watergate, the President installed indefinitely "acting" appointees to evade the Senate's more rigorous confirmation process. ................................ 2

B.   The FVRA reasserts congressional authority and limits presidential flexibility. .............. 3

C.   Acting Secretary Wolf assumes his post in violation of the FVRA. .................................. 5

SUMMARY OF ARGUMENT ................................................................................ 5

ARGUMENT ........................................................................................................ 6

I.   Chad Wolf's Service as Acting DHS Secretary Violates the FVRA. ................................. 6

II.   The FVRA's Time Limits Apply to Acting Officials Who Assume Their Offices via Agency-Specific Succession Statutes Like the Homeland Security Act. ......................... 8

A.   Congress Intended for the FVRA's Time Limits to Apply Even Where an Acting Official Assumes Their Office Through An Agency-Specific Succession Statute ................................................... 9

B.   The Department of Homeland Security's Housekeeping Statute does not Displace the FVRA's Time Limits on its own Terms ......................................... 13

III.   Vacatur of the Wolf Memorandum is Required. ............................................................ 14

CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Doolin Sec. Sav. Bank, FSB v. Office of Thrift Supervision*,
  139 F.3d 203 (D.C. Cir. 1998) ..............................................................10, 11, 12, 14

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ................................................................................................13

*L.M.-M. v. Cuccinelli*,
  No. 19-2676, 2020 WL 985376 (D.D.C. Mar. 1, 2020) .........................................15

*Matter of: Dep't of Homeland Sec.—Legality of Serv. of Acting Sec'y of
  Homeland Sec. & Serv. of Senior Official Performing the Duties of Deputy
  Sec'y of Homeland Sec.*
  (Aug. 14, 2020) ..........................................................................................................8

*Morton v. Mancari*,
  417 U.S. 535 (1974) ................................................................................................14

*NLRB v. Sw. Gen., Inc.*,
  137 S. Ct. 929 (2017) ...................................................................................... *passim*

*Sw. Gen., Inc. v. NLRB*,
  796 F.3d 67 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017)..........................1, 15, 16

*United States v. Borden Co.*,
  308 U.S. 188 (1939) ................................................................................................14

**Statutes**

5 U.S.C. § 706................................................................................................................15

5 U.S.C. § 3345(a) & (a)(1) ............................................................................................4

5 U.S.C. § 3346(a)(1)..........................................................................................4, 6, 7, 11

5 U.S.C. § 3347(a) ......................................................................................................5, 9

5 U.S.C. § 3347(a)(1)(A)-(B) .........................................................................................9

5 U.S.C. § 3348(d) ..................................................................................................14, 15

5 U.S.C. § 3348(d)(1) .........................................................................................6, 7, 8, 15

5 U.S.C. §§ 3446(a)(1), 3348(b)(1) ................................................................................6

iii

6 U.S.C. § 112(a)(1) ...................................................................................................7

6 U.S.C. § 113 ...........................................................................................................13

6 U.S.C. § 113(g)(1)-(2) ............................................................................................13

28 U.S.C. §§ 509-10 ...................................................................................................3

American Law Division ...............................................................................................1

Federal Vacancies Reform Act of 1998 ................................................................ *passim*

Homeland Security Act ....................................................................................2, 6, 7, 13

Morton Rosenberg, Specialist in American Public Law ...............................................1

*New Vacancies Act* ...........................................................................................10, 13

President act ..............................................................................................................11

Vacancies Act .......................................................................................................*passim*

**Other Authorities**

144 Cong. Rec. S11023 (Sept. 28, 1998) (statement of Senator Robert Byrd) ..........................12

Brannon P. Denning, *Article II, the Vacancies Act and the Appointment of*
   *"Acting" Executive Branch Officials,* 76 Wash. U. L.Q. 1039, 1050 n.60
   (1998) ...................................................................................................................2

Brannon P. Denning, *Article II, the Vacancies Act and the Appointment of*
   *"Acting" Executive Branch Officials*, 76 Wash. U. L.Q. 1039, 1061 (1998) ..........................2

Joshua L. Stayn, *Vacant Reform: Why the Federal Vacancies Reform Act of 1998*
   *is Unconstitutional*, 50 Duke LJ., 1511, 1513 n.8 (2001) ..........................................2

