# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

MARTÍN JONATHAN BATALLA VIDAL, *et al.*,

        Plaintiffs,

        v.

CHAD WOLF, *et al.*,

        Defendants.

No. 16-cv-4756 (NGG) (JO)

## DEFENDANTS' RESPONSES TO PLAINTIFFS' LOCAL CIVIL RULE 56.1 STATEMENT

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

SETH D. DuCHARME
Acting United States Attorney

BRAD P. ROSENBERG
Assistant Branch Director

GALEN N. THORP
  Senior Trial Counsel
STEPHEN M. PEZZI
RACHAEL L. WESTMORELAND
  Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York

Date of Service:  September 11, 2020

Pursuant to Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(a), Defendants respectfully submit this statement in response to Plaintiffs' Local Civil Rule 56.1 Statement.

### DEFENDANTS' GENERAL OBJECTIONS TO PLAINTIFFS' LOCAL CIVIL RULE 56.1 STATEMENT

1.     A statement under Local Civil Rule 56.1 is not required on a summary judgment motion in a case seeking review of an administrative action under the Administrative Procedure Act, 5 U.S.C. §§ 551, 702, because such a case "presents only a question of law," as the district court judge conducts what is essentially an appellate review of the challenged administrative action.  *See Just Bagels Mfg., Inc v. Mayorkas*, 900 F. Supp. 2d 363, 372 n.7 (S.D.N.Y. 2012); *accord*, *Glara Fashion, Inc. v. Holder*, 11 Civ. 889, 2012 WL 352309, at *1, n.1 (S.D.N.Y. Feb. 3, 2012); *see also Teleanu v. Koumans*, No. 19-CV-8177 (VEC), 2020 WL 4896858, at *5 (S.D.N.Y. Aug. 20, 2020) ("A Rule 56.1 statement is not required in a case seeking review of an administrative action under the APA because the case only presents a question of law."); *Aleutian Capital Partners, LLC v. Hugler*, No. 16 Civ. 5149, 2017 WL 4358767, at *2 (S.D.N.Y. Sept. 28, 2017) ("Because this action turns entirely on the administrative record and presents only legal issues, Rule 56.1 statements are unnecessary").

2.     Nevertheless, in order to ensure compliance with any possible requirements that Local Civil Rule 56.1(b) may impose, Defendants respectfully submit the following responses to Plaintiffs' Local Civil Rule 56.1 statement.

3.     To the extent that Defendants' replies and responses admit or may be deemed to admit any facts, any such admission is made solely for the purposes of the pending motion and is not intended to constitute an admission or otherwise bind any defendant in any subsequent proceeding.

4.     To the extent that Plaintiffs refer to "purported" officials and designations, such statements are legal conclusions and not statements of material fact to which a response is

2

required.  Indeed these legal conclusions answer the very question of law before this court—whether

DHS officials were lawfully serving in their temporary roles.

**DEFENDANTS' RESPONSES**
**TO PLAINTIFFS' LOCAL CIVIL RULE 56.1 STATEMENT**

**DACA Program: Origins and Impact**

1.  On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano announced the creation of the DACA program, setting out guidelines for U.S. Citizenship and Immigration Services ("USCIS") to use its prosecutorial discretion to extend deferred action to certain young immigrants "who were brought to this country as children and know only this country as home." Ex. A to Declaration of Marisol Orihuela ("Orihuela Decl."), Mem. from Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas, Dir., U.S. Citizenship and Immigration Servs., *Exercising Prosecutorial Discretion With Respect to Individuals Who Came to the United States as Children* ("Napolitano Memorandum"), June 15, 2012.

    **Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 1. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

2.  In the eight years following the DACA program's announcement, over 825,000 individuals have received deferred action and employment authorization. Ex. B to Orihuela Decl., Number of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, Status, by Fiscal Year, Quarter, and Case Status: Aug. 15, 2012-Mar. 31, 2020, USCIS, Apr. 2020, available at: https://www.uscis.gov/sites/default/files/document/data/DACA_performancedata_ fy2020_qtr2.pdf.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 2.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

3. Approximately 40,000 of those individuals live in New York State alone. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 3.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

4. As a result of the DACA program, these young people have been able to enroll in colleges and universities, and to obtain jobs, driver's licenses, bank accounts, and health insurance (through employment, college, or state-run programs). Ex. C to Orihuela Decl., Declaration of Tom Jawetz ¶ 7.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 4.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

5.  They have also contributed significantly to their communities, employers, and the economy. *Id.*

¶ 9-10.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 5.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

6.  There are approximately 300,000 individuals eligible to file first-time applications DACA

applications [sic]. *Id.* ¶ 5.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 6.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

**Trump Administration's Failed Attempt to Unlawfully Rescind DACA in 2017**

7.  On September 5, 2017, then-Acting Secretary of Homeland Security Elaine Duke abruptly

6

announced that DHS would terminate the DACA program. *See* Ex. D to Orihuela Decl., Mem. from Elaine C. Duke, Acting Sec'y of Homeland Sec., to James W. McCament, Acting Dir., U.S. Citizenship and Immigration Servs., *Memorandum on Rescission of Deferred Action For Childhood Arrivals (DACA)* ("Duke Memorandum"), Sept. 5, 2017.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 7. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

8. The Duke Memorandum directed DHS to categorically reject all first-time DACA applications received after September 5, 2017 and severely limit the renewal-eligible population. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 8. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

### Unlawful Designations at the Department of Homeland Security

9. Executive Order 13753, issued in December 2016, established a further order of succession for DHS from that outlined in the Homeland Security Act, listing sixteen additional DHS officers in

line of succession after the Under Secretary of Management. *See* Ex. E to Orihuela Decl., Exec. Order No. 13753, § 1, 81 Fed. Reg. 90,667 (Decl. 9, 2016).

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 9. The statement is a characterization of Executive Order 13753, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of Executive Order 13753 for a complete and accurate statement of its contents.

10. The government has conceded that the Homeland Security Act does not supplant the Federal Vacancies Reform Act of 1998. Ex. F to Orihuela Decl., Tr. of Proceedings at *26, *CASA de Maryland et al. v. Wolf et al.*, 8:20-cv-2118-PX (D. Md. Aug. 14, 2020).

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 10. The statement is a characterization of the transcript, rather than a statement of material fact to which a response is required. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the transcript for a complete and accurate statement of its contents.

11. The President has stated regarding the formal nomination of candidates to fill vacant administration positions, "I'm in no hurry … I have 'acting' [sic]. And my 'actings' are doing really great    I sort of like 'acting.' It gives me more flexibility." Ex. G to Orihuela Decl., Remarks by President Trump Before Marine One Departure, Jan. 6, 2019, available at: https://www.whitehouse.gov/briefings-statements/remarks-president-trump-marine-    one-departure-29/.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 11. The statement is immaterial, whether or not it is genuinely disputed, because it fails to

provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

February Delegation

12. On December 5, 2017, the United States Senate confirmed Kirstjen Nielsen as the Secretary of Homeland Security. Ex. H to Orihuela Decl., Nomination of Kirstjen Nielsen for Department of Homeland Security, 115th Cong., Library of Congress, available at: https://www.congress.gov/nomination/115th-congress/1095.

