## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

MARTÍN JONATHAN BATALLA VIDAL,
ANTONIO ALARCÓN, ELIANA FERNANDEZ,
CARLOS VARGAS, CAROLINA FUNG FENG,
M.B.F., by her next friend LUCIA FELIZ,
XIMENA ZAMORA, SONIA MOLINA, and
JOHANA LARIOS SAINZ,

      On behalf of themselves and all other
      similarly situated individuals

and MAKE THE ROAD NEW YORK,

      On behalf of itself, its members, and its
      clients,

      *Plaintiffs*,

      v.

CHAD WOLF, in his official capacity as the
purported Acting Secretary of Homeland Security,
*et al*.,

      *Defendants*.

Case No. 1:16-cv-04756 (NGG)(JO)

**REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

October 2, 2020

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................ 2

I.    PLAINTIFFS' CLASS DEFINITIONS ARE APPROPRIATELY DRAWN ................. 2

   A.    Plaintiffs' Proposed Class Definitions Follow the Supreme Court's Guidance and
         Respect Ongoing Litigation in Other Courts ................................................................ 2

   B.    Plaintiffs' Class Exclusions are Consistent with a Rule 23(b)(2) Class ...................... 5

II.   PLAINTIFFS' CLASS DEFINITIONS ARE ASCERTAINABLE AND HAVE
      CLEAR BOUNDARIES .......................................................................................... 7

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amara v. CIGNA Corp.*,
    775 F.3d 510 (2d Cir. 2014)................................................................. 5

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ........................................................................... 10

*Batalla Vidal v. Nielsen*,
    279 F. Supp. 3d 401 (E.D.N.Y. 2018) ................................................. 2

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020)............................................................... 10

*Berry v. Schulman*,
    807 F.3d 600 (4th Cir. 2015) .............................................................. 6

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)...................................................................... 1, 2, 3

*Ceaser v. Pataki*,
    No. 98 Civ. 8532, 2000 WL 1154318 (S.D.N.Y Aug. 14, 2000) ............ 3

*Cnty. of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1407 (E.D.N.Y. 1989) ................................................... 6

*Cnty. of Suffolk v. Long Island Lighting Co.*,
    907 F.2d 1295 (2d Cir. 1990)............................................................. 5

*Ebert v. Gen. Mills, Inc.*,
    823 F.3d 472 (8th Cir. 2016) .............................................................. 6

*Eubanks v. Billington*,
    110 F.3d 87 (D.C. Cir. 1997) .............................................................. 5

*Healthy Futures of Tex. v. Dep't of Health & Human Servs.*,
    326 F.R.D. 1 (D.D.C. 2018)................................................................. 3

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)............................................................. 7, 9

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) ................................................................. 2

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ..................................................................... 2

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ..................................................................... 5

*M.G. v. New York City Dep't of Educ.*,
   162 F. Supp. 3d 216 (S.D.N.Y. 2016) ...................................................... 9

*New York v. U.S. Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020) ....................................................................... 2

*Sykes v. Mel. S. Harris and Assocs.*,
   780 F.3d 70 (2d Cir. 2015) ..................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................. 6

**Federal Rules**

Fed. R. Civ. P. 23 ........................................................................... *passim*

**Other Authorities**

2 Newberg on Class Actions § 4:36 (5th ed.) .......................................... 5
3 Newberg on Class Actions § 9:39 (5th ed.) .......................................... 6

Plaintiffs' proposed classes—the DACA Class and Pending Applications Subclass[1]—meet the requirements of Federal Rule of Civil Procedure 23 and should be certified. The proposed class definitions are designed to promote judicial economy, to avoid interference in other litigation and allow for the percolation of issues raised here in different courts, and to protect individuals *prima facie* eligible for DACA by ensuring that this Court has the tools at its disposal to grant them full relief. Certification is plainly warranted. In fact, Defendants do not contest that the proposed Class and Subclass meet the prerequisites of Rule 23(a). Defendants instead attempt to sow doubt in the class definitions' consistency with Rule 23(b), but repeatedly misread the case law upon which they rely. For example, *Califano v. Yamasaki* instructs that proposed class definitions excluding a small number of individuals, like those proposed here, are a method of exercising "sensitivity to ongoing litigation of the same issue in other districts." 442 U.S. 682, 703 (1979). Further, Plaintiffs' proposed Class and Subclass definitions render their boundaries ascertainable and finite.

