UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------x
                                    16-CV-04756(NGG)
BATALLA VIDAL, et al.,
                                    United States Courthouse
         Plaintiff's,               Brooklyn, New York

         – versus –                 August 13, 2020
                                    2:00 p.m.
NIELSEN, et al.,

         Defendants.
------------------------------x
                                    17-CV-5228(NGG)
STATE OF NEW YORK, et al.

         Plaintiffs,

         –versus–

TRUMP,
         Defendants
------------------------------x

         TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
          BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
             UNITED STATES SENIOR DISTRICT JUDGE

                        VIDEO CONFERENCE
APPEARANCES

Attorney for Plaintiffs: JEROME N. FRANK LEGAL SERVICES
                         PO Box 209090
                         New Haven, Connecticut 06520
                         BY:  MUNEER AHMAD, ESQ.
                              KAREN TUMLIN, ESQ.
                              ARMAND GHINAGLIA
                                  (Student Intern)

                    NATIONAL IMMIGRATION LAW CENTER
                     3435 Wilshire Boulevard
                     Los Angeles, California 90010
                     BY:  MYRA JOACHIN, ESQ.
                          ARACELI MARTINEZ-OLGUIN, ESQ.
                          TRUDY REBERT, ESQ.

                Rivka Teich CSR RPR RMR FCRR
                   Official Court Reporter

```
1   (Appearances Continued)

2   For the Plaintiffs: MAKE THE ROAD NEW YORK
                        301 Grove Street
3                       Brooklyn, New York 11237
                        BY:  PAIGE AUSTIN, ESQ.
4                            YARTIZA MENDEZ, ESQ.

5   For The State of    OFFICE OF THE ATTORNEY GENERAL
    New York:           120 Broadway
6                       New York, New York 10271
                        BY:  SANIA KHAN, ESQ.

7
    Attorney for Defendants: U.S. DEPARTMENT OF JUSTICE
8                        Civil Division
                         Federal Programs Branch
9                        20 Massachusetts Avenue NW
                         Washington, D.C. 20530
10                       BY:  STEPHEN M. PEZZI, ESQ.
                              JOSEPH MARUTOLLO, ESQ.
11                            BRAD ROSENBERG, ESQ.

12
    Court Reporter:         RIVKA TEICH CSR, RPR, RMR, FCRR
13                          Phone:  718-613-2268
                            Email:  RivkaTeich@gmail.com
14
    Proceedings recorded by mechanical stenography.  Transcript
15  produced by computer-aided transcription.

16

17

18

19

20

21

22

23

24

25
```

PROCEEDINGS
STATUS CONFERENCE

1          (Video Conference)

2          THE COURTROOM DEPUTY:  This is on, both cases on,

3 Batalla Vidal versus Nielsen, and State of New York versus

4 Trump.

5          State your appearances, please.

6          MR. AHMAD:  Good afternoon.  Muneer Ahmad, Professor

7 at Yale Law school on behalf of the Batalla Vidal, plaintiffs.

8 Also with me today is law student intern, Armando Ghinaglia.

9 Mr. Ghinaglia is going to be doing the speaking for the most

10 part under my supervision today.

11          THE COURT REPORTER:  I can't hear you.

12          THE COURT:  Let me ask that everyone place your

13 speaker on mute until they need to speak that will help the

14 court reporter, Ms. Teich.

15          Go ahead, sir.

16          MR. AHMAD:  Thank you, your Honor.  Mr. Ghinaglia

17 will be principally speaking on behalf of the Batalla Vidal

18 plaintiffs.  I'll ask my co-counsel to introduce themselves.

19 Once they've done that, we would like to briefly introduce our

20 plaintiffs on the phone line.

