UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTÍN JONATHAN BATALLA VIDAL, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CHAD WOLF, et al.,<br><br>    Defendants. | 16-CV-4756 (NGG) (VMS) |
| STATE OF NEW YORK, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>DONALD J. TRUMP, et al.,<br><br>    Defendants. | 17-CV-5228 (NGG) (VMS) |

**PLAINTIFFS' JOINT REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT AND UPDATE ON STATUS OF
DISCUSSIONS BETWEEN THE PARTIES**

## INTRODUCTION

Since Defendants first attempted to terminate DACA in September 2017, over one million lives have been thrown into jeopardy. The unlawfully issued Wolf Memorandum perpetuated that jeopardy. Since that memorandum was issued in July 2020, many DACA-eligible young people have been forced to forgo educational opportunities, live in fear of immigration proceedings and separation from their families, and suffer the economic consequences of being unable to obtain work authorization attendant to deferred action. Many who aged into eligibility for DACA but were locked out of the program as a result of Defendants' unlawful actions—including Plaintiff and Class Representative M.B.F.—have accrued periods of "unlawful presence," incurring profound risks to their future ability to remain in or return to the United States. Defendants' brief opposing the relief sought by Plaintiffs to remedy these injuries does not refute any of the legal arguments made in Plaintiffs' opening brief or raise any new legal issues for the Court.[1] Plaintiffs submit this Reply for the limited purpose of addressing why declaratory relief regarding unlawful presence is needed to remedy the injuries that Defendants' unlawful actions have inflicted upon Plaintiffs, and to update the Court on the status of discussions between the parties.

## ARGUMENT

Plaintiffs' request for declaratory relief with respect to accrual of "unlawful presence" seeks to undo the harm to class members directly caused by Defendants' unlawful issuance of the Wolf Memorandum. Contrary to Defendants' assertions, Plaintiffs do not seek to modify the

---

[1] Although Defendants suggest that Plaintiffs' proposed injunctive relief "could inappropriately hamstring future agency policy changes with respect to DACA," Defs.' Opp. at 8 (Dkt. 350), that is a tortured reading of Plaintiffs' proposed order and conflicts with Plaintiffs' prior acknowledgments that Defendants have latitude to change their discretionary policies, providing they do so in accordance with the law. In any event, the parties can easily seek clarification or relief from this Court if there is any doubt about how the Court's order will apply to a particular set of facts.

1

statutory provisions that govern the accrual of unlawful presence nor do they seek remedies that go beyond what Plaintiffs and class members would have obtained were it not for Defendants' unlawful actions.

I. **Plaintiffs and Class Members Have Accrued Unlawful Presence as a Direct Result of Defendants' Unlawful Actions, with Significant Consequences**

Under the Immigration and Nationality Act ("INA"), individuals are deemed unlawfully present in the United States if they are "present in the United States after the expiration of the period of stay authorized by the Attorney General or [are] present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(9)(B)(ii). Individuals who are "unlawfully present" in the United States for "more than 180 days but less than 1 year" may face a 3-year bar on admission to the United States. *Id.* § 1182(a)(9)(B)(i)(I). Individuals who are unlawfully present "for one year or more" may face a ten-year bar to admission. *Id.* § 1182(a)(9)(B)(i)(II). Individuals who are unlawfully present for more than one year, have been ordered removed, and reenter or tried to reenter the country without "being admitted or paroled" are permanently inadmissible. *Id.* § 1182(a)(9)(C); *see also* USCIS, Unlawful Presence and Bars to Admissibility (last updated July 23, 2020), *available at* https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-bars-to-admissibility.

However, unlawful presence only begins to accrue after an individual turns 18 years old. 8 U.S.C. § 1182(a)(9)(B)(iii)(I). Under the pre-2017 DACA guidance, individuals would (i) "not accrue unlawful presence during the period of deferred action," and (ii) if they were under 18 years of age at the time of submission of their initial request for DACA, which is true for many first-time DACA applicants, they would "not accrue unlawful presence while the request is pending

2

with USCIS."[2] But the Wolf Memorandum deprived some class members of the ability to apply for or obtain DACA, with the result that these class members accrued unlawful presence they never would have accrued absent its issuance. Therefore, relief that secures for class members the protections against accrual of unlawful presence that they would have had if the Wolf Memorandum had not unlawfully precluded them from applying for DACA is appropriate and warranted.

The accrual of unlawful presence has profound implications on people's lives, including for named Plaintiff M.B.F. In her case, triggering the immigration bars through the accrual of unlawful presence could prevent her from obtaining lawful status in the future. M.B.F. has lived in the United States since she was four years old; she has attended New York city schools, and her relatives have lawful status. Decl. of M.B.F. ¶¶ 4-9 (Dkt. 309-5 at Ex. L).[3] M.B.F.'s grandmother is a U.S. citizen and has petitioned for M.B.F.'s mother to obtain lawful status. *See* Fourth Amended Compl. ¶ 40 (Dkt. 308). M.B.F. has a potential pathway to lawful status, but she has received a Notice to Appear for immigration court, rendering removal proceedings a tangible and imminent concern. Accrual of unlawful status jeopardizes her ability to pursue lawful status for years, and perhaps permanently.[4] *See id.*; Decl. of M.B.F. ¶ 4 (Dkt. 309-5 at Ex. L).

