DECLARATION OF CONNIE L. NOLAN

I, Connie L. Nolan, declare as follows:

1. I am the Deputy Associate Director of Service Center Operations (SCOPS) for U.S. Citizenship and Immigration Services (USCIS), which is within the Department of Homeland Security (DHS).  I have held this position since June 2021, during which time I also served as the Acting Associate Director of SCOPS from January 2021 to February 2022.  I began my federal career in 1992 with the former Immigration and Naturalization Service (INS) and have served in numerous capacities with INS and now USCIS at the Vermont Service Center, Potomac Service Center, and SCOPS headquarters.

2. In my current position, I oversee all planning, management, and operational functions of Service Center Operations, which includes overseeing all activities at the five service centers located in California, Texas, Nebraska, Vermont, and Virginia, respectively. Service Center Operations employs over 7,400 federal and contract staff.

3. I make the following declaration based on my personal knowledge and on information made available to me in the performance of my official duties as Deputy Associate Director of SCOPS.

4. On July 16, 2021, the U.S. District Court for the Southern District of Texas issued an injunction prohibiting DHS from administering the DACA policy and from reimplementing DACA without compliance with the Administrative Procedure Act. The Court stayed portions of its permanent injunction, permitting DHS to continue to accept but not grant requests from initial requestors and to continue to grant renewal requests for existing requestors.

5. Following its issuance, USCIS immediately worked to comply with the order by stopping administration of the DACA policy, except as permitted by the partial stay. USCIS sent guidance to DACA adjudicators to cease granting initial DACA requests and related work authorization requests, as well as to cease scheduling biometrics appointments for initial DACA requestors.

6. After receiving an initial DACA request, USCIS generally takes the following steps to process and adjudicate the request:

    a. USCIS receives the initial DACA request packet, consisting of Form I-821D, Consideration of Deferred Action for Childhood Arrivals, Form I-765, Application for Employment Authorization, and Form I-765 worksheet, at a USCIS Lockbox facility.

    b. Contract employees at the Lockbox facility scan the forms and create a digital filing in the OnBase system.

    c. The filing is reviewed for completeness, including the applicable filing fee. If the filing does not appear complete, it goes into a Case Resolution queue and is reviewed by a USCIS analyst for confirmation.

    d. The digital file is transmitted to USCIS's Electronic Immigration System (ELIS).

    e. If a filing is incomplete, USCIS will mail the physical filing back to the requestor with an appropriate rejection notice.

    f. A complete filing is assigned a USCIS receipt number, and the fee is electronically processed. USCIS sends a receipt notice to the requestor.

    g. The filing goes through ELIS Alien number ("A-number") validation and assignment, where the requestor's information is compared with existing USCIS records to

confirm if the filer has previously been assigned a unique A-number. The majority of initial DACA requestors will not have an A-number already, so one will be manually assigned and updated in USCIS systems.

h. The adjudicator runs a TECS check, a biographic search of a multi-agency database containing public safety and national security related information from multiple federal agencies, using the requestor's primary name and date of birth.

i. If the requestor had a previous grant of DACA, USCIS checks the filing date against the validity date of the previous grant to determine whether the filing should be treated as an initial or renewal filing under longstanding USCIS policy. Under longstanding policy, DACA requestors who file more than a year after the expiration of the prior period of DACA or after USCIS has terminated the prior grant of DACA must file initial requests rather than renewal requests. As such, USCIS converts any requests filed as renewal requests by filers who need to submit initial requests, into initial requests for the purposes of adjudication. Accordingly, these files are placed in the queue with all other pending initial requests in compliance with the current injunction to await a resolution.

j. Under normal processing, filings then go into the queue for biometrics scheduling at the Application Support Centers (ASC). Requestors generally must appear at their local ASC for biometrics collection.

k. The filing is assigned to a USCIS officer, who runs required criminal background and security checks. The officer reviews the filing and any results from these checks, which may include federal, state and/or local law enforcement records to assess whether additional evidence is required to make a determination or whether it appears

that the requestor does not merit a discretionary grant of DACA. The officer may then send a Request for Evidence (RFE) or Notice of Intent to Deny (NOID), if necessary.

    l. The officer must also assess whether other DACA guidelines are met, such as whether the requestor arrived in the United States prior to age 16 and has been continuously residing in the United States since June 15, 2007; whether the requestor was physically present in the United States on June 15, 2012; whether the requestor has traveled abroad after August 15, 2012 without first obtaining an advance parole document; and whether the requestor meets the educational and military guidelines (if applicable), among other guidelines. The officer may need to send an RFE for additional evidence related to one or more of these guidelines in order to make a determination.

    m. The officer recommends approval or denial of the filing, and obtains any required supervisory review of the decision. The officer then issues the appropriate Notice of Action approving or denying the request. The officer then reviews the Form I-765 and Form I-765 worksheet and issues an employment authorization document (EAD) if warranted.