Morton Rosenberg, Cong. Research Serv., *Validity of Designation of Bill Lann*
   *Lee as Acting Assistant Attorney General for Civil Rights* (Jan. 1998) ..........................1

*Oversight of the Implementation of the Vacancies Act: Hearing on S. 2176 Before*
   *the S. Comm. on Governmental Affairs*, 105th Cong. at 65-115 (Mar. 18,
   1998) ..................................................................................................................12

No. 98-892, Report for Congress, *The New Vacancies Act: Congress Acts to*
   *Protect the Senate's Confirmation Prerogatives* (Nov. 1998) ..................................1, 10

*Rosenberg Memo I* ...................................................................................................1

*Rosenberg Memo II* ..............................................................................................1, 3

iv

S. Rep. 105-250.................................................................................................. *passim*

Stephen Migala, *The Vacancies Act and an Acting Attorney General*, 36 Ga. St.
    U. L. Rev. 699, 708-09 (2020)........................................................................3

U.S Constitution................................................................................................12

*Vacancies Act: Hearings on S. 1764 Before the Senate Committee on*
    *Governmental Affairs*, 105th................................................................................1

Vacancies Act. S. Rep. 105-250 (1998)..........................................................6

**Suspects**

Section 113(a)(1)(A)..........................................................................................13

**INTEREST OF AMICUS CURIAE**

Morton Rosenberg is a leading authority on the Federal Vacancies Reform Act of 1998 (FVRA).  This brief explores the history of the FVRA and the context of its enactment, which are relevant to Plaintiffs' challenge.

Before retiring in 2008, Mr. Rosenberg spent over three decades as an analyst in the American Law Division of the Congressional Research Service (CRS or Service).  There, he advised Congress on many issues of constitutional law, administrative law, and congressional practices and procedure, with a special emphasis on Executive appointments.

In particular, Mr. Rosenberg was intimately involved in the enactment of the FVRA.  He testified before Congress during the legislative debate over the legislation.  *See Oversight of the Implementation of the Vacancies Act: Hearings on S. 1764 Before the Senate Committee on Governmental Affairs*, 105th Cong., at 40, 170 (Mar. 18, 1998) (S. Hrg. 105-495) (*FVRA Hearings*) (Statement of Morton Rosenberg, Specialist in American Public Law, Congressional Research Service).  He wrote the report for Congress detailing the problems with previous appointments laws that lead directly to the Act's enactment.  *See* Morton Rosenberg, Cong. Research Serv., *Validity of Designation of Bill Lann Lee as Acting Assistant Attorney General for Civil Rights* (Jan. 1998) (*Rosenberg Memo I*), *reprinted in FVRA Hearings*, *supra*, at 62-131.  And after Congress passed the Act, he wrote another report informing Congress as to how it was being implemented.  *See Morton Rosenberg*, Cong. Research Serv., No. 98-892, Report for Congress, *The New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogatives* (Nov. 1998) (*Rosenberg Memo II*).

His experience and expertise have been recognized by courts and commentators.  His writings have been cited by the Supreme Court, *see NLRB v. Sw. Gen., Inc.*, 137 S. Ct. 929, 935 (2017); the D.C. Circuit, *see Sw. Gen., Inc. v. NLRB*, 796 F.3d 67, 70 (D.C. Cir. 2015), *aff'd*, 137

1

S. Ct. 929 (2017); and in academic articles, *see* Joshua L. Stayn, *Vacant Reform: Why the Federal Vacancies Reform Act of 1998 is Unconstitutional*, 50 Duke LJ., 1511, 1513 n.8 (2001); Brannon P. Denning, *Article II, the Vacancies Act and the Appointment of "Acting" Executive Branch Officials,* 76 Wash. U. L.Q. 1039, 1050 n.60 (1998).  All have treated his views on the Act's legislative background as authoritative.

Mr. Rosenberg writes to provide the Court with his unique experience with and expertise on the Act, and to detail why the appointment of Chad Wolf to serve as Acting Secretary of the Department of Homeland Security violates the restrictions of the Act.[1]

## BACKGROUND

The legality or illegality of Defendant Chad Wolf's service as Acting Director of Homeland Security depends on whether the strict time limits in the FVRA apply generally to acting officials, including those that assume their offices via agency-specific succession statutes like the Homeland Security Act.[2]  Congress passed the Act to limit the Executive's ability to evade Senate confirmation, following post-Watergate appointment abuses.  Because Congress sought to prevent evasion of constitutional advice-and-consent requirements, the FVRA's requirements are strict.