   **Defendants' Response:** Unidsputed.

13. On February 15, 2019, Secretary Nielsen exercised her authority under the HSA, 6 U.S.C. § 113(g)(2), to designate an order of succession following the Under Secretary for Management, HSA Delegation 00106, Revision No. 08.4. Ex. I to Orihuela Decl., U.S. Gov't Accountability Off., GAO B-331650, Department of Homeland Security: Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security 5 (2020).

   **Defendants' Response:** Disputed.  Ms. Nielsen never signed HSA Delegation 00106, Revision No. 08.4.  On February 15, 2019, Secretary Nielson set an order of succession for the Office of Strategy, Policy, and Plans, not for the office of the Secretary.  *See* Exhibit 9.  Thus, Secretary Nielson did not exercise her authority under 6 U.S.C. § 113(g)(2), which gives the Secretary the authority to "designate such other officers of the Department in further order of succession to serve as Acting Secretary."

9

14. This delegation specified a different source document for the order of succession for each of two scenarios: in cases of the Secretary's death, resignation, or inability to perform the functions of the office, the order of succession was governed by E.O. 13753, Ex. I at 5, and in cases where the Secretary was unavailable to act during a disaster or catastrophic emergency, the order of succession was governed by Annex A to the February Delegation, *id*.

**Defendants' Response:** Disputed.  Ms. Nielsen never signed HSA Delegation 00106, Revision No. 08.4.  On February 15, 2019, Secretary Nielson set an order of succession for the Office of Strategy, Policy, and Plans, not for the office of the Secretary.  *See* Exhibit 9.  Thus, Secretary Nielson did not exercise her authority under 6 U.S.C. § 113(g)(2), which gives the Secretary the authority to "designate such other officers of the Department in further order of succession to serve as Acting Secretary."  Defendants also dispute that Secretary Nielsen's signed memorandum, which set an order of succession for the Office of Strategy, Policy, and Plans, is a "delegation."

15. At the time that the February Delegation was issued, the orders of succession in E.O. 13753 and Annex A were identical. Under both, the first four positions in the order of succession were: (1) Deputy Secretary (as required by 6 U.S.C. § 113(a)(1)(A)); (2) Under Secretary of Management (as required by § 113(g)(1)); (3) Administrator of the Federal Emergency Management Agency ("FEMA"); and (4) Director of the Cybersecurity and Infrastructure Security Agency ("CISA"). *Compare* Exec. Order No. 13753, § 1, 81 Fed. Reg. 90,667 (Decl. 9, 2016)*,* Ex. E to Orihuela Decl. *with* Ex. I at 5.  Thus, Secretary Nielson did not exercise her authority under 6 U.S.C. § 113(g)(2), which gives the Secretary the authority to "designate such other officers of the Department in further order of succession to serve as Acting Secretary."  Defendants also dispute that Secretary Nielsen's signed memorandum, which set an order of succession for the Office of

10

Strategy, Policy, and Plans, is a "delegation."

**Defendants' Response:** Disputed. Ms. Nielsen never signed HSA Delegation 00106, Revision No. 08.4. On February 15, 2019, Secretary Nielson set an order of succession for the Office of Strategy, Policy, and Plans, not for the office of the Secretary. *See* Exhibit 9.

16. The Director of CISA is the successor office to the Under Secretary for National Protection and Programs, which is listed as fourth in the order of succession in EO 13753. Ex. J to Orihuela Decl., Cybersecurity and Infrastructure Security Agency ("CISA") Website.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 16. The statement contains a legal conclusion as to the successor office of the Under Secretary for National Protection and Programs, which is not a statement of material fact to which a response is required. *See* Loc. Civ. R. 56(1)(a); Fed. R. Civ. P. 56(a).

<u>April Delegation</u>

17. On Sunday, April 7, 2019, Secretary Nielsen tendered her resignation, "effective April 7, 2019." Ex. K to Orihuela Decl., Letter from Kirstjen M. Nielsen, Sec'y of Homeland Sec., to Donald J. Trump, President, Apr. 7, 2019).

**Defendants' Response:** Disputed. Kirstjen Nielsen served as Secretary of Homeland Security between December 5, 2017 and April 10, 2019, as evidenced by the FVRA form notifying various congressional committees of the vacancy and designation of an Acting Secretary. *See* Exhibit 13.

18. Later that day, President Trump announced via Twitter that Mr. McAleenan, then the U.S. Customs and Border Protection ("CBP") Commissioner, and seventh in line in the order of succession under EO 13753, would assume the role of Acting Secretary. Ex. L to Orihuela Decl., 4/7/2019 Tweet by President Donald J. Trump, @realDonaldTrump, TWITTER, (Apr. 7, 2019,

6:02 PM), https://twitter.com/realdonaldtrump/status/1115011885303312386.

**Defendants' Response:** Undisputed.

19. At 10:36 pm that same day, Sunday, April 7, 2019, Secretary Nielsen announced—via Twitter—that she would remain in the Office as Secretary of Homeland Security until April 10, 2019. Ex. M to Orihuela Decl., Tweet by Kirstjen Nielsen, @SecNielsen, TWITTER, (Apr. 7, 2019, 10:36 PM), https://twitter.com/SecNielsen/status/1115080823068332032.

**Defendants' Response:** Undisputed.

20. At the time of Secretary Nielsen's resignation on April 7, 2019, the office of Deputy Secretary was vacant, while the office of Under Secretary for Management was held by Claire Grady, who had been Senate-confirmed for the position and was the next person in the order of succession who could lawfully assume the role of Acting Secretary. *See* Ex. N to Orihuela Decl., Department of Homeland Security, Profile of Claire Grady.

**Defendants' Response:** Disputed.  Kirstjen Nielsen served as Secretary of Homeland Security between December 5, 2017 and April 10, 2019, as evidenced by the FVRA form notifying various congressional committees of the vacancy and designation of an Acting Secretary.  *See* Exhibit 13.

21. On April 10, 2019, Claire Grady, Under Secretary for Management, also resigned.  *See* Ex. O to Orihuela Decl., Message from Secretary Kirstjen M. Nielsen on Acting Deputy Secretary Claire Grady.

**Defendants' Response:** Undisputed.

22. Mr. McAleenan immediately began performing the duties of the Office of Secretary of Homeland Security after Secretary Nielsen's departure on April 10, 2019, and assumed the title and position of Acting Secretary of Homeland Security on April 11, 2019. Ex. P to Orihuela Decl., Message

from Kevin K. McAleenan.

**Defendants' Response:** Undisputed.

23. On August 25, 2020, President Trump announced on Twitter that the purported "Acting Secretary Chad Wolf will be nominated to be the Secretary of Homeland Security." Ex. Q to Orihuela Decl., 8/25/2020 Tweet by President Donald J. Trump, @realDonaldTrump, Twitter (Aug.      25, 2020,   9:30   AM),

https://twitter.com/realDonaldTrump/status/1298296592764735490.