Additionally, certification is appropriate at this time. Rule 23 mandates that class certification be determined "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). Class certification ensures that this Court has the tools to protect the million DACA-eligible individuals harmed by the unlawfully-issued Wolf Memo

---

[1] Plaintiffs seek certification of:

A "DACA Class" (for the claims challenging the appointment of Defendant Wolf and the legality of the 2020 Wolf Memorandum and its implementing guidance, including the Edlow Memorandum): All persons who are or will be *prima facie* eligible for deferred action under the terms of the 2012 Napolitano Memorandum; and

A "Pending Applications Subclass" (for the claims challenging the application of the 2020 Wolf Memorandum and its implementing guidance, including the Edlow Memorandum, to certain DACA applications): All persons who had an application for deferred action through DACA, whether an first-time or renewal, pending at U.S. Citizenship and Immigration Services ("USCIS") on any date between June 30, 2020, and July 28, 2020, that have not been or will not be adjudicated in accordance with the 2012 Napolitano Memorandum.

*Excluded* from the DACA Class and the Pending Applications Subclass are the individuals who are *prima facie* eligible for deferred action through DACA and who bring a federal lawsuit challenging the Wolf Memorandum.

Mem. Supp. Pls.' Mot. Class Certification, ECF 309.1, at 2-3, 10.

1

without requiring them each to bring their own lawsuits. If the Class and Subclass are certified, Defendants concede that this Court's remedy should flow to the entire class.[2] *See* Defs.' Mem. Supp. Cross-Mot. Partial Summ. J. and Opp'n Pls.' Mots. Partial Summ. J., ECF No. 323, at 24. The Second Circuit has "emphasized that Rule 23 should be 'given liberal rather than restrictive construction' and has shown a 'general preference' for granting rather than denying class certification." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 98 (E.D.N.Y. 2012); *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). For these reasons, Plaintiffs respectfully urge the Court to grant their motion and certify the requested DACA Class and Pending Applications Subclass.

## ARGUMENT

## I.    PLAINTIFFS' CLASS DEFINITIONS ARE APPROPRIATELY DRAWN

### A.  Plaintiffs' Proposed Class Definitions Follow the Supreme Court's Guidance and Respect Ongoing Litigation in Other Courts

Plaintiffs' class definitions comport with the Supreme Court's guidance in *Califano v. Yamasaki*, 441 U.S. at 703, and strike an appropriate balance between sensitivity to ongoing litigation in other courts, and the benefits of class certification, including the conservation of judicial resources and reducing the burden on DACA-eligible individuals. Defendants invoke *Califano* to suggest that granting Plaintiffs' motion would result in improper interference with other litigation. Defs' Mem. Opp'n Pls.' Mot. Class Certification ("Defs.' Opp'n"), ECF 326, at 1-2, 5, 9. Defendants have misapprehended *Califano*'s lessons. In *Califano*, the Supreme Court upheld and favorably recognized a district court's decision to certify a nationwide class that

---

[2] Plaintiffs continue to believe that this Court has the legal authority to issue a nationwide injunction in this case, particularly upon summary judgment, but filed their motion for class certification to ensure that the Court has numerous tools at its disposal to grant full relief. *See Califano*, 442 U.S. at 702 ("[T]he scope of injunctive relief is dictated by the extent of the violation established . . . ."); *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 88 (2d Cir. 2020) ("We have no doubt that the law, as it stands today, permits district courts to enter nationwide injunctions . . . ."); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 438 (E.D.N.Y. 2018) (granting nationwide injunction preventing the termination of DACA), *vacated on other grounds and remanded sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 140 S. Ct. 1891 (2020).

excluded the residents of Hawaii and the Eastern District of Pennsylvania where other Rule 23(b)(2) class actions raised similar issues. *Califano*, 441 U.S. at 689, 702-703. Contrary to Defendants' contentions, *see* Defs.' Opp'n 3-6, *Califano* does not direct a court to deny class certification where there is other pending litigation. Indeed, *Califano* supports Plaintiffs' proposed exclusion as "sensitive to ongoing litigation of the same issues in other districts," *id.* at 703, while "allow[ing] several courts to pass on a given class claim in order to gain the benefit of adjudication by different courts." *Id.* at 702.