21          THE COURT:  All right, where is Mr. Ghinaglia?

22 Raise your hand.

23          MR. GHINAGLIA:  Here, your Honor.

24          THE COURT:  All right, I'm trying to associate names

25 with faces.  And we're in a brave new world here so it may

PROCEEDINGS
STATUS CONFERENCE

1    take a little bit of time for all of us to successfully

2    navigate this process.  So I wish to use a term of art that

3    will come up, a little forbearance would be appreciated on

4    your part.

5              Go ahead, Professor.

6              MR. AHMAD:  Yes, I ask Ms. Tumlin to introduce

7    herself.

8              MS. TUMLIN:  Good afternoon, your Honor, Ms. Tumlin

9    with the Jerome Frank Legal Services Organization and for the

10   Batalla Vidal plaintiffs.  And I'll pass it to our co-counsel

11   at the National Immigration Law Center.

12             MS. MARTINEZ-OLGUIN:  Good afternoon, your Honor.

13   I'm Araceli Martinez-Olguin with the National Immigration Law

14   Center also for the Batalla Vidal plaintiffs.

15             MS. JOACHIN:  Good afternoon, your Honor, Myra

16   Joachin with the National Immigration Law Center on behalf of

17   the Batalla Vidal plaintiffs.

18             THE COURT:  Good afternoon.

19             MS. REBERT:  Good afternoon, your Honor, Trudy

20   Rebert with the National Immigration Law Center for the

21   Batalla Vidal plaintiffs.

22             THE COURT:  Good afternoon.

23             MS. AUSTIN:  Good afternoon, your Honor, this is

24   Paige Austin from Make the Road New York, also representing

25   the Batalla Vidal plaintiffs.

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PROCEEDINGS
STATUS CONFERENCE

1      THE COURT:  All right.  And Professor, you wanted to

2   introduce the plaintiffs who are listening in on the call.

3      MR. AHMAD:  Yes, your Honor.  Mr. Ghinaglia will do

4   that if the Court will permit.

5      THE COURT:  Okay.  Go ahead, Mr. Ghinaglia.

6      MR. GHINAGLIA:  So I just wanted to note that

7   several of the individual plaintiffs are on the call today

8   including, Martin Batalla Vidal --

9      THE COURT:  Slowly.

10      MR. GHINAGLIA:  Yes, sir.

11      Martin Batalla Vida, Antonio Alarcon, Carolina Fung

12   Feng, Eliana Fernandez, and Carlos Vargas.  And of course we

13   have counsel and representatives from the organizational

14   plaintiff, Make the Road New York, with us today as well,

15   Paige Austin who introduced herself and Yaritza Mendez.

16      THE COURT:  Thank you very much.  On the New York

17   State litigation representing the state.

18      MS. KHAN:  Good afternoon, your Honor, Sania Khan on

19   behalf of the plaintiff state.  I want to apologize for not

20   being able to be on video, I'm having some technical

21   difficulties.

22      THE COURT:  Thank you very much.

23      And for the defendant in both cases.

24      MR. PEZZI:  Good afternoon, your Honor.  Steven

25   Pezzi on behalf of defendants in both cases.

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PROCEEDINGS
STATUS CONFERENCE

1          MR. MARUTOLLO:  Good afternoon, Joseph Marutollo

2  from the U.S. Attorney's Office for the Government.

3          THE COURT:  Good afternoon.  Thank you.

4          Is there anyone else, any other attorneys appearing

5  for the parties?

6          MR. ROSENBERG:  Good afternoon, your Honor.  This is

7  Brad Rosenberg.  I'm a colleague of Mr. Pezzi.  I'm Assistant

8  Director of the Federal Program for the Department of Justice.

9          THE COURT:  Very good, thank you.  Good afternoon to

10  you, sir.

11         A few housekeeping items before we go further.  I

12  advise everyone who is participating or listening to this

13  proceeding on Cisco Webex and telephone that no recording of

14  this proceeding of any kind is permitted under a policy of the

15  U.S. Judicial Conference and Rule 1.8 of the Local rules of

16  the Eastern District of New York and violaters are subject to

17  sanctions.  I appreciate your cooperation in following this

18  scripture.