---

[2] *See* DACA, Archived Frequently Asked Questions Q48, *available at* https://www.uscis.gov/archive/frequently-asked-questions#:%7E:text=Archived%20Content&text=USCIS%20is%20not%20accepting%20requests,5%2C%202017.

[3] References to the docket ("Dkt.") cite to the docket in the *Batalla Vidal* matter, No. 16-CV-4756 (NGG) (VMS).

[4] Many DACA recipients are part of mixed status families where some family members are legal permanent residents or United States citizens. If a DACA recipient is the beneficiary of a family-based petition filed by a U.S. citizen or legal permanent resident family member but not eligible under 8 U.S.C. § 1255(a) to adjust status in the United States, they can travel to obtain an immigrant visa at a U.S. consulate abroad. When they are readmitted pursuant to their immigrant visa, they become legal permanent residents. However, if a DACA recipient has triggered a three- or ten-year bar under 8 U.S.C. § 1182(a)(9)(B)(i), they will be unable to return to the United States after departing, unless they qualify for an extremely limited waiver.

3

M.B.F. turned 18 years old in September 2020 during the period that the unlawful Wolf Memorandum has been in effect; by March 2021, she will have accrued sufficient unlawful presence to be subjected to the three-year admissibility bar. *Id.* In 2017, M.B.F. had already begun preparing her DACA application when Defendants terminated DACA within days of M.B.F.'s 15th birthday – the date when she would have first been eligible to apply for DACA.[5] *See* Fourth Amended Compl. ¶ 37 (Dkt. 308). In early July of 2020, M.B.F. submitted an application for deferred action under DACA, which USCIS received on or around July 7, 2020. *See id.* at ¶ 39. Yet, her application was not processed or adjudicated. *See id.* at ¶ 40; Decl. of M.B.F. ¶ 3 (Dkt. 309-5 at Ex. L). M.B.F. would not receive full relief from this Court, even after vacatur of the Wolf Memorandum, if the Court declines to remedy the unlawful presence she would have avoided but for the Wolf Memorandum.

## II. Plaintiffs' Requests for Additional Declaratory Relief are Necessary and Appropriate

Plaintiffs will not be made whole by the mere vacatur of the Wolf Memorandum; additional remedies are necessary and this Court has the power to issue such relief pursuant to 28 U.S.C. § 2201(a). Defendants object that Plaintiffs' proposal would exceed the tolling of unlawful presence afforded to individuals by the pre-2017 DACA guidance. For individuals who submit a DACA request before they turn 18, Defendants argue, "an individual could wait several years before submitting his or her request" and thereby benefit from undue tolling. Defs.' Opp. at 10 (Dkt. 350). For individuals who became eligible for DACA after the issuance of the Wolf Memorandum and who submit their first-time request for consideration for deferred action under

---

[5] Under the pre-2017 DACA guidance, individuals could submit a request for deferred action under DACA when they were younger than 15 years old if they were in removal proceedings, had a final order of removal, or had a voluntary departure order, and were not in immigration detention. *See* USCIS, Consideration of Deferred Action for Childhood Arrivals (DACA), *available at* https://www.uscis.gov/archive/consideration-of-deferred-action-for-childhood-arrivals-daca.

4

DACA, Defendants are concerned about a "windfall" because their accrued unlawful presence would be "erased" regardless of their age when the Wolf Memorandum was issued. Defendants' concerns are easily addressed. *Id.* at 11.

For the first group—individuals who submitted first-time requests for DACA before they turned 18, whose requests were denied or rejected under the Wolf Memorandum, and who re-submit their first-time requests and whose requests are granted—Defendants' concern would be addressed by limiting relief to individuals who re-submit their requests within a reasonable time frame, as Defendants themselves suggest. *Id.* at 10 n.8. Plaintiffs propose six months as a reasonable period.[6] For the second group—individuals who became eligible to request deferred action under DACA after the date of the Wolf Memorandum (July 28, 2020), and who submit a first-time request for consideration of deferred action under DACA after issuance of the Court's order and are granted deferred action under DACA—Defendants' concern would be addressed by limiting relief to individuals who apply within the same reasonable amount of time and by tolling the accrual of unlawful presence from July 28, 2020.