7. USCIS determines whether a requestor warrants a favorable exercise of prosecutorial discretion at the time of adjudication. As described above, DACA adjudicators perform systems checks at specific points in the process of adjudication, which assist in providing up-to-date relevant information that is used to assess whether the requestor warrants a favorable exercise of prosecutorial discretion to be granted DACA. Certain criminal history and

security checks have a validity period, outside of which they will need to be re-run prior to completing the final adjudication.

    a. Pursuant to agency national security policy, TECS background checks are valid for 180 days. After 180 days, they need to be re-run prior to completing the final adjudication.

    b. FBI Fingerprint check results are valid for 15 months. After 15 months, an adjudicator must re-run the checks prior to completing the final adjudication by electronically resubmitting the requestor's previously collected fingerprints to the FBI. If the fingerprints on file are no longer usable, the requestor would have to be scheduled for a new ASC appointment to collect fingerprints. Each time an FBI fingerprint check is re-run, USCIS pays the FBI a fee of $11.25.

    c. The DACA guidelines state that to be considered for a grant of deferred action under DACA, a requestor should not have been convicted of a felony, significant misdemeanor, or three or more other misdemeanors, and not otherwise pose a threat to national security or public safety. An adjudicator identifies any potentially disqualifying criminal history through the background checks and may need to request additional information from the requestor in order to determine whether the requestor warrants a favorable exercise of prosecutorial discretion to be granted DACA in order to complete the final adjudication.

    d. As noted, the DACA guidelines state that a requestor must have continuously resided in the United States since June 15, 2007, up to the present time.  The adjudicator runs checks through U.S. government systems that identify a requestor's entries and exits from the United States, and these checks must be current as of the time of the

adjudication. If such checks are no longer current due to the initial DACA request having been "on hold," they would need to be repeated prior to completing the final adjudication.

    e. Similarly, if there is evidence that the requestor has traveled abroad since August 15, 2012, the officer must check whether an advance parole document was issued for such travel. These checks must also be current as of the time of final adjudication of the DACA request and would need to be repeated if the DACA request has been "on hold" since the last such check.

    f. As an exercise of prosecutorial discretion to defer removal for a specified period of time, DACA is not granted to a noncitizen with an immigrant or nonimmigrant status. The adjudicator checks USCIS systems to identify any immigration benefit requests filed by or on behalf of the requestor. These checks also must be current as of the time of final adjudication and would need to be repeated if they are not current.

8. It is not feasible to pre-adjudicate initial DACA requests in a way that skips certain adjudicative steps – such as the above-described system checks – in an attempt to avoid any need to "retouch" the request at the time of final adjudication. These system checks are required to assess whether the requestor meets the DACA guidelines and warrants a favorable exercise of prosecutorial discretion, and impact whether additional evidence may be required from the requestor. Delaying these steps until a later time would likely require re-review of the entire initial DACA request, as new information may become available that may impact whether DACA is approved or denied.

9. Additionally, as DACA is an exercise of prosecutorial discretion, an adjudicator assigned to the final adjudication (whether the same officer who completed the "pre-adjudication" or a

different officer), generally would have discretion to review the request in its entirety to determine whether at the time of final adjudication the requestor meets the DACA guidelines and warrants a favorable exercise of prosecutorial discretion, and would not be bound by the "pre-adjudication" review.

10. Service Center Operations adjudicated approximately 4.4 million requests for immigration benefits in FY2021. In addition to DACA requests, Service Center Operations (SCOPS) adjudicates applications and petitions that generally do not require in-person interviews, including, but not limited to, business-related nonimmigrant and immigrant petitions, family petitions, student and exchange visitor petitions, employment authorization applications, and petitions for various humanitarian benefits such as applications and petitions filed pursuant to the Violence Against Women Act, Temporary Protected Status, and T and U nonimmigrant status.

11. In order to comply with the order of the U.S. District Court for the Southern District of Texas which prohibited the administration of the DACA policy, but temporarily stayed that order to permit DACA renewal requests, and to best manage limited agency resources for the adjudication of millions of immigration benefit and other requests, including renewal requests for DACA, USCIS determined to accept initial DACA requests as permitted by the court's order and hold such requests until such order is lifted. DHS has appealed the court's decision in *Texas* to the United States Court of Appeals for the Fifth Circuit.

12. As a result of the *Texas* order prohibiting administration of the DACA policy except as the order has been stayed by the district court, there are currently no officers assigned to adjudicate initial DACA requests. Officers previously assigned to this workload are currently adjudicating other workloads, including other humanitarian workloads. If USCIS were

ordered to pre-adjudicate the approximately 92,000 pending initial DACA requests as well as new incoming initial DACA requests up to the point of, but not including, approval or denial, officers would need to be shifted off of other workloads and likely would require additional training to be prepared for such pre-adjudication. Additionally, if USCIS needs to shift officers off the DACA renewal workload to assist with pre-adjudication of DACA initials, DACA renewal processing times could be negatively impacted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 27th of May of 2022.

Connie Nolan
Deputy Associate Director
Service Center Operations Directorate
U.S. Citizenship and Immigration Services
Department of Homeland Security