### A.  After Watergate, the President installed indefinitely "acting" appointees to evade the Senate's more rigorous confirmation process.

The FVRA emerged from Watergate's fires, which smoldered for decades.  President Nixon's Saturday Night Massacre decimated the Justice Department's senior ranks and reminded voters and leaders that principal officers must answer to Congress and the people and not just the President.  Brannon P. Denning, *Article II, the Vacancies Act and the Appointment of "Acting"*

---

[1]   No party or their counsel authored this brief in whole or in part or contributed money intended to fund preparing or submitting this brief.

[2]   Plaintiffs' brief makes arguments in addition to and independent of the FVRA that show Wolf did not succeed under the HSA to the position of Acting Secretary.

*Executive Branch Officials*, 76 Wash. U. L.Q. 1039, 1061 (1998).  That made confirmations more politicized, which in turn made the "vetting process for potential officeholders . . . more complex, difficult and protracted."  *Rosenberg Memo II*, *supra*, at 8.  It also left the federal government with far more positions requiring Senate confirmation than could be timely processed.

To alleviate this shortage of Senate-confirmable nominees, the Justice Department's Office of Legal Counsel ("OLC") sought ways to stretch temporary acting appointments past the Vacancies Act's strict time limits.  OLC claimed to find an option in agencies' "housekeeping" statutes (such as those of the Justice Department, *see* 28 U.S.C. §§ 509-10), which empower agency heads to delegate functions to subordinates.  *Rosenberg Memo II*, *supra*, at 1.  OLC argued that these delegating provisions gave executive-agency heads "independent authority"—"apart from the Vacancies Act" —to fill vacant offices.  *Sw. Gen.*, 137 S. Ct. at 935.

This caused scandal.  With "options" to bypass the Vacancies Act's mandatory scheme for temporary appointments, Presidents could routinely evade the specific conditions that Congress had placed on those appointments.  And things got worse over time:  By 1998, twenty percent of the 320 positions requiring Senate-confirmed appointees were staffed by temporary appointees; and most of these temporary appointees had served far more than the 120 days allowed under the then-applicable Vacancies Act.  *Rosenberg Memo II*, *supra*, at 1.

**B.  The FVRA reasserts congressional authority and limits presidential flexibility.**

Congress responded to these Executive encroachments with the FVRA, which returned control over temporary appointments to Congress.  Indeed, the FVRA was "[m]eant to override 'housekeeping' provisions in organic acts that give department heads broad power to appoint any person to act in virtually any inferior office."  Stephen Migala, *The Vacancies Act and an Acting Attorney General*, 36 Ga. St. U. L. Rev. 699, 708-09 (2020); *see also NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 936 (2017) ("Perceiving a threat to the Senate's advice and consent power . . . Congress

acted again.  In 1998, it replaced the Vacancies Act with the FVRA.").  And as discussed in greater detail, *infra*, Congress, in enacting the FVRA, sought to "prevent[ ] [the Justice Department] from arguing that departments with vesting and delegation statutes are exempt from the Vacancies Act." S. Rep. 105-250, at 10 (1998).

Under the FVRA, if a Senate-confirmed officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office . . . [those] functions and duties of the office" are automatically assumed by "the first assistant to the office of such officer."  5 U.S.C. § 3345(a) & (a)(1).  That "first assistant to the office" is usually a clearly pre-identified top deputy of a presidentially appointed, Senate-confirmed officer—and that pre-identified person automatically slots into the role.  *Id.*  If the President prefers someone else, the Act allows him or her some choice, within strict limits.  One option is a designee who already serves in a presidentially appointed, Senate-confirmed office in some agency, *see id.* § 3345(a)(2), assuring that the Senate has vetted the candidate at least in part.  Another option is a designee who has previously served in the relevant agency for more than 90 days within the year preceding the vacancy and earns a rate of pay at or above a position at GS-15 of the General Schedule, *see id.* § 3345(a)(3), ensuring a level of experience that would enable the candidate to understand the office's functions and responsibilities.