**Defendants' Response:** Undisputed.

24. According to DHS, Nielsen established a new order of succession by revising HSA Delegation 00106 on April 10, 2019. HSA Delegation 00106, Revision 08.5. Ex. R to Orihuela Decl., April Delegation.

**Defendants' Response:** Disputed.  Revision 8.5 to DHS Delegation 00106 is an administrative document that Ms. Nielsen did not sign, and it did not establish a new order of succession. Rather Ms. Nielsen's April 9, 2019 order, Designation of an Order of Succession for the Secretary, established the new order of succession that applied to all vacancies.  *See* Exhibit 1.

25. By its explicit text, the April Delegation only changed the second scenario of the February Delegation—i.e., the order of succession "in the event [she was] unavailable to act during a disaster or catastrophic emergency." Specifically, the April Delegation replaced the text of Annex A with a new order of succession, this one listing the Commissioner of CBP, Mr. McAleenan, as third in order of succession. *Id.* at 1.

**Defendants' Response:** Disputed.  Revision 8.5 to DHS Delegation 00106 is an administrative document that Ms. Nielsen did not sign, and it did not establish a new order of succession. Rather Ms. Nielsen's April 9, 2019 order, Designation of an Order of Succession for the

13

Secretary, established the new order of succession that applies to all vacancies. *See* Exhibit 1. Defendants also dispute that Secretary Nielsen's April 9, 2019 memorandum, which designated an order of succession for the Office of Secretary, is a "delegation."

26. The office of Deputy Secretary has been vacant since April 14, 2018. *See* Ex. J. at 4.

  **Defendants' Response:** Undisputed.

27. Under the first scenario of the April Delegation, Under Secretary Grady should have become Acting Secretary upon Secretary Nielsen's resignation on April 7, 2019. *See id.*

  **Defendants' Response:** Disputed. Revision 8.5 to DHS Delegation 00106 is an administrative document that Ms. Nielsen did not sign, and it did not establish a new order of succession. Rather Ms. Nielsen's April 9, 2019 order, Designation of an Order of Succession for the Secretary, established the new order of succession that applied to all vacancies. *See* Exhibit 1. Defendants also dispute that Secretary Nielsen's April 9, 2019 memorandum, which designated an order of succession for the Office of Secretary, is a "delegation."

28. Under the first scenario of the April Delegation, the Director of FEMA was next in the order of succession after the Under Secretary for Management. *Id.*

  **Defendants' Response:** Disputed. Revision 8.5 to DHS Delegation 00106 is an administrative document that Ms. Nielsen did not sign, and it did not establish a new order of succession. Rather Ms. Nielsen's April 9, 2019 order, Designation of an Order of Succession for the Secretary, established the new order of succession that applied to all vacancies. *See* Exhibit 1. Defendants also dispute that Secretary Nielsen's April 9, 2019 memorandum, which designated an order of succession for the Office of Secretary, is a "delegation."

29. On April 10, 2019, the office of the Director of FEMA was vacant. Ex. S, DHS.gov "Leadership" Page as of Apr. 10, 2019.

14

**Defendants' Response:** Undisputed.

30. Following the Director of FEMA in order of succession was the Director of CISA, Christopher Krebs, who was confirmed by the Senate on June 12, 2018. *See* Ex. J.

**Defendants' Response:** Disputed.  Revision 8.5 to DHS Delegation 00106 is an administrative document that Ms. Nielsen did not sign, and it did not establish a new order of succession. Rather Ms. Nielsen's April 9, 2019 order, Designation of an Order of Succession for the Secretary, established the new order of succession that applied to all vacancies.  *See* Exhibit 1. Defendants also dispute that Secretary Nielsen's April 9, 2019 memorandum, which designated an order of succession for the Office of Secretary, is a "delegation."

<u>November Delegation</u>

31. On November 8, 2019, the 212th day of his purported designation as Acting Secretary, Mr. McAleenan sought to revise the DHS order of succession once again, HSA Delegation 00106, Revision No. 08.6 Ex. T to Orihuela Decl., November Delegation.

**Defendants' Response:** Disputed. Revision 8.6 to DHS Delegation 00106 is an administrative document that Mr. McAleenan did not sign, and it did not establish a new order of succession. Mr. McAleenan did amend the order of succession for the office of Secretary of Homeland Security on November 8, 2019, but he did so by signing an amendment, not by issuing Revision 8.6.  *See* Exhibit 5.

32. On November 13, 2019, Defendant Wolf was serving as the Under Secretary for Strategy, Policy, and Plans. Ex. U to Orihuela Decl., Record of Confirmation of Chad Wolf, Nov. 13, 2019.

**Defendants' Response:** Disputed.  On November 13, 2019, Mr. McAleenan resigned as CBP Commissioner.

33. On November 13, 2019, five days after he issued the November Delegation, and 217 days after

purporting to occupy the Acting Secretary position, Mr. McAleenan resigned as the purported

Acting Secretary. Ex. V to Orihuela Decl., Declaration of Juliana Blackwell, Aug. 3, 2020.

**Defendants' Response:** Undisputed.

34. At the time of McAleenan's resignation, the Deputy Secretary, Under Secretary for Management, and CBP Commissioner positions were all vacant. Ex. W to Orihuela Decl., DHS.gov "Leadership" Page as of Nov. 13, 2019.

**Defendants' Response:** Undisputed.

35. Claiming to be the next officer designated by DHS's order of succession, Defendant Wolf assumed the office of Acting DHS Secretary. Ex. X to Orihuela Decl., Department of Homeland Security, Profile of Chad F. Wolf.

**Defendants' Response:** Undisputed.

### The Wolf Memorandum's Renewed Attack on DACA

36. On July 28, 2020, on his 258th day purporting to be Acting Secretary, Defendant Wolf issued the Wolf Memorandum, rescinding the Duke Memorandum in their entirety. Ex. Y to Orihuela Decl., Mem. From Chad Wolf, to Mark Morgan, Matthew Albence, Joseph Edlow, *Reconsideration of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children"* ("Wolf Memorandum"), July 28, 2020.

**Defendants' Response:** Undisputed.

37. The Wolf Memorandum rescinded core components of the Napolitano Memorandum and made "immediate changes" to the DACA program. *Id.* at 1.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 37. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in

16

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

38. Among those "immediate changes" are instructions for DHS personnel to "reject all pending and future initial requests for DACA, to reject all pending and future applications for advance parole absent 'exceptional circumstances,' and to shorten DACA renewals" from two years to one year. *Id.* at 1-2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 38.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed. Civ. P. 56(a). Accordingly, no response is required.