Other courts have followed suit. In *Healthy Futures of Tex. v. Dep't of Health & Human Servs.*, the district court certified a class of all entities that received a certain grant for a Rule 23(b)(2) class, but explicitly excluded plaintiffs bringing actions in four other district courts. 326 F.R.D. 1, 11 (D.D.C. 2018). [3] The *Healthy Futures* court rejected the government's argument that excluding plaintiffs involved in ongoing or resolved litigation from the class "defeats an otherwise viable nationwide class action." *Id.* at 10. Instead, the Court explained that the "proposed class definition goes to great lengths to follow the Supreme Court's dictate, by deliberately and specifically excluding those particular [program] grantees who had already secured the relief that the putative class members seek." *Id.*; *see also Ceaser v. Pataki*, No. 98 Civ. 8532, 2000 WL 1154318, at *1 n.2, *7-8 (S.D.N.Y Aug. 14, 2000) (certifying a class of all non-Caucasian children attending "high-minority" public schools in New York State, but excluding New York City students who were seeking relief in state court).

Likewise, here Plaintiffs' proposed exclusion is sensitive to other litigation by excluding named individual plaintiffs in other courts and allowing those plaintiffs to proceed, while

---

[3] Specifically, the district court certified a class of "[a]ll entities awarded Teen Pregnancy Prevention Program grants by the Department of Health and Human Services (HHS) in 2015, with five-year project periods, whose grants HHS purported to 'shorten,' effective June 30, 2018," and excluded plaintiffs in four other federal lawsuits. *Healthy Futures*, 326 F.R.D. at 11.

promoting conservation of judicial resources by alleviating the need for each putative class member to bring their own case to ensure full relief. Plaintiffs expect that their proposed exclusion of "individuals who are *prima facie* eligible for deferred action through DACA and who bring a federal lawsuit challenging the Wolf Memorandum," Mem. Supp. Pls.' Mot. Class Certification, ECF 309.1 at 3, would exclude the six individual *Garcia v. United States*, 17-cv-05380 (N.D. Cal.) plaintiffs, and any plaintiffs that they may add, who are currently seeking leave to amend their complaint to challenge the Wolf Memorandum. [4] *See* Rebert Decl., Ex. N, Ltr. Requesting Status Conference, *Regents of the Univ. of Calif. v. U.S. Dep't of Homeland Sec.*, 17-cv-05211-WHA (N.D. Cal. Aug. 18, 2020), ECF 304. Under Plaintiffs' proposed exclusion, the *Garcia* plaintiffs would be excluded from Plaintiffs' proposed class and be able to proceed with their own lawsuit and obtain their own ruling.

Plaintiffs' proposed class also preserves judicial resources by obviating the need for numerous additional lawsuits from DACA-eligible individuals seeking to challenge the Wolf Memorandum and reduces the burden on these individuals. Plaintiffs' counsel has been in contact with several immigration attorneys who represent putative class members and who have expressed relief not to have to file additional lawsuits to protect their clients and challenge Defendants' attempts to dismantle DACA. Rebert Decl., ¶ 3. Indeed, two individual plaintiffs recently dismissed their action, explicitly citing their status as putative class members in this litigation as

---

[4]    Plaintiffs' opening brief cited a long list of cases that had previously challenged or are currently challenging the dismantling of DACA, Mem. Supp. Pls.' Mot. Class Certification, ECF 309.1, at 3 n.5, but only *Garcia* and *Perez Lazarte v. Wolf*, 20-cv-894 (E.D. Va. filed Aug. 6, 2020), were filed by individual plaintiffs who are *prima facie* eligible for DACA and challenge the Wolf Memorandum. *Perez Lazarte* was recently dismissed. *Infra* at 4-5.
    Plaintiffs also note that *Casa de Maryland v. U.S. Dep't of Homeland Sec.*, No. 17-cv-2942-PWG (D.Md.) and *FIEL Houston v. Wolf*, 20-cv-2515 (S.D. Tex.) include individual plaintiffs who seek remedies that would require the government to process DACA applications consistent with the 2012 Napolitano Memorandum. Individual plaintiffs in *Princeton v. United States* note in a status report that they "do not currently intend to challenge the Wolf Memorandum . . . but reserve their right to do so in the future, or to challenge any future agency actions with respect to DACA." No. 17-cv-2325-JDB (D.D.C. Sept. 16, 2020), ECF 92.

the basis. Rebert Decl., Ex. O, Notice of Dismissal without Prejudice, *Perez Lazarte v. Wolf*, No. 20-cv-00894 (E.D. Va. Sept. 18, 2020); Order Granting Dismissal, *Perez Lazarte v. Wolf*, No. 20-cv-00894 (E.D. Va. Sept. 22, 2020). Plaintiffs' proposed class definitions appropriately balance an interest in permitting other lawsuits to proceed and conservation of judicial resources.