19         This proceeding as been requested by plaintiffs and

20  so why don't we begin with a discussion of the purpose that

21  plaintiffs have asked for this proceeding.

22         The mandate of the Supreme Court was returned to the

23  Second Circuit, and a mandate was returned to this Court in

24  what we would call the DACA case.  And so it brings us to the

25  point where we must determine whether we have any additional

7

PROCEEDINGS
STATUS CONFERENCE

1    proceedings that should be pursued in the district court.

2           So why don't we begin with Mr. Ghinaglia and then I

3    will hear from the State of New York on their case and then

4    I'll hear from the Government.

5           The Court has, just to set the state of play here,

6    the Court has read the transcript of the case in the District

7    of Maryland and I will be asking the parties to advise the

8    Court as to whether there is anything about that case which

9    impacts or addresses any of the issues in this case.  And I

10   assume that you, Mr. Pezzi, are handling these cases wherever

11   they may arise around the country.  I'll ask you to fill us in

12   on what is happening in the other trial courts so that at

13   least we'll have a sense of the state of proceedings in the

14   Courts that have been involved in California, Maryland, and

15   here.

16          Why don't we start with the plaintiffs in the DACA

17   case.

18          MR. GHINAGLIA:  Thank you, your Honor.  The Supreme

19   Court's decision in this case and decisions by other Courts

20   made clear the Government's obligation to return to the status

21   quo ante with regard to DACA as it was outlined in the

22   Napolitano Memo, to accept initial applications, renewals and

23   request for advanced parole.  In response the administration

24   put applicants in no-action buckets where they waited for a

25   few weeks without realizing it, and before the Government

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PROCEEDINGS
STATUS CONFERENCE

1   issued a new memorandum that immediately and severely and

2   retroactively restricted the program.  And we're here because

3   that new memo is unlawful.

4          We're concerned about real harm that tens of

5   thousands of people, New Yorkers and people from around the

6   country are facing.  These folks depend on DACA to provide for

7   their families to make ends meet and to pursue their dreams.

8          As someone who was in that very position, your

9   Honor, who was once an initial applicant, a renewal applicant,

10  even a recipient of advanced parole, I know first-hand the

11  terrible impact that this memo will have on folks who should

12  have the benefit of DACA; all at a time when they can least

13  afford to go without it.

14         We're here to seek your Honor's lead to amend our

15  complaint, to challenge the legality of the Wolf Memo by

16  including additional claims and plaintiffs.  We want to be

17  sure to move deliberately, giving the effect that this memo

18  will have on plaintiffs, including people in removal

19  proceedings and people who have found orders of removals.

20         And we're concerned that the litigation in the

21  Southern District of Texas not unfairly determined the rights

22  of plaintiffs here in New York before the Eastern District of

23  New York has had an opportunity to do so.

24         We have a proposed briefing schedule.  Your Honor,

25  may jointly bide the Batalla Vidal plaintiffs and the state

PROCEEDINGS
STATUS CONFERENCE

1    plaintiffs, which we shared with the federal Government.  And

2    they've given some feedback on that as well.  We hope that

3    that schedule can move this along appropriately and give the

4    Government enough time to respond accordingly.

5             THE COURT:  What about the proceedings in -- is it

6    the Southern District of Texas?

7             MR. GHINAGLIA:  Yes, your Honor.

8             THE COURT:  And what proceedings are ongoing there?

9             MR. GHINAGLIA:  So currently the state parties in

10   Texas V United States are waiting on Judge Hanen to rule on

11   the state's motion for summary judgment.  The states requested

12   a hearing before the Judge on the week of August 31.  As far

13   as I understand, the Court has not responded to that request

14   yet.  The Court did request a certified copy of the

15   administrative record of the Duke Memo, which was before this

16   Court to be filed by August 25.

17            THE COURT:  And the issue that is being pursued by

18   the plaintiffs in that case is, can you describe it for me.