Plaintiffs therefore amend their Paragraph 6 of their Proposed Order to read as follows:

> 6. The Court **DECLARES** under 28 U.S.C. § 2201 that: (1) individuals who submitted first-time requests for consideration of deferred action under DACA before they turned 18, whose requests were denied or rejected under the Wolf Memorandum, who re-submit first-time requests within 6 months of the issuance of this order and whose resubmitted requests are granted, do not accrue unlawful presence under 8 U.S.C. § 1182(a)(9) as of the submission date of their first request that was unlawfully rejected under the Wolf Memorandum; and (2) individuals who became prima facie eligible for deferred action under DACA after July 28, 2020, and who submit their first-time request for consideration of deferred action under DACA within 6 months of the issuance of this order and are granted deferred action under DACA, do not accrue unlawful presence under 8 U.S.C. § 1182(a)(9) for the period from July 28, 2020 to the grant of deferred action under DACA, if their application is granted.

---

[6] 8 U.S.C. § 1182(a)(9)(B)(i)(I) provides a 180-day grace period before the accrual of unlawful presence triggers adverse consequences. In addition, six months is roughly the time that will have elapsed from July 28, 2020, the date of the Wolf Memorandum, to the date that this court orders relief.

5

### III. Status of Discussions Between the Parties

By order dated December 3, 2020, the Court directed Plaintiffs to update the Court on the status of discussions with Defendants by noon on Friday, December 4. On December 3, the parties met and conferred, and Plaintiffs are authorized to state that Defendants agreed to stipulate to the relief sought in paragraph 2 of Plaintiffs' proposed order, which states "The Court VACATES the Wolf Memorandum." The parties did not reach agreement regarding any other provision of the relief sought by Plaintiffs' motion, and Plaintiffs respectfully request that the Court adjudicate Plaintiffs' motion at the Court's earliest convenience.

Regarding the extension by a year of unlawfully issued 1-year grants of DACA and related work authorization ("EAD") documents to 65,800 individuals, Defendants suggested in their filing that publication of extensions of the length of these grants in the Federal Register could satisfy the relief warranted here. Defs.' Opp. at 7 n.6. Plaintiffs advised Defendants during their December 3 conferral that Plaintiffs agree that publication in the Federal Register would be helpful in informing class members of their rights, if completed no later than 5 business days of the Court's order, but does not on its own provide full relief to the class. EADs are the primary form of government identification for DACA recipients and are essential in terms of obtaining and retaining employment. Moreover, in some states, the expiration of a driver license is expressly tied to the expiration of an EAD. *See, e.g.*, 75 PA. CONS. STAT. ANN. §1512(e) (West 2020). Simply put, class members cannot carry a copy of a Federal Register notice to replace the value of their EAD card for all the situations on which they rely on it. For this reason, Plaintiffs continue to seek injunctive relief that reissues EADs to all DACA recipients unlawfully given one-year EADs.

6

# CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' motion for partial summary judgment, vacate the Wolf Memorandum, and enter the further relief set forth in the proposed order filed with Plaintiffs' motion.

DATED:  December 4, 2020

By: /s/ Trudy S. Rebert
Trudy S. Rebert, Esq. (TR 6959)
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 721361
Jackson Heights, NY 11372
(646) 867-8793

Araceli Martínez-Olguín, Esq. (AM 2927)
Mayra B. Joachin, Esq. (pro hac vice)
NATIONAL IMMIGRATION LAW CENTER
3450 Wilshire Blvd. #108-62
Los Angeles, CA 90010
(213) 639-3900
martinez-olguin@nilc.org

Camila Bustos, Law Student Intern
Armando Ghinaglia, Law Student Intern
Angie Liao, Law Student Intern*
Edgar A. Melgar, Law Student Intern
Medha Swaminathan, Law Student Intern*
Ramis Wadood, Law Student Intern
Muneer I. Ahmad, Esq. (MA 9360)
Marisol Orihuela, Esq. (pro hac vice)
Michael J. Wishnie, Esq. (MW 1952)
JEROME N. FRANK LEGAL SERVS. ORG.
P.O. Box 209090
New Haven, CT 06520
(203) 432-4800

Karen C. Tumlin, Esq. (pro hac vice)
Cooperating Attorney

Respectfully submitted,

By: /s/ Matthew Colangelo
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Anisha S. Dasgupta, *Deputy Solicitor General*
Alex Finkelstein, *Project Attorney*
Sania Khan, *Assistant Attorney General*
Joseph Wardenski, *Senior Trial Counsel*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

*Attorneys for the Plaintiffs in* 17-CV-5228 (NGG) (VMS)

JEROME N. FRANK LEGAL SERVS. ORG.
P.O. Box 209090
New Haven, CT 06520
(323) 316-0944

Vanessa Dell, Esq. (VD 1157)
Jessica Young, Esq.**
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
(718) 418-7690

*Attorneys for the Batalla Vidal Plaintiffs in*
16-CV-4756 (NGG) (VMS)

\* Motion for law student appearance pending

\*\*Application forthcoming in E.D.N.Y.