The FVRA then imposes strict limits on the time that an executive branch agency can be led by an acting official.  Acting officials may serve in a Senate-confirmed post "for no longer than 210 days beginning on the date the vacancy occurs."  5 U.S.C. § 3346(a)(1).  When the FVRA's 210-day window lapses, "the office shall remain vacant."  *Id.* § 3348(b)(1).  Critically, actions taken by an official serving in violation of these provisions "shall have no force or effect" and "may not be ratified."  *Id.* § 3348(d)(1), (2).

The FVRA provides the "exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive Agency."  5 U.S.C. § 3347(a). Although it allows for agency-specific statutes to dictate an order of succession that deviates from the FVRA's default scheme discussed above, *see id.*, Congress fully intended for the FVRA's time limits to apply to acting officials assuming their posts under such statutes.  Indeed, under the FVRA, the executive branch enjoys only "limited flexibility in appointing temporary officers."  S. Rep. No. 105-250, at *13.  Congress locked down the acting-appointment scheme so tightly to address the executive-branch abuses that motivated the FVRA's overhaul of the law on acting appointments.

### C.  Acting Secretary Wolf assumes his post in violation of the FVRA.

The circumstances surrounding Wolf's assumption of the position of Acting DHS Secretary offer a master class in how executive branch officials have unlawfully circumvented the FVRA and the Constitution itself.  The Department of Homeland Security has not been led by a Senate-confirmed Secretary in nearly 500 days.  *See* Dkt. 308 (Am. Compl.) ¶¶ 158-162.  During that time, the President has not bothered to submit a new nominee for DHS Secretary and has instead relied principally on two separate acting officials to serve in the posts—Kevin McAleenan and Chad Wolf—each of whom has done so in violation of the FVRA's requirement that the Department of Homeland Security not be led by an acting official for more than 210 days.  *See infra* pp. 6-8.  McAleenan and Wolf have nonetheless taken actions of enormous consequence, including proposing and finalizing the Wolf Memorandum that has prompted the current suit.

### SUMMARY OF ARGUMENT

It is beyond dispute that the Wolf Memorandum was promulgated by an acting official who served beyond the time limits set forth in the FVRA.  The FVRA sets forth strict time limits, under which such an acting official may serve "for no longer than 210 days beginning on the date the

vacancy occurs," after which point "the office shall remain vacant."  5 U.S.C. §§ 3446(a)(1), 3348(b)(1).  The last Senate-confirmed DHS Secretary vacated the position on April 10, 2019, at the latest.  The 210-day window lapsed on November 6, 2019, and Defendant Wolf assumed the role of Acting Secretary a week later on November 13.  Wolf issued the Wolf Memorandum several months later.

The only remaining question is whether the Homeland Security Act ("HSA"), which provides for a separate succession scheme, displaces the FVRA's time limits.  It does not. Congress's primary purpose in enacting the FVRA was to "foreclose" agency heads' use of such statutes to evade the time limits in the old Vacancies Act.  S. Rep. 105-250, at *17 (1998).  In any event, nothing in the HSA—which modifies the order of succession that would have otherwise been applicable under the FVRA—purports to lengthen or otherwise displace the FVRA's strict time limits.  On the contrary, the HSA shows that the FVRA's time limits were meant to apply.

Defendant Wolf's tenure as Acting DHS Secretary was, and is, unlawful under the FVRA. And the remedy for actions taken by an acting official serving in violation of the FVRA is vacatur. *See* 5 U.S.C. § 3348(d)(1) (providing that such actions "shall have no force or effect").  The Wolf Memorandum issued by Defendant Wolf is thus invalid, and the Court should therefore grant Plaintiffs' motion for partial summary judgment.

## ARGUMENT

### I.    Chad Wolf's Service as Acting DHS Secretary Violates the FVRA.

The plain text of the FVRA is dispositive in determining whether an acting officer's continued service is unlawful.  *See NLRB v. SW Gen., Inc.*, 137 S.Ct. 929, 942 (2017).  It provides that an acting officer may serve in a vacancy that requires Senate confirmation "for no longer than 210 days beginning on the date the vacancy occurs," with limited exceptions that are inapplicable here.  5 U.S.C. § 3346(a)(1); *see id.* § 3345.  After 210 days without a Senate-confirmed officer,

"the office shall remain vacant." *Id.* § 3348(b)(1). And any "action taken by any person who is not acting" in according with these requirements "in the performance of any function or duty of a vacant office . . . shall have no force or effect." *Id.* § 3348(d)(1); *see infra* pp. 14-15.