39. The Wolf Memorandum makes no distinction in how the agency is to treat applications for DACA filed after the Supreme Court's decision in *Regents* (June 18, 2020), after the Fourth Circuit's mandate formally vacated the 2017 DACA Memo (June 30, 2020), or after the Wolf Memorandum was issued (June 28, 2020). *Id.* at 4.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 39.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

40. The Wolf Memorandum retroactively rejects the applications of individuals who applied for DACA after the *Regents* decision went into effect and before the Wolf Memorandum was issued. *Id.* at 1-2, 7.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 40.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

41. The Wolf Memorandum orders that renewals of deferred action and the accompanying work authorization should be granted for one-year, rather than two-year, periods, claiming that there are no asserted reliance interests affected by the shortening of renewal periods. The Wolf Memorandum justifies the increased renewal fees as "processing costs." *Id.* at 5- 7.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 41.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

42. The Wolf Memorandum also fails to explain why the agency was not bound to return to the *status quo ante* after *Regents* or after the issuance of the Fourth Circuit's mandate. *Id.* Instead, it states that the program was being frozen "on an interim basis." *Id.* at 7

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 42. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

43. On August 21, 2020, Defendant Joseph Edlow, Deputy Director for Policy at USCIS, issued a memorandum purporting to implement the Wolf Memorandum. Ex. Z to Orihuela Decl., Joseph Edlow, "*Implementing Acting Secretary Chad Wolf's July 28, 2020 Memorandum, "Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children'*" ("Edlow Memorandum"), Aug. 21, 2020.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 43. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

44. The Edlow Memorandum instructs USCIS to "generally reject DACA renewal requests received more than 150 days prior to the expiration of the DACA recipient's current DACA validity period." *Id.* at 4.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 44.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

45. It also stipulates that "in most instances, traveling abroad for educational purposes, employment related purposes, or to visit family members living abroad will not warrant advance parole under Secretary Wolf's interim policy regarding the discretionary exercise of parole for urgent humanitarian reasons or significant public benefit." *Id.* at 8.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 45.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

46. The Edlow Memorandum provides the following non-exhaustive examples of exceptional

circumstances under which DACA recipients can seek advance parole: "Travel to support the national security interests of the United States including U.S. military interests; Travel in furtherance of U.S. federal law enforcement interests; Travel to obtain life-sustaining medical treatment that is not otherwise available to the alien in the United States; Travel needed to support the immediate safety, well-being, or care of an immediate relative, particularly minor children of the alien." *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 46.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

### The Government Accountability Office's Report

47. On August 14, 2020, the Government Accountability Office ("GAO"), which under the FVRA shall report to Congress any violation of the time limitations on acting officers, 5 U.S.C. § 3349, concluded that Defendant Wolf was unlawfully appointed. *See* Ex. I.

**Defendants' Response:**  Defendants neither admit nor deny the statement contained in paragraph 47.  The statement is a characterization of the GAO Report, rather than a statement of material fact to which a response is required.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Defendants refer the Court to the text of the GAO Report for a complete and accurate statement of its contents.

48. DHS vociferously objected to the GAO's August 14th Report and conclusions, and called upon

it to rescind its report. Ex. AA to Orihuela Decl., Ltr. from Chad Mizelle, Sr. Official

Performing the Duties of the General Counsel, Dep't of Homeland Sec. to Thomas H.

Armstrong, Gen. Counsel, GAO, Aug. 17, 2020

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 48.  The statement is a characterization of DHS's letter, rather than a statement of

material fact to which a response is required.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Defendants refer the Court to the text of DHS's letter for a complete and accurate statement of

its contents.

49.  The GAO declined to reverse or modify its report, noting that "DHS has not demonstrated that

our prior decision contains error of either fact or law, nor has DHS presented information not

previously considered that warrants reversal or modification of our decision." Ex. BB to Orihuela

Decl., GAO, *Matter of Department of Homeland Security— Legality of Service of Acting*

*Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy*

*Secretary of Homeland Security—Reconsideration*, B- 332451, August 21, 2020.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph

49.  The statement is a characterization of GAO's decision, rather than a statement of material

fact to which a response is required.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Defendants

refer the Court to the text of GAO's decision for a complete and accurate statement of its contents.

### Plaintiff Martín Batalla Vidal

50.  Plaintiff Martín Jonathan Batalla Vidal is a recipient of DACA. Ex. CC to Orihuela Decl.,

Supplemental Declaration of Martín Batalla Vidal ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 50.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

51. DHS approved Mr. Batalla's initial DACA application on February 17, 2015. ECF No. 123-13, Ex. HHH (Decl. of Martín Batalla Vidal) ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 51.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed. Civ. P. 56(a).  Accordingly, no response is required.

52. After his DACA application was approved, Mr. Batalla Vidal was able to enroll in college to pursue a medical assistant's degree, work two jobs to pay for his tuition and support his family, receive a scholarship for his college education available specifically to DACA recipients; and rent his first apartment on his own. *Id.* ¶¶ 10, 17, 45.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 52.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

53. DHS approved Mr. Batalla Vidal's first renewal of his DACA status on February 16, 2017, approximately two years after his initial DACA approval. *Id.* ¶ 27.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 53.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

54. DHS approved Mr. Batalla Vidal's most recent renewal of his DACA status on April 23, 2020. Ex. CC to Orihuela Decl., Suppl. Decl. of Martín Batalla Vidal ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 54.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

55. Without the deferred action and employment authorization he has received through the DACA program, Mr. Batalla Vidal would not have been able to seek employment, pay his family's rent and household bills, enroll in college, or pursue a degree and a profession in medicine for the past

five years. ECF No. 123-13, Ex. HHH (Decl. of Martín Batalla Vidal)

¶¶ 29-31.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 55.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

56. If, pursuant to the Wolf Memorandum, Mr. Batalla Vidal's next DACA renewal application is valid for only one year instead of two, he will have to spend twice the amount of time and money he expected to maintain his DACA status and employment authorization. Ex. CC to Orihuela Decl., Suppl. Decl. of Martín Batalla Vidal ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 56.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

57. By shortening DACA renewals from every two years to every one year, the Wolf Memorandum also doubles the frequency at which Mr. Batalla Vidal must apply to renew his DACA status and employment authorization, thereby doubling the frequency at which USCIS may review Mr. Batalla Vidal's DACA status and possibly refuse to renew it. *Id.*

¶¶ 2-3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 57.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

58. Mr. Batalla Vidal has developed anxiety and stress related to the constantly changing state of the DACA program and the increased possibility that his DACA status and employment authorization could be refused, which would significantly harm his ability to pursue a career in medicine and support his family. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 58.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

**Plaintiff Antonio Alarcón**

59. Plaintiff Antonio Alarcón is a recipient of DACA. Ex. DD to Orihuela Decl., Supplemental Declaration of Antonio Alarcón, ¶ 5.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 59.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

60. DHS approved Mr. Alarcón's initial DACA application on March 26, 2013. ECF No. 123- 13, Ex. JJJ (Decl. of Antonio Alarcón) ¶ 29.