### B.  Plaintiffs' Class Exclusions are Consistent with a Rule 23(b)(2) Class

Plaintiffs' proposed exclusions are permissible in mandatory classes, whether they are characterized as exclusions or opt-outs. Defendants mischaracterize the nature of a Rule 23(b)(2) class. Although not typical, opt-outs are discretionary and permissible from mandatory classes, contrary to Defendants' argument, Defs.' Opp'n 5-7, and the Second Circuit has held that they do not defeat class certification. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009) ("The right of a class member to opt-out in Rule 23(b)(1) and (b)(2) actions is not obvious on the face of the rule; however, 'the language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in (b)(1) and (b)(2) class actions.'") (quoting *Eubanks v. Billington*, 110 F.3d 87, 94 (D.C. Cir. 1997)); *accord Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304-05 (2d Cir. 1990) ("[A] district court, in a proper case and in the exercise of sound discretion, may allow a class member to opt-out of a [(b)(1) class] in order to facilitate 'the fair and efficient conduct of the action.'"); *see also* 2 Newberg on Class Actions § 4:36 (5th ed.) ("Notice and opt out rights are not required in (b)(2) class actions, but they are discretionary, may be permitted, and have been employed.").

Although Defendants cite extensive case law to the contrary, Defs.' Opp'n 6-7, the cases do not support Defendants' position. For example, *Amara v. CIGNA Corp.*, 775 F.3d 510, 519 (2d Cir. 2014), merely notes in passing that Rule 23 does not require notice and opt-out rights in (b)(2) cases, but says nothing about opt-outs destroying a Rule 23(b)(2) class. Similarly, the long string

of cases that Defendants cite only offer dicta stating that Rule 23(b)(2) does not require courts to allow class members to opt out. *See Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480-81 (8th Cir. 2016) (distinguishing between (b)(2) and (b)(3), noting that "[i]t is the disparate factual circumstances of class members that prevent the class from being cohesive and thus unable to be certified under Rule 23(b)(2)."); *Berry v. Schulman*, 807 F.3d 600, 609-10 (4th Cir. 2015) (rejecting objectors' requests to opt out of a (b)(2) class where the opt-out would have undone the settlement but asserting no categorical rule against opt-outs); *Cf. Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1407, 1420 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990) ("The fact that this class action is . . . a 'mandatory' class does not prevent the court from permitting [plaintiff] to opt out.").

Defendants also incorrectly conflate opting out from the class and exclusion from a class definition. They are fundamentally different. "If an individual opts out, she is free to pursue her own litigation or not to pursue her own litigation as she sees fit." 3 Newberg on Class Actions § 9:39 (5th ed.). Here, an individual will only be excluded from the class if they in fact *bring* a federal lawsuit challenging the Wolf Memorandum. Nor does Plaintiffs' proposed class definition conflict with *Wal-Mart Stores, Inc. v. Dukes*'s caution against certifying a class where each "individual class members would be entitled to a *different* injunction or declaratory judgment against the defendant." 564 U.S. 338, 360 (2011) (emphasis in original). Here, relief would still "perforce affect the entire class at once," it would simply not flow to those excluded from the class *definition* because they are actively pursuing their own litigation. *Id.* at 361-62. Moreover, the exclusion of some individual plaintiffs from a certified class is not only permissible but is favorably looked upon by the Supreme Court, as discussed above. *See supra* at 2-3. Plaintiffs'

6

proposed class definitions are consistent with Rule 23(b)(2)'s mandate that relief is appropriately granted to the class as a whole.

## II.   PLAINTIFFS' CLASS DEFINITIONS ARE ASCERTAINABLE AND HAVE CLEAR BOUNDARIES

Although not explicitly required by Rule 23, many courts have read into Rule 23 a requirement that a class be ascertainable. A class is ascertainable if the boundaries of the class are definite – a requirement that is satisfied here. *See In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (Garaufis, J.) ("The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries."). Thus, ascertainably is no barrier to the certification of Plaintiffs' proposed Class and Subclass.