19            MR. GHINAGLIA:  Yes, your Honor.  Plaintiffs in that

20   case are seeking a decision on the legality of DACA.  Judge

21   Hanen in that case has weighed in on that question and has

22   reached that the DACA was unlawful, presumably unlawful.

23   We're concerned again because the rights and interest of our

24   plaintiffs here might well be at stake.

25            THE COURT:  What is the schedule that you're

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PROCEEDINGS
STATUS CONFERENCE

1    proposing for your amended complaint and your motion practice?

2            MR. GHINAGLIA:  So there are two kinds of tracks,

3    your Honor.  On one hand we have the main papers, including

4    the amended complaint; on the other is the administrative

5    record.

6            As to the main papers, the Government and plaintiffs

7    agree that September 10 would be when we would be prepared to

8    file an amended complaint.  And for the Batalla Vidal

9    plaintiffs motion for class certification and motion for

10   partial summary judgment on our claim related to the Federal

11   Vacancies Reform Act.  So that's 28 days from now.  28 days

12   from then we propose having the Government answer and move to

13   dismiss, presumably oppose class certification, presumably

14   oppose our motion for partial summary judgment.  Then 21 days

15   after that for plaintiffs to oppose and reply.  And 21 days

16   after that for the Government to reply.

17           I'm happy to give your Honor the specific dates if

18   that would be more helpful.

19           THE COURT:  On this motion practice, let me just

20   hear from the Government on this proposed schedule including

21   the application to amend the complaint.

22           MR. PEZZI:  Good afternoon, your Honor, Steven Pezzi

23   from the Department of Justice.

24           So we received plaintiff's scheduling proposal this

25   morning for the first time.  I can say this afternoon that the

PROCEEDINGS
STATUS CONFERENCE

1    earliest two items on the schedule, as I understand them,

2    which are a September 10 deadline for an amended complaint in

3    both cases, and a September 21 deadline for the production of

4    the administrative record, I think those dates are reasonable

5    and the Government has no objection.

6         With respect to the remainder of the schedule, I

7    think the most efficient course would be for the parties to

8    have at least a brief opportunity to meet and confer and see

9    if we can come up with a schedule that works for everyone.

10        I have some other smaller quibbles with the schedule

11   that I'm not sure is the best use of your Honor's time for me

12   to address them today, given our proposal that the parties be

13   given a chance to meet and confer.

14        We have no objection to amended complaints in either

15   case.  And we have no objection to a September 21 deadline to

16   produce an administrative record for the Wolf Memorandum and

17   commit to working quickly and in good faith with plaintiffs to

18   come up with a schedule for the remainder of these

19   proceedings.

20        THE COURT:  How long will it take for the parties to

21   meet and confer?  Certainly I think that's an appropriate

22   thing to do if we can avoid having back and forth here today.

23   Can this be done in the next seven days, for instance?

24        MR. PEZZI:  Yes, your Honor, from the Government's

25   perspective seven days is sufficient.

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PROCEEDINGS
STATUS CONFERENCE

1      THE COURT:  And you reach an agreement then you can

2  simply provide the Court with a joint letter stating that you

3  reached an agreement on the briefing schedule, or the motion

4  practice, and we won't need to have another meeting at this

5  point at least.

6      What is the date that you would want to have the

7  motion argued?  I didn't hear you talk about that.

8      MR. AHMAD:  On the schedule that we outlined and

9  that we sent to the Government, the briefing would be

10  completed at the end of November.  And so we would anticipate

11  an argument date that would come either the tail end of

12  November or sometime in December.

13      THE COURT:  So let me understand this, the Southern

14  District of Texas is taking this up in August, and judging

15  from previous statements by the Judge in the Southern District

16  of Texas, it's reasonable to conjecture that that Court will

17  issue a ruling that is adverse to your client's interests.  Is

18  that a fair conjecture on the Court's part?