Wolf's tenure as Acting Secretary of Homeland Security is subject to the FVRA's time limits. There is no dispute that he is currently serving in a position that requires Senate confirmation. The Homeland Security Act provides that the "Secretary of Homeland Security" is "appointed by the President, by and with the advice and consent of the Senate." 6 U.S.C. § 112(a)(1). Under the FVRA's plain text, Wolf's tenure as Acting Secretary is governed by the FVRA and is therefore limited to 210 days beginning on the date the vacancy occurs. 5 U.S.C. § 3346(a)(1).

The position of Secretary of Homeland Security became vacant following the resignation of Secretary Kirstjen Nielsen. *See* Dkt. 308 ¶¶ 138-142. The vacancy occurred on either April 7 or April 10, 2019: On April 7, Nielsen announced her resignation in a public letter, which stated that her resignation would be effective that same day. *Id.* ¶ 138. Several hours after this announcement, however, she announced that she would remain Secretary until April 10. *Id.* ¶ 141. Assuming that "the vacancy occur[red]" under the FVRA on April 10, the 210-day time limit lapsed on November 6, 2019. 5 U.S.C. § 3346(a)(1). Under a straightforward application of the FVRA, no official has lawfully served as Acting DHS Secretary since November 6, 2019, at the latest. *See* Dkt. 311 (MSJ Mem.) at 18 n.16. Chad Wolf, however, did not even assume the post until a week later on November 13 following the resignation of Kevin McAleenan—who was also not confirmed by the Senate. *See* Dkt. 308 ¶ 161. Wolf's tenure as Acting Secretary therefore violates the time limits set forth in the FVRA, and unambiguously so. The Government Accountability Office found as much, concluding under the FVRA that

7

> [U]pon the resignation of Secretary Kirstjen Nielsen, the express terms of the then existing designation required the Director of the Cybersecurity and Infrastructure Security Agency . . . to assume that title instead of . . . Kevin McAleenan.  As such, the subsequent appointments of . . . Chad Wolf and . . . Ken Cuccinelli were also improper because they relied on an amended designation made by Mr. McAleenan.

*See* U.S. Gov't Accountability Office, *Decision—Matter of: Dep't of Homeland Sec.—Legality of Serv. of Acting Sec'y of Homeland Sec. & Serv. of Senior Official Performing the Duties of Deputy Sec'y of Homeland Sec.* (Aug. 14, 2020).

Worse, Wolf assumed the post under new succession orders promulgated by McAleenan *after* the 210-day window had lapsed.  Dkt. 308 ¶ 153.  McAleenan purported to amend the DHS Orders of Succession & Delegation on November 8, two days after the latest possible date that the time limits could have expired.  *See id.* ¶¶ 153-157.  Wolf therefore assumed the post of Acting Secretary pursuant to succession amendments promulgated by an official who was serving in violation of the FVRA, causing those amendments to "have no force or effect."  5 U.S.C. § 3348(d)(1).  Wolf's tenure as Acting Secretary is therefore doubly deficient under the FVRA with important implications for the present suit:  If McAleenan had no authority to change the succession rules, then Wolf had no authority to issue the Wolf Memorandum.

## II.  The FVRA's Time Limits Apply to Acting Officials Who Assume Their Offices via Agency-Specific Succession Statutes Like the Homeland Security Act.

Wolf's tenure as Acting Secretary is plainly unlawful under the FVRA, and it is no answer that he assumed his position under a separate agency-specific succession statute.  To be sure, the FVRA allows another statute to dictate a different means for "temporarily" authorizing an acting official to perform the functions and duties of any office of an Executive agency that requires Senate confirmation.  But the fact that Congress allowed agencies to install their own succession schemes does not mean that the rest of the FVRA—including its strict time limits—is inapplicable.  An agency may be able to designate an order of succession under its organic statute, but the

FVRA's time limits and restrictions on authority to act apply regardless of *how* a person comes to a position requiring Senate confirmation.  To hold otherwise would flout Congress's intent in enacting the FVRA in the first place.  And, in any event, DHS's housekeeping statute does not even purport to disturb the FVRA's time limits.  On the contrary, it indicates that those limits apply to successors serving as Acting Secretary.