**Defendants' Response**: Defendants neither admit nor deny the statement contained in paragraph 60. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

61. After his DACA application was approved, Mr. Alarcón was able to obtain employment with Plaintiff Make the Road New York and now works as a Civic Engagement Coordinator, which has enabled him to support himself and his family while pursuing an education, including graduating from Flushing High School, obtaining an associate's degree from LaGuardia Community College in 2015, and obtaining a Bachelor of Arts degree in Film Studies from Queens College in 2017. *Id.* ¶ 23, 30; Ex. DD to Orihuela Decl., Supp. Decl. of Antonio Alarcón ¶ 3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 61. The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

62. Since being granted DACA status, Mr. Alarcón has consistently and timely applied to renew and maintain that status, and DHS has consistently approved his DACA renewal applications. *Id.* ¶ 5.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 62.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

63. DHS approved Mr. Alarcón's most recent renewal of his DACA status, for a period of two years, on April 2, 2020. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 63.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

64. Without the deferred action and employment authorization he has received through the DACA program, Mr. Alarcón would not have been able to seek employment, support his family, pursue his education, or obtain his associate's and bachelor's degrees in the past seven years. ECF No. 123-13, Ex. JJJ (Decl. of Antonio Alarcón) ¶¶ 30-31.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 64. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

65. If, pursuant to the Wolf Memorandum, Mr. Alarcón's next DACA renewal application is valid for only one year instead of two, he will have to spend twice the amount of time and money he expected to maintain his DACA status and employment authorization. Ex. DD to Orihuela Decl., Supp. Decl. of Antonio Alarcón ¶ 5.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 65. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

66. By shortening DACA renewals from every two years to every one year, the Wolf Memorandum

also doubles the frequency at which Mr. Alarcón must apply to renew his DACA status and employment authorization, thereby doubling the frequency at which USCIS may review Mr. Alarcón's DACA status and possibly refuse to renew it. *Id*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 66. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

67. By severely restricting the ability of DACA recipients to apply for advance parole, the Wolf and Edlow Memoranda prevent Mr. Alarcón from seeking advance parole to travel and visit his parents and younger brother in Mexico. *Id.* ¶ 8.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 67. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

68. The inability to visit his parents keeps Mr. Alarcón up at night because it has been four years since he has visited them, and he misses them. *Id.* ¶ 6.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 68.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

69. Because he has not been able to apply for and receive advance parole, Mr. Alarcón was not able to go see his parents in June 2020 when both of them got sick. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 69.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

70. Because he has not been able to apply for and receive advance parole, Mr. Alarcón is not able to go be with his parents to support them during a surgery his mother now needs. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 70.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

71. Mr. Alarcón also wishes to travel abroad for educational purposes, and to travel with friends and to meet their families abroad, but this is impossible for him under the Wolf and Edlow Memoranda because the criteria established by the Edlow Memorandum are too narrow for him to qualify for advance parole. *Id.* ¶ 7.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 71. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

72. Mr. Alarcón feels anxiety and stress related to the constantly changing state of the DACA program and worries about this change meaning spending more time in limbo for himself, vulnerable to changes in policy that can increase the possibility that his DACA status and employment authorization could be refused. *Id.* ¶ 5.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 72. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

**Plaintiff Eliana Fernandez**

73. Plaintiff Eliana Fernandez is a recipient of DACA. Ex. EE to Orihuela Decl., Supplemental

Declaration of Eliana Fernandez  3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 73.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

74. DHS approved Ms. Fernandez's initial DACA application on December 11, 2012. *Id.* After her

DACA application was approved, Ms. Fernandez was able to earn a degree in Sociology in 2015,

obtain employment as an Immigration Case Manager with Plaintiff Make the Road New York,

and purchase a home in which to raise her two children, who were born here in the United States

and are United States citizens. She now serves as the Lead Organizer at Make the Road New

York's Long Island office. ECF No. 123-13, Ex. LLL (Declaration of Eliana Fernandez) ¶¶ 4, 6.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 74.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

75. Ms. Fernandez was also able to travel to Ecuador in 2015 to visit her grandmother, who was ill at the time, because she had received Advance Parole in connection with her DACA status. Ex. EE to Orihuela Decl., Suppl. Decl. of Eliana Fernandez ¶ 5.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 75. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

76. Ms. Fernandez has developed anxiety, stress, and physical ailments, including migraines and severe neck pain, resulting from the constantly changing state of the DACA program and the increased possibility that her DACA status and employment authorization could be refused, which would significantly harm her ability to continue working and supporting her family, and which would also put her at risk of being removed and therefore separated from her children. *Id.* ¶¶ 6, 8.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 76. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

77. Ms. Fernandez began attending therapy to help her process the stress caused by the uncertainty surrounding the continuing viability of the DACA program, but the anxiety, migraines, and neck pain she suffers have intensified since the Wolf Memorandum was issued and are causing her a great deal of difficulty and discomfort. *Id.* ¶ 4.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 77.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

78. The uncertainty around DACA, as well as Ms. Fernandez's worries about how a termination of DACA could affect her and her family, have led Ms. Fernandez to consider moving to Canada and to take certain concrete steps to do so, including speaking with a Canadian immigration attorney, researching education and job opportunities in Canada, and making plans to take the language examination required for admission to Canadian universities. *Id.* ¶¶ 6-7.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 78.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed. R. Civ. P. 56(a).  Accordingly, no response is required.

79. Following the Supreme Court's decision in *Department of Homeland Security v. Regents of the University of California*, 591 US _ (2020), Ms. Fernandez was eager to apply for advance parole to travel to Canada, visit universities, and seek employment to pursue the option to move to Canada and provide a better life for her family, but this is now impossible for her under the Wolf and Edlow Memoranda because the criteria established by the Edlow Memorandum are too narrow for her to qualify for advance parole. *Id.* ¶¶ 6-8.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 79. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

### Plaintiff Carlos Vargas

80. Plaintiff Carlos Vargas is a recipient of DACA. Ex. FF to Orihuela Decl., Supp. Decl. of Carlos Vargas, ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 80. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

81. DHS approved Mr. Vargas's initial DACA application on December 13, 2012. ECF No. 123-13, Ex. EEE (Decl. of Carlos Vargas) ¶ 3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 81. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

82. After his DACA application was approved, Mr. Vargas was able to become a United States Department of Justice Accredited Representative and represent individuals before USCIS and the Executive Office for Immigration Review; obtain a New York driver's license; seek employment with Plaintiff Make the Road New York; receive his Bachelor of Science degree in Business; attend evening classes at City University of New York School of Law to begin pursuing a law degree; financially support his mother, who cannot work because of health reasons; and pay for multiple mortgages on homes he owns with his brother. *Id.*

¶¶ 15, 17, 22, 28

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 82. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is

required.

83. DHS approved Mr. Vargas's third renewal of his DACA status on February 14, 2020. Ex.
    FF to Orihuela Decl., Supp. Decl. of Carlos Vargas ¶ 3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph
83. The statement is immaterial, whether or not it is genuinely disputed, because it fails to
provide facts that establish or support a determination of the central question raised in Plaintiffs'
partial motion for summary judgment—whether the Wolf Memorandum is invalid because of
Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of
Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is
required.