Determining whether an individual is or will be *prima facie* eligible for deferred action under the terms of the 2012 Napolitano Memorandum, and therefore a member of the DACA Class, is straightforward and laid out by Defendants' own guidance.[5] The 2012 Napolitano Memorandum outlines the criteria for one to be considered for an exercise of prosecutorial discretion through DACA.[6] The individuals who meet these factual criteria are both ascertainable

---

[5] Defendants do not challenge the ascertainability of the Pending Applications Subclass, nor could they, since class members can be identified by looking at Defendant USCIS' own records. By its own terms, the Wolf Memorandum directs USCIS to alter adjudication of DACA applications in a contravention of the criteria set out by the 2012 Napolitano Memorandum and associated guidance.

[6] These criteria include:

    (1)  "came to the United States under the age of sixteen;"

    (2)  "has continuously resided in the United States for a [*sic*] least five years preceding [June 15, 2012] and is present in the United States on [June 15, 2012];"

    (3)  "is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;"

    (4)  "has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety;" and

    (5)  "is not above the age of thirty."

Mem. from Janet Napolitano, Sec'y of Homeland Security, to David V. Aguilar, Acting Comm'r, U.S. Customs and Border Protection, *et al.*, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children*, at 1 (June 15, 2012), https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf. The DACA Instructions for Form 821D note that the age requirement is of the date of the memo, June 15, 2012. *See* USCIS, Instructions for Consideration of Deferred Action for

and finite. The declarations of the Individual Plaintiffs demonstrate the specificity and definiteness with which these requirements are met:

(1) "I arrived in the United States for the first time when I was two years old."

(2) "That [arrival] was more than ten years before both June 15, 2007 and my 16th birthday. I have not left the U.S. since arriving," and "[o]n June 15, 2012, I was present in the U.S. and did not have lawful status."

(3) "I graduated from Port Richmond High School in Staten Island in August 2014."

(4) "I have never been arrested or convicted of a crime."

(5) "I am 26 years old."

Decl. Johana Larios Sainz, ¶¶ 4-7, Ex. I, ECF 309.5. *See also,* Decl. of Ximena Zamora, ¶¶ 1, 4-7, Ex. K, ECF. 309.5; Decl. of M.B.F., ¶¶ 1, 5-8, Ex. L, ECF 309.5. The exclusion from both the DACA Class and the Pending Applications Subclass is similarly finite, as it applies only to those individuals who additionally "bring a federal lawsuit challenging the Wolf Memorandum." Mem. Supp. Pls.' Mot. Class Certification, ECF 309.1, at 3.

Defendants contest Plaintiffs' proposed class definitions on the grounds that no temporal limitations exist and that future class members are included. Neither is a problem. First, DACA's requirements mean that class members will not be added *ad infinitum*; in order to apply under the terms of the Napolitano Memorandum, an individual must have continuously resided in the U.S. since June 15, 2007, must have been under 31 years of age as of June 15, 2012, and must have been present in the United States on June 15, 2012.[7] The number of individuals who can meet the requirements is temporally limited and fixed. In any event, the inclusion of future class members is not a bar to a Rule 23(b)(2) class certification. In *M.G. v. New York City Dep't of Educ.*, a court

Childhood Arrivals, Form I-821D, at 1, https://www.uscis.gov/sites/default/files/document/forms/i-821dinstr.pdf (last updated 4/24/2019).
[7] *See* Mem. from Janet Napolitano, *supra* at 7 n.6.

rejected the ascertainability argument Defendants' make here, reasoning that the inclusion of future class members "cannot, by definition, defeat ascertainability because they will be identified using the same, administrable criteria applicable to current class members. (And, in any event, it is not necessary to identify these people in order to administer injunctive relief.)." 162 F. Supp. 3d 216, 238 (S.D.N.Y. 2016).

Defendants also attempt to impose an administrative feasibility requirement, stating, for example, that "Plaintiffs' Class is defined in a manner that makes no administrative sense." Defs.' Opp'n 4. But Rule 23 includes no such requirement and the Second Circuit has rejected reading in an administrative feasibility requirement. *See In re Petrobras Sec.*, 862 F.3d at 264-65 ("We conclude that a freestanding administrative feasibility requirement is neither compelled by precedent nor consistent with Rule 23, joining four of our sister circuits in declining to adopt such a requirement.").