19      MR. AHMAD:  That is, your Honor.

20      MR. GHINAGLIA:  Yes, your Honor.

21      THE COURT:  And so how would that affect what is

22  going on here, if at all?

23      MR. GHINAGLIA:  There is a possibility, your Honor,

24  that the decision the Court in Texas will reach DACA

25  recipients nationwide and that would severely curtail the

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PROCEEDINGS
STATUS CONFERENCE

1    rights and interests of our clients as you've suggested.

2           THE COURT:  And that that Court would issue a

3    nationwide injunction.

4           MR. GHINAGLIA:  Correct, your Honor.  That it would

5    reach summary judgment on the claims.

6           MR. AHMAD:  Your Honor --

7           THE COURT:  Waiting until the end of November to do

8    anything in this case would appear to me to be trying to look

9    into a crystal ball.  Because depending on the outcome of the

10   election on November 3rd, the reality of the situation could

11   shift tremendously and there might be a possibility that we

12   could have what Judge Grimm  was discussing, and that is a

13   solution developed in the legislature to deal with this issue.

14          So I'm just wondering why prolonging this process

15   until Christmas makes any sense at all, particularly in view

16   of the fact that a Court in Texas has this case on the fast

17   track to a decision.  I'm looking at this from a practical

18   standpoint frankly.

19          We've gone through a lot with this case.  It's gone

20   to the Supreme Court.  The Supreme Court has sent it back to

21   the agency.  And now we're setting a schedule that would bring

22   us to the end of the year.

23          Let me ask this, Mr. Pezzi, do you have any sense of

24   the schedule that your client is planning to pursue in terms

25   of developing a solution to the process that the Supreme Court

PROCEEDINGS
STATUS CONFERENCE

1   has stated was inadequate?  In other words, does your client

2   have a schedule?  Your client issued an eight-page memorandum

3   a few days after the meeting with the District Judge in

4   Maryland, and now we're here looking at that memorandum.  What

5   is next and when is it coming, is my question.

6          MR. PEZZI:  Your Honor, I am not able to offer any

7   precise timing on that.  I'm not aware of any imminent changes

8   to the policy.  As of now I think everyone agrees that the

9   current policy is governed by the Wolf memorandum, that is a

10   new agency action that plaintiffs can attempt to challenge

11   under the Administrative Procedure Act, as the Supreme Court

12   noted.  I think everyone agrees that the agency can make

13   changes to the DACA policy in either direction in whole or in

14   part.  It has made certain immediate partial changes, although

15   it has kept the core of the program in tact until further

16   notice.

17          The Government believes the Wolf memorandum complies

18   with the Administrative Procedure Act and meets the

19   requirements it needs to meet under the law.  If plaintiffs

20   disagree with that, they may, as they are attempting to do,

21   amend their complaints to challenge the Wolf memorandum.

22          THE COURT:  Mr. Ghinaglia, do you want to speak to

23   that?

24          MR. GHINAGLIA:  The Wolf memorandum by its terms

25   claims to retain the court DACA and return to the status quo.

PROCEEDINGS
STATUS CONFERENCE

1    Our concern is that the court DACA is to allow people who meet

2    the criteria in the 20-fold memo to apply to DACA and receive

3    it.  That seems to be the status quo envisioned by the Supreme

4    Court's decision, by the Court's mandate, by the District of

5    Maryland's order.  It's the program as it existed on

6    September 4, 2017 before the rescission.

7            As Mr. Pezzi noted, that's the reason why we are

8    challenging this new memorandum.