### A. Congress Intended for the FVRA's Time Limits to Apply Even Where an Acting Official Assumes Their Office Through An Agency-Specific Succession Statute

The FVRA provides "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate."  5 U.S.C. § 3347(a).  It contains an exception, however, for agency-specific statutes that "expressly" implement some other succession scheme.  *Id.*  This exception allows so-called agency "housekeeping statutes" to "temporarily" designate some other official to serve in an acting capacity.  5 U.S.C. § 3347(a)(1)(A)-(B).  The FVRA's use of the word "temporarily" makes clear that when acting agency heads assume their posts via housekeeping statutes, the length of their service is necessarily limited.  Rather than displace the FVRA's time limits, these provisions underscore their applicability to all acting agency heads regardless of how they assume their posts.

Were there any remaining doubt about the applicability of the FVRA's time limits to acting DHS Secretaries, it would be dispelled by the statute's unambiguous legislative history.  Indeed, agency heads' overwhelming reliance on housekeeping statutes to evade the time limits under the old Vacancies Act was the impetus for enacting the FVRA in the first place.  *See* Migala, *supra*, at 708-09; *see also NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 936 (2017).  Prior to the FVRA, agency heads—at the urging of the Justice Department—responded to vacancies by simply delegating a vacant office's duties to a particular individual without needing to seek Senate confirmation.  *See*

*SW Gen.*, 137 S. Ct. at 936.  This delegation strategy enabled agency heads to avoid the Vacancies Act's time restrictions, so much so that by the time of the FVRA's enactment "some 20% of the 320 advice and consent positions in [executive] departments were being filled by temporary designees, most of whom had served beyond the [prior] 120-day limitation period of the Act without presidential submissions of nominations."  Morton Rosenberg, Cong. Research Serv., No. 98-892, Report of Congress, *The New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogative*, at 1 (Nov. 1998) (*The New Vacancies Act*); *see also id.* at 4 ("In all of the 14 executive departments there were, as of February 28, 1998, 64 acting officials in the 320 advice and consent positions, 43 of whom were serving beyond the 120-day limit of the Act.").

Agency heads' reliance on housekeeping statutes to circumvent the Vacancies Act's time limits unsurprisingly gave rise to "interbranch conflict" in the years preceding the enactment of the FVRA.  *SW General*, 137 S. Ct. at 935.  And the sanctioning of this conduct by the judiciary in 1998 was the straw that broke the camel's back.  *See Doolin Sec. Sav. Bank, FSB v. Office of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998).  Before leaving office, Clinton Administration Office of Thrift Supervision Director Timothy Ryan relied on a housekeeping statute to delegate the entirety of his office's powers to Deputy Director Jonathan Feichter.  Feichter proceeded to exercise these powers for the next four years before being replaced by another acting director, Nicolas Retsinas.  When a regulated entity challenged the legality of an enforcement action instituted by Feichter and continued by Retsinas on the grounds that neither official lawfully occupied the director's office under the Vacancies Act, the U.S. Court of Appeals for the D.C. Circuit upheld the agency's action.  *See Doolin*, 139 F. 3d at 204.[3]

---

[3]    The Court did not reach the constitutional question of whether the agency's succession scheme violated the Appointment's Clause.

*Doolin* forced Congress's hand in two relevant ways.  First, the Court held that the time limit for acting officials under the old Vacancies Act runs from the date an agency official assumed the vacant post, as opposed to the date the vacancy occurred.  *Id.* at 208-09 ("Nothing in the Act expressly deals with the amount of time that may transpire before the President exercises his . . . authority to designate a temporary replacement.").  The Senate Committee on Governmental Affairs asserted in a July 1998 Committee Report that "this portion of the court's opinion necessitate[d] legislative action."  S. Rep. No. 105-250, at 6 (1988).  In the Committee's view, "[i]f the purpose of the Vacancies Act is to limit the President's power to designate temporary officers, a position requiring Senate confirmation may not be held by a temporary appointment for as long as the President unilaterally decides."  *Id.* at *7.  "Such a scheme obliterates the constitutional requirement that the officer serve only after the Senate confirms the nominee."  *Id.* The FVRA addressed this concern by starting the clock "beginning on the date the vacancy occurs," thus underscoring Congress' desire that the President act quickly to nominate a replacement.  5 U.S.C. § 3346(a)(1).