84. Without the deferred action and employment authorization he has received through the DACA
    program, Mr. Vargas would not have been able to seek employment, support his ailing mother,
    pursue his education, and purchase real estate. ECF No. 123-13, Ex. EEE (Decl. of Carlos Vargas)
    ¶¶ 20-27; Ex. FF to Orihuela Decl., Supp. Decl. of Carlos Vargas
    ¶ 8.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph
84. The statement is immaterial, whether or not it is genuinely disputed, because it fails to
provide facts that establish or support a determination of the central question raised in Plaintiffs'
partial motion for summary judgment—whether the Wolf Memorandum is invalid because of
Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of
Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is
required.

85. If, pursuant to the Wolf Memorandum, Mr. Vargas's next DACA renewal application is valid for

only one year instead of two, he will have to spend twice the amount of time and money he expected to maintain his DACA status and employment authorization. Ex. FF to Orihuela Decl., Supp. Decl. of Carlos Vargas ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 85.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

86. Mr. Vargas also wishes to travel abroad with his mother, but this is impossible for him under the Wolf and Edlow Memoranda because the criteria established by the Edlow Memorandum are too narrow for him to qualify for advance parole. *Id.* ¶¶ 3-4.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 86.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

87. By shortening DACA renewals from every two years to every one year, the Wolf Memorandum also doubles the frequency at which Mr. Vargas must apply to renew his DACA status and employment authorization, thereby doubling the frequency at which USCIS may review Mr.

Vargas's DACA status and possibly refuse to renew it. *Id.* ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 87.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

88.  Mr. Vargas has developed stress related to the uncertainty around the DACA program and the

increased possibility that his DACA status and employment authorization could be refused, which

would significantly harm his ability to pursue a career in law, support his family, and cover his

mortgage obligations. ECF No. 123-13, Ex. EEE (Decl. of Carlos Vargas) ¶¶ 19-27.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 88.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

**Plaintiff Carolina Fung Feng**

89.  Plaintiff Carolina Fung Feng is a recipient of DACA. Supplemental Declaration of Carolina Fung

Feng, Ex. GG to Orihuela Decl., ¶ 3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 89.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

90.   DHS approved Ms. Fung Feng's initial DACA application in December 2012. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 90.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

91.   After her DACA application was approved, Ms. Fung Feng was able to earn a Bachelor of Arts

degree in English-Spanish Translation and Interpretation and in English Language Arts; receive

an English teaching certification; obtain employment, including most recently as a digital

organizer for the Center for Popular Democracy; support her family and enroll in a GRE prep

class to pursue graduate studies. ECF No. 123-13, Ex. III (Decl. of Carolina Fung Feng) ¶ 21.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 91.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

92.   Since being granted DACA status, Ms. Fung Feng has consistently and timely applied to renew

and maintain that status, and DHS has consistently approved her DACA renewal applications. *Id.*

¶ 22.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 92.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

93.   DHS approved Ms. Fung Feng's most recent renewal of her DACA status, for a period of two

years, on November 4, 2019. Ex. GG to Orihuela Decl., Suppl. Decl. of Carolina Fung Feng ¶ 3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 93.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

94.   Ms. Fung Feng has developed anxiety related to the constantly changing state of the DACA

program and the increased possibility that her DACA status and employment authorization could be refused, which would significantly harm her ability to pursue her education, continue working, and support her family. *Id.* ¶ 4.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 94. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

95. Because of her anxiety over DACA and her future and security in the United States, Ms. Fung Feng was diagnosed with high blood pressure and now has to take daily medication at the age of 31. *Id.* Needing blood pressure medication causes Ms. Fung Feng further worry and stress because she must try to ensure she does not have any gaps in health insurance coverage, even as she has changed jobs. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 95. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

**Plaintiff Sonia Molina**

96. Plaintiff Sonia Molina is a recipient of DACA. Ex. HH to Orihuela Decl., Declaration of Sonia Molina ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 96. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

97. DHS approved Ms. Molina's initial DACA application in 2012. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 97. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

98. After her DACA application was approved, Ms. Molina was able to pursue more enriching and challenging employment, including most recently as the Senior Office Manager in Make The Road New York's Queen's Office; contribute to her family's finances; and pursue and earn her bachelor's degree from New York City College of Technology. *Id.* ¶¶ 4-6.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 98. The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

99.  Since being granted DACA status, Ms. Molina has consistently and timely applied to renew and maintain that status, and DHS has consistently approved her DACA renewal applications. *Id.* ¶¶ 2, 9-11.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 99.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

100.  Ms. Molina's most recently applied to renew her DACA status in April 2020, but her application was still pending on July 28, 2020, when the Wolf Memorandum was issued. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 100.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

101. Without the deferred action and employment authorization she has received through the DACA program, Ms. Molina would not have been able to seek more challenging and financially rewarding employment, support her family, pursue her education, or earn her bachelor's degree in the past eight years. *Id.* ¶¶ 4-6.

 **Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 101.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

102. If, pursuant to the Wolf Memorandum, Ms. Molina's next DACA renewal application is valid for only one year instead of two, she will have to spend twice the amount of time and money she expected to maintain her DACA status and employment authorization. *Id.* ¶ 14.

 **Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 102.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

103. The stress Ms. Molina has felt related to the uncertain future of the DACA program has increased

now that renewals are available for only one year, instead of two, because she can only plan her life one year at a time and there is no time to relax and feel a little bit secure. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 103. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

### Plaintiff Ximena Zamora

104. Plaintiff Ximena Zamora is an 18-year old Plaintiff who applied for DACA twice, once upon turning 15 years old in 2017, and again in 2020. Ex. II to Orihuela Decl., Declaration of Ximena Zamora ¶ 2. Both times, DHS policies, first terminating and then restricting new DACA applicants were enacted just as she was preparing her application. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 104. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

105. Ms. Zamora's lack of immigration status has placed burdens on her personal and professional growth and financial security. *Id.* ¶¶12-15. She is unable to obtain typical full- time employment

because she is unable to obtain employment authorization. *Id.* at ¶¶ 15, 19.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 105.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

106.  Ms. Zamora meets the eligibility requirements for DACA under the terms of the 2012 Napolitano memo, because she arrived in the United States for the first time when she was two years old before June 15, 2007; has not left the United States since arriving, and does not have a criminal record; was present in the United States without lawful status on June 15, 2012; graduated from Academy of Finance and Enterprise High School in Queens in June 2020; and has never been arrested or convicted of a crime. *Id.* ¶¶ 4-7.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 106.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

### Plaintiff M.B.F.

109. M.B.F., a 17-year-old Plaintiff through her next friend Lucia Feliz, is a new DACA applicant

whose initial application was received by USCIS on or around July 7, 2020. Ex. JJ to Orihuela
Decl., Declaration of M.B.F. ¶¶ 1,

**Defendants' Response:** Defendants neither admit nor deny the statement contained in
paragraph 109.  The statement is immaterial, whether or not it is genuinely disputed, because it
fails to provide facts that establish or support a determination of the central question raised in
Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid
because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the
Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).
Accordingly, no response is required.

110. The Duke Memorandum terminated the DACA program before M.B.F. turned 15 and would
have become eligible to apply for DACA status. *Id.* ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in
paragraph 110.  The statement is immaterial, whether or not it is genuinely disputed, because it
fails to provide facts that establish or support a determination of the central question raised in
Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid
because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the
Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).
Accordingly, no response is required.