Even if administrative feasibility were a requirement, this case easily meets any such requirement. Implementing the definitional exclusion is not so difficult as Defendants' suggest.[8] Defs.' Opp'n 8-9. Defendants attack the feasibility or practicality of the class definitions by giving a hypothetical example of Virginia opting out of the class, while the University of California does not. *Id.* at 8. However, setting aside that an exclusion from the class definition and an opt-out are not the same, the example is irrelevant to the issues presented here. As noted above, *supra* at 1, Plaintiffs' proposed class definitions include only *individuals*. Nor is there anything unusual about individuals being part of an entity that is a plaintiff in another case. For example, Jirayut "New"

---

[8] Even if administrative feasibility were a requirement, determining whether an individual is a class member is no more administratively difficult than Defendants' solution: denying class certification and limiting any relief or injunction to plaintiffs in the two cases currently before this court (which include, across the two cases, individuals, a non-profit organization with more than 24,000 members and thousands of clients, and 16 states and the District of Columbia).

9

Latthivongskorn is a plaintiff in the *Garcia* litigation but, at the time of filing his complaint, was also a student within the University of California system. Thus, Latthivongskorn is a plaintiff in his own lawsuit and would benefit from any relief secured by the Regents of the University of California through their lawsuit. This is not improper, nor do Defendants cite any case law to suggest that it is.

Finally, the inclusion of would-be and first-time applicants is appropriate and does not render the Class overbroad. To the extent Defendants argue that first-time applicants lack the reliance interests of renewal applicants and thus the class is overbroad, *see* Defs.' Opp'n 9-11, all putative class members share the interest of having Defendants adjudicate their applications—whether initial or renewal—consistent with the Napolitano Memorandum and of having the unlawful Wolf Memorandum set aside. "[R]elief to each class member in a Rule 23(b)(2) action need not 'be identical, only . . . beneficial.'" *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 n.28 (2d Cir. 2020) (quoting *Sykes v. Mel. S. Harris and Assocs.*, 780 F.3d 70, 97 (2d Cir. 2015)). Moreover, Defendants' reliance interest argument is misplaced as it confuses the potential merits analysis of Plaintiffs' Administrative Procedure Act claims with the interests Plaintiffs and putative class members share that render class certification proper. A merits analysis is misplaced at this stage. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Plaintiffs' proposed DACA Class and Pending Applications Subclass are ascertainable and the boundaries definite, and certification is warranted at this time.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' Mem. Supp. Pls.' Mot. Class Certification, ECF 309.1, this Court should grant Plaintiffs' Motion and certify a nationwide DACA Class and Pending Applications Subclass.

Dated: October 2, 2020

Respectfully submitted,

/s/ Trudy S. Rebert

| | |
|---|---|
| Trudy S. Rebert, Esq. (TR 6959) | Maria Camila Bustos, Law Student Intern* |
| NATIONAL IMMIGRATION LAW CENTER | Armando Ghinaglia, Law Student Intern |
| P.O. Box 721361 | Angie Liao, Law Student Intern* |
| Jackson Heights, NY 11372 | Edgar A. Melgar, Law Student Intern* |
| (646) 867-8793 | Medha Swaminathan, Law Student Intern* |
| rebert@nilc.org | Ramis Wadood, Law Student Intern |
| | Muneer I. Ahmad, Esq. (MA 9360) |
| Araceli Martínez-Olguín, Esq. (AM 2927) | Marisol Orihuela, Esq. (*pro hac vice*) |
| Mayra B. Joachin, Esq. (*pro hac vice*) | Michael J. Wishnie, Esq. (MW 1952) |
| NATIONAL IMMIGRATION LAW CENTER | JEROME N. FRANK LEGAL SERVICES ORG. |
| 3450 Wilshire Blvd. #108-62 | P.O. Box 209090 |
| Los Angeles, CA 90010 | New Haven, CT 06520 |
| (213) 639-3900 | (203) 432-4800 |
| | |
| Paige Austin, Esq. (PA 9075) | Karen C. Tumlin, Esq. (*pro hac vice*) |
| MAKE THE ROAD NEW YORK | Cooperating Attorney |
| 301 Grove Street | JEROME N. FRANK LEGAL SERVICES ORG. |
| Brooklyn, NY 11237 | P.O. Box 209090 |
| (718) 418-7690 | New Haven, CT 06520 |
| | (323) 316-0944 |

*Attorneys for Plaintiffs*

\* Motion for law student appearance
forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2020, a true and correct copy of the foregoing Reply in

Support of Plaintiffs' Motion for Class Certification was filed electronically. Notice of this filing

will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties

may access this filing through the Court's CM/ECF system.

/s/ Trudy S. Rebert
Trudy S. Rebert, Esq. (TR 6959)
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 721361
Jackson Heights, NY 11372
(646) 867-8793

12