9            THE COURT:  All right.

10           MR. AHMAD:  May I speak to the timing question, your

11   Honor?

12           THE COURT:  Who is peeking now.

13           MR. AHMAD:  This is Muneer Ahmed.

14           THE COURT:  Professor, yes.

15           MR. AHMAD:  Thank you, your Honor.  With regard to

16   timing, the plaintiffs -- I just say the schedule that we sent

17   to the Government, the Government's initial response was that

18   they thought it was too fast -- (video interruption) -- the

19   Court is inclined to do so.  One thing that we could do right

20   off the bat is to meet and confer tomorrow with the Government

21   and have something filed with the Court, either joint schedule

22   or separate schedules, for the Court to consider by Monday or

23   Tuesday of next week.

24           But looking ahead, if the Court is inclined to

25   adjudicate this case on a faster track, the plaintiffs are

PROCEEDINGS
STATUS CONFERENCE

1   amenable to significantly revising the schedule in order to

2   create that opportunity.

3          And to say two things, one, as we did the last time

4   around, our intention here is to move via class.  That does

5   distinguish our case from our case in the Southern District of

6   Texas.  Second, just to remind the Court that when we first

7   came to you with regard to the DACA program, it was in the

8   light of a decision from the Southern District of Texas that

9   was determining the rights of DACA recipients in New York.

10  And we were at that point advancing theories about why and

11  arguments why this Court could determine those rights

12  notwithstanding an order from the Southern District of Texas.

13  If we end up in a situation, your Honor, where the Southern

14  District of Texas does move quickly and issues a ruling

15  adverse to our clients, then that's an avenue that I think

16  that we may need to revert to again.

17         THE COURT:  All right.  Before I hear from the

18  Government again, let me hear from you, Ms. Khan, would you

19  like to weigh in on your requests?

20         MS. KHAN:  Yes, your Honor, thank you.

21         I think that pretty much what the Batalla Vidal

22  plaintiffs have stated is pretty much in line with what

23  plaintiff's state position is.  Obviously we not be

24  participating in the class certification motion, but

25  otherwise, timing wise we are on the same page.  And as Muneer

PROCEEDINGS
STATUS CONFERENCE

1    just stated, if your Honor wants, if your Honor is willing to

2    adjudicate this quickly, we are happy to amend the schedule on

3    that basis as well.

4          THE COURT:  Well, November is too late, so let's

5    start with that.  And I'm not -- especially if there is a

6    decision issued in another district that might affect the

7    plaintiffs in this case tangentially or directly.  It is

8    essential, there are thousands and thousands of potential

9    class members in the Second Circuit, perhaps in the Eastern

10   District of New York, and the rights and of those individuals

11   are foremost in the Court's thinking right now.  And I think

12   that we should make every effort to reach an initial

13   determination that can be reviewed on appeal at the earliest

14   possible time.

15         This case has remained unresolved and there are

16   700,000-plus people who are directly affected.  There are

17   individuals whose applications are sitting in a lock box

18   somewhere, whose applications were not dealt with during the

19   period between the Supreme Court decision in June and the Wolf

20   memorandum toward the end of July.  There was nothing during

21   that period that would have barred the agency from moving with

22   alacrity to resolve the applications that had been submitted.

23         And now we have the Wolf memorandum, which is deemed

24   to be by the agency an interim solution.  But there are

25   arguments on both sides as to whether it is an interim

PROCEEDINGS
STATUS CONFERENCE

1    solution that is not deserving or subject to judicial review

2    or whether it is something else.

3           So we have a lot, we have many open questions here

4    that need to be resolved and should be resolved promptly, in

5    my opinion.

6           Before I go on to giving you a little bit of time to

7    set a schedule, I noted that the USCIS, is that the U.S.

8    Customs and immigration Service, is that right, in the

9    Department of Homeland Security issued a press statement, the

10   Regents decision by the Supreme Court stating that the opinion

11   had no basis in law.  I'm just wondering, how the decision by

12   the Supreme Court could be deemed by a federal agency --

13   (video interruption) -- law.

14          Can you explain that to me, Mr. Pezzi?

15          MR. PEZZI:  Your Honor, all I can say about that is

16   that obviously the Regents decision is the law.  The

17   Government is complying with the Regents decision and will

18   continue to comply with the Regents decision.