Second, the Court observed that under its interpretation of the Vacancies Act, the President will have an "incentive" to submit a nomination when the time limits lapse for fear that the actions of part of his administration will be declared void.  *Doolin*, 139 F.3d at 211.  In the Committee's view, "this part of the court's opinion also show[ed] the need for Congressional correction action" given the Justice Department's assertions that "many [existing] vesting and delegation provisions in the organic statutes of various departments" would ultimately result in "few positions . . . remain[ing] vacant."  S. Rep. 105-250 at *7.  The Committee asserted that this state of affairs "would give the President no reason to comply with the Vacancies Act," and thus intended for the FVRA to bind agencies that would have otherwise relied on their own housekeeping statutes to fill

11

vacancies.  *Id.*  The *Doolin* Court, after all, "seem[ed] not to understand the fundamental purpose of the Vacancies Act, which is not to ensure the legality of acting officials, but rather to limit the power of the President to name acting officials, *as well as the length of service of those officials*." *Id.* at *7-*8 (emphasis added).

The Congress that enacted the FVRA thus intended to put time limits on the service of acting officials in order to safeguard the Senate's advice and consent role under the Constitution. And it expressly rejected the Department of Justice's position "that where a department's organic act vests the powers and functions of the department in its head and authorizes that officer to delegate such powers and functions to subordinate officials or employees as she sees fit, such authority supersedes the Vacancies Act's restrictions on temporary filling vacant advice and consent positions, allowing for designation of acting officials for an indefinite period, even without submitting a nomination to the Senate to fill the position on a permanent basis."  *Id.* at *3. According to the Committee on Governmental Affairs, "[t]his interpretation of the law is wholly lacking in logic, history, or language" and if adopted, would cause "the Vacancies Act [to] be of no practical effect, thwarting the constitutional mandate that persons serving in advice and consent positions do so through the Senate's approval of such service."  *Id.*

Thus, in enacting the FVRA, Congress sought to "prevent[ ] [the Justice Department] from arguing that departments with vesting and delegation statutes are exempt from the Vacancies Act." *Id.* at 10.  According to one senior Senator, the FVRA was meant to stop agency heads' use of housekeeping statutes as "an end-run around the Vacancies Act, an end-run around the U.S. Senate, and [an] end-run around the U.S Constitution."  *Oversight of the Implementation of the Vacancies Act: Hearing on S. 2176 Before the S. Comm. on Governmental Affairs*, 105th Cong. at 65-115 (Mar. 18, 1998) (statement of Senator Robert Byrd); *see also* 144 Cong. Rec. S11023,

S11024 (Sept. 28, 1998) (statement of Senator Robert Byrd) (similar).  The FVRA "forecloses the argument" that the strictures of the Vacancies Act do not apply to agencies that rely on housekeeping statutes to fill vacant positions.  S. Rep. 105-250 at 17.  Indeed, the use of housekeeping statutes was the primary ill Congress sought to remedy with FVRA.  Migala, *supra*, at 708-09; *see also The New Vacancies Act*, *supra*, at 2-4.  This backdrop makes clear that while the FVRA allows for housekeeping statutes to designate separate succession schemes, those statutes to do not displace the rest of the FVRA, including its time limits.

### B.     The Department of Homeland Security's Housekeeping Statute does not Displace the FVRA's Time Limits on its own Terms

The unambiguous legislative history of the FVRA aside, nothing in the Department of Homeland Security's housekeeping statute purports to disturb the FVRA's time limits.  If anything, the HSA shows that the FVRA's time limits were meant to apply.  The HSA addresses succession within the agency at 6 U.S.C. § 113.  Section 113(a)(1)(A) states that the Deputy Secretary shall be the "first assistant" to the Secretary "for purposes of [the FVRA]," and is therefore subject to the FVRA's time limits.  Section 113 further provides that the Under Secretary for Management shall serve as the Acting Secretary if the Deputy Secretary is unable to do so, and also allows the Secretary to "designate such other officers of the Department in further order of succession to serve as Acting Secretary."  6 U.S.C. § 113(g)(1)-(2).  It would be odd, if not absurd, for the HSA to impose the FVRA's time limits on the Deputy Secretary but not on lower ranked officials assuming the acting role.  The Court should reject such an interpretation.  Courts, after all, must "interpret [a] statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into a harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

Beyond that, nothing in Section 113 addresses time limits for the Acting Secretary.  It is completely silent on the matter.  The Court should not construe this silence as displacing the

FVRA's time limits because "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *see also United States v. Borden Co.*, 308 U.S. 188, 198 (1939) ("When there are two acts upon the same subject, the rule is to give effect to both if possible . . . . The intention of the legislature to repeal 'must be clear and manifest.").