111. M.B.F.'s lack of immigration status and inability to access the DACA program has imposed
increasing hardship on her and her family because she has not been able to get a driver's license,
participate in school programs that involved international travel, apply for federal student loans
to attend college, get a job and contribute to her family's finances or her college tuition, or apply
to out-of-state colleges because they are too expensive without any financial aid. *Id.* ¶¶ 12-19.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 111. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

112. M.B.F.'s lack of immigration status and inability to access the DACA program has forced her to accept admission to a State University of New York ("SUNY") campus near to her home, but even so, her family has faced significant financial hardship to afford her tuition. *Id*. ¶ 18.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 112. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

113. Without DACA, M.B.F.'s only hope to achieve legal status was through her grandmother, who is a United States citizen and who has filed an immigrant visa petition on behalf of M.B.F.'s mother. *Id*. ¶ 28.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 113. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

114. M.B.F. remains eligible for DACA under the terms of the 2012 Napolitano Memorandum because she came to the U.S. prior to June 15, 2007 and over a decade before her 16th birthday; she was present in the U.S. on June 15, 2012, and did not have lawful status; and because she has a high school degree and has never been arrested or convicted of a crime.

*Id.* ¶¶ 5-8.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 114.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is required.

115. M.B.F. first began preparing to apply for DACA in 2017, in the months leading up to her 15th birthday. However, the program was terminated before she turned 15. *Id.* ¶ 20.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 115.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

116. M.B.F.'s lack of immigration status and inability to access the DACA program imposed

increasing hardship on her and her family in the years that followed. She was unable to drive;

unable to participate in school programs that involved international travel; unable to access many

forms of financial aid; and, most difficult for her, unable to work. As a result,

M.B.F. had trouble even affording college applications and had to abandon her dream of

studying at a college out of state. *Id.* ¶¶ 13-18.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 116.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

117. In April 2020, as M.B.F. was completing her senior year of high school and applying to college,

she received a Notice to Appear in immigration court by mail. *Id.* ¶ 4.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 117.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

118. After receiving the Notice to Appear, M.B.F. briefly considered abandoning her college plans all

together because she was afraid she would be ordered deported and forced to leave the U.S. at any

time. *Id.* ¶¶ 24-25.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 118.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

119. M.B.F. subsequently learned through her mother and the family's lawyer that she could once

again apply for DACA as a result of the Supreme Court's decision. *Id.* ¶ 26.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 119.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

120. M.B.F.'s attorney filed her DACA application in early July. *Id.* ¶ 3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph

120.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to

provide facts that establish or support a determination of the central question raised in Plaintiffs'
partial motion for summary judgment—whether the Wolf Memorandum is invalid because of
Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of
Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is
required.

121. As a result of the Wolf Memorandum, M.B.F.'s DACA application will now not be processed or
adjudicated by Defendants. *Id.* ¶ 27.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph
121.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to
provide facts that establish or support a determination of the central question raised in Plaintiffs'
partial motion for summary judgment—whether the Wolf Memorandum is invalid because of
Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of
Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is
required.

122. M.B.F. never received a receipt for her DACA application. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph
122.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to
provide facts that establish or support a determination of the central question raised in Plaintiffs'
partial motion for summary judgment—whether the Wolf Memorandum is invalid because of
Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of
Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).  Accordingly, no response is
required.

123. Without deferred action status through DACA, M.B.F. could be ordered removed and then

deported to the Dominican Republic, where she knows no one. *Id.* ¶ 28.

 **Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 123.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

124. Because she is at risk for removal, and because she does not have DACA, M.B.F. will lose her

path to lawful status through her United States citizen grandmother's petition for her mother once

M.B.F. turns 18 and a half years old, which will trigger certain bars to admissibility to the U.S.

due to the accrual of unlawful presence. *See* 8 U.S.C. § 1182(a)(9)(B)(i). *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 124.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

125. If M.B.F. had DACA, she would not accrue unlawful presence because individuals in valid

deferred action status do not accrue unlawful presence. *Id.* at § (a)(9)(B)(iii); *see* 9 FAM 302.11-

3(B)(1)(U) (individuals in deferred action status do not accrue unlawful presence); USCIS

Adjudicator's Field Manual Chapter 40.9.2 (same). *Id.* ¶ 4.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 125. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

**Plaintiff Johana Larios Sainz**

126. Johana Larios Sainz, a 26-year-old Plaintiff, is a new DACA applicant whose initial application was received by USCIS on or around July 27, 2020. Ex. KK to Orihuela Decl., Declaration of Johana Larios Sainz ¶ 3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 126. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

127. The Duke Memorandum terminated the DACA program just as Ms. Sainz was in the process of gathering all the necessary records and preparing her application. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 127. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

128. Ms. Sainz's lack of immigration status and inability to access the DACA program has imposed increasing hardship on her and her family because she has not been able to get a full time job to earn more money to provide for herself and her kids; seek child support from her children's father; buy her children new clothes; get a driver's license or purchase a car; or pursue further education and the career she wishes to have in health care. *Id.* ¶¶ 10, 12-14, 17, 19-20.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 128.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

129. Ms. Sainz remains eligible for DACA under the terms of the 2012 Napolitano Memorandum because she is 26 years old; arrived in the United States for the first time when she was two years old, before June 15, 2007; has not left the United States since arriving, and does not have a criminal record; was present in the United States without lawful status on June 15, 2012; graduated from Port Richmond High School in August 2014; and has never been arrested or convicted of a crime. *Id.* ¶¶ 4-7.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 129.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

130. Ms. Sainz learned about the Supreme Court's DACA decision in June 2020, started searching for

legal assistance to prepare her application, was able to mail her application on July 24, 2020, and

received confirmation from UPS that the government received her application on July 27, 2020—

one day before the Wolf Memorandum was issued and directed DHS to reject all initial DACA

applications. *Id.* ¶¶ 2, 21-23.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 130.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

131. As a result of the Wolf Memorandum, it is unclear to Ms. Sainz whether the government will

ever process and adjudicate her DACA application. *Id.* ¶¶ 23-24.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 131.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

### Plaintiff Make The Road New York

132. Plaintiff Make the Road New York ("MRNY") is a nonprofit, membership-based § 501(c)(3) organization dedicated to empowering immigrant, Latino, and working-class communities in New York. Ex. LL to Orihuela Decl. Supplemental Declaration of Javier Valdes, ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 132.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

133. With offices in Brooklyn, Queens, Staten Island, and Suffolk County, MRNY integrates adult and youth education, legal and survival services, and community and civic engagement, in order to assist low-income New Yorkers improve their lives and neighborhoods. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 133.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

134. MRNY's legal services include assisting immigrants facing deportation; providing guidance to

immigrants submitting affirmative applications for immigration relief; and

directly helping individuals prepare the documentation and paperwork necessary for DACA

applications and renewals, as well as applications for advance parole. *Id.* ¶ 3.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 134.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

135. MRNY has more than 24,000 dues-paying members residing in New York City and Long Island,

primarily in the boroughs of Queens and Brooklyn, including several hundred members who are

DACA recipients, such as Plaintiffs Batalla Vidal, Alarcón, Fernandez, Vargas, Fung Feng, and

Molina. *Id.* ¶ 2.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in

paragraph 135.  The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid

because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the

Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

136. MRNY has approximately twelve current employees who are DACA recipients, including Plaintiffs Alarcón, Fernandez, Vargas, and Molina. *Id.* ¶ 15.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 136. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

137. After the Supreme Court's decision in *Regents*, MRNY received at least 232 inquiries from individuals interested in applying for DACA for the first time. *Id.* ¶ 13.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 137. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a).