19          THE COURT:  Think perhaps the Attorney General

20   should advise that his client, Mr. Wolf, that it is not

21   beneficial to anyone to have a federal agency take issue with

22   a decision of the Supreme Court.  And I'm very troubled by

23   anyone who would write such a thing on a document issued by a

24   federal agency regarding a decision by the U.S. Supreme Court,

25   or any court, until it's overruled or reversed, any federal

PROCEEDINGS
STATUS CONFERENCE

1    court at least.

2         So I just raise that, and I was deeply concerned

3    about it.

4         Sadly, many times something like that happens.  It

5    undermines the rule of law.  And we should not be in a

6    position of having to ask the Justice Department to clarify

7    whether this is the opinion of the Government or not.

8         Let's get back to the schedule.  I'm going to grant

9    the motion to amend in both cases.  And I'm going to follow

10   the suggestion which was made by Professor Ahmed that the

11   parties should meet and confer on the schedule.

12        COURTROOM DEPUTY:  Please keep your phones and

13   computers on mute, please.

14        THE COURT:  Thank you.  A meeting confer and advise

15   on the schedule for the motion practice for both the filing of

16   the amended complaints and the motion practice.  And advise

17   the Court in writing no later than next Wednesday on any

18   agreed to schedule, or if there is no agreement on the

19   schedules that the different sides would wish the Court to

20   issue.

21        What else do we have for today?

22        MR. AHMAD:  Your Honor, I just wondered if in the

23   interest of trying to move along if we might be able to get

24   the -- (video interruption) -- faster than.

25        THE COURT REPORTER:  You're breaking up.  I can't

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PROCEEDINGS
STATUS CONFERENCE

1   hear you.

2            MR. AHMAD:  I was saying that in the interest of

3   trying to move along what can be moved along at this point, I

4   wondered if we would able to get the administrative record

5   faster than Mr. Pezzi has agreed to in this hearing thus far.

6            THE COURT:  What I would like to do is have

7   Mr. Pezzi confer with his client to see how quickly that can

8   be done.  And if you have a dispute on that subject, Mr. Pezzi

9   can advise the Court on why the schedule he proposes is the

10  one, your views on advancing that schedule.  So that we can

11  have that discussion after the agency has an opportunity to

12  give it some thought.

13           MR. AHMAD:  Thank you, your Honor.

14           THE COURT:  Mr. Pezzi, do you have anything else for

15  today?

16           MR. PEZZI:  Nothing further from the Government,

17  your Honor.

18           THE COURT:  And Mr. Ghinaglia, do you have anything

19  else for today?

20           MR. GHINAGLIA:  No, your Honor thank you.

21           THE COURT:  Ms. Khan?

22           MS. KHAN:  No, your Honor.  Thank you.

23           THE COURT:  All right, if we need to have an

24  additional meeting, we'll do it next Thursday at 2:00 p.m.

25  Just jot that down on your calendars.  I don't want you to be

PROCEEDINGS
STATUS CONFERENCE

1    far afield next Thursday; but if on Wednesday I see that we

2    need to meet again on Thursday, I don't want to surprise you

3    with a meeting for next Thursday.  That way we can discuss

4    anything that still needs to be resolved procedurally we can

5    resolve at that point.

6            But it is my, I will repeat, it is my wish that this

7    case move very quickly and that all of the people who are

8    affected by the changes that have been made in the program

9    since it was first instituted in 2013 and then rescinded, that

10   all of that can be resolved sooner than November, the end of

11   November or December of this year.

12           Thank you everyone have a nice day.

13           (Whereupon, the matter was concluded.)

14                    *    *    *    *    *

15   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

16

17

     Rivka Teich, CSR RPR RMR FCRR
18   Official Court Reporter
     Eastern District of New York

19

20

21

22

23

24

25