### III.   Vacatur of the Wolf Memorandum is Required.

As should now be clear, Chad Wolf's tenure as Acting Secretary unambiguously violates the FVRA's time limits, and it is no answer that he assumed his position through DHS's housekeeping statute.  The remaining question is the remedy for actions taken by Wolf during his unlawful tenure as Acting Secretary.  The answer to that question is clear:  vacatur.

First, vacatur is required under the terms of the Act itself.  The FVRA has its own enforcement mechanism; if an agency's function or duties are being performed temporarily by someone whom the Act does not authorize to perform them, then actions taken by this person "shall have no force or effect" and "may not be ratified."  5 U.S.C. § 3348(d).  In other FVRA lawsuits, the government has argued that vacatur of *ultra vires* agency action is appropriate only when the purported official performed some statutory or regulatory duty that expressly specified itself to be non-delegable.  But the FVRA's text reflects no such qualification.

Such a drastic limitation would also undermine the very purpose of the FVRA's statutory remedy.  This enforcement mechanism was created to overturn the aforementioned *Doolin* decision, which held that actions by temporary officers acting *ultra vires* should be considered harmless when they are later ratified by a properly appointed official.  *See Doolin*, 139 F.3d at 211; S. Rep. No. 105-250, at 8 (*Doolin*'s harmless error conclusion in light of subsequent ratification action "demands legislative response").  Congress's "legislative response" was to make

14

vacatur the automatic, universal, and mandatory remedy for *all* violations of the FVRA's appointment provisions—going so far as to preclude even subsequent ratification to cure an FVRA violation.  In drafting a remedial provision so absolute, Congress did not mean to have that remedy apply to only a smattering of applications in a few isolated statutory contexts; it certainly did not intend to do so through legislative silence in *other* statutes.

Application of the statutory remedy requires vacatur of the Wolf Memorandum that Plaintiffs have challenged.  There is no dispute that Defendant Chad Wolf issued the Wolf Memorandum under his purported authority as Acting DHS Secretary.  Dkt. 308 at ¶ 101.  As is now abundantly clear, Wolf had no legal authority to serve as Acting DHS Secretary under the FVRA.  As such, any actions taken by him "shall have no force or effect."  5 U.S.C. § 3348(d)(1); *see, e.g.*, *L.M.-M. v. Cuccinelli*, No. 19-2676, 2020 WL 985376, at *19-20 (D.D.C. Mar. 1, 2020) (holding that vacatur is the appropriate remedy for actions taken by an acting official whose service violates the FVRA) (citing § 3348(d)).

Second and separately, vacatur is also required under the terms of the APA, and the D.C. Circuit's decision in *Southwest General* explains why.  *See Sw. Gen., Inc. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015).  There, the D.C. Circuit noted that even without application of the FVRA's enforcement mechanism, relief is still available under two APA-based irregularity doctrines:  (1) prejudicial error under 5 U.S.C. § 706; and (2) structural error.  The "burden of demonstrating that the FVRA violation is non-harmless under the [APA] . . . is not a particularly onerous requirement."  *Sw. Gen.*, 796 F.3d at 80-81; *see also L.M.-M.*, 2020 WL 985376, at *24 (holding that vacatur was also required under the APA).  In particular, if a court "cannot be confident that the [agency action] would have issued under an Acting [official] other than [the one in question],"

then that "uncertainty is sufficient" for relief." *Sw. Gen.*, 796 F.3d at 80.  Such confidence is

impossible given that the challenged memorandum is infused with Wolf's anti-immigrant views.

## CONCLUSION

Defendants should be enjoined from implementing the challenged Wolf Memorandum,

and it should be vacated.

Dated:  September 2, 2020                     Respectfully submitted,

<div style="margin-left:40%;">

/s/ Upnit K. Bhatti
Upnit K. Bhatti (Bar No. 5389838)
Mark S. Davies (*pro hac vice* pending)
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005
(202) 339-8400
ubhatti@orrick.com
mark.davies@orrick.com

*Counsel for Amicus Curiae*

</div>