Accordingly, no response is required.

138. After the Supreme Court's decision in *Regents* and before the Wolf Memorandum was issued on July 28, 2020, MRNY legal staff and filed three first-time DACA applications for clients. *Id.* ¶ 17.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 138. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

139. When the Wolf Memorandum was issued on July 28, 2020, 166 MRNY clients had renewal applications pending with USCIS. Of those clients, 32 are members of MRNY. *Id.* ¶ 11.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 139. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed. R. Civ. P. 56(a). Accordingly, no response is required.

140. If, pursuant to the Wolf Memorandum, MRNY's DACA-recipient members and employees may now only renew their DACA status and work authorization for only one year instead of two, they must now spend twice the amount of time and money they expected to maintain their DACA status and employment authorization. *Id.* ¶ 18.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 140. The statement is immaterial, whether or not it is genuinely disputed, because it

fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

141. By shortening DACA renewals from every two years to every one year, the Wolf Memorandum also doubles the frequency at which MRNY's DACA-recipient members and employees must apply to renew their DACA status and  employment authorization, thereby doubling the frequency at which USCIS may review these individuals' DACA status and possibly refuse to renew it. *Id.* ¶ 18.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 141.  The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed. R. Civ. P. 56(a).  Accordingly, no response is required.

142. The legal interests of MRNY, its staff, its members, and its clients in not having the DACA program unlawfully curtailed, and in having their DACA applications, renewals, and advance parole applications considered, are germane to MRNY's purpose of advocating for the rights of low-income immigrant communities and to its role as an employer of individuals with DACA, and are inextricably bound up with the legal services that MRNY attorneys provide the organization's clients. *Id.* ¶¶ 19-24.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 142. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

143. MRNY's clients face hinderances to bringing suit to protect their own interests, including but not limited to lack of notice, privacy concerns, fear of retaliation (against themselves and/or their families), language barriers, and lack of resources. *Id.*

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 143. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security. *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

144. MRNY will sustain further injuries because of Defendants' actions as it is forced to devote additional resources to assist its DACA employees submit renewals on the new yearly schedule. *Id.* ¶¶ 18, 22.

**Defendants' Response:** Defendants neither admit nor deny the statement contained in paragraph 144. The statement is immaterial, whether or not it is genuinely disputed, because it fails to provide facts that establish or support a determination of the central question raised in

Plaintiffs' partial motion for summary judgment—whether the Wolf Memorandum is invalid because of Defendant Wolf's allegedly unlawful designation as the Acting Secretary of the Department of Homeland Security.  *See* Loc. Civ. R. 56.1(a); Fed R. Civ. P. 56(a). Accordingly, no response is required.

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Notwithstanding Defendants' General Objections to Plaintiffs' Local Civil Rule 56.1 Statement above, Defendants submit, pursuant to Local Civil Rule 56.1, the following material facts to which they contend that there is no genuine issue to be tried.

1.  On April 9, 2019, Kirstjen M. Nielson issued her signed approval of a Memorandum for the Secretary with the subject "Designation of an Order of Succession for the Secretary."  This Memorandum is annexed hereto as Exhibit 1.

2.  On June 1, 2020, Neal J. Swartz executed a sworn declaration.  The declaration is annexed hereto as Exhibit 2.

3.  On April 16, 2018, Neal J. Swartz submitted a form for a "notice of a vacancy and designation of an acting officer" for Claire M. Grady to the Honorable Michael R. Pence, President of the Senate.  This form, and the cover letter submitting the form, are annexed hereto as Exhibit 3.

4.  On April 11, 2019, Neal J. Swartz submitted a form for a "notice of a vacancy and designation of an acting officer" for Charles H. Fulgham to the Honorable Michael R. Pence, President of the Senate.  This form, and the cover letter submitting the form, are annexed hereto as Exhibit 4.

5.  On November 8, 2019, Kevin K. McAleenan signed the "Amendment to the Order of Succession for the Secretary of Homeland Security."  The signed document is annexed hereto as Exhibit 5.

6.  On September 10, 2020, Peter T. Gaynor signed an "Order Designating the Order of Succession for the Secretary of Homeland Security." The order is annexed hereto as Exhibit 6.

7.  On December 15, 2016, Jeh Johnson signed Revision 8 to DHS Delegation No. 00106, titled "DHS Orders of Succession and Delegations of Authorities for Named Positions." The signed document is annexed hereto as Exhibit 7.

8.  On April 10, 2019, Kirstjen M. Nielson sent an email entitled "Farewell Message from Secretary Kirstjen M. Nielsen." A copy of the email is annexed hereto as Exhibit 8.

9.  Kirstjen M. Nielson signed a memorandum for Claire M. Grady and Frank DiFalco with the subject "Amendment to the Order of Succession for the Office of Strategy, Policy, and Plans. The memorandum is annexed hereto as Exhibit 9.

10.  On June 23, 2003, Delegation Number 0100.2 was issued. The document is annexed hereto as Exhibit 10.

11.  On April 10, 2019, Revision 8.5 to DHS Delegation No. 00106, titled "DHS Orders of Succession and Delegations of Authorities for Named Positions," was issued. The document is annexed hereto as Exhibit 11.

12.  On February 15, 2019, Revision 8.4 to DHS Delegation No. 00106, titled "DHS Orders of Succession and Delegations of Authorities for Named Positions," was issued. The document is annexed hereto as Exhibit 12.

13.  On April 11, 2019, Neal J. Swartz submitted a form for a "notice of a vacancy and designation of an acting officer" for Kevin K. McAleenan to the Honorable Michael R. Pence, President of the Senate. This form, and the cover letter submitting the form, are annexed hereto as Exhibit 13.

Dated: Brooklyn, New York

September 11, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

SETH D. DuCHARME
Acting United States Attorney

BRAD P. ROSENBERG
Assistant Branch Director

GALEN N. THORP
  Senior Trial Counsel
             /s/ *Stephen M. Pezzi*
STEPHEN M. PEZZI
RACHAEL L. WESTMORELAND
  Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-8576
Fax: (202) 616-8470
Email: stephen.pezzi@usdoj.gov

JOSEPH A. MARUTOLLO
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, NY  11201
Phone:  (718) 254-6288
Fax:  (718) 254-7489
Email:  joseph.marutollo@usdoj.gov

*Attorneys for Defendants*